UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re Jeep Wrangler Class Action | ) |
| | ) |
| Angela Phelan, Administratix of | ) |
| the Estate of Christopher Phelan, | ) |
| Class Member, and Individually | ) |
| | ) |
| Plaintiffs, | ) Civil No. 3:02 CV 1219 JBA |
| | ) |
| v. | ) |
| | ) |
| DaimlerChrysler Corporation, | ) November 26, 2003 |
| | ) |
| Defendant. | ) |

FILED
Nov 26  12 30 PM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

### DEFENDANT DAIMLERCHRYSLER CORPORATION'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT EVIDENCE AND TESTIMONY AND MOTION FOR SUMMARY JUDGMENT

The defendant, DaimlerChrysler Corporation, respectfully submits this brief in reply to plaintiff's Opposition to Defendant's Motion to Exclude Expert Evidence and Testimony and Motion for Summary Judgment, pursuant to L. R. Civ. P. 7(d).

**I.   ARGUMENT**

Plaintiff has failed to meet her burden on the core issues of the defendant's motion. Plaintiff has admitted in her Local Rule 56(a)(2) Statement that in creating his ATB simulation of the accident, Irving Ojalvo excluded essential, known facts as to how the accident occurred, could not explain how crucial events, in his simulation, including the vehicle's rollover, occurred, and manipulated data to support the opinions reflected in his simulation; that Wilson Hayes adopted the output data from Ojalvo's reconstruction and used it as the basis of his simulation of occupant movements during the rollover; that Ojalvo has no formal education or training in medicine or anatomy that would qualify him to testify on injury causation; and that Malkah has no formal education or training that would qualify her that the decedent's injuries resulted from contact with the vehicle's doorframe, and no factual basis for such testimony.

The defendant addresses the arguments in plaintiff's Memorandum in the order of plaintiff's presentation, beginning with Section IV of plaintiff's Memorandum:

## A.  THE QUALIFICATIONS OF PLAINTIFF'S EXPERTS

In the Second Circuit, only a "witness qualified as an expert by knowledge, skill, experience training or education may give opinion testimony." Bunt v. Altec Indus. Inc., 962 F. Supp. 313, 316 (N.D.N.Y 1997), quoted in Prohaska v. Sofamor, S.N.C, 138 F. Supp. 2d 422, 435 (W.D.N.Y. 2001). Second Circuit courts have repeatedly excluded proposed experts in the medical subject area of injury causation due to lack of qualifications in the relevant medical specialty in the case. In Amorgianos v. Nat'l R.R. Passenger Corp., 137 F. Supp. 2d 147 (E.D.N.Y. 2001), the Court concluded that an industrial hygienist did not have the requisite qualifications to determine injury causation in a xylene exposure case. See id. at 189, aff'd., 303 F.3d 256 (2d Cir. 2002). The Court specifically noted that the proposed witness was "not a medical doctor," "not a toxicologist," "not a neurologist," and "not a biochemist," and so lacked the "'knowledge, skill, experience, training or education'" to offer testimony that would assist the jury. Id. see also Prohaska v. Sofamor, S.N.C, 138 F. Supp. 2d 422, 436 (W.D.N.Y. 2001); Borgognone v. Trump Plaza, 2000 U.S. Dist. LEXIS 4081 (E.D.N.Y. 2000)[1].

Ojalvo is no more qualified under Fed. R. Evid. 702 to testify on injury causation in this case than the industrial hygienist in Amorgianos. Ojalvo acknowledged repeatedly in deposition that he has no formal education or training in medicine or human anatomy, and plaintiff's own admissions with respect to this motion confirm Ojalvo's testimony. (See Pl's. 56(a)(2) Statement at ¶ 25). Ojalvo further acknowledged in deposition, and plaintiff has also confirmed, that he

---

[1] The Prohaska Court held that a neurosurgeon who had 35 years of practice was unqualified to testify concerning a defective spinal fixation device because he lacked the requisite knowledge of or experience with the surgery at issue, the method of implanting the device and the device's design. See id. at 436. In Borgognone, the Court ruled that testimony by a "forensic" engineer educated and trained as a civil engineer on "the biomechanics of human pedal motion" and the effect of aging on "human sensory functions" was "patently not within the purview" of the witness's expertise. Id. at *11 (citations omitted).

2

made only a cursory comparison between the shape of the decedent's head wound and the vehicle door frame that he claims caused Mr. Phelan's injury. (See id. at ¶ 26). Further, plaintiff has failed to properly substantiate the claims that Ojalvo testified on injury causation on similar facts in previous cases. In the absence of proof, plaintiff asks the Court to accept at face value Ojalvo's assertions that he is qualified.

