UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

IN RE JEEP WRANGLER CLASS ACTION

CIVIL NO. 3:02 CV 1219 JBA

ANGELA PHELAN, ADMINISTRATRIX
OF THE ESTATE OF CHRISTOPHER
PHELAN, CLASS MEMBER, AND
INDIVIDUALLY

      Plaintiffs

VS.

DAIMLERCHRYSLER CORPORATION

      Defendant

## DEFENDANT, DAIMLERCHRYSLER CORPORATION'S MOTION FOR PROTECTIVE ORDER

DaimlerChrysler Corporation brings this Motion for Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. DaimlerChrysler Corporation seeks an order striking 19 of the 22 deposition notices served on November 24 and December 4. DaimlerChrysler Corporation further seeks an order striking Plaintiff's Rule 30(b)(6) deposition notice (Exhibit 1) to the extent that it seeks testimony about: (1) the Jeep Wrangler (TJ); (2) the Jeep CJ; (3) Mercedes-Benz rollover and roof crush standards and testing; (4) vehicles equipped with integrated structural roofs; (5) miscellaneous vehicles other than the Jeep Wrangler (YJ); (6) activities and analyses related to Federal Motor Vehicle Safety Standard (FMVSS) 216 – Roof Crush Resistance - except for testing of the Jeep Wrangler (YJ) using the standard as a guideline; (7) advertising and marketing concerning the Jeep Wrangler (YJ); and (8) record retention policies.

## I.    INTRODUCTION

This is a products liability action where Plaintiff alleges defect in the roll bar of a 1994 Jeep Wrangler (YJ).  Plaintiff has had a pattern of dilatory discovery practices in this case.  Because Plaintiff was unable to meet the August 15, 2003 discovery deadline, on that date, she filed a Motion for Extension of Time to Complete Discovery.  By order of October 21, 2003, the court granted the motion and created a new discovery deadline of December 31, 2003.

At the close of business on November 24, 2003, Plaintiff telecopied thirteen deposition notices to counsel for DaimlerChrysler Corporation.  These notices are attached as Exhibits 1 through 13.   On December 4, 2003, Plaintiff telecopied another nine deposition notices to counsel for DaimlerChrysler Corporation.  These deposition notices are attached as Exhibits 14 through 22.  Depositions are noticed for December 8, 9, 12, 15 (two depositions noticed), 16 (two depositions noticed), 17 (three depositions noticed), 18 (two depositions noticed), 19 (two depositions noticed), 22 (two depositions noticed),  23 (two depositions noticed), 29 (two depositions noticed), and 30 (two depositions noticed). The deposition noticed for December 8 was submitted pursuant to Rule 30(b)(6) and seeks individuals with knowledge of *one-hundred and ten* subject matter areas identified in the notice.  Exhibit 1.  Further, the Rule 30(b)(6) notice seeks deposition testimony, among other things, about activities that occurred *over thirty years ago* and about *many model years of many model vehicles* other than the Jeep Wrangler (YJ).

DaimlerChrysler Corporation is willing, despite the short notice, to provide Rule 30(b)(6) witnesses to testify about the design and testing of the 1994 Jeep Wrangler (YJ).

To that end, the depositions of DaimlerChrysler Corporation employees, Leon Neal and Richard Friday, are scheduled for December 15 and 16. Mr. Neal and Mr. Friday are named in two of the deposition notices (Exhibits 7 and 13) and will also be offered to address appropriate subject matter areas identified in the Rule 30(b)(6) notice (Exhibit 1). DaimlerChrysler Corporation objects, however, to producing company witnesses to testify about the myriad other issues addressed in the Rule 30(b)(6) deposition notice.

The deposition notices seek testimony from employees or former employees of DaimlerChrysler Corporation. To the extent available, DaimlerChrysler Corporation has provided last known addresses of the former employees named in the first set of notices served (Exhibits 3, 4, 5, 8, 10, and 11). DaimlerChrysler Corporation is in the process of ascertaining the employment status of the individuals named in the second set of deposition notices. Assuming Plaintiff subpoenas individuals no longer employed by the company, DaimlerChrysler Corporation nonetheless objects to the deposition notices of its former employees, as well as current employees named in the notices, in light of the fact that the notices were served with very little lead time and seek to depose 22 individuals over twelve business days from December 8 through December 30.

## II.    LEGAL ARGUMENT

### A.    The Deposition Notices Are Untimely, Oppressive, and Burdensome.

Throughout this lawsuit, Plaintiff has come up against discovery deadlines, only to seek additional time because of the failure to comply with those deadlines. Most recently, by order of October 21, 2003, the court granted Plaintiff's Motion to Extend Time to Complete Discovery and set a new discovery deadline of December 31, 2003. More than

one month after the court order, on November 24, Plaintiff served voluminous deposition notices by telecopy, naming eleven witnesses and seeking Rule 30(b)(6) testimony on 110 topics over a two-week period in December. Further, many of the "topics" identified by Plaintiff themselves include many years worth of information. For example, Plaintiff's first topic is "Jeep Wrangler CJ [sic][1], YJ, and TJ Owner's Manuals." The Jeep CJ-5 was produced from 1955 through 1983. The Jeep CJ-7 was produced from 1976 through 1986. The Jeep Wrangler (YJ) was produced from 1987 through 1995. The Jeep Wrangler (TJ) began production in the 1997 model year and continues to be produced today. Thus, one topic alone seeks testimony concerning forty-five separate owner's manuals.

