JAMES THORNTON: 11-4-99

1          looked at the date on that.

2    Q     In early 1974, you chose to test the roll bar

3          configuration in accordance with 216, as I understood;

4          is that correct?

5    A     Yes.

6    Q     When you were testing the roll bar structure itself,

7          where would you apply the platen, I think it's called?

8    A     Well, the -- it was according to the 216 test, and the

9          frame, the body, and the roll bar was put in the system

10         and then the platen would come down on the roll bar and

11         then apply enough force to crush whatever roll bar was

12         there.

13   Q     So it would actually contact the roll bar and test the

14         strength and resistance to deformation of the roll bar?

15   A     And the entire structure of the vehicle.

16   Q     Where the roll bar attaches into the vehicle?

17   A     Yes.

18   Q     As well as the windshield?

19   A     Well, it did not attach to the windshield.

20   Q     At that point, I understand.

21   A     Right.

22   Q     But would the platen impact the windshield, as well, if

23         there was one on the vehicle?

24   A     Yes, it probably would have.  The way we ran the test,

25         there was no windshield there, I don't believe, on any

JAMES THORNTON: 11-4-99

1    of the tests.

2  Q    You were checking the strength of the roll bar itself,

3        various configurations?

4  A    Well, the roll bar and the entire structure, yes.

5  Q    And who was responsible for choosing that method of

6        testing back in early 1974?

7  A    Well, I think Frenchie Lavoie, who was chief engineer

8        of body design, discussed with people at American

9        Motors that test, and he came back to Jeep and

10       recommended that we use that test, and it was general

11       agreement, fine, let's use that.  It proved to be

12       repeatable on passenger cars, and when we fully

13       understood the test, we said, yes, that should be just

14       the thing we need to be as a tool for developing the

15       roll bar structure.

16 Q    And you've mentioned repeatable.  Why is that

17       important?

18 A    Well, if you're trying to improve something and your

19       method of testing is not very precise, then you can't

20       tell whether the change that you made was -- produced a

21       change in performance or merely the inaccuracies of the

22       test.

23 Q    And in order to evaluate various roll bar

24       configurations, do you feel it was necessary to test

25       them in the same repeatable test mode so that you could

1           people involved.

2    Q      Would he be a person with knowledge of who was involved

3           in building which portions of the prototype?

4    A      He may be, but I'm not sure what he knows.

5    Q      If you were going to try to find out who was involved

6           in building the prototype for the TJ, specifically the

7           roll bar structure and the covering of the roll bar,

8           how would you go about doing that?

9    A      I don't think that's a good question, who was involved

10          in the building of the prototype.  Do you mean

11          design --

12   Q      Design.

13   A      -- developing it?

14   Q      Design and developing?

15   A      Actually building the pieces, actually bending the

16          tubes and welding them together?

17   Q      Let's go through that.  Design and development of the

18          roll bar structure and the covering, how would you go

19          about finding out who was involved in that process?

20   A      I would ask.

21   Q      And who would you ask?

22   A      I would go to the body group.

23   Q      And who in the body group would you think would have

24          that kind of information?

25   A      The guys that are responsible for building roll bars,

1        designing roll bars.

2    Q    And do they have names?

3    A    I'm sure they do.

4    Q    Do you know them?

5    A    I've talked to one person that was involved in the

6        design.

7    Q    And who was that?

8    A    It was a fella by the name of Peter Chapman.

9    Q    When did you talk to Mr. Chapman?

10    A    Oh, probably a month ago.

11    Q    What was the purpose of having a conversation with

12        Mr. Chapman?

13    A    Finding information out about the design and

14        development of the Wrangler roll bar.

15    Q    And is that in connection with the Rogers case?

16    A    It wasn't so much in connection with the Rogers case,

17        but in the other case I was dealing with three, four

18        weeks ago.

19    Q    Where did you talk to Mr. Chapman?

20    A    I talked to him on the phone.

21    Q    How long did you talk to him?

22    A    Probably talked to him several times.  I don't know the

23        length -- I don't remember the length of the

24        conversations.

25    Q    And did he seem pretty knowledgeable with regard to

1 what went on in the design and development of the '97

2 TJ roll bar?

3 A Yes.

4 Q Do you recall what he told you about that process?

5 A You can ask me questions about it.  I don't think I

6 could expound on it.

