IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
                                            :

IN RE JEEP WRANGLER CLASS ACTION  :     3:02 CV 1219 (JBA)
                                            :

ANGELA PHELAN, ET AL.             :
                                            :

v.                                              :
                                            :

DAIMLERCHRYSLER CORPORATION    :     DATE: JANUARY 26 2004
                                            :
---------------------------------------------------------x

<u>RULING ON PENDING DISCOVERY MOTIONS</u>

The factual and procedural history behind this litigation is set forth in considerable detail in this Magistrate Judge's Ruling on Plaintiff's Motion to Compel, filed July 10, 2003 (Dkt. #66)["July 2003 Ruling"], this Magistrate Judge's Recommended Ruling on Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint, filed July 31, 2003 (Dkt. #70)["Recommended Ruling"], Judge Arterton's Order on Motion for Partial Dismissal of Plaintiff's Amended Complaint and Scheduling Order, filed September 26, 2003 (Dkt. #81)["September 2003 Order"], and this Magistrate Judge's Ruling on Defendant's Second Motion to Compel and on Plaintiff's Motion for Extension of Time to Complete Product Discovery, filed October 22, 2003 (Dkt. #84)["October 2003 Ruling"], familiarity with all of which is presumed.

Briefly, on July 16, 2002, plaintiff Angela Phelan, Administratrix of the estate of Christopher Phelan, individually and on behalf of the class of all Jeep Wrangler owners, filed this action regarding a two-vehicle accident on January 18, 2000, in which her decedent was killed while driving his 1994 Jeep Wrangler. (Dkt. #1). An Amended Complaint was filed on October 16, 2002 (Dkt. #18), which alleges violation of the Connecticut Unfair Trade Practices Act ["CUTPA"], CONN. GEN. STAT. § 42-110 <em>et seq.</em> (First Count) and the

Connecticut Product Liability Act, CONN. GEN. STAT. § 52-572m *et seq.* (Third Count), claiming that the roll bar structure on the Jeep was defective.[1]  The file has been referred to this Magistrate Judge for various pretrial purposes.  (See Dkts. ##46, 55 & 69).

Under the Scheduling Order, filed on May 9, 2003 (Dkt. #57), class discovery was to commence upon the filing of the ruling on defendant's then pending Motion to Dismiss and was to be completed within ninety days thereof, and all product liability discovery was to be completed by July 15, 2003.  (¶¶ 3 & 5).[2]  Thereafter, the deadlines were extended so that all product liability discovery was to be completed by August 15, 2003.  (See 6/23/03 endorsement on Dkt. #62).[3]  On July 31, 2003, this Magistrate Judge filed her Recommended Ruling, which was approved and adopted by Judge Arterton on September 26, 2003 in the September 2003 Order, with modifications directed to an issue not raised by the parties in their underlying briefs.  In the September 2003 Order, Judge Arterton directed the parties "to focus . . . on a critical issue of whether the alleged CUTPA violations regarding Phelan's 1994 Jeep Wrangler occurred prior to July 17, 1999.  If so, Phelan's individual claim under CUTPA is time barred and she cannot be a proper representative of a class of individuals whose claims against [defendant] arise from alleged CUTPA violations occurring on or after July 17, 1999."  (Id. at 1-2).  Thus, "[i]n order to first determine whether plaintiff's CUTPA claim is time-barred," Judge Arterton ordered that class discovery remains

---

[1]Plaintiff's original Amended Complaint was filed on October 4, 2002.  (Dkt. #16). The Second Count, which alleged that defendant's CUTPA violations resulted in the wrongful death of plaintiff's decedent, was dismissed by agreement in light of Gerrity v. R.J. Reynolds Tobacco Co., 263 Conn. 120 (2003).  (See Dkt. #57, at ¶ 2).

[2]Plaintiff's Motion for Class Certification was to be filed within twenty days following the close of class discovery and defendant's Motion for Summary Judgment (based on Daubert) was to be filed by August 15, 2003.  (Id. ¶¶ 4 & 6).

