UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratix of | ) | |
| the Estate of Christopher Phelan, | ) | |
| Class Member, and Individually | ) | |
| | ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DaimlerChrysler Corporation | ) | January 26, 2004 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S REPLY BRIEF TO
PLAINTIFFS' OPPOSITION TO DAIMLERCHRYSLER CORPORATION'S
MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION DISCOVERY**

Defendant, DaimlerChrysler Corporation, submits this reply to Plaintiffs' Opposition to

DaimlerChrysler Corporation's Motion for Protective Order related to twenty-two deposition

notices served by Plaintiffs.

**I.      INTRODUCTION**

After business hours on November 24, Plaintiffs served thirteen deposition notices,

followed by an additional nine notices served on December 4.  Plaintiffs claim that the

deposition notices were proper and timely.  This contention is belied by the facts.  The discovery

deadline in this case was December 31, 2003.  Plaintiffs scheduled twenty-two depositions for 15

of the last 18 business days in December.  These deposition notices included a Rule 30(b)(6)

notice that sought testimony on *110 topics*.  The claim that these notices were served "well

before" the discovery deadline is specious.

Plaintiffs fail to address many of the arguments made by DaimlerChrysler Corporation in its Motion.  Further, in an effort to excuse their own dilatory discovery practices, Plaintiffs make false claims of alleged discovery abuses on the part of DaimlerChrysler Corporation.  It is Plaintiffs who have abused the discovery process.  As described in DaimlerChrysler Corporation's Motion for Protective Order, Plaintiffs have repeatedly come up against deadlines set by court order and the Federal Rules of Civil Procedure, only to seek additional time.[1] Plaintiffs service of the twenty-two deposition notices as the discovery deadline approached is yet another example of their improper discovery tactics.

## II.     LEGAL ARGUMENT

### A.     Plaintiffs' Rule 30(b)(6) Deposition Notice Is Oppressive

Plaintiffs do not address DaimlerChrysler Corporation's claim that the Rule 30(b)(6) deposition notice is oppressive.  This notice is attached hereto as Exhibit 1.  The notice seeks deposition testimony about *110 topics*.  Further, many of the "topics" included many years' worth of information.  For example, Topic No. 108, which seeks testimony about "data, test requests, test report notebooks, test lab records, logs, journals, and/or documents produced, and whether videos or photographs are taken, during FMVSS 216 testing of Defendant's (American Motors, Chrysler, DaimlerChrysler) vehicles."  This topic alone seeks testimony concerning

---

[1] The most recent example of Plaintiffs' abuse of the rules relates to this Motion for Protective Order, which was filed on December 8.  Plaintiffs' response was due on December 29.  On that date, Plaintiffs filed a motion to extend the time within which to respond to the motion to January 12, 2004.  The court granted the motion.  Plaintiffs' counsel certified that a copy of the opposition was served "postage prepaid" on January 12.  However, defense counsel did not receive the opposition until Tuesday, January 20 because the package containing the opposition was returned to Plaintiffs' counsel for failure to pay proper postage.  Plaintiffs never advised DaimlerChrysler Corporation counsel of the returned packages, nor did they make any effort to serve the response by telecopy once it learned that service had not been effectuated.  This is yet another example of Plaintiffs' repeated efforts to extend or by-pass deadlines in this case.

testing of all vehicles produced by DaimlerChrysler Corporation and its predecessors over a 30-year period.  Further, this topic and most of the other topics contained in the Rule 30(b)(6) notice seek information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs did not address DaimlerChrysler Corporation's arguments concerning the Rule 30(b)(6) deposition notice because the notice is on its face burdensome and oppressive. DaimlerChrysler Corporation produced witnesses to testify about the pertinent topics in the notice, including the design and testing of the roll bar of the Jeep Wrangler (YJ), developmental testing related to the Jeep Wrangler (YJ) roll bar, the owner's manual related to the vehicle, and labels affixed to the vehicle.

