UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE JEEP WRANGLER CLASS ACTION : | CIVIL NO. 3:02 CV 1219 (JBA) |
| ANGELA PHELAN, ADMINISTRATRIX OF : <br> THE ESTATE OF CHRISTOPHER PHELAN, : <br> CLASS MEMBER, AND INDIVIDUALLY : <br>     Plaintiffs | |
| VS. : | |
| DAIMLERCHRYSLER CORPORATION : <br>     Defendant | November 24, 2003 |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure, Plaintiffs will take the deposition of Defendant, **DaimlerChrysler Corporation**, for the purpose of discovery or as evidence in this action on **December 8, 2003 at 10:00 a. m.** before a notary public or some officer authorized to administer oaths at the offices of Miller, Canfield, Paddock & Stone, P.L.C., 840 West Long Lake Road, Suite 200, Troy, MI 48098. Such deposition will be recorded by stenographer and videotape.

The above-named Corporation, pursuant to Rule 30(b)(6), shall designate an individual or individuals with personal knowledge to appear and attend at the time and place specified for the purposes of testifying to the following areas of inquiry in accordance with the foregoing Topics of Notice to be questioned upon:

TOPICS OF NOTICE:

1. **Written Materials**
   - Jeep Wrangler CJ, YJ, and TJ Owner's Manuals.
   - Jeep Wrangler CJ, YJ and TJ glove box information.

1

3. • Jeep Wrangler CJ, YJ and TJ parts/service manuals.
4. • Jeep Wrangler CJ, YJ and TJ vehicle decal language, design history and modifications.
5. • All procedures, processes, protocols, guidelines and/or instructions relating to the creation and/or modification of the language contained in CJ, YJ and TJ Owner's manuals.
6. • All procedures, protocols, guidelines and/or instructions relating to the creation and/or modification of the language contained in CJ, YJ and TJ labels/decals.
7. • All procedures, protocols, guidelines and/or instructions relating to the creation and/or modification of the language contained in CJ, YJ and TJ glove box materials.

2. **Labels 8955013320 and 8955009555**
    8. • The reason(s) for Decal 8955013320, Label-Seat Belt Warning.
    9. • The reason(s) for the selection of the location of Decal 8955013320 within the vehicle.
    10. • The meaning of the language contained in all versions Decal 8955013320.
    11. • The revision(s) made to Decal 8955013320.
    12. • The reason(s) for the revision(s) to Decal 8955013320.
    13. • The person(s) approving all versions Decal 8955013320.
    14. • The engineer(s), designer(s), attorney(s), and/or other individuals participating in the creation and/or revision(s) to Decal 8955013320.
    15. • The reason(s) for Decal SF 8955009555, Label-Open-Body Utility Vehicle Drivers Warning.
    16. • The reason(s) for the selection of the location of Decal 8955009555 within the vehicle.

2

17. - The meaning of the language contained in all versions Decal 895500955.
18. - The definition of "open-body utility vehicle."
19. - The reason(s) Decal 8955009555 states "Read the driving guidelines in the Owner's Manual and Supplement."
20. - What the reader was suppose to ascertain by reading the driving guidelines in the CJ, YJ, and TJ Owner's Manuals and Supplements as directed by Decal 89550955.
21. - The revision(s) made to Decal 8955009555.
22. - The reason(s) for the revisions to Decal 8955009555.
23. - The person(s) approving all versions Decal 8955009555.
24. - The engineer(s), designer(s), attorney(s), and/or other individuals participating in the creation and/or revisions to Decal 8955009555.

3. **Changes to Owner's Manual Language**

25. - The reason(s) behind the changes in language of all CJ, YJ, and TJ Owner's Manuals.
26. - The reason the statement on page one of the 1989 YJ Owner's Manual, "Even though your Jeep vehicle has a roll bar and side bars for some extra protection, it is a truly open vehicle-there is no steel structural integrated top and it has low sides and a folding windshield" is different than similar language in all preceding YJ and TJ Owner's Manuals.
27. - The difference between an "open vehicle," an "open-bodied utility vehicle", and a "convertible."
28. - The definitions of, and differences between a "Full Roll Cage," "All-Steel, Body-on-Frame Construction," "Integrated Safety Cage," "hardtop roof system with Integral roll cage," and "Functional Cage."

