**PLAINTIFFS' MISINTERPRETATIONS OF DAIMLERCHRYSLER CORPORATION COMPANY WITNESS TESTIMONY**

| STATEMENT IN PLAINTIFFS' BRIEF | ERRORS IN BRIEF |
|---|---|
| "In the late 1970s, Defendant first attempted to improve the roll bar of the Jeep CJ 5. Ex. 8 at 124." Plaintiffs' Brief, p. 10 | The citation to the deposition of James Thornton is inaccurate. Mr. Thornton testified that at the time the roll bar was developed and tested for the new Jeep CJ-7, introduced in the 1976 model year, the company decided to look at improving the roll bar of the Jeep CJ-5. Mr. Thornton did not state this was the "first attempt" to improve the CJ-5 roll bar. |
| "The goal in developing the Jeep CJ7 was to improve the amount of force required to crush the roll bar system from the CJ5. Ex. 10 at 93." Plaintiffs' Brief, p. 10 | The citation to the deposition of James Thornton has nothing to do with the statement in Plaintiffs' brief. Mr. Thornton said nothing about the "goal" in developing the Jeep CJ-7. Rather, he testified about his understanding before 1985 about defect allegations plaintiffs were making in lawsuits involving the Jeep CJ-5 and Jeep CJ-7. |
| "In response to lawsuits, Defendant added side bars to prevent the windshield from entering the occupant compartment. Ex. 7 at 107, 79-80." Plaintiffs' Brief, pp. 10-11 | The citation to the deposition of James Thornton is inaccurate. Mr. Thornton did not refer to Jeep CJ lawsuits. The roll bar was not discussed at all on pp. 79-80, where Mr. Thornton testified that there is no way to prevent a vehicle from rolling over in some accidents. |
| "The side bars were designed to prevent the windshield from entering into the occupant compartment and force it to crush the side, not the rear. Ex. 8 at 218." Plaintiffs' Brief, p. 11 | The statement in the brief misrepresents Mr. Thornton's testimony, which related to a very specific kind of accident where "the forces are rearward on the windshield, as well as to the side, then the struts, the side struts going forward on the Wrangler will resist that rearward force, and the crushing of the windshield will tend to go to the side rather than to the rear." |

| STATEMENT IN PLAINTIFFS' BRIEF | ERRORS IN BRIEF |
|---|---|
| "Meanwhile stronger YJ designs were passed upon, 'We in advanced engineering looked at a lot of different concepts of providing structure forward of the roll bar. Ex. 7 at 14." Plaintiffs' Brief p. 12 | The cited testimony of Mr. Thornton is on page 13, not 14. The implication from the testimony is false. Mr. Thornton said nothing about "stronger" designs being "passed upon." |
| "There were many other designs that were considered. The reason I answer that way – you say rejected – wasn't so much of a rejection but let's look at this, then later let's look at this idea, then finally, when we got to the Wrangler, as it was – we were just looking at it and designing and developing it, finally people said yes, let's do this. The others just didn't develop enough interest to go anywhere. Ex. 10 at 113." Plaintiffs' Brief p. 12. | This testimony by Mr. Thornton was cited to support the claim the stronger designs were "passed upon." The testimony, which was in response to a question about whether other roll bar designs were "rejected," does not support this claim. |
| "The T-Bar design provided more strength forward of the roll bar than a side bar model. Ex. 7 at 23-25." Plaintiffs' Brief, p. 12 | The Plaintiffs again misrepresent Mr. Thornton's testimony in that they fail to note Mr. Thornton's testimony that the T-Bar design reduced driver visibility. Ex. 7 at 24-25 |
| "The T-Bar design was not selected because the Defendant believed consumers would react negatively to its enclosures. Id. [Ex. 7] at 27-28. Plaintiffs' Brief p. 12 | The Plaintiffs falsely characterize Mr. Thornton's testimony, which stated that the reduction in driver visibility, together with the fact that the design would not allow for a fold-down windshield desired by consumers, were reasons the T-Bar design was not used. |
| "[T] full roll cage would probably cost more, but so much in manufacturing depends on exactly how you tool it, but I think it would probably be more expensive. Ex. 7 at 90." Plaintiffs' Brief p. 12. | Mr. Thornton's testimony is mispresented because Plaintiffs fail to include the first portion of the sentence cited, where Mr. Thornton stated, in response to a question about whether a full roll cage would be more expensive than the roll bar structure ultimately used on the Jeep Wrangler (YJ), "You know, it's only a guess. It probably the full roll cage would probably. . ." |

| **STATEMENT IN PLAINTIFFS' BRIEF** | **ERRORS IN BRIEF** |
|---|---|
| "The side movement created by Defendant is exactly what forced the doorframe to come in contact with Christopher Phelan's head in this case. In fact, this very side movement of the door frame is clearly depicted in Defendant's own testing. Ex. 13 at 10. Plaintiffs' Brief, pp. 12-13 | The testimony cited is from Peter Chapman's deposition in <u>Gillespie v. DaimlerChrysler Corporation</u>. The witness says absolutely nothing about Jeep Wrangler (YJ) testing. In fact, Mr. Chapman had no involvement whatsoever in the design or testing of the Jeep Wrangler (YJ). |
| "The windshield was considerably less stiff and strong – the windshield was less strong than the roll bar. Ex. 7, p. 32." Plaintiffs' Brief, p. 13 | The cited testimony by Mr. Thornton appears on page 31, not 32. Plaintiffs misrepresent Mr. Thornton's testimony by failing to include his complete response, where he stated "If you tested by – I assume you mean by Federal Motor Vehicle Safety Standard 216 of the windshield structure and not the roll bar. The windshield structure was considerably less stiff and strong as the – the windshield structure was less strong than the roll bar. *The roll bar was very, very strong and greatly exceeded the requirements on the passenger car standard 216.*" Plaintiffs' Ex. 7, pp. 32-33 (emphasis added) |

87933.1\105080-01537