IN THE CIRCUIT COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | | |
|---|---|---|
| JAMES W. GILLESPIE and<br>SANDRA GILLESPIE, Parents and<br>Next of Kin of JAMES WADE<br>GILLESPIE, Deceased,<br><br>    Plaintiffs<br><br>v.<br><br>CHRYSLER CORPORATION and<br>JEEP EAGLE, Division of the<br>Chrysler Corporation,<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | NO. 76600-9 |

## DAIMLERCHRYSLER CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND WITNESSES REGARDING TESTING DONE BY DAIMLERCHRYSLER AG

DaimlerChrysler Corporation submits this Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents and Witnesses Regarding Testing Conducted by DaimlerChrysler AG.

## I.    INTRODUCTION

This is a product liability action brought against DaimlerChrysler Corporation (a United States company formerly known as Chrysler Corporation). Plaintiffs allege that a 1995 Jeep Wrangler (YJ) manufactured by Chrysler was defective. Although this case involves a Chrysler vehicle, Plaintiffs now attempt to compel discovery about unrelated passenger cars manufactured by a different corporation. Specifically, Plaintiffs demand access to databases, design documents, and rollover standards for 1990 to 1995 model year Mercedes-Benz cars equipped with roll bars. Plaintiffs also demand to depose the witness most knowledgeable about "rollover testing done by Mercedes Benz." (See Exhibits A, B.)

The discovery sought by Plaintiffs has nothing whatsoever to do with the design, manufacturing, marketing, or testing of the 1995 Jeep Wrangler (YJ) vehicle or any other vehicle manufactured by DaimlerChrysler Corporation or Chrysler Corporation. Instead,

the discovery concerns documents and information related solely to Mercedes-Benz vehicles, which in 1995 were manufactured by a separate and wholly unrelated German corporation and since late 1998 have been manufactured by DaimlerChrysler Corporation's separate and indirect German parent corporation, DaimlerChrysler AG. DaimlerChrysler Corporation does not possess, have custody over, or otherwise control these documents.

Plaintiffs' demand for Mercedes-Benz documents and witnesses is contrary to Tennessee law, the Hague Convention, and the Tennessee and United States Constitutions. Therefore, and for the reasons that follow, the Court should deny Plaintiffs' motion.

## II.    FACTS

### A.    Background

This case arises out of an accident that occurred on March 9, 1995 in Shelby County, Tennessee. The lawsuit was filed on March 8, 1996, naming Chrysler Corporation as a defendant. Plaintiffs allege defects in the Jeep's seat belts and roll bar. To date, Plaintiffs have served three sets of Requests for Production of Documents, two sets of Interrogatories, and one set of Requests to Admit. In response to the discovery, DaimlerChrysler Corporation has produced voluminous documents concerning not only the 1995 Jeep Wrangler (YJ) vehicle, but also its predecessors and decendants: the 1987 through 1994 Jeep Wrangler (YJ) vehicle, the Jeep CJ-7 vehicle (which was discontinued after the 1986 model year), and the Jeep Wrangler (TJ) vehicle, which was first produced in the 1997 model year. The design of the 1995 Jeep Wrangler (YJ) vehicle is based on development of the Jeep Wrangler (YJ) vehicle that commenced in 1982 and culminated in the introduction of the first Jeep Wrangler (YJ) vehicle in the 1987 model year.

In November 1998, over two years after the commencement of this action, and over three and a half years after both the accident at issue and the manufacture of the Jeep Wrangler (YJ) vehicle involved in that accident, a business combination occurred between Chrysler Corporation, a Delaware corporation, and Daimler-Benz AG, an *Aktiengesellschaft*, or German public share company. Among other things, this transaction resulted in the creation of a new German company, DaimlerChrysler AG, headquartered in Stuttgart, Germany and subject to German law. At the same time, Chrysler Corporation

changed its name to DaimlerChrysler Corporation and became an indirect subsidiary corporation of the newly formed DaimlerChrysler AG. The corporate entity previously known as Chrysler Corporation neither ceased to exist nor changed its business structure or business operations. Chrysler Corporation merely changed its name to DaimlerChrysler Corporation.

