UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re Jeep Wrangler Class Action ) | |
| ) | |
| Angela Phelan, Administratrix of ) | |
| the Estate of Christopher Phelan, ) | |
| Class Member, and Individually ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 302CV1219 JBA |
| ) | |
| DaimlerChrysler Corporation ) | |
| ) | |
| Defendant ) | February 13, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DAIMLERCHRYSLER CORPORATION'S
MOTION FOR SUMMARY JUDGMENT ON
COUNT I OF PLAINTIFF'S AMENDED COMPLAINT**

Defendant DaimlerChrysler Corporation ("DCC") submits this Memorandum of Law in support of its Motion for Summary Judgment on Count I of Plaintiff's Amended Complaint and requests that plaintiff's claim under the Connecticut Unfair Trade Practices Act ("CUTPA") be dismissed. On September 26, 2003, the Court entered an Order adopting the Magistrate Judge's recommended ruling on DCC's motion to dismiss, but directed the parties to conduct discovery and to brief the issue of whether plaintiff's CUTPA claim was barred by the statute of limitations. See Order on Motion for Partial Dismissal of Plaintiff's Amended Complaint and Scheduling Order ("Order on Motion for Partial Dismissal") at 1, 4. In the Order, the Court held that the statute of limitations had not been tolled and that any putative class member who "purchased or leased a Jeep Wrangler prior to July 17, 1999" was time-barred from pursuing CUTPA claims against DCC. Id. at 1. The Court also held that plaintiff's claim was

\\\DC - 85646/0043 - 1871784 v3

barred if the alleged CUTPA violations relating to Christopher Phelan's purchase of the 1994 Jeep Wrangler occurred prior to July 17, 1999.  Id.

As discussed more fully below, plaintiff's CUTPA claim is barred by the statute of limitations for two reasons.  First, the evidence shows that Christopher Phelan actually purchased the subject vehicle on July 9, 1999, not July 17, 1999, as alleged in the Amended Complaint. 1/  Thus, plaintiff's claim is barred pursuant to the Court's September 26, 2003 Order, which held unequivocally that the CUTPA claim of anyone who purchased or leased a Jeep Wrangler prior to July 17, 1999, is time-barred.  Second, any CUTPA violations took place, if at all, on or before July 9, 1999, when Christopher Phelan purchased and took delivery of the vehicle.  There is no evidence that any conduct that could conceivably have contributed to the purchase of the vehicle or plaintiff's alleged injuries took place after July 17, 1999.  Plaintiff's claim is time-barred for this reason as well.

## BACKGROUND

This action was commenced on July 23, 2002, when DCC was served with the original complaint.  Plaintiff Angela Phelan is the administratrix of the estate of Christopher Phelan, who died when his 1994 Jeep Wrangler was rear-ended by a motor vehicle being operated by an intoxicated driver.  Amended Complaint ("Am. Comp.") ¶¶ 26, 28.  Plaintiff brings this action individually, on behalf of the estate, and as class representative of a putative class consisting of persons who, since April 1979, have "purchased and own or lease a Jeep Wrangler in Connecticut or who are Connecticut resident Jeep Wrangler owners or lessees."  Id. ¶ 11.  Plaintiff alleges that every vehicle sold under the Jeep Wrangler name since April 1979

---

1/   The latest complaint is actually plaintiff's Second Amended Complaint, but plaintiff titles it "Amended Complaint," which is how it will be referred to herein.

"does not have any adequate overhead or side roll bar protection or a hardtop roof to provide adequate rollover safety protection for its occupants." Id. ¶ 10.

The Amended Complaint originally contained three counts. In Count I, plaintiff seeks relief under CUTPA individually, and on behalf of the putative class. Id. ¶¶ 18-23. Plaintiff alleges that DCC "unfairly or deceptively designs and manufactures" Jeep Wrangler vehicles without "adequate . . . roof-crush safety protection" or "rollover safety protection," and that DCC unfairly and deceptively marketed the vehicles while failing to warn of their dangers in a rollover accident. Id. ¶ 18 (a) – (i).