Malka Shah is likewise unqualified to testify that the decedent's injuries resulted from contact with the vehicle's doorframe. Shah testified in deposition, and plaintiff has admitted, that Shah has no education in mechanical engineering, no background or other source of expertise in the biomechanics of automobile accidents and no experience in the design of automobiles or automobiles or automobile components, and no training in how to determine if a vehicle occupant was wearing a restraint. (See Pl's 56(a)(2) Statement at ¶ 30). Moreover, Shah has not inspected the subject vehicle or the accident scene, or even reviewed the police report on the subject accident and has no information concerning design specifications for the vehicle door frame that allegedly caused the decedent's injuries. (See id. at ¶¶ 31-32). Whatever credentials Shah may possess as a medical examiner, she plainly has no expertise in the subject areas necessary to testify that a particular vehicle component caused the decedent's injuries.

**B.    OJALVO'S ATB SIMULATION**

    1.    Ojalvo's ATB simulation does not meet the Daubert criteria.
        a.    Testing

As the literature cited in plaintiff's own Memorandum states, proper validation for accident simulation requires well-documented crash or sled-test data: "Of course, to be totally confident in the results of computer simulation, some parallel crash testing must be done to verify the accuracy of the prediction of both the vehicle and occupant motion." (See Pl's Opp. Ex. 14 at 2, emphasis added). Ojalvo stated in deposition, and plaintiff has confirmed, that he had never heard of such testing and did not conduct any for this case. (See Pl.'s 56(a)(2)

3

Statement at ¶ 11). Given the absence of appropriate validation techniques from Ojalvo's simulation, the Court cannot accept the validity of its results.

Plaintiff does not claim that Ojalvo conducted any such tests to validate his simulation, but argues instead that no testing was necessary under Daubert and that the simulation data was in any event testable. (See Pl's Opp. Mem. at 16 - 25) Plaintiff ignores a fundamental principle of Fed. R. Civ. P. 104(a), that the admissibility of expert evidence must be established by a preponderance of the evidence, and the burden of demonstrating that testimony is competent, relevant and reliable lies with the proponent. See Daubert v. Merrell Dow Pharm., Inc. 509 U.S. 579, 592 (1993); Travelers Prop. & Cas. Corp v. Gen. Elec. Co., 150 F. Supp. 2d 360, 363 (D. Conn. 2001), citing Koppell v. New York Bd. of Elections, 97 F. Supp. 2d 477, 479 (S.D.N.Y 2000). The burden is squarely on plaintiff to demonstrate the reliability of her expert's methodology. Having failed in that matter, plaintiff cannot shift the proponent's burden of proof to the defendant and require defendant to perform testing that plaintiff's expert should have.

b.   Peer Review and Publication

Plaintiff mistakenly claims that Ojalvo's methodology for his ATB simulation has been validated in peer-reviewed studies, and cites a number of papers published by the Society of Automotive Engineers to support this claim.[2] (See Pl.'s Opp. Mem. at 17-21 and Pl's Opp. Exs. 12-20). Plaintiff relies heavily on Exhibits 13-15 of her Opposition to support her claims. Unlike Ojalvo's simulation, however, the simulations described in these papers were not of real world accidents that had actually occurred, such as Christopher Phelan's. They were based on controlled laboratory simulations that were validated against a variety of sources, including the published results of earlier studies that also involved controlled laboratory testing, vehicle data, and vehicle crash test film results.

---

[2]   There is no clear indication that any of these studies cited by Plaintiff were peer-reviewed except for the study found at Exhibit 16.

4

Further, the authors of Plaintiff's submitted studies consistently emphasized the need for proper data collection based on actual measurements of vehicle motion. As one study stated, "The vehicle kinematics reconstruction process depended on good photographic coverage of the test and, **in part for purposes of validation, on the inertial measurements made on the vehicle.**" (Pl's Opp. Ex. 13 at 40 (emphasis added)). Another of Plaintiff's papers concluded that, "Poorest agreement was between the simulated [ATB-modeled] and measured vehicle accelerations." (See Pl's Opp. Ex. 14, second unmarked page). The authors further warned that ATB simulations must have <u>accurate</u> speed measurements, stating:

> Perhaps the most surprising result of this parameter study was that when the roll moment of inertia was altered, the pitching motion greatly changed. **This study illustrates the importance of accurate measurements of all inertial data. It is recommended that future research of this type use measured inertial data instead of approximations.**

(<u>Id</u>. at 63 (emphasis added)). Unlike Ojalvo, the authors of these studies employed a highly formal and careful validation process, using actual measurements of vehicle motion and evidence of vehicle movements recorded on film, as well as recording information through various types of sensors confirm their results. (See <u>id</u>. at 1-2, 6). Ojalvo's methodology is primitive by comparison, and ought not to be countenanced by this Court.