After serving the first round of deposition notices, a second set was served by telecopy on December 4. Depositions of nine witnesses are sought between December 17 and December 30, 2003.

Plaintiff's service of the deposition notices on the eve of the discovery deadline continues a pattern of dilatory discovery practices. Plaintiff should not be permitted, at this late date, to conduct the depositions she seeks. Rule 26(c) permits the court to issue any order to protect a person or party from "oppression, or undue burden or expense." These depositions notices -- which would have DaimlerChrysler Corporation produce, over a two-week period, dozens of witnesses to testify about many different vehicles over a thirty-year time span - is beyond oppressive and burdensome. Furthermore, to the extent the deposition notices seek testimony of former employees and Plaintiff intends to subpoena

---

[1] . Throughout the deposition notice, Plaintiff refers to the Jeep CJ as a "Wrangler CJ." There is no vehicle known as a "Wrangler CJ." Production of the Jeep CJ ended prior to the first model year of the Jeep Wrangler (YJ).

those individuals, they are onerous due to the fact that the depositions are noticed over a three-week period that includes the holidays. For these reasons, DaimlerChrysler Corporation seeks an order pursuant to Rule 26(c) limiting the depositions to Rule 30(b)(6) company witnesses who can testify about the design and testing of the 1994 Jeep Wrangler (YJ), which depositions are scheduled for December 15 and 16.

**B.    The Deposition Notices Violate Rule 30(a)(2)(A).**

Rule 30(a)(2)(A) sets a limit of ten depositions per side unless leave of court is obtained to exceed that number or the parties so stipulate in writing. Plaintiff has already taken four depositions in this case and now proposes to take an additional 22 depositions. Plaintiff has not sought leave of court nor have the parties entered into a stipulation regarding the number of witnesses. DaimlerChrysler Corporation has agreed to allow depositions of Leon Neal and Richard Friday pursuant to notices naming those individuals. Mr. Neal and Mr. Friday will also address permissible topics in the Rule 30(b)(6) deposition notices. However, given that the deposition notices far exceed what is allowed by Rule 30(a)(2)(A) in the absence of a court order or written stipulation, DaimlerChrysler Corporation seeks a protective order pursuant to Rule 26(c) striking the deposition notices except as they relate to the depositions of Leon Neal and Richard Friday about the design and testing of the Jeep Wrangler (YJ).

**C.    Depositions of Witnesses About Vehicles Other Than the Jeep Wrangler (YJ) Should Be Disallowed.**

As set forth below, Plaintiff seeks testimony about decades of model years of vehicles other than the Jeep Wrangler (YJ), which vehicles are substantially dissimilar to the

Jeep Wrangler (YJ). A party in an automotive product liability action should not be able to obtain discovery about a model vehicle other than the one that is the subject of the lawsuit absent a showing that the vehicles are substantially similar. <u>Piacenti v. General Motors Corporation and Suzuki Motor Company, Ltd.</u>, 173 F.R.D. 221, 224 (N.D. Il. 1997). In view of the substantial dissimilarity between the Jeep Wrangler (YJ) and the myriad other vehicles about which testimony is sought, the discovery Plaintiff seeks is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Accordingly, for the reasons stated below, DaimlerChrysler Corporation seeks a protective order pursuant to Rule 26(c) that strikes the Rule 30(b)(6) deposition notice to the extent it seeks information about vehicles other than the Jeep Wrangler (YJ).

### a.    The Jeep Wrangler (TJ).

Two deposition notices seek information about the Jeep Wrangler (TJ), an all-new vehicle that was first produced in the 1997 model year, after production of the Jeep Wrangler (YJ) ceased after the 1995 model year. The Jeep Wrangler (TJ) continues to be produced today. The Rule 30(b)(6) deposition notice (Exhibit 1) seeks testimony about 110 topics, 26 of which relate to the Jeep Wrangler (TJ).[2] Exhibit 1, Topic Nos. 1, 2, 3, 4, 5, 6, 7, 20, 25, 26, 31, 32, 36, 57, 59, 60, 63, 66, 69, 70, 71, 73, 74, 75, 95, and 107. As with other topics identified in the Rule 36(b)(6) deposition notices, many individual topics themselves seek information about voluminous documents spanning many years. For

---

[2]. The topics about which Plaintiff seeks deposition testimony pursuant to Rule 30(b)(6) are not numbered. For ease of reference, DaimlerChrysler Corporation has numbered the topics. See Exhibit 1.

example, Topic 25 seeks testimony about "changes to all language of all . . . TJ Owner's Manuals." Exhibit 1.

The Rule 30(b)(6) deposition notice is not the only one seeking information about the Jeep Wrangler (TJ). In addition, Plaintiff seeks to depose DaimlerChrysler Corporation employee, Adrian Van Campenhout.   Exhibit 9.   Mr. Van Campenhout was hired by Chrysler Corporation in May 1994, after the production of the accident vehicle.  He had no involvement with the Jeep Wrangler (YJ), whether in design, testing, or otherwise.  He is a structures engineer who was involved in the development of the Jeep Wrangler (TJ) and DaimlerChrysler Corporation assumes that Plaintiff desires to depose him about that vehicle.