7 Q Well, is your knowledge concerning what went on in the

8 design and development of the '97 roll bar based on

9 what you found out in your discussions with

10 Mr. Chapman?

11 A In part.

12 Q And what other information have you had that would give

13 you information concerning the design of the TJ roll

14 bar?

15 A Investigated on my own, obtained roof crush tests --

16 roof crush test reports.  I reviewed the engineering

17 drawings for the 1997 Wrangler roll bar.

18 Q Any other information that you've gotten in your

19 investigation in the design and development of the '97

20 roll bar?

21 A I've examined the vehicle.

22 Q Which vehicle have you examined?

23 A A TJ Wrangler body with a roll bar attached to it.

24 Q '97?

25 A I'm not sure what years they were.  I've looked at

1982 CJ-7 Roof Crush Resistance Test (2lb) (2 B3-81-028-SL)

(a.k.a. SLT 13-283 - 13-287)

GILLESPIE (James W.);
Supplemental INT/RFP-1
RFP #19

CHR 0128

◢▌ **American Motors Corporation**

Requested By __M. Currin__

Date Requested __February 19, 1981__

Date Started __February 17, 1981__

Date Completed __February 20, 1981__

Tested By __R. Jubenville__

**Safety Laboratory**
**FMVSS 216**
**Roof Crush Resistance**

Report No. __2B3-81-028-SL__

Page No. __1__ of __2__

Report Date __March 6, 1981__

Reported By __R. Jubenville__

Approved By _____

Subject __8200 ROOF CRUSH DEVELOPMENT – 1982 CJ-7 ROLL BAR TO WINDSHIELD STRUCTURAL__
__DEVELOPMENT – FMVSS 216.__

Reference __FMVSS 216.__

**OBJECTIVE:**

To determine the load required to statically crush the 1982 Jeep CJ-7 windshield frame with the body mounted at a 14° pitch and 25° roll attitude. Also, to evaluate a brace that attachs the roll bar to the windshield frame which is intended to improve roll-over protection.

**DATA:**

| SLT NO. | TEST SPECIMEN | PEAK LOAD | DISPLACEMENT | SIDE TESTED | BODY NUMBER |
|---------|---------------|-----------|--------------|-------------|-------------|
| 13.283 | 1982 CJ-7 | 1110 Lbs. | 5" | Left | 8287T158 |
| 13.284 | 1982 CJ-7 | 2600 Lbs. | 2.95" | Left | 8287T158 |
| 13.285 | 1982 CJ-7 | 4200 Lbs. | 2.6" | Left | 8287T159 |
| 13.286 | 1982 CJ-7 | 1975 Lbs. | 2.4" | Left | 8287T159 |
| 13.287 | 1982 CJ-7 | 2500 Lbs. | 1.8" | Left | 8287T160 |

**COMMENTS:**

Descriptions of test bodies are as follows:

13.283 – windshield only without glass.
13.284 – windshield without glass, doors with glass up.
13.285 – windshield without glass, doors without glass, hardtop.
13.286 – windshield without glass, doors without glass.
13.287 – windshield without glass, additional braces from roll bar to windshield frame.

CHR 0129

AM 3603 Rev. 9/80

2B3-81-028-SL
Page 2 of 2
March 6, 1981

**American Motors Corporation**

REPORT NO. _2B3-81-028-SL_

FILE CODE NO. _____

TEST REQUEST NO. _____

CC: _____

## TEST REQUEST
## (MECHANICAL & VEHICLE SAFETY)

_Fred Peters - Safety Lab AMTEX_    DATE: _2-18-81_

SUBJECT: _CJ7 Roof crush windshield_

CLASSIFICATION:
☐ CERTIFICATION
☐ PRE-CERTIFICATION
☑ PRODUCT DEVELOPMENT
☐ PRODUCT IMPROVEMENT
☐ COST REDUCTION
☐ TEST #
☐

REFERENCE: _Jeep Corp_

PRODUCT ACTIVITY CODE: _2B/440_

VSS NO. _2/6 as modified_    AM

CAR MODEL & MODEL YEAR: _CJ7-8200_

OBJECTIVE: _To develope a brace from the roll bar to the_
_windshield frame which will provide added roll-over_
_protection._