[3]The deadline for defendant's Motion for Summary Judgment also was postponed until September 15, 2003.  (Id.).  Such motion was filed that day.  (Dkts. ##77-80).

stayed, and the parties were directed to conduct and conclude discovery on plaintiff's individual CUTPA claim and on plaintiff's ability to serve as a putative class representative by January 16, 2004. (Id. at 4).[4]  The October 2003 Ruling further extended the deadline for the completion of product liability discovery until December 31, 2003. (At 4 & 9-11).

Four motions are presently pending before the Court.  First, consistent with the deadline set in the October 2003 Ruling (at 6-7 & 10), on November 14, 2003 plaintiff filed her Renewed Motion to Compel Defendant's Responses to Plaintiffs' First Set of Product Liability Interrogatories and Requests for Production, and brief in support. (Dkts. ##90-91).[5]  One week later, defendant filed its brief in opposition. (Dkt. #94).[6]  On December 23, 2003, plaintiff filed a supplemental brief.  (Dkt. #103).[7]

Second, on December 8, 2003, defendant filed a Motion for Protective Order, regarding nineteen of the twenty-two deposition notices served on it on November 24 and December 4, 2003. (Dkt. #97).[8]  Plaintiff was granted an extension until January 12, 2004 to file a brief in opposition, over defendant's objection. (1/7/04 endorsement on Dkt. #104).

––––––––––––––––––––––––––––

[4]In addition, defendant is to file a Motion for Summary Judgment on the issue of statute of limitations for Count One by February 16, 2004.  (Id. at 4-5).

[5]The following three exhibits were attached to plaintiff's brief: copy of the Curriculum Vitae of Mr. James D. Mundo, plaintiff's expert (Exh. 1); copy of deposition transcript of Peter Chapman, taken on October 30, 2000 in Gillespie v. DaimlerChrysler Corp., Case No. 76600-9 ["Chapman Depo."](Tenn. Circuit Ct.)(Exh. 2); and copy of excerpts from the deposition transcript of Leon Neal, also taken on October 30, 2000 in the Gillespie litigation (Exh. 3).

[6]The following two exhibits were attached: copy of affidavit of Leon W. Neal, dated June 4, 2003 ["June 2003 Neal Affidavit"](Exh. A); and copy of excerpts from Chapman Depo. (Exh. B).

[7]Attached was a copy of Mr. Mundo's expert report, with attachments.

[8]The following twenty-four exhibits were attached: copies of the twenty-two Notices of Deposition (Exhs. 1-22); another copy of the June 2003 Neal Affidavit (Exh. 23); and affidavit of Leon W. Neal, dated December 3, 2003 (Exh. 24).

No such brief was filed, although on January 15, 2004, plaintiff did file an Errata Sheet with multiple exhibits. (Dkt. #107).

Third, on December 9, 2003, defendant filed its Motion to Preclude or Limit Plaintiff's Expert Testimony for Failure to Comply with the Court's Scheduling Order and FED. R. CIV. P. 26(a)(2). (Dkt. #98).[9] Ten days later, plaintiff filed her brief in opposition. (Dkt. #100).

And last, on December 22, 2003, defendant filed its Motion to Preclude Evidence of Other Occurrences. (Dkts. ##101-02).[10] Plaintiff failed to file a timely brief in opposition, although on January 22, 2004, defendant filed a reply brief. (Dkt. #108).

For the reasons stated below, plaintiff's Renewed Motion to Compel Defendant's Responses to Plaintiffs' First Set of Product Liability Interrogatories and Requests for Production, and brief in support (Dkt. #90) is granted; defendant's Motion to Preclude or Limit Plaintiff's Expert Testimony for Failure to Comply with the Court's Scheduling Order and Fed. R. Civ. P. 26(a)(2) (Dkt. #98) is denied without prejudice to renew; and defendant's Motion for Protective Order (Dkt. #97) and defendant's Motion to Preclude Evidence of Other Occurrences (Dkt. #101) are granted absent objection.

---

[9]The following six exhibits were attached: copies of two court orders (Exhs. 1-2); copy of plaintiff's Disclosure of Expert Witness, dated January 31, 2003 (Exh. 3); copy of plaintiff's brief, filed November 14, 2003 (Exh. 4; see also Dkt. #91); and copies of correspondence between counsel, dated November 14 and December 5, 2003 (Exhs. 5-6).