DaimlerChrysler Corporation produced two witnesses, Leon Neal and Richard Friday, to testify about the design and testing of the Jeep Wrangler (YJ).  Leon Neal was involved in the initial design of the vehicle and testified at length about the design and testing of the vehicle, including developmental testing.  Richard Friday was involved in testing the roll bar structure of the vehicle in the late 1980s and early 1990s.  Plaintiffs' claim that these witnesses purposefully prevented them from obtaining discoverable information is without basis.  Further, the claim that the witnesses were questioned "precisely and persistently" misstates the record.  While the deponents were often asked the same questions over and over again because the Plaintiffs' counsel did not like their answers, the questioning was anything but "precise."[2]

---

[2] For example, Mr. Neal was asked:  "The vehicle was resting on level ground with proper air in all tires as it is intended by DaimlerChrysler to rest on level ground, if you took a level and placed it at the top of the main hoop of the roll bar to ascertain zero degrees in both directions, if you were to draw a line at five degrees from the top of the main hoop of the roll bar towards the windshield, how many inches below the top of the windshield would that line be when it crosses it?"  Deposition of Leon Neal, Exhibit 2, pp  117-118.

The dozens of other topics contained in the Rule 30(b)(6) deposition notice are beyond oppressive.  As such, the Court should enter a protective order related to that notice pursuant to Rule 26(c), which allows the issuance of any order to protect a party from "oppression, or undue burden or expense."

**B.    DaimlerChrysler Corporation Complied With Discovery Requests.**

**1.    Discovery Responses Were Timely and Thorough.**

Plaintiffs attempt to deflect attention from their own dilatory practices by trumping up false claims that DaimlerChrysler Corporation engaged in "intentional and willful discovery non-compliance."  Plaintiffs' Brief, p. 6.  This is a strategy Plaintiffs have used before, most recently in their Motion for Extension of Time to Complete Product Discovery, where they claimed that DaimlerChrysler Corporation's "bad faith discovery practices" necessitated additional time to complete discovery.[3]  As in that motion, Plaintiffs here make false allegations of discovery abuses in order to place the blame on DaimlerChrysler Corporation for their own failure to engage in reasonable discovery.

The complaint instituting this action was served in January 2001 and, *two years later*, the initial discovery was served in this action.  DaimlerChrysler Corporation served timely responses and produced documents in early 2003.  On May 13, 2003, months after the initial discovery responses and documents were served, Plaintiffs' counsel sent a letter seeking more specific responses to the discovery.  Four business days later, before DaimlerChrysler Corporation counsel could respond to the request for more specific responses, a Motion to Compel was filed.  Plaintiffs' claim that they "were forced" to file a Motion to Compel is disingenuous in that no

---

[3] .  Since Plaintiffs incorporate by reference their Motion for Extension of Time to Complete Product Discovery, DaimlerChrysler Corporation incorporates by reference its opposition to that motion dated August 26, 2003, which is attached as Exhibit 3.

real effort was made to resolve issues in dispute prior to the filing of the motion. In fact, most of the issues raised in the motion were shortly thereafter resolved and the motion was withdrawn as to those issues. By order of July 10, 2003, the motion was denied as to the remaining matters in issue.

Plaintiffs falsely claim that DaimlerChrysler Corporation "delayed months" before providing Plaintiffs with documents it agreed to provide in its supplemental responses to discovery. Plaintiffs' Brief, p. 7. The supplemental discovery responses were served on June 6, 2003 and all documents DaimlerChrysler Corporation agreed to provide were produced by July 22, 2003.