3

29. The definition and meanings of "roll bar," "sports bar" and "side bar."
30. The reason(s) the term "sports bar" and "side bar" were selected.
31. The difference between the "roll bar," "rollbar," "sports bar" and "side bar" as they relate to Jeep Wrangler CJ, YJ and TJs.
32. The reason(s) the words "these structural elements" located on pages 23 and 26 of the 1989 YJ Owner's Manual were not words used in all preceding YJ and TJ Owner's Manuals.
33. The definition of "structural elements."
34. The reason(s) the words "roll bar" and "rollbar" are no longer used in a parts/service manuals.
35. The reason(s) the term roll bar is no longer in parts/service manuals.
36. Knowledge relating to customer perception of the roll bar, sports bar, side part, roll bar system or roll over safety of Jeep Wrangler CJ, YJ and TJs or any of their prototype of concept designs.

4. **FMVSS 216**

37. Defendant's (American Motors, Chrysler, DaimlerChrysler) roll cage, rollover protection, roof structure, A-Pillar, B-Pillar and C-Pillar standards and/or safety programs or initiatives.
38. Defendant's (American Motors, Chrysler, DaimlerChrysler) perception, analyses or opinion relating to the level of occupant protection provided by the NHSB static test of roof strength that was proposed prior to 1973.
39. Defendant's (American Motors, Chrysler, DaimlerChrysler) comments relating to the NHSB's 1971 proposal to protect occupants from roof crush by initiating a static test of roof crush strength.

4

STANGER & ARNOLD, LLP
29 South Main Street • Suite 325 • West Hartford, CT 06107 • 860.561.0650 • Facsimile: 860.561.0646
Juris No. 419042

40. The differences between the NHSB's proposed static test of roof strength made prior to 1973 and either the static test of roof crush proposed by General Motors prior to 1973 or FMVSS 216.

41. Whether Defendant (American Motors, Chrysler, DaimlerChrysler) is aware that FMVSS 216 was originally enacted as a temporary standard and when it became aware of that fact.

42. Whether Defendant (American Motors, Chrysler, DaimlerChrysler) is aware that FMVSS 216 is a minimum threshold for roof strength.

43. Defendant's (American Motors, Chrysler, DaimlerChrysler) analyses and understanding of why FMVSS 216 was initially a temporary standard.

44. Defendant's (American Motors, Chrysler, DaimlerChrysler) analyses and understanding of why FMVSS 216 is a minimum threshold for roof strength.

45. Defendant's reason(s) for supporting or opposing a change in FMVSS 216's status from temporary to permanent.

46. Whether NHSB's proposed static test of roof strength made prior to 1973 would provide better protection for occupants than either the General Motors static test of roof crush proposed prior to 1973 or FMVSS 216.

47. Whether NHSB's proposed static test of roof strength prior to 1973 would exceed the maximum N (force) as limited by the General Motors static test of roof crush proposed prior to 1973 or FMVSS 216.

48. Whether Defendant's (American Motors, Chrysler, DaimlerChrysler) employees ever indicated that vehicles should be built with roof structural strength beyond FMVSS 216 minimum requirements, and Defendant's understanding of the basis therefor.

5

49. • Whether any vehicles designed by Defendant (American Motors, Chrysler, Daimler Chrysler), concept or production models, are created with the intent to meet roof strength criteria in excess of what FMVSS 216 recommends.

50. • The roof strength of the Dakar, Icon, Mountain Biker, and Ultimate Rescue when tested by FMVSS 216 or 3-D loading.