Moreover, it is undisputed that when the 1995 Jeep Wrangler (YJ) was designed, manufactured, and sold, the only relationship between the former Chrysler Corporation and the former Daimler-Benz AG was as competitors in the automotive industry.

### B. The Discovery Demands at Issue

#### 1. Requests Nos. 53, 58, and 59

In August 1999, Plaintiffs served their Second Request for Production of Documents. Plaintiffs' Motion to Compel identifies three discovery requests (Request Nos. 53, 58, and 59) in which they seek documents that, to the extent that they exist, would be in the possession of DaimlerChrysler AG. The requests seek databases related to Mercedes-Benz vehicles, along with design documents and "rollover standards" related to 1990 through 1995 Mercedes-Benz vehicles equipped with roll bars. The requests and responses thereto are attached as Exhibit A.

#### 2. Notice of Deposition

Plaintiffs also served a Notice of Deposition seeking to depose the person at DaimlerChrysler Corporation most knowledgeable about "rollover testing done by Mercedes Benz." The Notice of Deposition is attached as Exhibit B. Attached as Exhibit C is a letter from Stephen J. Ott, DaimlerChrysler Corporation discovery counsel, responding to the Notice of Deposition.

#### 3. Request No. 16

While Plaintiffs' Motion to Compel makes no reference to Request No. 16, that discovery request is claimed to be at issue in Plaintiffs' Memorandum in Support of Motion. The request, and the responses thereto, are attached as Exhibit D. The request seeks documents related to any rollover accident, rollover test, or rollover maneuver that DaimlerChrysler Corporation believes are relevant to its defenses. DaimlerChrysler

Corporation responded that it had no such documents that it believed were relevant to its defenses.

Any arguments as to Request No. 16 should not be considered by the Court because they were not properly raised in Plaintiffs' motion. Even if the Court chooses to address this issue, however, it should deny the motion as to this request, since the supplemental response establishes that DaimlerChrysler Corporation does not have any responsive documents.

## III. LEGAL ARGUMENT

### A. The Burden of Showing Control Is On the Plaintiffs; That Burden Has Not Been Met.

Plaintiffs contend that the burden is on DaimlerChrysler Corporation to prove why it should not be compelled to produce the documents at issue. Plaintiffs' Memorandum, at 4, 6. No authority is cited for this incorrect proposition.

Plaintiffs are wrong. The burden of showing control is on the party seeking the discovery. United States v. International Union of Petroleum and Industrial Workers, 870 F.2d 1450, 1452 (9th Cir. 1989). Even the cases cited by Plaintiffs have so held. Strom v. American Honda Motor Co., Inc., supra, 667 N.E. 2d at 1146; Camden Iron and Metal v. Marubeni America Corporation, supra, 138 F.R.D. at 441. Plaintiffs have not met this burden. Rather, DaimlerChrysler Corporation has established that it does not have the legal right to obtain documents from DaimlerChrysler AG. (See Currin Aff., Exhibit E, ¶ 4.) No federal circuit court interpreting Rule 34 would require DaimlerChrysler Corporation to produce the Mercedes-Benz documents that Plaintiffs seek here. Nothing in Tennessee law suggests that this Court should rule any differently.

### B. DaimlerChrysler Corporation Does Not Have "Possession, Custody, or Control" of Mercedes-Benz Documents Possessed by DaimlerChrysler AG.

#### 1. It is Undisputed That DaimlerChrysler Corporation Does Not Possess or Have Custody of the Documents, and It Does Not "Control" Those Documents Under Plaintiffs' Own Definition of That Term.

Rule 34.01 of the Tennessee Rules of Civil Procedure allows discovery only of those documents in the "possession, custody, or control of the party on whom the request is

served." There is no dispute that the "party on whom the request [wa]s served" in this case is DaimlerChrysler Corporation, not its indirect German parent, DaimlerChrysler AG, a nonparty to this action. (See Currin Aff., Exhibit E, ¶ 4.) Nor is there any dispute that DaimlerChrysler Corporation lacks "possession" or "custody" of the Mercedes-Benz documents sought by Plaintiffs. (See Currin Aff., Exhibit E, ¶ 4.) Thus, Rule 34.01 authorizes discovery of those documents only if they are "controlled" by DaimlerChrysler Corporation. But DaimlerChrysler Corporation does not control these documents under Plaintiffs' own definition of the term "control."