Counts II and III are individual claims for personal injury on behalf of the estate. Plaintiff voluntarily dismissed Count II on May 5, 2003, and the Court bifurcated Count III from the putative class action for discovery and trial purposes on December 20, 2002. DCC's summary judgment motion is directed solely to Count I of plaintiff's Amended Complaint.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be granted "when all the papers before a trial court show that there are no genuine issues of material fact." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993). The moving party "bears the initial burden of demonstrating the absence of any genuine factual issues." Id. Once this burden is satisfied, the burden shifts to the non-moving party "to produce probative evidence supporting its view that a genuine factual dispute exists." Id. This requires the non-moving party to "demonstrate more than 'some metaphysical doubt as to the material facts, . . . [it] must come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

This is an individual claim unless and until certified as a class. See Gibson v. Chrysler Corp., 261 F.3d 927, 937 (9th Cir. 2001) (holding that although a class action complaint "is often referred to as a class action when it is filed, it is, at the time of filing, only a would-be class action. It does not become a class action until certified by the district court."), cert. denied, 534 U.S. 1104 (2002). Since no class has been certified, this motion pertains solely to plaintiff's individual claim on behalf of the estate of Christopher Phelan.

## ARGUMENT

I. **PLAINTIFF'S CUTPA CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS BECAUSE CHRISTOPHER PHELAN PURCHASED THE VEHICLE ON JULY 9, 1999**

As noted above, the Court has already held that any putative class member who "purchased or leased a Jeep Wrangler prior to July 17, 1999" is time-barred from pursuing a CUTPA claim against DCC. September 26, 2003 Order at 1. 2/ At the time the Court issued its Order, it was operating under the assumption that Christopher Phelan had purchased the Jeep Wrangler "[o]n or after July 17, 1999" as alleged in the Amended Complaint. Am. Comp. ¶ 24. However, it is now clear that plaintiff misstated the purchase date in the Amended Complaint and that the actual purchase date was July 9, 1999, as demonstrated by the following undisputed facts:

---

2/    Although the Court's order refers to "putative class members," the Court's holding applies equally to plaintiff as putative class representative. See Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974) (holding that the class representative must be a part of the class that he seeks to represent).

- Christopher Phelan signed the Retail Purchase Order for the 1994 Jeep Wrangler on **July 9, 1999**. [Exhibit A; Plaintiff's Answers and Objections to Defendant's First Set of Requests for Admission Dated October 22, 2003 ("RFA") No. 21 (attached as Exhibit B) (admitting authenticity of Retail Purchase Order).]

- The Retail Purchase Order for the 1994 Jeep Wrangler states that the vehicle was "to be delivered on or about" **July 9, 1999**. [Exhibit A.]

- Christopher Phelan wrote a personal check to Gallagher Buick in partial payment for the Jeep in the amount of $2,332.50, dated **July 9, 1999**. [Exhibit C; RFA No. 16 (admitting authenticity of check).]

- On **July 9, 1999**, Phelan endorsed a $10,000 check from NationsBank (who provided the loan for the vehicle) to Gallagher Buick for the balance of the purchase price of the Jeep. [Exhibit D; RFA No. 17 (admitting authenticity of NationsBank check).]

- Gallagher Buick issued a sales receipt that shows it received full payment of $12,332.50 from Christopher Phelan on **July 9, 1999**. [Exhibit E; RFA No. 15 (admitting authenticity of receipt).]

- Phelan signed the application for registration of the 1994 Jeep Wrangler on **July 9, 1999**. [Exhibit F; RFA No. 18 (admitting authenticity of the application for registration).]

- The application for registration of the 1994 Jeep Wrangler shows the "date of lien" and the "purchase date" as **July 9, 1999**. [Exhibit F.]

- The salvage title to the 1994 Jeep Wrangler shows the "purchase date" as **July 9, 1999**. [Exhibit G; RFA No. 19 (admitting authenticity of the salvage title).]

- The Used Vehicle Dealer Limited Warranty given to Christopher Phelan at the time of sale shows that the warranty for the 1994 Jeep Wrangler began to run on **July 9, 1999**.

[Exhibit H; RFA No. 20 (admitting authenticity of the Used Vehicle Dealer Limited Warranty).]

- Phelan's automobile insurance for the 1994 Jeep Wrangler became effective on **July 9, 1999**. [Exhibit I.]

- The Odometer Disclosure Statement shows the "date sold" and the "date of lien" as **July 9, 1999**. [Exhibit J.]

- Consistent with all of the sales documentation, James Gallagher, president of Gallagher Buick, testified that Phelan purchased the Jeep Wrangler on **July 9, 1999**. [Deposition of James T. Gallagher, June 25, 2003 ("Gallagher Dep.") at 6, 13-14 (relevant portions attached as Exhibit K).]

- Phelan took delivery of the Jeep Wrangler on **July 9, 1999**. [Deposition of Angela Phelan, June 24, 2002 at 34, 35 (relevant portions attached as Exhibit T) (testifying that Phelan took delivery of the vehicle on the day that he signed the purchase order and tendered payment).]