In support of the claim that Ojalvo's methodology is endorsed in peer-reviewed publications, plaintiff also cites in her Exhibits 16 and 17 two studies of a single pickup truck rollover accident that was based upon a National Accident Sampling System ("NASS") accident file. These studies are the only two examples of simulating real world accidents that plaintiff can be able to put forth. In what appears to be a review appended to one article, plaintiff has included a statement that sounds a warning directly applicable to Ojalvo's simulation:

> While clearly one may gain significant insight into crash events by performing simulations of the event, **it is equally clear that the validity of any one simulation is dependent upon the simulation operator's judgment, motivation, and the available crash data.** It should be stated that simulations <u>assist</u> in reconstructing accidents. The risk in simulations are that the detailed

5

output occurs regardless of accuracy of the computer model and its input. When using any computer model it is critical to fully understand the accuracy of the input and the characteristics of the model before accepting the validity of the results. Pl's Opp. Ex. 16 at 19 (emphasis added)).

As argued in Defendant's Memorandum and in Sections B.1.d. and B.2. below, Ojalvo has admitted that he deliberately excluded crash data that he deemed unimportant in creating his ATB simulation and manipulated the software to achieve the outcome he needed to support his opinions. (See Def's Mot. Mem. at 11 – 17).

    c.    <u>Rate of Error</u>

Plaintiff has failed to cite an error rate either for Ojalvo's simulation method or for the studies appended to her Memorandum. Even if the published studies all had an established rate of error – and plaintiff has not cited any such data-- that rate would have no application to Ojalvo's methodology. Furthermore, most the studies cited involved controlled laboratory testing designed to simulate hypothetical accidents. Ojalvo's attempted simulation of a past, real world accident lacked any of the testing or validation techniques that were described in the studies.

    d.    <u>General Acceptance</u>

Even if plaintiff could show that Ojalvo's methodology is generally accepted, the Court must further enquire into the reasonableness of using that methodology to reach the particular conclusion that Ojalvo reached in this case. See <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 153-54 (1999). Plaintiff's argument, that ATB and GATB are widely accepted in relevant scientific communities for uses that have no applicability to this case, has no relevance here. Plaintiff's burden is to prove that Ojalvo's use of the ATB software in this case is based on accepted methodology under <u>Daubert</u> standards. Plaintiff has not made and cannot make that showing.

6

Ojalvo ran no crash tests to validate the input parameters or the output data from his simulation. His methodology for developing input parameters for key events in the accident, such as speed at the point where he believes the vehicle rollover began to occur is haphazard at best and at worst subjective to the point of whimsicality. Ojalvo described his methodology in sworn deposition testimony, and in the presence of plaintiff's attorney as "input[ting] a bunch of parameters to try to get the Jeep to end up where it ended up . . . What you try to do when you're doing modeling is to put in all of the elements that you feel are important and leave out the ones that are unimportant." (Def's Mot. Ex. 9 at 223, 208). This aspect of his methodology is not endorsed anywhere in the literature cited by the plaintiff or the defendant.

Plaintiff's repeated citations to Ojalvo's Affidavit require the Court to simply take Ojalvo's word for it that his methodology in this case is reliable. See Kumho Tire, 526 U.S. at 157. The Court is not required to admit opinion testimony "that is connected to existing data only by the *ipse dixit* of the expert." Id., quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). The methodology that Ojalvo describes in his deposition testimony is not widely accepted or practiced in the relevant engineering community, and it ought not to be countenanced by the Court.

2.  **Plaintiff's claim that Ojalvo's ATB simulation replicates the known facts of the accident is demonstrably false.**

Plaintiff's claim that Dr. Ojalvo "inputted the known facts he determined during his investigation and the additional accident reconstruction into the ATB software program." (Pl's Opp. Mem. at 13) is belied by Ojalvo's deposition testimony and by plaintiff's admissions with respect to this Motion. Ojalvo admitted in deposition -- and plaintiff does not deny -- that:

- He excluded from his simulation not only the initial impact with the Ford Taurus driven by third-party defendant Christopher Miller – a crucial event in the

7

accident -- but any movement of the Jeep prior to its impact with the guardrail. (See Def.'s 56(a) (1) Statement at ¶ 16 and Pl's 56(a)(2) Statement at ¶ 16).

- He did not analyze and could not explain how the Jeep struck from a 30 degree angle with respect to the guardrail to traveling in a straight line in his simulation. (Id. at ¶¶ 15-17).

- Although severe changes to the vehicle's geometry occurred, he modeled in his simulation only a single change to what he described as the vehicle's C-pillar and otherwise depicted the vehicle in its pre-accident condition. (Id. at ¶ 19).

- Ojalvo did not model in his simulation the force that the impact of the Jeep exerted on the cables of the wire rope guardrail system it struck or how that impact could have affected the Jeep's movement.