Some background related to the discovery in this action is necessary to fully appreciate the impropriety of Plaintiff's efforts to seek testimony about the Jeep Wrangler (TJ).  The vehicle that is the subject of this action is a 1994 Jeep Wrangler (YJ).  In response to written discovery requests, DaimlerChrysler Corporation provided documents related to all model years (1987-1995) of the Jeep Wrangler (YJ).  In May 2003, Plaintiff filed a Motion to Compel, arguing that DaimlerChrysler Corporation also should have provided documents related to the Jeep Wrangler (TJ), an all-new vehicle first produced in the 1997 model year.  Plaintiff argued that there were only minor differences in the roll bar structure of the Jeep Wrangler (YJ) and the Jeep Wrangler (TJ) and, as such, DaimlerChrysler Corporation should be compelled to produce design, testing, and other documents related to the Jeep Wrangler (TJ).  Plaintiff's motion was unsupported by an expert affidavit.  By contrast, DaimlerChrysler Corporation's response to the motion was supported by the

-7-

affidavit of Leon Neal, which explained the differences in the designs of the roll bar of the Jeep Wrangler (YJ) and the Jeep Wrangler (TJ). A copy of that affidavit is attached hereto as Exhibit 23. By order of July 10, 2003, the court denied the motion "<u>without prejudice to renew</u>, with additional evidence, from an expert, that the differences are only 'relatively minor differences.'" (Emphasis in original)

On August 15, 2003, the date of the second discovery deadline in this case, Plaintiff filed a Motion for Extension of Time to Complete Discovery. By the court's order of October 21, 2003, the court stated that if Plaintiff wanted to renew the motion, she "must do so <u>on or before November 14, 2003</u>." (Emphasis in original)  On November 14, 2003, Plaintiff filed a Renewed Motion to Compel that was *unsupported by an expert affidavit*. This motion is currently pending.

As spelled out in the affidavit of Leon Neal (Exhibit 23), there are differences in the design of the roll bar of the Jeep Wrangler (YJ) and the Jeep Wrangler (TJ). As a result of these differences, there is a standing court order denying Plaintiff's Motion to Compel production of documents related to the Jeep Wrangler (TJ). At this late date and in the face of the court order, Plaintiff should not be allowed to seek testimony about 26 topics related to the Jeep Wrangler (TJ). Pursuant to Rule 26(c), DaimlerChrysler Corporation seeks a protective order disallowing the Rule 30(b)(6) depositions to the extent they seek testimony about the Jeep Wrangler (TJ). DaimlerChrysler Corporation also seeks a protective order disallowing the deposition of Adrian Van Campenhout (Exhibit 9), who was not involved in any way with the Jeep Wrangler (YJ), but is a structures engineer who worked on the development of the Jeep Wrangler (TJ).

-8-

### b.    The Jeep CJ.

The Jeep CJ-5 was produced from the 1955 model year through the 1983 model year. The Jeep CJ-7 was produced from the 1976 model year through the 1986 model year.  The Jeep Wrangler (YJ) was an all-new vehicle that differed from the Jeep CJ.  The Rule 30(b)(6) deposition notice (Exhibit 1) seeks testimony about 110 topics, 34 of which relate to the Jeep CJ.  Exhibit 1, Topic Nos. 1, 2, 3, 4, 5, 6, 7, 20, 25, 31, 36, 57, 59, 60, 63, 66, 69, 73, 74, 78, 82, 83, 84, 85, 86, 89, 90, 96, 97, 100, 101, 102, 103, and 104.

The roll bar structure of the Jeep CJ differs from that of the Jeep Wrangler (YJ), as described in an additional Affidavit of Leon Neal, which is attached as Exhibit 24.  Unlike the Jeep CJ, the upper body structure of the Jeep Wrangler (YJ) includes side bars that connect the windshield frame to the main hoop of the roll bar.  The side bars are connected to the upper corners of the windshield structure and extend parallel to the longitudinal axis of the vehicle connecting with the upper corners of the roll bar main hoop.  Jeep CJ vehicles do not have any structure connecting the windshield and the main hoop of the roll bar.  Affidavit of Leon Neal, Exhibit 24, ¶ 6(a).  Furthermore, beginning in the 1992 model year, the rear braces for the main hoop of the roll bar for the Jeep Wrangler (YJ) were re-designed to accommodate introduction of three-point restraints for rear seat occupants.  The rear braces in Jeep CJ vehicles ran diagonally rearward from the upper corners of the roll bar main hoop to their attachment points at the rear of the rear wheel wells.  By contrast, the rear braces of the 1992 through 1995 model year Jeep Wrangler (YJ) vehicles ran horizontally rearward from the upper corners of the roll bar main hoop before bending

downward at an approximate right angle to their attachment points at the rear of the rear wheel well. Affidavit of Leon Neal, Exhibit 24, ¶6(b).

A party in an automotive product liability action should not be able to obtain discovery about a model vehicle other than the one that is the subject of the lawsuit absent a showing that the vehicles are substantially similar. <u>Piacenti v. General Motors Corporation and Suzuki Motor Company, Ltd.</u>, supra, 173 F.R.D. at 224 .  As established by the Affidavit of Leon Neal, the roll bar structures of the Jeep CJ and the 1994 Jeep Wrangler (YJ) are different.[3]  As such, pursuant to Rule 26(c), DaimlerChrysler Corporation seeks a protective order disallowing the Rule 30(b)(6) depositions to the extent they seek testimony about the Jeep (CJ).