PURPOSE: _1. Baseline tests - CJ7 windshield/cowley_    CHR 0130
_- CJ7 windshield w/ handles doors only_
_- CJ7 windshield w/ handles and doors._
_(no glass in windshield)_

TEST DESCRIPTION: _2. Improved system - CJ7 w/ braces from roll bar to_
_windshield (one brace on each side)_

PARTS & QUANTITY: _1 CJ7 remotd on frame w/ braces from roll bar to windshield_
_frame, extra hardtop, extra doors._

REQUIRED BY:    PARTS DELIVERY DATE: _ASAP_

REQUIRED COMPLETION DATE: _ASAP_

SAMPLE: _Roll vehicle 25° Pitch vehicle such that when platen_
_inches corner of windshield frame and I pull it is possible_
_to a line from front of hood to top of roll bar._

REQUESTED BY: _M. Currin_    APPROVED BY: _W.R. _____
                                              _2-18-8_

IART WH          MADE IN U.S.A.          42

APPLIED FORCE - LBS

FMVSS 216 ROOF CRUSH TEST

MODEL 2.2 C.J-7

S.I.T. NO. 13.2.86          DATE 2.20-81
TR NO. 213-81-028-SC     TECH. R___
B.I.W. 2287159          SIDE TESTED L.S.
PEAK LOAD 1978 LBS @ 2.9″
REMARKS: 25° Roll; 14° Pitch
Windshield w/o Glass
Doors w/o Glass

CHR 0131          3

INCORPORATED, HOUSTON, TEXAS, U.S.A.        CHART WH            MADE IN U.S.A.

APPLIED FORCE-LBS



FMVSS 216 ROOF CRUSH TEST

MODEL _22 CJ7_

SLT. NO. _13,287_    DATE _2-20-81._

TR NO. _2183-81-0-R-SL_ TECH. _____

B.I.W. _8377 /60_    SIDE TESTED _L.S._

PEAK LOAD _8500 LBS_

REMARKS: _25° ROLL; 14° PITCH._
_WINDSHIELD W/O GLASS,_
_ADDITIONAL BRACES FROM_
_ROLL BAR TO WINDSHIELD FRAME._

CHR 0132

4

CHART WH    MADE IN U.S.A.    41

APPLIED  FORCE -LBS

FMVSS 216 ROOF CRUSH TEST

MODEL  PP CJ7

SLT NO. 137,225    DATE 2-19-87

TR NO. 283-87-028-SL TECH. R——

B.I.W. 2827 LBS    SIDE TESTED  L.S.

PEAK LOAD  4800 LBS  @  2.6.4

REMARKS: 25° ROLL.  14° PITCH.

WINDSHIELD  W/O  GLASS.

DOORS  W/O  GLASS.

HARD TOP.

CHR 0133

42

TEXAS INSTRUMENTS INCORPORATED. HOUSTON, TEXAS. U.S.A.    CHART WH

APPLIED FORCE -LBS



FMVSS 216 ROOF CRUSH TEST
MODEL  88  CJ-7

SLT. NO.  13.8.84
TR NO.  83-87-0088-SC    TECH.  R---
B.I.W  27/5.8    SIDE TESTED  A.S.
PEAK LOAD  21600 LBS    DATE  2-19-87
REMARKS:  25° ROLL ; 14° PTCH.
WINDSHIELD  w/o GLASS
DOORS w/GLASS  UP.

CHR 0134

6

FMVSS 216 ROOF CRUSH TEST

NCORPORATED, HOUSTON, TEXAS, U.S.A.    CHART WH    MADE IN U.S.A.

APPLIED FORCE - LBS

ROOF DISTANCE MOVED - INCHES

MODEL 92 CJ7
SLT. NO. 13,283    DATE 2-18-81
TR. NO. 283-81-028-SL    TECH. ___
B.L.W. 2877 / 5/25    SIDE TESTED L.H.
PEAK LOAD 1110 LBS @ 5"
REMARKS: 25° Roll.
14° Pitch.
Windshield only w/o glass.