[10]The following three exhibits were attached to defendant's brief: copy of plaintiff's Supplemental Answer to Defendant's Interrogatory No. 4, dated November 14, 2003 (Exh. 1); copy of this Magistrate Judge's October 2003 Ruling (Exh. 2); and copy of correspondence between counsel, dated December 5, 2003 (Exh. 3).

I.  DISCUSSION

A. PLAINTIFF'S RENEWED MOTION TO COMPEL DEFENDANT'S RESPONSES
    TO PLAINTIFFS' FIRST SET OF PRODUCT LIABILITY INTERROGATORIES AND
    REQUESTS FOR PRODUCTION (DKT. #90)

This motion has its genesis in this Magistrate Judge's July 2003 Ruling, which

concerned defendant's agreement to respond to plaintiff's discovery requests regarding the

Jeep Wrangler (YJ) for the model years 1987 through 1995 (plaintiff's decedent drove a

1994 Jeep Wrangler (YJ) and this model was discontinued in 1996), but refusal to respond

regarding defendant's Jeep Wrangler (TJ), first produced in the 1997 model year and still

produced today.  (July 2003 Ruling at 2-3).  The July 2003 Ruling relied heavily upon the

June 2003 Neal Affidavit, which described the structural differences between the two

models, in particular:

> (a) the main hoop and rear braces of the roll bar on the Jeep Wrangler (YJ)
> consisted of one piece, whereas the main hoop and rear braces of the roll
> bar on the Jeep Wrangler (TJ) consist of three slotted sections connected
> together during assembly; (b) the main hoop of the Jeep Wrangler (YJ) was
> attached to the floor pan of the vehicle, whereas the main hoop on the roll
> bar on the Jeep Wrangler (TJ) is attached to both the floor pan and the body
> side panel; (c) the attachment points for the rear braces of the roll bar on the
> Jeep Wrangler (TJ) are located further outboard on the vehicle body, closer
> to the body side panels than the attachment points of the rear braces of the
> roll bar on the Jeep Wrangler (YJ); and (d) the side bars, which attached the
> main hoop of the roll bar to the windshield, are attached to the roll bar on the
> Jeep Wrangler (YJ) by a "through bolt" that runs through the roll bar and into
> the side bars, whereas the side bars on the Jeep Wrangler (TJ) are attached
> to the roll bar by two bolts that attach to the front face of the roll bar.

(Id. at 3-4, 7)(citation omitted).  The July 2003 Ruling denied plaintiff's Motion to Compel,

"without prejudice to renew, with additional evidence, from an expert, that the differences

described by defendant are only 'relatively minor differences.'" (Id. at 7)(emphasis omitted).

This issue was revisited in the October 2003 Ruling which, inter alia, concerned

defendant's discovery request from plaintiff regarding similar incidents; consistent with the

July 2003 Ruling, plaintiff only responded with respect to the Jeep Wrangler (YJ) for the

model years 1987 through 1995, and further indicated that she would supplement her answer if defendant supplements its answer regarding the Jeep Wrangler (TJ).  (At 5-6).  The October 2003 Ruling observed that "[p]laintiff has not renewed her motion [to compel] in the three months since the July 2003 Ruling. . . . [U]nless and until plaintiff files a Motion to Renew her Motion to Compel, and unless and until such motion is granted by the Court, plaintiff has in her possession all the information she is going to obtain from defendant regarding similar occurrences."  (At 6-7).

        In her brief, plaintiff represented that she is "consulting with an expert, Mr. James M. Mundo of American Automotive Design, to confirm that there are only relatively minor differences between the roll cage systems of the Jeep Wrangler (YJ) and the Jeep Wrangler (TJ)" and that she "will supplement [her] Renewed Motion to Compel with Mr. Mundo's Affidavit upon its receipt."  (Dkt. #91, at 3, 4 & Exh. 1).    Plaintiff also cites from the deposition transcript of Peter Chapman, a release engineer for defendant, in which he testified that there were only minor differences between the roll cage systems of the Jeep Wrangler (YJ) and Jeep Wrangler (TJ).  (Id. at 4-6 & Exh. 2).    Plaintiff contends that because the design process to revise and improve the Jeep Wrangler (YJ) into the Jeep Wrangler (TJ) began in 1993, any documents developed during that year would shed light on defendant's knowledge concerning any design defects in the Jeep Wrangler (YJ).  (Id. at 6-7).