## 2. **Waitt v. DaimlerChrysler Corporation**

Plaintiffs rely on issues related to Waitt v. DaimlerChrysler Corporation to oppose the Motion for Protective Order. That case also involved a Jeep Wrangler (YJ), though it did not involve allegations of defect in the roll bar. Plaintiffs claim that it was justified in the delay in serving deposition notices because they were not able to obtain information from the Waitt counsel in a timely manner. In DaimlerChrysler Corporation's supplemental response to Request No. 10 in this case, it agreed to review its product liability records and provide, subject to protective order, a list of personal injury lawsuits served in which it was alleged that a 1987 through 1995 Jeep Wrangler (YJ) overturned or in which a defect was alleged in the roll bar structure. On or about July 1, 2003, the expanded lawsuit list was served. By August 15, 2003, Plaintiffs' counsel had been in touch with the Waitt counsel and had obtained documents from counsel that were attached to their August 15, 2003 Motion to Extend Time to Complete Product Discovery. It is absurd for Plaintiffs to claim that they needed twenty-two depositions during the last three weeks in December because of alleged delays related to their ability to confer with and

obtain documents from counsel in the <u>Waitt</u> case.  Plaintiffs had information from that case in mid-August and could have begun scheduling depositions at that time.

Plaintiffs nonsensically point to discovery responses in <u>Waitt</u> as another reason for their dilatory behavior in this case.  Again, Plaintiffs misrepresent the record, stating that DaimlerChrysler Corporation "initially" objected to discovery requests in <u>Waitt</u> related to the development of the Jeep Wrangler (YJ), but then produced documents once Plaintiffs "exposed" their existence.  Plaintiffs' Brief, p. 9.  In fact, as is evident from the <u>Waitt</u> discovery responses attached to Plaintiffs' Brief as Exhibit 4, DaimlerChrysler Corporation's *initial responses* were complete and accurate and referenced the development of the Jeep Wrangler (YJ).  Those responses are also attached hereto as Exhibit 4.  See pp. 3-6 of that exhibit, where the <u>Waitt</u> Plaintiff requested documents that referred to "CJ Freshen or Refreshen Program" (Request No. 23) and "CJ-R" (Request No. 34) and DaimlerChrysler Corporation's initial responses agreed to provide all documents that refer on their face to the terms "CJ Freshen," "CJ Refreshen,"  or "CJ-R."  No discovery abuses occurred in <u>Waitt</u>.  Plaintiffs should not be permitted to rely on false allegations to the contrary in opposing DaimlerChrysler Corporation's Motion for Protective Order.

### 3.     <u>McNulty v. Chrysler Corporation</u>

Plaintiffs falsely claim that DaimlerChrysler Corporation withheld documents in a case entitled <u>McNulty v. Chrysler Corporation</u>, citing a colloquy between counsel during a deposition as support for the allegation.  Plaintiffs' Brief, p. 9, citing Exhibit 8, pp. 152-159.  DaimlerChrysler Corporation did not act improperly in <u>McNulty</u> and that case provides no basis for denying DaimlerChrysler Corporation's Motion for Protective Order.

**4.      Dize v. DaimlerChrysler Corporation**

Plaintiffs claim "the greatest example" of alleged discovery abuses occurred in Dize v.

DaimlerChrysler Corporation, where a court order was entered striking DaimlerChrysler

Corporation's answer.  Plaintiffs' Brief, p. 9.  The strategy in Dize, as it is here, was to use

discovery disputes to malign DaimlerChrysler Corporation rather than to obtain the information

needed to try the case.  Following the entry of the order in Dize, DaimlerChrysler Corporation

immediately filed a Motion for Reconsideration of the order.  The Court should understand that

the sanction order striking DaimlerChrysler Corporation's answer in Dize, which was

self-serving and skillfully drafted by Plaintiffs, was vacated by agreement before

DaimlerChrysler Corporation's Motion for Reconsideration could be heard.

**C.      Deposition Testimony Related to Other Vehicles.**

**1.      The Jeep CJ**

As noted in DaimlerChrysler Corporation's Motion to Compel, the Jeep Wrangler (YJ)

was an all-new vehicle that was produced subsequent to the discontinuation of the Jeep CJ-5

(produced from 1955 through 1983) and the Jeep CJ-7 (produced from 1976 through 1986).

Plaintiffs seek testimony about 29 model years of Jeep CJ-5 vehicles and 11 model years of Jeep

CJ-7 vehicles.  With respect to all model years, testimony is sought about owner's manuals,

glove box materials, warning labels, roll bar design and testing, hard top design and testing,

center-of-gravity height, advertising, windshield design, market share, and market studies.