51. • When Defendant (American Motors, Chrysler, DaimlerChrysler) first designed, learned of, drafted, or incorporated into in any way the structural roof/roll cage elements used in the Dakar, Icon, Mountain Biker, and Ultimate Rescue.

52. • Whether any individuals from Defendant's minivan safety leadership team ever indicated that Defendant's minivan's roof should provide strength in excess of what FMVSS 216 requires, and Defendant's (American Motors, Chrysler, DaimlerChrysler) understanding of the reason(s) therefor.

5. **True Hard Tops vs. Pillared Hard Tops**

53. • The definition of a "true hard top" used in vehicles prior to 1976.

54. • The definition of a "pillared hard top" designed in vehicles after 1977.

55. • When the Defendant (American Motors, Chrysler, DaimlerChrysler) started designing vehicles with pillared hard tops.

56. • The reason(s) Defendant (American Motors, Chrysler, DaimlerChrysler) designs vehicles with pillared hard tops, and why they were designed only at that time.

57. • Whether the top on the CJ, YJ and TJ is more analogous to a pillared hard top or true hard top.

6. **FMVSS 216 as applied to the CJ, YJ and TJ**

58. • Whether Defendant (American Motors, Chrysler, DaimlerChrysler) understands that the greater the amount of roof intrusion into the cabin of a belted occupant during a rollover causes a greater risk to the occupant of injury during a rollover

6

STANGER & ARNOLD, LLP
29 South Main Street • Suite 325 • West Hartford, CT 06107 • 860.561.0650 • Facsimile: 860.561.0646
Juris No. 419042

accident, and to what degree the roof must intrude into the occupant cabin before it begins to pose that significant risk of injury.

59. • The reason(s) the CJ, YJ and TJ sports bars were subject to 3-D Loading such as the one conducted on the YJ Sport Bar on February 20, 1990.

60. • What vehicles, other than the CJ, YJ and TJs, are subject to 3-D loading.

61. • Defendant's (American Motors, Chrysler, DaimlerChrysler) comments to NHTSA NPRM published on February 27, 1997.

62. • Defendant's (American Motors, Chrysler, DaimlerChrysler) analyses as to the pros and cons of the use of a small test plate vs. a large test plate to conduct FMVSS 216.

63. • The result that the use of a test plate less that 30 inches long, instead of 1829 mm, would have on the CJ, YJ and TJ's ability to pass FMVSS 216, if the initial impact point remains the same, over the A-Pillar.

64. • Defendant's (American Motors, Chrysler, DaimlerChrysler) understanding of why FMVSS 216 requires the test device to be at a forward angle of five degrees.

65. • Whether Defendant (American Motors, Chrysler, DaimlerChrysler) understands the purpose underlying the five degree forward angle of the test device in FMVSS 216 is to test the strength of the roof over the front seat occupant.

66. • The center of gravity of a CJ, YJ and TJ.

67. • Whether Defendant (American Motors, Chrysler, DaimlerChrysler) understands that FMVSS 216 creates the five degree forward of angle of the test device because that causes the test plate to initiate contact with the A-Pillar area of the roof thereby simulating ground contact in rollover crashes.

7

STANGER & ARNOLD, LLP
29 South Main Street • Suite 325 • West Hartford, CT 06107 • 860.561.0650 • Facsimile: 860.561.0646
Juris No. 419042

68. Defendant's (American Motors, Chrysler, DaimlerChrysler) understanding of whether a focal point of FMVSS 216 test of roof strength is the A-Pillar or the B-Pillar.

69. The plastic hinge moments of the CJ, YJ and TJs windshield (A-Pillar) and sport bar (B-Pillar).

70. How much force is transferred from the windshield to the sport bar through the YJ or TJ side bars during an FMVSS 216 test.

71. The reason(s) for the side bars on the YJ and TJs.

72. Whether Defendant (American Motors, Chrysler, DaimlerChrysler) understands that the purpose of FMVSS 216 is not solely to test the ability of the B-Pillar's roof strength, but also the A-Pillar's roof strength.