As a matter of ordinary usage, to "control" something is "[t]o exercise restraining or directing influence over" it. Webster's Third International Dictionary (7th ed. 1968). The ordinary meaning of the word "control" does not include the mere possibility that a third party might voluntarily choose to provide documents in the third party's "possession, custody, or control" to a party that is the subject of a discovery order. A party must have a legal right to control or obtain the documents. 4 Tenn. Practice § 34.3 (1989).

Plaintiffs concede as much **in their own document requests in this case,** including the document requests at issue. In their requests, Plaintiffs expressly define the word "control" so that it is consistent with its ordinary meaning and the dictionary definition. According to Plaintiffs:

> [A] Document is deemed to be in Your control if You have the right to secure the Document or a copy thereof from another Person or public or private entity having actual possession thereof.

(See Exhibit F.) Thus, under Plaintiffs' own definition, a party has "control" over a document not in its possession or custody **only** when a party has a "right to secure" the document.

It is undisputed that DaimlerChrysler Corporation has no right to secure the Mercedes-Benz documents requested by Plaintiffs. (See Currin Aff., Exhibit E, ¶ 4.) Therefore, because it is also undisputed that DaimlerChrysler Corporation does not have possession or custody of the Mercedes-Benz documents (Id.) – and by Plaintiffs' own definition DaimlerChrysler Corporation does not have control over those documents –

DaimlerChrysler Corporation cannot be compelled to produce those documents under Rule 34.01 of the Tennessee Rules of Civil Procedure.

**2.    The Great Weight of Federal Authority Interpreting "Control" Under the Federal Rules Requires a Legal Right to Obtain the Requested Documents, Which DaimlerChrysler Corporation Does Not Have Here.**

Rule 34.01 is patterned on Rule 34 of the Federal Rules of Civil Procedure.

Advisory Commission Comments, Rule 34.01. DaimlerChrysler Corporation agrees with Plaintiffs that federal case law is instructive in construing this Tennessee Rule. Plaintiffs are wrong, however, insofar as they attempt to characterize the prevailing view of the federal courts regarding the meaning of the word "control."

The standard adopted by the great majority of federal courts to determine whether a document is within the "control" of a party under the Federal Rules is fully consistent with the common understanding of that term. A party has "control" over documents not in its possession or custody only if the party has a "legal right to obtain" the documents upon demand:

> In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce. [citation omitted] "Control" with respect to the production of documents is defined "not only as possession, but as the legal right to obtain the documents requested on demand." Cochran Consulting, Inc. v. Uwatec USA, Inc., 102 F.3d 1224, 1229-30 (Fed. Cir. 1996) (quoting Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984)).

The most recent decision of a federal circuit court addressing this issue – like the circuit court decisions preceding it – has held once again that "legal right to obtain" is the proper test for "control" under the Federal Rules. In re: Citric Acid Litigation, 191 F.3d 1090 (9th Cir. 1999), the Ninth Circuit addressed whether a subpoena issued pursuant to Fed. R. Civ. P. 45[1] could require Coopers & Lybrand L.L.P. to produce documents in the possession of Societe Fiduciare Suisse Coopers & Lybrand. Both corporate entities were members of Coopers & Lybrand International. The court rejected the argument that "control" should focus on a party's practical ability to obtain the requested documents:

---

[1]    Rule 45 states that a subpoena may be issued to command a person to produce "documents or tangible things in the possession, custody or control of that person."

> [W]e conclude – consistently with all of our sister circuits who have
> addressed the issue – that the legal control test is the proper standard under
> Rule 45. [citations omitted]  Ordering a party to produce documents that it
> does not have the legal right to obtain will oftentimes be futile, precisely
> because the party has no certain way of getting those documents.  Id. at 1107-
> 08.