Despite this overwhelming evidence of the July 9 purchase date, plaintiff grasps at straws, asserting that the purchase was not "completed" until the lender released the funds to the dealer, an action that allegedly occurred on July 19, 1999. See Plaintiff's Answers and Objections to Defendant's Third Set of Interrogatories Dated October 22, 2003 No. 2 (cited portions attached as Exhibit L). Christopher Phelan arranged for an auto loan through E-Loan and was approved for and provided with a $10,000 blank draft to be used for the purchase of the vehicle. Plaintiff does not dispute that the NationsBank check was endorsed by Christopher Phelan and tendered to Gallagher Buick on July 9, the date he completed all of the sales paperwork and took delivery of the Jeep. RFA No. 17. The slender reed upon which plaintiff

relies is, instead, that the proceeds from the check were allegedly not actually transferred from NationsBank to Gallagher Buick's bank account until July 19, 1999. 3/ In short, plaintiff is attempting to avoid the statute of limitations by taking advantage of the "float" – i.e., the time between when a check is tendered and when it is paid by the payor's bank.

Although there do not appear to be any Connecticut cases on point, the Indiana Court of Appeals rejected a similar argument in the context of an insurance coverage dispute in O'Donnell v. American Employers Insurance Co., 622 N.E.2d 570, 572 (Ind. App. Ct. 1993) (attached as Exhibit N). In that case, Donald and Sonna Hummel executed a purchase order and a retail installment contract for the purchase of a Chevrolet Corsica from Raisor Pontiac on June 3, 1991. The Hummels gave a down payment of $624.50, which they paid by two personal checks: a check in the amount of $350 on June 3 and a check in the amount of $274.50 on June 4. Id. The Hummels took delivery of the vehicle on June 3. Two days later, on June 5, Donald Hummel was driving the Corsica when he collided with the plaintiffs' vehicle. Id.

On June 6, 1991, a day after the accident, the Hummels' $274.50 check was debited to their account and on June 7, 1991, the $350 check was debited. Id. Also on June 7, Raisor Pontiac assigned the retail installment contract to the Credit Union, which then remitted a check to Raisor Pontiac for $7,057.48, the amount financed by the Hummels. Id. The check from the Credit Union to Raisor Pontiac was not debited to the Credit Union's account until June 12, 1991, seven days after the accident. Id.

---

3/   On January 14, 2004 (two days before the discovery cut-off), plaintiff belatedly produced documents she had obtained from E-Loan, an online lender's clearinghouse, relating to Phelan's transaction. Due to their late production, no discovery relating to these documents has been taken, and they are not entirely self-explanatory. They do clearly evidence the fact that Phelan's loan was approved on July 1, 1999, and that the dealer documents relating to the July 9, 1999 purchase transaction were received by July 12, 1999. (Exhibit M). The Court should also note that the E-Loan documents show that Bank of America was the lender. Bank of America and NationsBank merged in the late 1990's, and now operate under the name Bank of America.

Plaintiffs sought to recover under Raisor Pontiac's insurance policies on the theory that Raisor Pontiac still owned the Corsica at the time of the accident because "final payment for the vehicle did not occur until two checks constituting a down payment were debited to the Hummels' account, which was after the accident." Id. at 572, 576. The plaintiffs also argued "that the sale was not complete until a check for the amount financed under the Installment Contract, which the Credit Union issued to Raisor Pontiac on June 7, 1991, was debited to the Credit Union's account on June 12, 1991." Id. at 576 n.10.

The court disagreed and held that "the Hummels made final payment for the vehicle prior to the accident." Id. at 576. The court reasoned that the "final payment for a motor vehicle is not determined by that moment . . . when the check is processed and actually paid by the payor bank." Id. Looking to the Uniform Commercial Code for guidance, the court noted that, under § 2-511 of the UCC 4/, "tender of payment is sufficient 'when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender.'" Id. (citation omitted). The Court further held that the UCC "acknowledges common commercial practice and the business reality that sales transactions are considered consummated when tender of payment is made by check followed by delivery of goods, or vice versa." Id. at 577. Thus, the court concluded that the "Hummels' tender of two checks and execution of the Installment Contract constituted final payment of the purchase price to Raisor Pontiac." Id.