Ojalvo acknowledged under oath that he did not model the impact between the Taurus and the Jeep, or the impact that the Jeep exerted on the cables of the wire rope guardrail system it struck, or how that impact could have affected the Jeep's movement or the possible effect of visible changes in the vehicle's geometry on the vehicle's motion or the occupant's movements. He stated that the Jeep struck the guardrail system at a 30 degree angle. (See Def's Mot. Ex. 9 at 181). He then went on to admit that he and his associates did not even consider either the "possible impact of the cables on the guardrail system having been struck by the Jeep perpendicularly or at another angle" or "if the Jeep struck and pulled the cables down" or if the Jeep "pulled down the guardrail post ahead of [it]." (Id. at 183).

3. **Wilson Hayes's simulation of occupant movements is driven by the output data from Ojalvo's simulation.**

Hayes testified that, "The input data to our simulation is a direct reflection of the vehicle motion or kinematics from the Ojalvo simulation. So his output data on vehicle motion was used to drive our model." Dr. Hayes's use of Ojalvo's data includes all of Ojalvo's speed calculations

8

for the Jeep and Taurus. See Def. Mot. Ex. 16, Wilson Hayes Dep., at 47-48, 54, 57, 89. Plaintiff has admitted the substance of Hayes' deposition testimony. See Plaintiff's Local Rule 56(a)(2) Statement at Paragraphs 27-29.

    4. <u>Plaintiff may not use the affidavits of Ojalvo and Wilson Hayes to create a factual dispute.</u>

Plaintiff does not contest most of the essential factual issues stated in defendant's Local Rule 56(a)(1) Statement, but has instead has submitted Affidavits by Ojalvo and Hayes (Pl.'s Opp. Exs. 4 and 12). that attempt to contradict her expert's prior deposition testimony. (See Pl's Opp. Mem. at 13-14). "'The rule is well-settled in this circuit that party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony.'" <u>Federal Deposit Ins. Corp. v. Betancourt</u>, 865 F. Supp. 1035, 1046 (D.C.N.Y. 1994), quoting <u>Trans-Orient Marine Corp v. Star Trading & Marine, Inc.</u>, 925 F.2d 566, 572 (2d Cir. 1991). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." <u>Mack v. United States</u>, 814 F.2d 120, 124-25 (2d Cir. 1987) (citations omitted).

Drafted more than eight months after his deposition was completed, Ojalvo's Affidavit is a belated attempt to rationalize the exclusion from his simulation of the known accident facts identified in Subsection B.2. above. Ojalvo's explanation contradicts, without explanation, his clear deposition testimony that he did not consider the "possible impact of the cables on the guardrail system having been struck by the Jeep perpendicularly or at another angle" or "if the Jeep struck and pulled the cables down" or if the Jeep "pulled down the guardrail post ahead of [it]." Plaintiff seeks also to use Wilson Hayes's Affidavit, prepared eight months after his deposition, to contradict his deposition testimony that he adopted the output from Ojalvo's ATB

9

simulation on vehicle motion for the purposes of modeling occupant kinematics and occupant dynamics and that his simulation was driven by Ojalvo's output data. Hayes' Affidavit must also be stricken. Mack, 814 F2d at 124-25.

## II. CONCLUSION

WHEREFORE, the defendant DaimlerChrysler Corporation requests that this Court exclude the computer simulations by Ojalvo and Hayes and all evidence based upon or relating thereto, and the proposed testimony of Malka Shah regarding the cause of the decedent's injuries, and grant the defendant summary judgment on the individual product liability claims stated in plaintiff's Amended Complaint of October 12, 2002, including, but not limited to, the allegations stated in Court III of that document.

Respectfully submitted,
DAIMLERCHRYSLER CORPORATION

By: _____
Daniel J. Krisch
dkrisch@hsklawfirm.com
Fed Bar ID #: CT21994
HORTON, SHIELDS & KNOX, P.C.
90 Gillett Street
Hartford, CT 06105
Tel. (860) 522-8338

## CERTIFICATE OF SERVICE

    I, Daniel J. Krisch attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 26th day of November, 2003, a true and correct copy of the foregoing motion was served via first class mail, postage prepaid, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut 06107
Attorney for Plaintiff

Terri S. Reiskin, Esq.
James A. Hourihan, Esq.
Hogan & Hartson, LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Co-counsel for Defendant

Lewis H. Goldfarb, Esq.
Hogan & Hartson, LLP
875 Third Avenue
New York, New York 10022
Co-counsel for Defendant

James P. Kerr
Peter M. Durney
CORNELL & GOLLUB
75 Federal Street
Boston, Massachusetts 02110

Mr. Christopher Miller
Robinson Correctional Facility
285 Shaker Road
P.O. Box 1400
Enfield, CT 06082

_____
Daniel J. Krisch

11