     **c.**     **Mercedes-Benz Standards and Testing.**

One of Plaintiff's deposition notices seeks testimony about (1) "Roll over testing done by . . . Mercedes-Benz," (2) "Mercedes Benz roof crush standards, or roof strength requirements, for SUVs," (3) "documents and videos relating to Mercedes-Benz SUV roof strength," and (4) the "2003 Mercedes Benz SL convertible with an automatic rollbar." Exhibit 2. By way of background, in November 1998, long after the design, assembly, and sale of the 1994 Jeep Wrangler (YJ) involved in this accident, a business combination occurred between Chrysler Corporation, a Delaware corporation, and Daimler-Benz AG, an

---

[3] .  In response to a discovery dispute in this action, DaimlerChrysler Corporation did provide engineering drawings and test documents related to the roll bar of the 1983 Jeep CJ-5 and the 1986 Jeep CJ-7.  These documents were provided (1) to resolve a discovery dispute without court intervention and (2) to demonstrate the differences in the roll bar structure of the Jeep CJ and the Jeep Wrangler (YJ).  As such, the fact that DaimlerChrysler Corporation provided some written discovery responses related to the Jeep CJ should not serve as a ground for compelling it to produce witnesses to testify about the myriad subject matters pertaining to the Jeep CJ that are contained in the Rule 30(b)(6) deposition notice.

-10-

*Aktiengesellschaft*, or German public share company. Among other things, this transaction resulted in the creation of a new German company, DaimlerChrysler AG, headquartered in Stuttgart, Germany. At the same time, Chrysler Corporation changed its name to DaimlerChrysler Corporation and became a subsidiary corporation of the newly formed DaimlerChrysler AG. The corporate entity previously known as Chrysler Corporation neither ceased to exist nor changed its business structure or business operation. Chrysler Corporation merely changed its name to DaimlerChrysler Corporation.

It is undisputed that when the 1994 Jeep Wrangler (YJ) was designed, assembled, and sold, there was no relationship between the former Chrysler Corporation and the former Daimler-Benz AG except as competitors in the automotive industry.

Testimony sought by Plaintiff concerning Mercedes-Benz standards, testing, and vehicles cannot possibly have relevance to the 1994 Jeep Wrangler (YJ). At the time the vehicle was designed, assembled, and sold, Chrysler Corporation had no business relationship with Daimler-Benz AG. Any knowledge or information Chrysler Corporation had concerning industry standards was not based on information in the possession of Daimler-Benz AG. Chrysler Corporation's knowledge of Daimler-Benz AG's practices would have been the same as its awareness of the practices of other automotive manufacturers. Its means of determining what practices were used by Daimler-Benz AG or any other manufacturer would be limited to publicly available documents. This method is equally available to Plaintiff by reviewing literature or obtaining publicly available information.

-11-

DaimlerChrysler Corporation's knowledge now, if any, regarding the standards and testing of DaimlerChrysler AG of its Mercedes-Benz vehicles is without a scintilla of relevance to this action in view of the fact that the vehicle that is the subject of this action was produced almost a decade ago, when the former Chrysler Corporation and the former Daimler-Benz AG had no relationship with one another. The overbreadth and irrelevance of the deposition notice is particularly evident in the request for testimony about the 2003 Mercedes-Benz SL, a vehicle produced years after the production of the 1994 Jeep Wrangler (YJ), the purchase of the 1994 Jeep Wrangler (YJ) as a used vehicle in 1999, and the January 2000 accident that is the subject of this action. Pursuant to Rule 26(c), DaimlerChrysler Corporation seeks an order that discovery not be had concerning the deposition notice seeking testimony about Mercedes-Benz testing, standards, and vehicles.

### d.    Vehicle Equipped With Integrated Roof Structures.

Plaintiff seeks testimony about five categories of information dating back to 1976 related to vehicles equipped with integrated roof structures[4]. Exhibit 1, Topic Nos. 53 through 57. A fabric top was standard equipment on the 1994 Jeep Wrangler (YJ), while a removable fiberglass hard top was offered as optional equipment. The Plaintiff's vehicle was originally sold with the optional fiberglass hard top. Neither the soft top nor the removable fiberglass hard top was designed to function as a structural member of the Jeep Wrangler (YJ). With either top, the Jeep Wrangler (YJ) was considered an open-body vehicle that was not subject to FMVSS 216 – Roof Crush Resistance.

---

[4] . The deposition notice uses the terms "true hard top" and "pillared hard top," which DaimlerChrysler Corporation believes is intended to refer to closed-body vehicles equipped with permanent, non-removable roofs that are an integral part of the body.

Plaintiff seeks testimony about *all vehicles* equipped with structural roofs produced by American Motors Corporation, Chrysler Corporation, and DaimlerChrysler Corporation *prior to 1976* (Exhibit No. 1, Topic No. 53) and *subsequent to 1977* (Exhibit 1, Topic No. 54). Almost all model vehicles produced by American Motors Corporation, Chrysler Corporation, and DaimlerChrysler Corporation's vehicles produced before and after 1976 were equipped with structural roofs. Since the Jeep Wrangler (YJ) was not equipped with such a roof structure, testimony about decades of model years of innumerable different model vehicles cannot possibly have any relevance, nor will it lead to the discovery of admissible evidence. As such, DaimlerChrysler Corporation seeks a protective order pursuant to Rule 26(c) striking the Rule 30(b)(6) deposition notice to the extent it seeks testimony about these vehicles.