CHR 0135



CHR 0136

8

 

 



13.287

CHR 0137

9

 

 

CHR 0138

1C







CHR 0139




13.285

11








CHR 0140

12

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE JEEP WRANGLER CLASS ACTION

ANGELA PHELAN, ADMINISTRATRIX
OF THE ESTATE OF CHRISTOPHER
PHELAN, CLASS MEMBER, AND
INDIVIDUALLY

CIVIL NO. 3:02 CV 1219 (JBA)

      Plaintiffs

VS.

DAIMLERCHRYSLER CORPORATION

      Defendant

### DAIMLERCHRYSLER CORPORATION'S RESPONSES TO PLAINTIFF'S THIRD SET OF PRODUCT LIABILITY REQUESTS FOR PRODUCTION

DaimlerChrysler Corporation (formerly known as Chrysler Corporation) responds to Plaintiff's Third Set of Product Liability Requests for Production as follows:

### PRELIMINARY STATEMENT

DaimlerChrysler Corporation objects to Plaintiff's definitions to the extent they seek to impose obligations with respect to discovery beyond those required by the applicable statutes and rules of court, and to the extent they attempt to ascribe to certain words or phrases meanings other than their customary and ordinary meanings.

These responses are made solely for the purpose of this action. Each response is made subject to all objections as to competence, materiality, relevance, or other objection as to admissibility that may apply in the event that any such response, or the information

REQUEST NO. 123:  Make available for access, inquiry and inspection Defendant's and Defendant's attorney databases storing or indexing your documents, including the CAIR database, that contain references relating to Wrangler roll cages.

RESPONSE NO. 123:  DaimlerChrysler Corporation understands the term "roll cage" to be intended to refer to the roll bar structure of the Jeep Wrangler (YJ). DaimlerChrysler Corporation will search its Customer Assistance System for summarized records of customer communications, referred to as Customer Assistance Inquiry Records (CAIRs), that are reasonably related to allegations of defect in the roll bar assembly of a Jeep Wrangler (YJ) vehicle.  It should be noted that, due to record retention policies, DaimlerChrysler Corporation no longer has CAIRs prepared prior to January 1, 1990.  CAIRs stored in the Customer Assistance System are coded and categorized based upon the customer's stated reason for contacting the company, as understood by the individual receiving the contact, and may not necessarily reflect DaimlerChrysler Corporation's findings or conclusions about the subject matter being reported.  Moreover, the information contained in the Customer Assistance System may not be retrievable using the search criteria sought in this request.  Consequently, there may be CAIRs that cannot be readily identified and produced without individuals reviewing millions of records.  DaimlerChrysler Corporation, however, will make a reasonable and diligent effort to search for and produce, subject to the protective order entered in this action, those CAIRs dated prior to January 18, 2000 reasonably related to allegations of defect in the roll bar assembly of a Jeep Wrangler (YJ) vehicle.

56

DaimlerChrysler Corporation otherwise objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Motor vehicle accidents differ greatly as to facts, including road or terrain geometry and conditions, vehicle configurations, and driver condition, behavior, and control inputs. These various situations give rise to a corresponding variety of factual and legal issues, each of which is defined and limited by the facts of the specific case. Therefore, information as to incidents involving vehicles other than the 1994 Jeep Wrangler (YJ) and accidents other than that alleged in this case would neither provide nor lead to information as to the condition of the accident vehicle.

By producing CAIR information in discovery, DaimlerChrysler Corporation does not agree that the information disclosed or the alleged mechanisms of failure are substantially similar to the incident at issue in this case or that other similar vehicles are substantially similar to the accident vehicle for the purpose of this case. Thus, the information is not admissible at trial.

REQUEST NO. 124:  All DCCAC CAIR file records concerning or alluding to in any way the YJs roll cage during the years 1985 through 2000.

RESPONSE NO. 124:  The Jeep Wrangler (YJ) was produced from the 1987 through 1995 model years. DaimlerChrysler Corporation otherwise refers Plaintiff to its response and objections to Request No. 123.

REQUEST NO. 125:  All documents contained in databases linked to DCCAC CAIR that concern or allude to in any way the YJs roll cage during the years 1985 through 2000.

57