        In its brief in opposition, defendant contends that plaintiff violated the July 2003 Ruling, in that she did not have an expert's opinion in place by the November 14, 2003 deadline.  (Dkt. #94, at 2-3).    Defendant further argues that Peter Chapman, who had no involvement in the design of the Jeep Wrangler (YJ), was "mistaken in [his] testimony" that the changes between these two models were minor, and that later in his testimony

6

Chapman characterized a change in the roll bar as a "major change." (Id. at 3-5).  Thus, defendant contends that discovery regarding the Jeep Wrangler (YJ) is irrelevant.  (Id. at 5-7).

On December 23, 2003, plaintiff filed her supplemental brief (Dkt. #103), to which she attached Mundo's expert report, in which he opined:

> The design of the support bar for the Jeep Wrangler YJ and the Jeep Wrangler TJ are essentially the same in form.  They both fit within the same envelope inside of the vehicle occupant space and provide structural ties between the A to B to C pillars.  With the exception of the differences to the attachment points at the B pillar to the body and the joint between the B pillar loop to the C pillar, they are essentially the same.

(At 3).

The Magistrate Judge agrees with defendant that Chapman's deposition testimony is not helpful to plaintiff.  Early in the deposition, Chapman testified as follows:

> Q.  Do you know how the TJ model differs from the YJ model?
> A.   In design, yes.
> Q.  In particular with regard to the sport bar does the TJ model differ from the YJ model?
> A.  Yes, some <u>minor</u> changes.
> Q.  What are those changes?
> A.  The main hoop of the sport bar was formerly a two-piece, became a three-piece.  The styling attachment of the side bar was modified, and an additional attachment was made into the B-pillar.
> Q.  What about the windshield, did it change from the YJ to the TJ?
> A.  Only inasmuch as it was a new windshield.  The basic design concept stayed the same.
> Q.  Was the A-pillar changed in any way in the TJ versus the YJ?
> A.  Again, only inasmuch as it was a new windshield, so the basic panels were redesigned but in the same format.

(Chapman Depo. at 9-10)(emphasis added).  Shortly thereafter, Chapman testified that besides the attachment point on the B-pillar in the Jeep Wrangler TJ while there was no such attachment in the Jeep Wrangler YJ, an additional difference between the two models was that "[t]he attachments at the lower B-pillar . . . were turned through 90 degrees."  (Id. at 17).  He later explained regarding this difference:

I think on the original TJ design the lower attachments went into the floor and into the kick-up panel between the front and rear floor.

For the [YJ] I think we turned that around to the side and the attachment points still went through the floor, but the other attachment points went through the B-pillar, the lower B-pillar.

(Id. at 23-24). Later in the deposition, Chapman described the changes as "major":

Q. And how did you attempt to design the TJ sport bar to improve its performance in the overall body stiffness?

A. Major change was to make the additional attachment to the top of the B-pillar.

. . .

Q. Now how did your design improve the overall stiffness of the vehicle?

A. By adding an extra attachment point at the top of the B-pillar we were able to run tests, . . . but that was part of really what became of redesign of the vehicle.

Q. Was a standard given to you by the structures group to improve the overall stiffness of the vehicle?

A. A set of torsional and bending figures targets were set, yes.

Q. And they were higher than what existed with the YJ?

A. Yes, they were. . . . It was an improvement, slight improvement, in the numbers for both of those figures [torsional and bending].

(Id. at 37-41)(emphasis added).

As previously indicated, in his affidavit, Neal identified four structural differences between the two models: (1) the main hoop and rear braces of the roll bar on the Jeep Wrangler (YJ) consisted of one piece, whereas the main hoop and rear braces of the roll bar on the Jeep Wrangler (TJ) consist of three slotted sections connected together during assembly; (2) the main hoop of the Jeep Wrangler (YJ) was attached to the floor pan of the vehicle, whereas the main hoop on the roll bar on the Jeep Wrangler (TJ) is attached to both the floor pan and the body side panel; (3) the attachment points for the rear braces of the roll bar on the Jeep Wrangler (TJ) are located further outboard on the vehicle body, closer to the body side panels than the attachment points of the rear braces of the roll bar on the Jeep Wrangler (YJ); and (4) the side bars, which attached the main hoop of the roll bar to

8

the windshield, are attached to the roll bar on the Jeep Wrangler (YJ) by a "through bolt" that runs through the roll bar and into the side bars, whereas the side bars on the Jeep Wrangler (TJ) are attached to the roll bar by two bolts that attach to the front face of the roll bar.  (June 2003 Neal Affidavit).   Chapman's deposition testimony concentrated on the first two differences.