Exhibit 1, Topic Nos. 1, 2, 3, 4, 5, 6, 7, 20, 25, 31, 36, 57, 59, 60, 63, 66, 69, 73, 74, 78, 82, 83,

84, 85, 86, 89, 90, 96, 97, 100, 101, 102, 103, and 104.

Plaintiffs' argument concerning why they should be allowed to obtain testimony about

the Jeep CJ is unintelligible.  Plaintiffs misquote and erroneously interpret single sentences or

parts of sentences from various deposition transcripts of DaimlerChrysler Corporation company witnesses. DaimlerChrysler Corporation has attached as Exhibit 5 a table demonstrating that company witness testimony was erroneously cited or interpreted by Plaintiffs.

Plaintiffs' brief as related to the Jeep CJ is poorly written and extremely difficult to decipher. Plaintiffs appear to be trying to argue that the design of the Jeep Wrangler (YJ) roll bar was an attempt to improve upon the design of the Jeep CJ roll bar. Plaintiffs seem to imply that an attempt to improve the roll bar design was somehow improper. In any event, the testimony sought by Plaintiffs concerning some 34 topics related to the Jeep CJ is oppressive and will not elicit information either relevant or reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Plaintiffs should not be permitted to depose DaimlerChrysler Corporation employees or former employees about the Jeep CJ.

### 2. Jeep Wrangler (TJ)

Twenty-six of the topics contained in the Rule 30(b)(6) deposition notice seek information about the Jeep Wrangler (TJ), an all-new vehicle first produced in 1997. Exhibit 1, Topic Nos. 1, 2, 3, 4, 5, 6, 7, 20, 25, 26, 31, 32, 36, 57, 59, 60, 63, 66, 69, 70, 71, 73, 74, 75, 95, and 107. In addition, Plaintiffs seek deposition testimony about the Jeep Wrangler (TJ) from Adrian Van Campenhout, a DaimlerChrysler Corporation engineer. As noted in DaimlerChrysler Corporation's Motion for Protective Order, there is a standing order in response to Plaintiffs' Motion to Compel that disallows written discovery related to the Jeep Wrangler (TJ). Plaintiffs were entitled to file a Renewed Motion to Compel, supported by an expert affidavit, by November 14, 2003. True to form, a Motion to Renew the Motion to Compel was filed on that date, but without the required expert affidavit. Plaintiffs belatedly submitted their expert affidavit on December 23.

It is telling that, in the face of a court order disallowing written discovery on the Jeep Wrangler (TJ), Plaintiffs served a Rule 30(b)(6) deposition notice seeking testimony on 26 topics related to the Jeep Wrangler (TJ).  Plaintiffs claim that, because of the order, they never "expected" or "attempted to press for" DaimlerChrysler Corporation's deposition discovery cooperation with respect to the Jeep Wrangler (TJ).  Plaintiffs' Brief, p. 3.  There is a standing order denying Plaintiffs' Motion to Compel production of documents related to the Jeep Wrangler (TJ).  As such, DaimlerChrysler Corporation should not be forced to produce witnesses in response to the Rule 30(b)(6) deposition notice as it relates to the Jeep Wrangler (TJ), nor should it be compelled to produce Adrian Van Campenhout as a deposition witness.

### D.    Mercedes-Benz Testing and Standards.

Plaintiffs served a Rule 30(b)(6) deposition notice seeking testimony about Mercedes-Benz "roll over testing" and "roof crush standards."  That deposition notice is attached as Exhibit 6. As explained in DaimlerChrysler Corporation's Motion for Protective Order, in 1998, long after the design, assembly, and sale of the 1994 Jeep Wrangler (YJ), a business combination occurred between Chrysler Corporation and Daimler-Benz AG at which time Chrysler Corporation changed its name to DaimlerChrysler Corporation and Daimler-Benz AG became DaimlerChrysler AG.