73. The respective amount of force or resistance the CJ, YJ and TJ windshield and the Sport Bar absorb or provide during an FMVSS 216 test.

74. For how long Defendant (American Motors, Chrysler, DaimlerChrysler) has understood, if at all, when a flat plate is pushing down onto two columns of equal height, each column will resist the force being propounded upon it by the plate according to its individual ability to do so, and that if the total resistance of the two columns is greater than the plate's downward force, the plate will no longer be able to travel downward, regardless if one column is resisting ninety percent of the force and the other ten. Additionally, whether Defendant (American Motors, Chrysler, DaimlerChrysler) used this understanding to circumvent the purpose of FMVSS 216 testing of CJ, YJ or TJs.

75. FMVSS 216 test nos. 21694287 and 21695298.

8

STANGER & ARNOLD, LLP
29 South Main Street • Suite 325 • West Hartford, CT 06107 • 860.561.0650 • Facsimile: 860.561.0646
Juris No. 419042

### 7. Marketing

76. • The marketing strategy for the YJ.
77. • Market studies relating to the YJ.
78. • When the sentence "Designed to accommodate this flexible system is Wrangler's standard roll bar" first appeared in CJ or YJ advertising, and when, and for what reasons, it was discontinued.
79. • The reason(s) the Roll Bar and doors must be on the YJ in all advertisements and marketing.
80. • Defendant's (American Motors, Chrysler, DaimlerChrysler) understanding of the consumer perception of the rollover safety, roof strength, and roll cage protection of the YJ.
81. • Defendant's directives to or from William Esty Co., Inc. or Bozell Worldwide, Inc. relating to YJ marketing and advertising.

### 8. Alternate Designs

82. • Actual or concept and/or prototype designs for structural elements (windshield, side bars, sports bar, rear c-pillars or other bars) of the Commando, YJ, CJ-7 improvement, CJ refresh, CJ refreshing, CJ-R, CJ-7, CJ freshened, CJ-9 and/or CJ programs.
83. • Designs relating to and/or reasons for the placement of a strut to support the windshield of a YJ, CJ-7 improvement, CJ refresh, CJ refreshing, CJ-R, CJ-7, CJ freshened, CJ-9 and/or CJ.
84. • The testing of any actual or concept and/or prototype designs for the structural elements (windshield, side bars, sports bar, rear c-pillars or other bars) of the

9

STANGER & ARNOLD, LLP
29 South Main Street • Suite 325 • West Hartford, CT 06107 • 860.561.0650 • Facsimile: 860.561.0646
Juris No. 419042

Commando, YJ, CJ-7 improvement, CJ refresh, CJ refreshing, CJ-R, CJ-7, CJ freshened, CJ-9 and/or CJ programs.

85. - Methods to add forward support to a YJ or CJ that will protect an occupant in the event of a rollover.
86. - Actual or concept and/or prototype designs and testing of glass used, proposed for use in YJ, CJ-7 improvement, CJ refresh, CJ refreshing, CJ-R, CJ-7, CJ freshened, CJ-9 and/or CJ programs.

9. **YJ Design**

87. - The design of the YJ windshield, side bars, sport bar, rear c-pillar bars, and removable hard top.
88. - The design objectives for the YJ windshield, side bars, sport bar, rear c-pillar bars, and removable hard top.
89. - Design changes from the CJ windshield, side bars, sport bar, rear c-pillar bars, and removable hard top to the YJ.
90. - Windshield intrusions that occurred during CJ rollover crashes.
91. - The welds used in and between the windshield, side bars, sport bar and rear c-pillar bars.
92. - The nuts and bolts used to connect the windshield, side bars, sport bar and rear c-pillar bars to each other or the YJ.
93. - Engineering or Advanced Engineering relating to the YJ, CJ-& improvement, CJ refresh, CJ refreshing, CJ-R, CJ-7, CJ freshened, CJ-9.
94. - The reason(s) Defendant (American Motors, Chrysler, DaimlerChrysler) selected the structural elements (windshield, side bars, sport bar, rear c-pillar bars) that ultimately became the production model YJ.