Plaintiffs' claim that the federal courts have interpreted "control" as broader than

"simple legal control" (see Plaintiffs' Memorandum at 8) is incorrect.  In fact, all the federal

circuit courts that have addressed the issue have consistently adopted a strict legal control

test as the proper standard.  As the Ninth Circuit itself pointed out in In re Citric Acid

Litigation, its holding is consistent with circuit court case law nationwide.  See, e.g., In re:

Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995); Cochran Consulting, Inc. v. Uwatec

USA, Inc., supra, 102 F.3d at 1229-1230;  Chaveriat v. Williams Pipe Line Co., 11 F.3d

1420, 1426-27 (7th Cir. 1993); Gerling International Ins. Co. v. Commissioner, 839 F.2d

131, 138 (3rd Cir. 1988); and Searock v. Stripling, supra, 726 F.2d at 653.  Thus, the

majority view has specifically rejected the approach urged by Plaintiffs.

As all of these federal circuit courts, and many other courts as well, have recognized,

by requiring a party to produce only those documents that it has a legal right to obtain, the

Court is giving effect to the plain and ordinary meaning of the word "control."  See

Henderson v. Zurn Industries, 131 F.R.D. 560, 566 (S.D. Ind. 1990) ("[l]egal right to

control" comports with "ordinary meaning" of word "control").  See also Starlight

International, Inc. v. Herlihy, 181 F.R.D. 494, 498-99 (D. Kan. 1998); McBryar v.

International Union, 160 F.R.D. 691, 695 (S.D. Ind. 1993); Resolution Trust Corp. v.

Deloitte & Touche, 145 F.R.D. 108, 110 (D. Colo. 1992); GTE Communications Sys. Corp.

v. Tanner, 856 S.W.2d 725, 729 (Tex. 1993).  See also Westinghouse Credit Corporation v.

Mountain States Mining & Milling Co., 37 F.R.D. 348, 349 ( D. Colo. 1965) ("since a

subsidiary does not control the parent, it is not required to furnish information held by the

latter").

The only "evidence" of control offered by Plaintiffs is an SEC filing dated March 31,

1999 concerning the business combination of Chrysler Corporation and Daimler-Benz AG

and a joint DaimlerChrysler Corporation/DaimlerChrysler AG press release dated

September 24, 1999. The SEC filing states only what is already known – that the corporate affiliation of DaimlerChrysler Corporation and DaimlerChrysler AG arose only because of a business combination that occurred in November 1998. The press release shows that the 1998 business combination engendered synergies and communications between DaimlerChrysler Corporation and DaimlerChrysler AG – facts that would not amount to "control" under any conceivable definition of that term.

**3.    Requiring a Subsidiary to Produce Documents of Its Parent Would Be Inconsistent with Tennessee Law Requiring Courts to Respect Separate Corporate Identities.**

Plaintiffs place great significance on the fact that DaimlerChrysler Corporation and DaimlerChrysler AG have an indirect subsidiary-parent relationship. As noted above, however, this affiliation does not establish that DaimlerChrysler Corporation has the legal right to obtain documents from DaimlerChrysler AG. Moreover, to assume otherwise would fly in the face of established Tennessee law requiring courts to recognize the separate and distinct nature of affiliated corporations.

The Court may only disregard legally separate corporate structures – and "pierce the corporate veil" – upon a very strict showing that the separate corporation structure is a sham. As the Tennessee Supreme Court has directed, a court must be able to conclude, based on the evidence submitted, that:

1)    The parent corporation, **at the time of the transaction complained of,** exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.

2)    Such control must have been used to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.

3)    The aforesaid control and breach of duty must proximately cause the injury or unjust loss complaint of.

Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp., 691 S.W.2d 522, 526 (Tenn. 1985) (emphasis added); see also Muroll Gesellschaft M.B.N. v. Tennessee Tape, Inc., 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995) ("[t]he principle of piercing the

corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity").

Aside from the fact that Plaintiffs have failed to show that DaimlerChrysler AG ever had "complete dominion" over DaimlerChrysler Corporation, it is undisputed that "at the time of the transaction complained of" – whether that be the manufacture of the 1995 Jeep Wrangler (YJ) or the 1995 accident in question or even the filing of this lawsuit – these two companies had nothing whatsoever to do with each other. The business combination that made them affiliated did not occur until very late in 1998, well after this lawsuit was filed.