Similarly, in this case, Christopher Phelan's purchase of the Jeep Wrangler was complete when he tendered payment to Gallagher Buick – in the form of his personal check and

---

4/   Connecticut, like Indiana, has adopted this section of the UCC without modification. See Conn. Gen. Stat. § 42a-2-511; Ind. Code § 26-1-2-511 (Indiana Code section attached as Exhibit O).

the check from NationsBank – and took delivery of the vehicle on July 9, 1999. 5/  To hold otherwise would not only be inconsistent with the principles of commercial law under the UCC, but would be contrary to the common understanding of when a sale is deemed to have occurred. Products are purchased with checks every day, and the fact that a check will not "clear" the buyer's account (and be credited to the seller's account) for several days is irrelevant to the date of purchase.  It is simply understood that when an individual tenders payment for a product – whether by cash, check, or credit card – that the individual has purchased the product and is free to do with it as he or she pleases.  Indeed, in this case, Christopher Phelan had a soft top installed on the Jeep Wrangler on July 15, 1999, four days before NationsBank allegedly paid the loan check.  See Exhibit R; Deposition of Korinna Zappala, July 15, 2003 at 20-21 (relevant portions attached as Exhibit S).  Thus, Phelan himself obviously believed that he was the owner of the vehicle and could alter it as he saw fit, regardless of when his checks cleared.  Moreover, Gallagher Buick also considered the sale final on July 9, 1999.  See Gallagher Dep., at 6, 13-14 (testifying that Phelan purchased the vehicle on July 9, 1999) (Exhibit K).  The fact that the bank funds were allegedly transferred on a later date is simply no basis for trumping the understanding of both buyer and seller that the sales transaction occurred on July 9.

---

5/     It is also beyond dispute that Phelan's loan with NationsBank was executed on July 9, 1999, when he endorsed the loan check. Phelan received two documents evidencing his loan agreement with NationsBank.  The first document is dated July 1, 1999, and shows that Phelan was approved for a loan up to $12,000.  See Exhibit P  The second document is dated July 17, 1999, and, as the cover letter to Phelan explains, is identical to the original loan agreement, except that it reflects the actual amount financed (which was $10,000).  See Exhibit Q.  Both documents make it clear that the loan was considered executed on the date on which the check was endorsed.  This is reflected in the language in the signature block, which references the endorsement of the check in lieu of Phelan's signature, as well as by the fact that the loan specifically states that interest was to accrue from the date that Phelan endorsed the check.  See Exhibits P and Q.

Plaintiff's singular (and desperate) focus on when the check cleared ignores all of the other evidence that shows the purchase occurred on July 9, 1999. There are numerous documents – many signed by Phelan – that expressly state that the purchase date was July 9, including the retail purchase order, the application for registration, the salvage title, the limited warranty, and the odometer disclosure statement. See Exhibits A, F, G, H & J. Thus, the totality of the evidence establishes beyond doubt that the sales transaction was fully consummated on July 9, 1999. Accordingly, plaintiff's CUTPA claim is time-barred and should be dismissed.

II. **PLAINTIFF'S CLAIM IS ALSO TIME-BARRED BECAUSE THE ALLEGED CUTPA VIOLATIONS COULD NOT HAVE OCCURRED ANY LATER THAN JULY 9, 1999**

Plaintiff's claim is also barred by the statute of limitations because any CUTPA violations occurred, if at all, no later than when Phelan purchased the Jeep Wrangler on July 9, 1999. 6/ Indeed, it is obvious that the purchase date is the absolute latest date on which the alleged CUTPA violations could have occurred because plaintiff must establish a causal connection between the allegedly unfair or deceptive acts and the alleged harm. See Abrahams v. Young & Rubicam, Inc., 692 A.2d 709, 712 (Conn. 1997) (holding that "in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* . . . that the prohibited act was the proximate cause of a harm to the plaintiff").

---

6/    DCC denies that it committed any CUTPA violations, and plaintiff has failed to produce any evidence that proves otherwise. Moreover, DCC disputes the notion that Phelan could have been deceived by any action or inaction on the part of DCC at the time that he purchased the vehicle. The fact is that Phelan purchased a used 1994 Jeep Wrangler from an independent dealership that is not affiliated in any way with DCC. See RFA Nos. 32-37. DCC was not a party to the sales transaction and had nothing to do with the price that was negotiated between the dealership and Christopher Phelan or any other aspect of the transaction. If plaintiff believes that Phelan paid an inflated price for the vehicle, her recourse is against Gallagher Buick, not DCC. Indeed, even if plaintiff could prove that DCC deceptively designed, manufactured, or marketed the subject vehicle, all such actions would have occurred in 1994 or before, and certainly not as late as 1999. Thus, there is simply no evidence that DCC committed any CUTPA violations at the time that Phelan purchased the vehicle.