### e.    Other Vehicles.

Plaintiff's Rule 30(b)(6) deposition notice seeks testimony about miscellaneous additional vehicles besides the Jeep Wrangler (YJ). See Topic Nos. 49 (vehicles designed to meet roof strength criteria in excess of FMVSS 216 requirements), 50 and 51 (the roof strength of the Dakar, Icon, Mountain Biker, and Ultimate Rescue), 52 (whether any individual from the "minivan safety leadership team" ever indicated that DaimlerChrysler Corporation's minivan roof should provide strength in excess of what FMVSS 216 requires), 60 (vehicles subject to 3-D loading tests), 82 and 84 (Jeep Commando vehicles), and 108 (test documentation for FMVSS 216 testing of DaimlerChrysler Corporation's vehicles).

To the extent testimony is sought concerning vehicles other than the Jeep Wrangler (YJ), the deposition notices seek information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff should not be permitted, at this late date, to obtain testimony in response to her open-ended Rule 30(b)(6) deposition notices related to vehicles other than the Jeep Wrangler (YJ).

**D.    Deposition of Witnesses About FMVSS 216 Activities Unrelated to the Jeep Wrangler (YJ) Should Be Disallowed.**

Plaintiff seeks witnesses to offer detailed testimony about FMVSS 216 federal rulemaking activities dating back to 1971. Exhibit 1, Topic Nos. 37 through 52, 61, 62, 63, 67, 68, 72, 74, and 108. By way of example, testimony is sought on the National Highway Safety Board (NHSB) static roof test proposed prior to 1973 (Topic No. 38), DaimlerChrysler Corporation's comments to the NHSB's 1971 proposed roof crush standard (Topic No. 39), comparisons between a standard proposed by General Motors in 1973 and that proposed by the NHSB (Topic Nos. 40, 46, and 47), comments related to a NHTSA Notice of Proposed Rulemaking dated February 27, 1997 concerning vehicles with highly sloped or raised roofs (Topic No. 61), the pros and cons of using different sized test plates in FMVSS 216 testing (Topic Nos. 62 and 63), the effect of the degree of forward angle of the test device (Topic No. 67), focal point of FMVSS 216 testing (Topic No. 68), evaluation of A-pillar and B-pillar strength (Topic No. 72), effect of flat plate pushing on two columns during FMVSS 216 testing (Topic No. 74), and the types of documents generated in connection with FMVSS 216 testing (Topic No. 108).

-14-

As an open-bodied vehicle, the Jeep Wrangler (YJ) was never subject to FMVSS 216. Although the Jeep Wrangler (YJ) was not subject to FMVSS 216, the roll bar structure of the vehicle was tested on several occasions using FMVSS 216 as a guideline. DaimlerChrysler Corporation has produced documents related to that testing and has scheduled the deposition of a company witness to testify about the testing. However, the detailed testimony sought by Plaintiff regarding FMVSS rulemaking activities dating back over thirty years cannot possibly have relevance to any matter in issue in this case. As such, DaimlerChrysler Corporation seeks a protective order pursuant to Rule 26(c) striking the Rule 30(b)(6) deposition notice to the extent it seeks testimony about FMVSS 216 that is not related to testing conducted on the Jeep Wrangler (YJ).

E.   **Deposition Testimony Concerning Advertising and Marketing of the Jeep Wrangler (YJ) Should Be Disallowed.**

Plaintiff seeks detailed testimony about the advertising and marketing of the Jeep Wrangler (YJ). Exhibit 1, Topic Nos. 76 through 81 and 100 through 104. The Jeep Wrangler (YJ) was produced from 1987 through 1995, when the vehicle was discontinued. According to the Complaint, the decedent, Christopher Phelan, purchased the subject 1994 Jeep Wrangler (YJ) as a used vehicle in July 1999, several years after the production of the Jeep Wrangler (YJ) had been discontinued. Advertising and marketing of the Jeep Wrangler (YJ) ceased in 1995. The decedent could not have relied on advertising and marketing of a vehicle he purchased three years after advertising and marketing activities ceased. Accordingly, DaimlerChrysler Corporation should not be compelled to produce witnesses to testify about such activities. For this reason, DaimlerChrysler Corporation seeks a

-15-

protective order pursuant to Rule 26(c) striking the Rule 30(b)(6) deposition notice to the extent it seeks testimony about advertising and marketing of the Jeep Wrangler (YJ).

F.    **Deposition Testimony Concerning Document Retention Policies Should Be Disallowed.**

Plaintiff's Rule 30(b)(6) deposition notice seeks testimony about DaimlerChrysler Corporation's record retention procedures. Exhibit 1, Topic Nos. 105 and 106. Plaintiff has repeatedly implied that DaimlerChrysler Corporation has either fabricated documents or hidden or destroyed documents in connection with this case. By way of example, see page 7 of Plaintiff's brief in support of the Renewed Motion to Compel Discovery, where she refers to a document produced by DaimlerChrysler Corporation of a test run on a Jeep Wrangler (YJ) using FMVSS 216 as a guideline, as a "purported test document" about an "unsubstantiated FMVSS 216-related roof crush test." See also, Exhibit 1, where Plaintiff implies that documents were destroyed in Topic No. 106 (documents shredded or destroyed after Chrysler acquired American Motors Corporation) and Topic No. 110 (documents missing from production or documents requested but not produced).