In his expert report (attached to Dkt. #103), Mundo opines that the form of the Jeep Wrangler (YJ) and Jeep Wrangler (TJ) are "substantially similar" in that both designs:

    a. fit within essentially the same envelope inside of the occupant
        compartment[;]
    b.  provide a similar structure irrespective of the number of components that
        comprise the assembly[;]
    c. provide a tie between the A to B to C pillars[;]
    d. provide a loop between the left and right B pillars[; and]
    e. attach to the vehicle by mechanical fasteners[.]

(At 1).  He characterized these as "minor differences in the designs," and added that "[w]hen properly designed and manufactured, there is no strength difference between a one piece and multiple piece design." (Id. at 1-2).  With respect to the support bar function, Mundo commented that "[m]ore information on the TJ design is necessary before the scope and magnitude of these differences can be evaluated."  (Id. at 3).  As previously indicated, Mundo opined that "the design of the support bar for the Jeep Wrangler YJ and the Jeep Wrangler TJ are essentially the same in form."  (Id.).

The July 2003 Ruling addressed in considerable detail the relevant case in product liability actions regarding when discovery will be permitted to defendant's models other than the one at issue in the litigation.  (At 4-7, citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 381 (8th Cir. 1992); State Farm Fire & Cas. Co. v. Black & Decker, Inc., 2003 WL 103016 (E.D. La. Jan. 9, 2003); Piacenti v. General Motors Corp., 173 F.R.D. 221, 221-22, 225 (N.D. Ill. 1997); Fine v. Facet Aerospace Prods. Co., 133 F.R.D. 439, 441-42 (S.D.N.Y. 1990);

9

Culligan v. Yamaha Motor Corp.,USA, 110 F.R.D. 122, 126 (S.D.N.Y. 1986)).  In State Farm, U.S. Magistrate Judge Roby summarized:

> At the discovery stage, . . . the plaintiff need not lay the same foundation concerning "substantial similarity" as would be necessary to support admission into evidence.  For discovery purposes, the Court need only find that the circumstances surrounding the other accidents are similar enough that discovery concerning those incidents is relevant to the circumstances of the instant case.

Id. at *4 (citation omitted).   Given Mundo's expert report, plaintiff has demonstrated, for discovery purposes only, that there is sufficient similarities between the Jeep Wrangler (YJ) and the Jeep Wrangler (TJ) for plaintiff to be entitled to discovery pertaining to the Jeep Wrangler (TJ), through model year 1999.

Accordingly, plaintiff's Renewed Motion to Compel Defendant's Responses to Plaintiffs' First Set of Product Liability Interrogatories and Requests for Production (Dkt. #90) is granted for the Jeep Wrangler (TJ) through model year 1999; defendant shall respond **on or before February 20, 2004**.

As previously indicated, the October 2003 Ruling ordered that all product liability discovery be completed by December 31, 2003, a deadline which obviously has lapsed. The Magistrate Judge shares the frustration of defense counsel that plaintiff's counsel invariably waits until the last moment to comply with court orders.  The October 2003 Ruling denied defendant's request for attorney's fees without prejudice to renew, if needed, after the completion of discovery. (At 7 n.12 & 9 n.13).  To the extent defendant's production triggers additional discovery expenses which could have been avoided had plaintiff's counsel retained Mundo at a significantly earlier time in this litigation, defendant may file a motion for attorney's fees and costs for its incremental expenses, after the long-awaited conclusion of discovery in this case.