Plaintiffs' argument concerning testimony about Mercedes-Benz procedures is characteristically difficult to understand.  It is unclear whether they are arguing that DaimlerChrysler Corporation should be compelled to produce a representative of DaimlerChrysler AG to testify about Mercedes-Benz procedures.  If so, DaimlerChrysler Corporation notes that the deposition notice seeks Rule 30(b)(6) testimony from a representative of DaimlerChrysler Corporation.  DaimlerChrysler AG is a separate corporation that is not a

party to this action.  Accordingly, the deposition notice should be read to call for testimony from a DaimlerChrysler Corporation employee, not a DaimlerChrysler AG employee.

Plaintiffs' response to the Motion to Compel refers to the "documents requested by Plaintiffs."  Plaintiffs' Brief, p. 16.  However, no documents were requested in the Rule 30(b)(6) deposition notice related to Mercedes-Benz practices and, to the extent Plaintiffs' response relates to "documents," it is improper.

Finally, Plaintiffs "incorporate by reference" the "reasons and authorities" set forth in a brief filed by a different plaintiff in another lawsuit (Gillespie v. DaimlerChrysler Corporation) in connection with a Motion to Compel DaimlerChrysler Corporation to produce documents generated by DaimlerChrysler AG.  Plaintiffs' Brief, p. 16.  In view of this, DaimlerChrysler Corporation incorporates by reference the reasons and authorities contained in its brief in response to the Motion to Compel in Gillespie, which brief is attached as Exhibit 7 hereto.

DaimlerChrysler Corporation acknowledges that the Tennessee state court, in the face of contrary law, granted the Motion to Compel in Gillespie.  Plaintiffs attached the initial order to their opposition as Exhibit 16.  However, subsequent to the entry of the order, it was vacated by order dated March 12, 2001, a copy of which is attached as Exhibit 8.  Plaintiffs acted in bad faith in failing to advise this Court that the order from Gillespie was vacated.

### E.    FMVSS 216 Is an Adequate Test of Roof Strength.

Plaintiffs' Rule 30(b)(6) deposition notice containing the 110 topics identifies thirty-two topics, some of which date back to the early 1970s, related to the Federal Motor Vehicle Standard (FMVSS) 216 – Roof Crush Resistance.  See Exhibit 1, Topic Nos. 37 through 52, 58, 61-65, 67, 68, 70, 72, 73, 74, 75, 107, 108, and 109.  The Jeep Wrangler (YJ) was not subject to

FMVSS 216, which once again demonstrates the improper scope of the Rule 30(b)(6) deposition notice.

As with Plaintiffs' argument concerning Jeep CJ testimony, the brief as it relates to testimony about FMVSS 216 testing is beyond comprehension. Plaintiffs cite fragments of testimony of DaimlerChrysler Corporation employees in an attempt to support an argument that is very difficult to understand. Plaintiffs misquote and misinterprets much of the testimony.

For reasons not articulated, Plaintiffs rely on testing conducted in the 1960s and 1970s to support a claim that they are entitled testimony about FMVSS 216. Plaintiffs first refer to Test C-1109, which was conducted in 1967 on an experimental roll bar being considered for use with the Jeep CJ-5. DaimlerChrysler Corporation is unable to understand how that test relates to Plaintiffs' claim that DaimlerChrysler Corporation allegedly knew FMVSS 216 was an inadequate test. Once again, Plaintiffs' Brief is indecipherable, making it impossible for DaimlerChrysler Corporation to respond thereto.

Plaintiffs also appear to rely on Test C-3246, which was conducted in 1973 in response to Docket 73-10, "Proposed Standard on Rollover Resistance."[4] The test was conducted in an effort to develop a repeatable test procedure that would reliably evaluate a vehicle's resistance to rollover. A Jeep CJ-5 was subjected to a dolly rollover test using FMVSS 208 as a guideline. The purpose of the test was not to evaluate the roll bar structure, but rather to evaluate the repeatability of the rollover test. In that context, however, the test was examined as to whether it would be an appropriate method to test the roll bar structure. As explained in the testimony of James Thornton that is attached to Plaintiffs' Opposition to the Motion for Protective Order, it

---

[4] The proposed rulemaking was eventually withdrawn because of the difficulty of developing a repeatable test for a vehicle's resistance to rollover.

was determined that the dolly rollover test was not repeatable and, as such, would not provide meaningful information about the strength of the roll bar structure.  Plaintiffs' Brief, Exhibit 7 at p. 37.