10

95. What changes were made between 1987 to 1995 to the windshield, side bars, sport bar, c-pillars or the nuts, bolts or welds that connect them.
96. The CJ's 1980s market share.
97. The CJ and YJ cost analyses.
98. The YJ environment of use.
99. The expected hazards a driver may encounter while using a YJ.

**10. Customer Surveys**

100. Results of customer surveys concerning different roof structures that were used in or concepts for the YJ, CJ-7 improvement, CJ refresh, CJ refreshing, CJ-R, CJ-7, CJ freshened, CJ-9 and/or CJ.
101. The Defendant's (American Motors, Chrysler, DaimlerChrysler) analyses and/or interpretation of customer surveys relating to the YJ, CJ-7 improvement, CJ refresh, CJ refreshing, CJ-R, CJ-7, CJ freshened, CJ-9 and/or CJ.
102. The 1982 Denver clinic polling customer perception relating to YJ, CJ-7 improvement, CJ refresh, CJ refreshing, CJ-R, CJ-7, CJ freshened, CJ-9 and/or CJ.
103. What designs were displayed at the 1982 Denver polling customer perception relating to YJ, CJ-7 improvement, CJ refresh, CJ refreshing, CJ-R, CJ-7, CJ freshened, CJ-9 and/or CJ.
104. Market research and/or clinic research relating to YJ, CJ-7 improvement, CJ refresh, CJ refreshing, CJ-R, CJ-7, CJ freshened, CJ-9 and/or CJ.

**11. Document Retention**

105. The Defendant's (American Motors, Chrysler, DaimlerChrysler) document and data retention policy(s).
106. What American Motors and/or Jeep documents Chrysler shred or destroyed after it acquired American Motors.

11

STANGER & ARNOLD, LLP
29 South Main Street • Suite 325 • West Hartford, CT 06107 • 860.561.0650 • Facsimile: 860.561.0646
Juris No. 419042

107. All documents relating to FMVSS 216 test number 21694287 and 21695298.

108. The types of data, test requests, test report notebooks, test lab records, logs, journals, and/or documents produced, and whether videos or photographs are taken, during FMVSS 216 testing of Defendant's (American Motors, Chrysler, DaimlerChrysler) vehicles.

109. The location or misplacement of FMVSS 216 test number 21694287 documentation.

110. Other documents missing from production or missing document attachments or documents requested that have not been produced.

This deposition shall continue day to day until such time as it is concluded.

PLAINTIFFS

BY _____
Steven E. Arnold, ct07966
sea@SAlaw.us
Peter M. Van Dyke, ct24747
pvd@SAlaw.us
Stanger & Arnold, LLP
29 South Main Street
West Hartford, CT 06107
Tel. (860) 561-0650
Their Attorneys

## **CERTIFICATION**

I hereby certify that a copy of the foregoing via facsimile transmission and via certified mail, on November 24, 2003 to:

Peter M. Durney, Esq.
Marie E. Chafe, Esq.
James P. Kerr, Esq.
Cornell & Gollub
75 Federal Street
Boston, MA 02110

And via first class mail to:

Daniel Krisch, Esq.
Horton, Shields & Knox
90 Gillett Street
Hartford, CT 06105

Terri S. Reiskin, Esq.
James A. Hourihan, Esq.
Hogan & Hartson
555 Thirteenth Street, NW
Washington, DC 20004

Lewis H. Goldfarb, Esq.
Hogan & Hartson
875 Third Avenue
New York, NY 10022

M. Sheila Jeffrey, Esq.
Miller, Canfield, Paddock & Stone, P.L.C.
840 West Long Lake Road, Suite 200
Troy, MI 48098

Steven E. Arnold

13

STANGER & ARNOLD, LLP
29 South Main Street • Suite 325 • West Hartford, CT 06107 • 860.561.0650 • Facsimile: 860.561.0646
Juris No. 419042