Plaintiffs have failed to offer any authority permitting discovery of documents in the sole possession of a corporate party's nonparty affiliate where the affiliation did not even arise until after the lawsuit was filed. This Court should not be the first to so rule.

### C.  The Notice of Deposition Is Invalid Insofar as it Seeks to Depose an Employee of DaimlerChrysler AG.

The Notice of Deposition seeks to depose a "DaimlerChrysler" designee on testing conducted of Mercedes-Benz vehicles. (See Exhibit B.) In response to the Notice, counsel for DaimlerChrysler Corporation stated that the company would be unable to produce an employee with knowledge of such testing. (See Exhibit C.) Plaintiffs appear to claim in their motion that DaimlerChrysler Corporation should produce an employee of DaimlerChrysler AG to testify about testing of DaimlerChrysler AG vehicles. See Plaintiffs' Memorandum in Support of Motion, at 13-14. Plaintiffs incorrectly claim that "control" over such a witness is not a precondition of Rule 30.02.

Regardless of the indirect parent-subsidiary relationship between DaimlerChrysler AG and DaimlerChrysler Corporation, they are separate and distinct corporate entities. Further, it is beyond dispute that DaimlerChrysler AG is not a party to this action. As such, DaimlerChrysler AG cannot be compelled by a Notice of Deposition served on a subsidiary to produce an employee in a case in which it is not a party and DaimlerChrysler Corporation obviously has no right to order such an employee of DaimlerChrysler AG to appear. Rule 45 is the mechanism by which to compel the presence of a nonparty at a deposition. Further, as is explained in more detail below, since DaimlerChrysler AG is a corporation of

-9-

a foreign country, Plaintiffs must comply with the Hague Convention in order to depose a

DaimlerChrysler AG employee.  See Sub-section D, <u>infra</u>.  Plaintiffs cite no authority for

their position that a nonparty should be compelled to attend a deposition on notice only.  No

such authority exists, and Plaintiffs' motion in this respect should be denied.

> **D.     Plaintiffs' Motion Asks the Court to Undermine Rights of Nonparties Under the Hague Evidence Convention and Tennessee Law, to Expose Litigants to Serious Sanctions for Failing to Comply With Orders They are Powerless to Obey, and to Ignore Serious Constitutional Questions.**
>
> > **1.     Forcing DaimlerChrysler Corporation to Produce the Documents and Witnesses Would Violate Interests Protected by the Hague Evidence Convention.**

The foreign sovereignty interests of Germany are protected by the Hague

Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, 23 UST

2555 ("Hague Evidence Convention").  This treaty, which sets out procedures for taking

discovery in signatory countries, has been ratified by both the United States and Germany.

<u>Orlich v. Helm Bros., Inc.</u>, 560 N.Y.S.2d 10 (App. Div. 1990).  DaimlerChrysler AG, which

possesses in Germany the documents sought (to the extent they exist), is not a party to this

lawsuit.  "When discovery is sought from a non-party in a foreign jurisdiction, application

of the Hague Convention, which encompasses principles of international comity, is virtually

compulsory." <u>Id.</u> at 14.

Under the Hague Evidence Convention, the recipient of a discovery request is

entitled to all protections conferred by the home country.  23 UST 2555, Art. 11.  German

law recognizes privileges considerably broader than those recognized under the law of

Tennessee (or other American jurisdictions), including broad protection for business secrets.

<u>Work v. Bier</u>, 106 F.R.D. 45, 54-55 (D. D.C. 1985).  Because any applicable privileges

conferred by German law on DaimlerChrysler AG belong to it, and not to DaimlerChrysler

Corporation, DaimlerChrysler Corporation would not be able to object to discovery on

DaimlerChrysler AG's behalf.

<u>Orlich v. Helm Bros., Inc.</u>, a New York products liability action involving a

Mercedes-Benz vehicle, is instructive.  In that case, Mercedes-Benz of North America, Inc.