In this case, plaintiff claims that Phelan was "harmed" by overpaying for his Jeep Wrangler based on DCC's allegedly deceptive acts. See Order on Motion for Partial Dismissal at 2 ("The factual allegations supporting Phelan's CUTPA claim regarding Jeep Wranglers allege no more than that DCC duped purchasers into paying more than they would have paid absent DCC's false representations."). Even if plaintiff could prove that Phelan was "duped into paying more" for his Jeep Wrangler by DCC, such deception was obviously complete (at the latest) when he purchased the vehicle on July 9, 1999. Indeed, anything DCC allegedly did after July 9, 1999, is irrelevant to Phelan's decision to purchase the vehicle, which had already occurred. Moreover, the date the funds were transferred by a third party, NationsBank, has no bearing on the date of any CUTPA violations. Thus, plaintiff's CUTPA claim is time-barred for this additional reason.

## CONCLUSION

The Court has held unequivocally that anyone who purchased or leased a Jeep Wrangler prior to July 17, 1999, is time-barred from asserting a CUTPA claim against DCC. The evidence indisputably establishes that Phelan purchased his 1994 Jeep Wrangler on July 9, 1999. Plaintiff's attempt to avoid the statute of limitations by focusing on the date that the loan check was allegedly paid by the lender, rather than when payment was tendered to the dealer and the vehicle delivered, is not supported as a matter of law or public policy and should be rejected. Thus, DCC requests that the Court grant its summary judgment motion and dismiss Count I of the plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

DAIMLERCHRYSLER CORPORATION

By:_____
   Daniel J. Krisch (Fed. Bar ID# CT21994)
    dkrisch@hsclaw.com
   HORTON, SHIELDS & CORIMIER, P.C.
   90 Gillett Street
   Hartford, Connecticut 06105
   (860) 522-8338
   (860) 728-0401 (facsimile)

   Terri S. Reiskin (Fed. Bar ID# CT24015)
    tsreiskin@hhlaw.com
   HOGAN & HARTSON L.L.P.
   555 Thirteenth Street, N.W.
   Washington, D.C. 20004
   (202) 637-5600
   (202) 637-5910 (facsimile)

   Lewis H. Goldfarb (Fed Bar ID# CT24014)
    lhgoldfarb@hhlaw.com
   HOGAN & HARTSON L.L.P.
   875 Third Avenue
   New York, New York 10022
   (212) 918-3000
   (212) 918-3100 (facsimile)

   Marie E. Chafe (Fed. Bar ID# CT20114)
    mchafe@cornellgollub.com
   Peter M. Durney (Fed. Bar ID# CT14569)
    pdurney@cornellgollub.com
   James P. Kerr (Fed. Bar ID# CT24142)
    jkerr@cornellgollub.com
   CORNELL & GOLLUB
   75 Federal Street
   Boston, Massachusetts 02110
   (617) 482-8100
   (617) 482-3917 (facsimile)

   Attorneys for Defendant
   DaimlerChrysler Corporation

## **CERTIFICATE OF SERVICE**

   I, Daniel J. Krisch, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this _____ day of February, 2004, a true and correct copy of the foregoing Memorandum of Law in Support of Defendant DaimlerChrysler Corporation's Motion for Summary Judgment on Count I of Plaintiff's Amended Complaint was served via first-class, postage pre-paid, U.S. Mail on:

| | |
|---|---|
| Steven E. Arnold, Esq.<br>Stanger & Arnold, LLP<br>29 South Main Street, Suite 325<br>West Hartford, Connecticut 06107<br> Attorney for Plaintiff | Christopher Miller<br>c/o Robinson Correctional Facility<br>285 Shaker Road<br>P.O. Box 1600<br>Enfield, Connecticut 06082<br> Third-Party Defendant |
| Marie E. Chafe, Esq.<br>Peter M. Durney, Esq.<br>James P. Kerr, Esq.<br>CORNELL & GOLLUB<br>75 Federal Street<br>Boston, Massachusetts 02110<br> Co-counsel for Defendant | Maurice Samuelian<br>Kathleen Samuelian<br>52 Mallard Avenue<br>East Hampton, Connecticut 06424<br> Third-Party Defendant |
| Lewis H. Goldfarb, Esq.<br>HOGAN & HARTSON L.L.P.<br>875 Third Avenue<br>New York, New York 10022<br> Co-counsel for Defendant | Rikki Timbo, Inc.<br>Agent for Service: Richard W. Tomc, Esq.<br>49 Main Street<br>Middletown, Connecticut 06457<br> Third-Party Defendant |
| Terri S. Reiskin, Esq.<br>HOGAN & HARTSON L.L.P.<br>555 Thirteenth Street, N.W.<br>Washington, D.C. 20004<br> Co-counsel for Defendant | |

                  _____
                  Daniel J. Krisch