There is no support for Plaintiff's false implications concerning DaimlerChrysler Corporation's actions in this case. DaimlerChrysler Corporation has produced voluminous documents related to every model year of the Jeep Wrangler (YJ). Testimony about record retention procedures is neither relevant nor reasonably calculated to lead to admissible evidence. As such, DaimlerChrysler Corporation seeks an order pursuant to Rule 26(c) striking the Rule 30(b)(6) notice to the extent it seeks testimony about such procedures.

## III. CONCLUSION

For the foregoing reasons, DaimlerChrysler Corporation respectfully submits that the court enter a protective order that (1) limits the Rule 30(b)(6) deposition to topics related to the design and testing of the Jeep Wrangler (YJ) and (2) strikes the deposition notices at Exhibits 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, and 22, which seek testimony from individuals other than Leon Neal and Richard Friday.

Respectfully submitted,
DAIMLERCHRYSLER CORPORATION

By: _____
James P. Kerr (Fed. Bar ID# CT24142)
jkerr@cornellgollub.com
Peter M. Durney (Fed. Bar ID# CT14569)
pdurney@cornellgollub.com
CORNELL & GOLLUB
75 Federal Street
Boston, Massachusetts 02110
(617) 482-8100
(617) 482-3917 (facsimile)

## CERTIFICATE OF SERVICE

I, James P. Kerr, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 5th day of December, 2003 a true copy of the foregoing Defendant DaimlerChrysler Corporation's Motion for Protective Order, was served via first class mail directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut 06107
    Attorney for Plaintiff

Christopher Miller
c/o Robinson Correctional Facility
285 Shaker Road
P.O. Box 1400
Enfield, CT 06082
Third-Party Defendant

and

Daniel J. Krisch, Esq.
Horton, Shields & Cormier
90 Gillett Street
Hartford, Connecticut  06105

Lewis H. Goldfarb, Esq.
Hogan & Hartson, LLP
875 Third Avenue
New York, New York 10022

M. Sheila Jeffrey, Esq.
Miller, Canfield, Paddock & Stone, P.L.C.
Seventh Floor
101 North Main
Ann Arbor, MI 48104

Co-counsel for Defendant

Terri S. Reiskin, Esq.
James A. Hourihan, Esq.
Hogan & Hartson, LLP
555 Thirteenth Street, N.W.
    Washington, D.C. 20004

_____
James P. Kerr

            Co-counsel for Defendant

-18-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

IN RE JEEP WRANGLER CLASS ACTION : CIVIL NO. 3:02 CV 1219 (JBA)

ANGELA PHELAN, ADMINISTRATRIX OF :
THE ESTATE OF CHRISTOPHER PHELAN, :
CLASS MEMBER, AND INDIVIDUALLY :
      Plaintiffs :
                     :
VS. :
                     :
DAIMLERCHRYSLER CORPORATION : November 24, 2003
      Defendant

### NOTICE OF DEPOSITION

    PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure, Plaintiffs will take the deposition of Defendant, **DaimlerChrysler Corporation**, for the purpose of discovery or as evidence in this action on **December 8, 2003 at 10:00 a. m.** before a notary public or some officer authorized to administer oaths at the offices of Miller, Canfield, Paddock & Stone, P.L.C., 840 West Long Lake Road, Suite 200, Troy, MI 48098. Such deposition will be recorded by stenographer and videotape.

    The above-named Corporation, pursuant to Rule 30(b)(6), shall designate an individual or individuals with personal knowledge to appear and attend at the time and place specified for the purposes of testifying to the following areas of inquiry in accordance with the foregoing Topics of Notice to be questioned upon:

TOPICS OF NOTICE:

1. **Written Materials**
   - Jeep Wrangler CJ, YJ, and TJ Owner's Manuals.
   - Jeep Wrangler CJ, YJ and TJ glove box information.

**STANGER & ARNOLD, LLP**
29 South Main Street · Suite 325 · West Hartford, CT 06107 · 860.561.0650 · Facsimile: 860.561.0646
Juris No. 419042

3 • Jeep Wrangler CJ, YJ and TJ parts/service manuals.

4 • Jeep Wrangler CJ, YJ and TJ vehicle decal language, design history and modifications.

5 • All procedures, processes, protocols, guidelines and/or instructions relating to the creation and/or modification of the language contained in CJ, YJ and TJ Owner's manuals.

6 • All procedures, protocols, guidelines and/or instructions relating to the creation and/or modification of the language contained in CJ, YJ and TJ labels/decals.

7 • All procedures, protocols, guidelines and/or instructions relating to the creation and/or modification of the language contained in CJ, YJ and TJ glove box materials.

2. **Labels 8955013320 and 8955009555**

8 • The reason(s) for Decal 8955013320, Label-Seat Belt Warning.

9 • The reason(s) for the selection of the location of Decal 8955013320 within the vehicle.

10 • The meaning of the language contained in all versions Decal 8955013320.

11 • The revision(s) made to Decal 8955013320.