10

        B. DEFENDANT'S MOTION TO PRECLUDE OR LIMIT PLAINTIFF'S EXPERT
        TESTIMONY FOR FAILURE TO COMPLY WITH THE COURT'S SCHEDULING
        ORDER AND FED. R. CIV. P. 26(a)(2) (Dkt. #98)

        On October 11, 2002, Judge Arterton originally ordered that plaintiff's expert reports

be served by November 1, 2002. (Dkt. #17, ¶ 1). On December 27, 2002, Judge Arterton

extended this deadline to February 1, 2003, over defendant's objection. (Dkt. #42, ¶ 1).

On February 1, 2003, plaintiff disclosed four experts. (Dkt. #98, at 2 & Exh. 3).[11]   In the

pending motion, defendant objects to plaintiff's recent designation of two additional experts,

James M. Mundo, regarding the differences between the roll cage systems of the Jeep

Wrangler (YJ) and Jeep Wrangler (TJ) (see Section I.A. supra) and Paul Sheridan. (Dkt.

#98, at 2 & Exhs. 4-5).   Defendant contends that plaintiff is in violation of FED. R. CIV. P.

26(a)(2)(A) & 26(a)(2)(B) in failing to disclose the expert information mandated by these two

provisions. (Dkt. #98, at 2-3). Thus, defendant argues that in accordance with FED. R. CIV.

P. 37(c)(1), these experts should be precluded from testifying at trial, because plaintiff

proceeded without substantial justification and such failure is not harmless to defendant.

(Id. at 3).

        In her brief in opposition, plaintiff asserts that as of the present time, Mundo has

been retained solely for discovery purposes. (Dkt. #100, at 1-2), The brief then added,

"However, Mr. Mundo and others may later be disclosed as experts to Plaintiffs' CUTPA

claims, once the Court may order CUTPA discovery to proceed." (Id. at 2).   Plaintiff further

asserts that Sheridan, a former employee of defendant whom plaintiff described as a

"whistleblower," is one of plaintiff's consultants and will be called as a fact witness. (Id. at

2-3).

_____

        [11]Defendant's brief contains a typographical error, in that it states February 1,
200**2**, instead of February 1, 200**3**.

As previously indicated, in the October 2003 Order, Judge Arterton directed the parties to conduct and conclude discovery on plaintiff's individual CUTPA claim and on plaintiff's ability to serve as a putative class representative by January 16, 2004, and defendant is to file a Motion for Summary Judgment on the issue of statute of limitations for Count One by February 16, 2004.  (At 4-5).  Thus, it appears, as of the present time, that Mundo is not an expert witness at trial on the product liability issues. To the extent plaintiff's CUTPA claim survives summary judgment, defendant can renew this motion if, in fact, plaintiff intends to call Mundo as an expert witness at trial on the CUTPA issues.  From plaintiff's brief discussion of Sheridan, it does not appear that he is going to be called as an expert witness, but merely as a fact witness.  If that situation changes, however, defendant can renew this motion.

Therefore, defendant's Motion to Preclude or Limit Plaintiff's Expert Testimony for Failure to Comply with the Court's Scheduling Order and Fed. R. Civ. P. 26(a)(2) (Dkt. #98) is denied with respect to Mundo's testimony regarding the Jeep Wrangler (TJ) and is denied without prejudice to renew regarding Mundo's testimony on CUTPA, and the motion is denied without prejudice to renew regarding Sheridan's testimony.

## II.  CONCLUSION

Accordingly, for the reasons stated above, plaintiff's Renewed Motion to Compel Defendant's Responses to Plaintiffs' First Set of Product Liability Interrogatories and Requests for Production, and brief in support (Dkt. #90) is granted for the Jeep Wrangler (TJ) through model year 1999, with defendant to respond **on or before February 20, 2004**; defendant's Motion to Preclude or Limit Plaintiff's Expert Testimony for Failure to Comply with the Court's Scheduling Order and Fed. R. Civ. P. 26(a)(2)  (Dkt. #98) is denied without prejudice to renew; and defendant's Motion for Protective Order (Dkt. #97) and defendant's

Motion to Preclude Evidence of Other Occurrences   (Dkt. #101) <u>are granted absent objection</u>.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**[12]

Dated at New Haven, Connecticut, this 26th day of January, 2004.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge

_____

[12]If either counsel believe a continued settlement conference before this Magistrate Judge would be productive, he is to contact Chambers accordingly.