Again, DaimlerChrysler Corporation is at a loss to determine what Plaintiffs are attempting to argue with respect to this experimental testing conducted on the Jeep CJ-5.  In any event, FMVSS 216 is a governmental standard that has been used for thirty years to evaluate roof strength.  It is an appropriate measure of roof strength and has been embraced by the federal government and automotive manufacturers.  Although the Jeep Wrangler (YJ) was not required to meet the standard, the roll bar was tested to the standard and passed it by a wide margin. DaimlerChrysler Corporation produced two witnesses in this case who testified about the testing. DaimlerChrysler Corporation should not be compelled to produce witnesses to further testify about FMVSS 216 because of Plaintiffs' poorly articulated and unsubstantiated claim that DaimlerChrysler Corporation allegedly believed FMVSS 216 to be an inadequate test of roof strength.

**F.    Document Retention Policy.**

Plaintiffs' Rule 30(b)(6) deposition notice includes six topics related to DaimlerChrysler Corporation's record retention policy.  Exhibit 1, Topic Nos. 105 through 110.  Plaintiffs claim they are entitled to DaimlerChrysler Corporation's document retention policy.  DaimlerChrysler Corporation produced its policies, pursuant to the protective order entered in this action, in response to Request for Production No. 154 (Set 3).  DaimlerChrysler Corporation has produced voluminous documentation in this action in response to 155 Requests for Production.  Plaintiffs imply that DaimlerChrysler Corporation improperly destroyed documents that may have relevance to this action, which DaimlerChrysler Corporation denies.  Plaintiffs' false implication

should not be grounds for allowing them to seek deposition testimony on record retention policies.

## III.    CONCLUSION

For the foregoing reasons, as well as those stated in its Motion for Protective Order, DaimlerChrysler Corporation respectfully submits that the Court enter a protective order striking the deposition notices attached as exhibits to the Motion for Protective Order.

Defendant,
DaimlerChrysler Corporation
By its attorneys,

_____
Daniel J. Krisch, Esq.
Horton, Shields & Cormier
90 Gillett Street
Hartford, Connecticut 06105
(860) 522-8338
(860) 728-0401 (fax)

<u>CERTIFICATE OF SERVICE</u>

  I, Daniel J. Krisch, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this _____ day of January, 2004, a true copy of the foregoing Defendant DaimlerChrysler Corporation's Reply Brief to Plaintiffs' Opposition to DaimlerChrysler Corporation's Motion for Protective Order Regarding Deposition Discovery, was served via first class mail, directed to:

| | |
|---|---|
| Steven E. Arnold, Esq. | Christopher Miller |
| Peter Van Dyke, Esq. | c/o Robinson Correctional Facility |
| James Halpin, Esq. | 285 Shaker Road |
| Stanger & Arnold, LLP | P.O. Box 1600 |
| 29 South Main Street, Suite 325 | Enfield, CT 06082 |
| West Hartford, Connecticut  06107 | |
| | |
| Attorney for Plaintiff | Third-Party Defendant |

and:

Terri S. Reiskin, Esq.
James A. Hourihan, Esq.
Hogan & Hartson, LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004

Peter M. Durney, Esq.
James P. Kerr, Esq.
CORNELL & GOLLUB
75 Federal Street
Boston, MA  02110

Lewis H. Goldfarb, Esq.
Hogan & Hartson, LLP
875 Third Avenue
New York, New York 10022

M. Sheila Jeffrey, Esq.
Miller, Canfield, Paddock & Stone, P.L.C.
Seventh Floor
101 North Main
Ann Arbor, MI 48104

Co-counsel for Defendant

         _____
         Daniel J. Krisch