("MBNA") was the only defendant to the action.  Daimler-Benz AG, a German company,

owned 100 percent of MBNA. The appellate court found that the trial court erred in

compelling production of documents and information from the German entity since it

completely ignored the Hague Convention:

> Since fact gathering is a judicially controlled process in civil law nations such
> as West Germany, the non-judicial taking of evidence located within their
> territory is regarded as an affront to their sovereignty. Such an exercise
> would be particularly offensive where, as here, the entity being subjected to
> the court-ordered fact gathering, i.e. Daimler-Benz AG/Mercedes Benz AG,
> is not even a party to the litigation. In ordering the production of documents
> from West German entities in support of its airbag-reliance theory, the court
> failed to respect the principles of international comity and sovereignty of the
> Federal Republic of Germany and, finding its procedures "cumbersome,"
> ignored the requirements of the Hague Convention. Id. at 15.

See also <u>Laker Airways Ltd. v. Pan American World Airways</u>, 607 F. Supp. 324

(S.D.N.Y. 1985), (subpoenas seeking documents in Great Britain but served on defendant's

New York offices found to be "a transparent attempt to circumvent the Hague

Convention").

Similarly, Plaintiffs here are attempting to obtain documents located in Germany in

the possession of a German corporation by serving discovery demands on the corporation's

United States subsidiary. As in both <u>Orlich</u> and <u>Laker Airways</u>, Plaintiffs are asking the

Tennessee courts to ignore a United States treaty and potentially violate the law of a foreign

country by the manner in which they order production of documents. In addition, as in

<u>Laker Airways</u>, Plaintiffs here seek documents from a United States entity that had no

affiliation with the foreign corporation until well after the alleged wrongful conduct (i.e.,

design and manufacture of the 1995 Jeep Wrangler (YJ) vehicle).

### 2. Plaintiffs Attempt an Impermissible End Run Around Tennessee's Own Nonparty Discovery Procedures.

Even setting aside the requirements of the Hague Evidence Convention, Plaintiffs'

discovery constitutes an impermissible end run around Tennessee's own nonparty discovery

rules. A Rule 34 request can be directed only to a party. 4 Tenn. Practice § 34.7 (1989).

Discovery of nonparties is governed by Rule 45 of the Tennessee Rules of Civil Procedure.

Rule 45, which provides both for depositions of nonparties and the production of documents

by nonparties, requires issuance of a subpoena. Tenn. R. Civ. P. 45.01, 45.02. Proper

service of the subpoena is required. Id. at 45.03. Rule 45 contains specific provisions

allowing the nonparty to challenge any such subpoena, including a challenge on the grounds that the subpoena is "unreasonable and oppressive." Id. at 45.02(1). Rule 45 also allows a party to seek "advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things." Id. at 45.02(2).

These rules are specifically designed to protect nonparties from improper, burdensome, or abusive discovery. As one court has stated, "[r]estrictions on discovery may be broader where a nonparty is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information." In re Candor Diamond Corp., 26 BR 847, 849 (Bankr. S.D.N.Y.) (citing Dart Industries Co. v. Westwood Chem. Co., 649 F.2d 646 (9th Cir. 1980)). Consequently, courts will grant motions to quash or protective orders for nonparties where it appears that the discovery request is improper or abusive. See e.g., In re Electric Weld Steel Tubing Antitrust Litig., 512 F.Supp. 81 (N.D. Ill. 1981) (quashing nonparty subpoena that was "unreasonable and oppressive" and sought to "circumvent" order of different tribunal that denied access to same documents). See also Oliver B. Cannon & Son, Inc. v. Fidelity & Cas. Co., 519 F.Supp. 668 (D. Del. 1981) ("It would violate the dictates of due process to rule upon anticipated objections which may be raised by a third party before any subpoena has issued and before the third party has been given any opportunity to appear before the court and object.").

Plaintiffs effectively seek to compel DaimlerChrysler AG – a German corporation – to turn over documents and send a representative to a deposition without affording it the procedural protections for nonparties provided under the Tennessee Rules of Civil Procedure. This constitutes an impermissible attempt to circumvent the protections granted by Tennessee law to nonparties in the discovery process.