12 • The reason(s) for the revision(s) to Decal 8955013320.

13 • The person(s) approving all versions Decal 8955013320.

14 • The engineer(s), designer(s), attorney(s), and/or other individuals participating in the creation and/or revision(s) to Decal 8955013320.

15 • The reason(s) for Decal SF 8955009555, Label-Open-Body Utility Vehicle Drivers Warning.

16 • The reason(s) for the selection of the location of Decal 8955009555 within the vehicle.

2

STANGER & ARNOLD, LLP
29 South Main Street • Suite 325 • West Hartford, CT 06107 • 860.561.0650 • Facsimile: 860.561.0646
Juris No. 419042

17. • The meaning of the language contained in all versions Decal 895500955.

18. • The definition of "open-body utility vehicle."

19. • The reason(s) Decal 8955009555 states "Read the driving guidelines in the Owner's Manual and Supplement."

20. • What the reader was suppose to ascertain by reading the driving guidelines in the CJ, YJ, and TJ Owner's Manuals and Supplements as directed by Decal 89550955.

21. • The revision(s) made to Decal 8955009555.

22. • The reason(s) for the revisions to Decal 8955009555.

23. • The person(s) approving all versions Decal 8955009555.

24. • The engineer(s), designer(s), attorney(s), and/or other individuals participating in the creation and/or revisions to Decal 8955009555.

3. **Changes to Owner's Manual Language**

25. • The reason(s) behind the changes in language of all CJ, YJ, and TJ Owner's Manuals.

26. • The reason the statement on page one of the 1989 YJ Owner's Manual, "Even though your Jeep vehicle has a roll bar and side bars for some extra protection, it is a truly open vehicle-there is no steel structural integrated top and it has low sides and a folding windshield" is different than similar language in all preceding YJ and TJ Owner's Manuals.

27. • The difference between an "open vehicle," an "open-bodied utility vehicle", and a "convertible."

28. • The definitions of, and differences between a "Full Roll Cage," "All-Steel, Body-on-Frame Construction," "Integrated Safety Cage," "hardtop roof system with Integral roll cage," and "Functional Cage."

3

29 • The definition and meanings of "roll bar," "sports bar" and "side bar."

30 • The reason(s) the term "sports bar" and "side bar" were selected.

31 • The difference between the "roll bar," "rollbar," "sports bar" and "side bar" as they relate to Jeep Wrangler CJ, YJ and TJs.

32 • The reason(s) the words "these structural elements" located on pages 23 and 26 of the 1989 YJ Owner's Manual were not words used in all preceding YJ and TJ Owner's Manuals.

33 • The definition of "structural elements."

34 • The reason(s) the words "roll bar" and "rollbar" are no longer used in a parts/service manuals.

35 • The reason(s) the term roll bar is no longer in parts/service manuals.

36 • Knowledge relating to customer perception of the roll bar, sports bar, side part, roll bar system or roll over safety of Jeep Wrangler CJ, YJ and TJs or any of their prototype of concept designs.

## 4. FMVSS 216

37 • Defendant's (American Motors, Chrysler, DaimlerChrysler) roll cage, rollover protection, roof structure, A-Pillar, B-Pillar and C-Pillar standards and/or safety programs or initiatives.

38 • Defendant's (American Motors, Chrysler, DaimlerChrysler) perception, analyses or opinion relating to the level of occupant protection provided by the NHSB static test of roof strength that was proposed prior to 1973.

39 • Defendant's (American Motors, Chrysler, DaimlerChrysler) comments relating to the NHSB's 1971 proposal to protect occupants from roof crush by initiating a static test of roof crush strength.

4

STANGER & ARNOLD, LLP
29 South Main Street · Suite 325 · West Hartford, CT 06107 · 860.561.0650 · Facsimile: 860.561.0646
Juris No. 419042

40. The differences between the NHSB's proposed static test of roof strength made prior to 1973 and either the static test of roof crush proposed by General Motors prior to 1973 or FMVSS 216.

41. Whether Defendant (American Motors, Chrysler, DaimlerChrysler) is aware that FMVSS 216 was originally enacted as a temporary standard and when it became aware of that fact.

42. Whether Defendant (American Motors, Chrysler, DaimlerChrysler) is aware that FMVSS 216 is a minimum threshold for roof strength.

43. Defendant's (American Motors, Chrysler, DaimlerChrysler) analyses and understanding of why FMVSS 216 was initially a temporary standard.

44. Defendant's (American Motors, Chrysler, DaimlerChrysler) analyses and understanding of why FMVSS 216 is a minimum threshold for roof strength.

45. Defendant's reason(s) for supporting or opposing a change in FMVSS 216's status from temporary to permanent.

46. Whether NHSB's proposed static test of roof strength made prior to 1973 would provide better protection for occupants than either the General Motors static test of roof crush proposed prior to 1973 or FMVSS 216.

47. Whether NHSB's proposed static test of roof strength prior to 1973 would exceed the maximum N (force) as limited by the General Motors static test of roof crush proposed prior to 1973 or FMVSS 216.

48. Whether Defendant's (American Motors, Chrysler, DaimlerChrysler) employees ever indicated that vehicles should be built with roof structural strength beyond FMVSS 216 minimum requirements, and Defendant's understanding of the basis therefor.