      **3.**    **Plaintiffs Seek an Order That Would Expose DaimlerChrysler Corporation to Sanctions That It is Powerless to Avoid.**

Tennessee law authorizes a trial court to sanction a party for failure to comply with a discovery order. Tenn. Ct. R. 37.02, Lyle v. Exxon Corp., 746 S.W.2d 694, 698-99 (Tenn.

1988). Such sanctions can be severe, including entry of a default judgment and a finding or contempt. Id. If the Court were to grant Plaintiffs' Motion to Compel, DaimlerChrysler Corporation could be sanctioned for failing to produce documents and a deposition witness that are beyond its power to produce – because the documents and the witness are within the possession, custody, and/or control of a nonparty has the right to refuse to turn them over. Placing DaimlerChrysler Corporation in this position is unreasonable and unfair, and therefore is inconsistent with Tennessee law.

### 4. The Trial Court's Approach Raises Serious Constitutional Questions.

Finally, Plaintiffs' motion raises serious constitutional concerns. "Personal jurisdiction of non-resident defendants may be obtained by service of process under the Tennessee Long Arm Statute (Tenn. Code. Ann. § 20-2-214(a)) if, and only if, the non-resident defendant has such minimum contacts with this state that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Landers v. Jones, 872 S.W.2d 674, 675 (Tenn. 1994) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); J.I. Case Corp. v. Williams, 832 S.W.2d 530, 531 (Tenn. 1992)); see also Darby v. Superior Supply Co., 458 S.W.2d 423 (Tenn. 1970). For the same reason, the Due Process Clause also bars the Tennessee courts from requiring certain foreign defendants to comply with discovery orders directed against them.

If the Court grants Plaintiffs' motion, it would accomplish indirectly what it cannot (consistent with the Due Process Clause) accomplish directly. In other words, a Tennessee court would be ordering a nonparty foreign corporation to respond to discovery in a Tennessee lawsuit – on pain of sanctioning its separate subsidiary – even though the foreign parent lacks the minimum contacts necessary to subject the parent to jurisdiction in a Tennessee court. This constitutional shortcoming is yet another reason why the Court should deny Plaintiffs' Motion to Compel.

### E. Plaintiffs May Obtain Information About Industry Standards Through Other Means.

Plaintiffs claim that the requested documents are relevant to the issues in this lawsuit as they may contain information relating to alternative designs, standards in the industry,

and general knowledge in the industry. At the time the 1995 Jeep Wrangler (YJ) vehicle was designed, Chrysler Corporation had no business relationship with Daimler-Benz AG. Any knowledge or information it had concerning industry standards was not based on confidential documents in the possession of Daimler-Benz AG. Its knowledge of Daimler-Benz AG practices would have been the same as its awareness of the practices of other automotive manufacturers. Its means of determining what practices were used by Daimler-Benz AG or any other manufacturer would be limited to publicly available documents or by purchasing and analyzing vehicles of other manufacturers. These methods are equally available to Plaintiffs or their experts by reviewing literature from the period, as well as by inspecting other vehicles manufactured during the period. There is no legitimate reason why Plaintiffs should have access to the files of a nonparty to try to prove their claims here.

## IV.    CONCLUSION

Accordingly, the Court should deny Plaintiffs' Motion to Compel further responses to Request Nos. 16, 54, 58, and 59. Further, the Court should deny the Motion to Compel as it relates to the Notice of Deposition seeking a DaimlerChrysler Corporation or DaimlerChrysler AG employee to address issues related solely to testing of Mercedes-Benz vehicles.

DAIMLERCHRYSLER CORPORATION


BY: _____
    Jill Steinberg
BAKER, DONELSON, BEARMAN &
    CALDWELL
165 Madison Avenue
Suite 2000
Memphis, Tennessee 38103
(901) 577-2303


MILLER, CANFIELD, PADDOCK & STONE, PLC
840 West Long Lake Road
Suite 200
Troy, Michigan 48098-6358
(248) 879-2000

Attorneys for the Defendant,

DaimlerChrysler Corporation