5

STANGER & ARNOLD, LLP
29 South Main Street · Suite 325 · West Hartford, CT 06107 · 860.561.0650 · Facsimile: 860.561.0646
Juris No. 419042

49 • Whether any vehicles designed by Defendant (American Motors, Chrysler, Daimler Chrysler), concept or production models, are created with the intent to meet roof strength criteria in excess of what FMVSS 216 recommends.

50 • The roof strength of the Dakar, Icon, Mountain Biker, and Ultimate Rescue when tested by FMVSS 216 or 3-D loading.

51 • When Defendant (American Motors, Chrysler, DaimlerChrysler) first designed, learned of, drafted, or incorporated into in any way the structural roof/roll cage elements used in the Dakar, Icon, Mountain Biker, and Ultimate Rescue.

52 • Whether any individuals from Defendant's minivan safety leadership team ever indicated that Defendant's minivan's roof should provide strength in excess of what FMVSS 216 requires, and Defendant's (American Motors, Chrysler, DaimlerChrysler) understanding of the reason(s) therefor.

### 5. <u>True Hard Tops vs. Pillared Hard Tops</u>

53 • The definition of a "true hard top" used in vehicles prior to 1976.

54 • The definition of a "pillared hard top" designed in vehicles after 1977.

55 • When the Defendant (American Motors, Chrysler, DaimlerChrysler) started designing vehicles with pillared hard tops.

56 • The reason(s) Defendant (American Motors, Chrysler, DaimlerChrysler) designs vehicles with pillared hard tops, and why they were designed only at that time.

57 • Whether the top on the CJ, YJ and TJ is more analogous to a pillared hard top or true hard top.

### 6. <u>FMVSS 216 as applied to the CJ, YJ and TJ</u>

58 • Whether Defendant (American Motors, Chrysler, DaimlerChrysler) understands that the greater the amount of roof intrusion into the cabin of a belted occupant during a rollover causes a greater risk to the occupant of injury during a rollover

6

STANGER & ARNOLD, LLP
29 South Main Street · Suite 325 · West Hartford, CT 06107 · 860.561.0650 · Facsimile: 860.561.0646
Juris No. 419042

accident, and to what degree the roof must intrude into the occupant cabin before it begins to pose that significant risk of injury.

59 • The reason(s) the CJ, YJ and TJ sports bars were subject to 3-D Loading such as the one conducted on the YJ Sport Bar on February 20, 1990.

60 • What vehicles, other than the CJ, YJ and TJs, are subject to 3-D loading.

61 • Defendant's (American Motors, Chrysler, DaimlerChrysler) comments to NHTSA NPRM published on February 27, 1997.

62 • Defendant's (American Motors, Chrysler, DaimlerChrysler) analyses as to the pros and cons of the use of a small test plate vs. a large test plate to conduct FMVSS 216.

63 • The result that the use of a test plate less that 30 inches long, instead of 1829 mm, would have on the CJ, YJ and TJ's ability to pass FMVSS 216, if the initial impact point remains the same, over the A-Pillar.

64 • Defendant's (American Motors, Chrysler, DaimlerChrysler) understanding of why FMVSS 216 requires the test device to be at a forward angle of five degrees.

65 • Whether Defendant (American Motors, Chrysler, DaimlerChrysler) understands the purpose underlying the five degree forward angle of the test device in FMVSS 216 is to test the strength of the roof over the front seat occupant.

66 • The center of gravity of a CJ, YJ and TJ.

67 • Whether Defendant (American Motors, Chrysler, DaimlerChrysler) understands that FMVSS 216 creates the five degree forward of angle of the test device because that causes the test plate to initiate contact with the A-Pillar area of the roof thereby simulating ground contact in rollover crashes.

7

68 • Defendant's (American Motors, Chrysler, DaimlerChrysler) understanding of whether a focal point of FMVSS 216 test of roof strength is the A-Pillar or the B-Pillar.

69 • The plastic hinge moments of the CJ, YJ and TJs windshield (A-Pillar) and sport bar (B-Pillar).

70 • How much force is transferred from the windshield to the sport bar through the YJ or TJ side bars during an FMVSS 216 test.

71 • The reason(s) for the side bars on the YJ and TJs.

72 • Whether Defendant (American Motors, Chrysler, DaimlerChrysler) understands that the purpose of FMVSS 216 is not solely to test the ability of the B-Pillar's roof strength, but also the A-Pillar's roof strength.

73 • The respective amount of force or resistance the CJ, YJ and TJ windshield and the Sport Bar absorb or provide during an FMVSS 216 test.

74 • For how long Defendant (American Motors, Chrysler, DaimlerChrysler) has understood, if at all, when a flat plate is pushing down onto two columns of equal height, each column will resist the force being propounded upon it by the plate according to its individual ability to do so, and that if the total resistance of the two columns is greater than the plate's downward force, the plate will no longer be able to travel downward, regardless if one column is resisting ninety percent of the force and the other ten. Additionally, whether Defendant (American Motors, Chrysler, DaimlerChrysler) used this understanding to circumvent the purpose of FMVSS 216 testing of CJ, YJ or TJs.

75 • FMVSS 216 test nos. 21694287 and 21695298.

8

STANGER & ARNOLD, LLP
29 South Main Street · Suite 325 · West Hartford, CT 06107 · 860.561.0650 · Facsimile: 860.561.0646
Juris No. 419042