IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

IN RE JEEP WRANGLER CLASS ACTION : 3:02 CV 1219 (JBA)

ANGELA PHELAN, ET AL.

v.

DAIMLERCHRYSLER CORPORATION : DATE: MARCH 12, 2004

RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION

The factual and procedural history behind this litigation is set forth in considerable detail in this Magistrate Judge's Ruling on Plaintiff's Motion to Compel, filed July 10, 2003 (Dkt. #66)["July 2003 Ruling"], this Magistrate Judge's Recommended Ruling on Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint, filed July 31, 2003 (Dkt. #70)["Recommended Ruling"], Judge Arterton's Order on Motion for Partial Dismissal of Plaintiff's Amended Complaint and Scheduling Order, filed September 26, 2003 (Dkt. #81)["September 2003 Order"], this Magistrate Judge's Ruling on Defendant's Second Motion to Compel and on Plaintiff's Motion for Extension of Time to Complete Product Discovery, filed October 22, 2003 (Dkt. #84)["October 2003 Ruling"], and this Magistrate Judge's Ruling on Pending Discovery Motions, filed January 26, 2004 (Dkt. #110)["January 2004 Ruling"], familiarity with all of which is presumed.

Briefly, on July 16, 2002, plaintiff Angela Phelan, Administratrix of the estate of Christopher Phelan, individually and on behalf of the class of all Jeep Wrangler owners, filed this action regarding a two-vehicle accident on January 18, 2000, in which her decedent was killed while driving his 1994 Jeep Wrangler. (Dkt. #1). An Amended Complaint was filed on October 16, 2002 (Dkt. #18), which alleges violation of the Connecticut Unfair Trade

Practices Act ["CUTPA"], CONN. GEN. STAT. § 42-110 *et seq.* (First Count) and the Connecticut Product Liability Act, CONN. GEN. STAT. § 52-572m *et seq.* (Third Count), claiming that the roll bar structure on the Jeep was defective.[1] The file has been referred to this Magistrate Judge for various pretrial purposes. (See Dkts. ##46, 55 & 69).

Under the Scheduling Order, filed on May 9, 2003 (Dkt. #57), class discovery was to commence upon the filing of the ruling on defendant's then pending Motion to Dismiss and was to be completed within ninety days thereof, and all product liability discovery was to be completed by July 15, 2003. (¶¶ 3 & 5).[2] Thereafter, the deadlines were extended so that all product liability discovery was to be completed by August 15, 2003. (See 6/23/03 endorsement on Dkt. #62).[3] On July 31, 2003, this Magistrate Judge filed her Recommended Ruling, which was approved and adopted by Judge Arterton on September 26, 2003 in the September 2003 Order, with modifications directed to an issue not raised by the parties in their underlying briefs. In the September 2003 Order, Judge Arterton directed the parties "to focus . . . on a critical issue of whether the alleged CUTPA violations regarding Phelan's 1994 Jeep Wrangler occurred prior to July 17, 1999. If so, Phelan's individual claim under CUTPA is time barred and she cannot be a proper representative of a class of individuals whose claims against [defendant] arise from alleged CUTPA violations occurring on or after July 17, 1999." (Id. at 1-2). Thus, "[i]n order to first determine whether

---

[1]Plaintiff's original Amended Complaint was filed on October 4, 2002. (Dkt. #16). The Second Count, which alleged that defendant's CUTPA violations resulted in the wrongful death of plaintiff's decedent, was dismissed by agreement in light of Gerrity v. R.J. Reynolds Tobacco Co., 263 Conn. 120 (2003). (See Dkt. #57, at ¶ 2).

[2]Plaintiff's Motion for Class Certification was to be filed within twenty days following the close of class discovery and defendant's Motion for Summary Judgment (based on Daubert) was to be filed by August 15, 2003. (Id. ¶¶ 4 & 6).

[3]The deadline for defendant's Motion for Summary Judgment also was postponed until September 15, 2003. (Id.). Such motion was filed that day. (Dkts. ##77-80).

plaintiff's CUTPA claim is time-barred," Judge Arterton ordered that class discovery remains stayed, and the parties were directed to conduct and conclude discovery on plaintiff's individual CUTPA claim and on plaintiff's ability to serve as a putative class representative by January 16, 2004. (Id. at 4). The October 2003 Ruling further extended the deadline for the completion of product liability discovery until December 31, 2003. (At 4 & 9-11). In accordance with the September 2003 Order, on February 13, 2004, defendant filed a Motion for Summary Judgment on Count One, addressed to the issue of statute of limitations. (Dkts. ##117-19).

On January 26, 2004, this Magistrate Judge filed the January 2004 Ruling, which addressed four discovery motions then pending before the Court. The January 2004 Ruling granted two of defendant's motions, absent objection, as plaintiff had failed to file a brief in opposition. (At 3-4, 12-13). On February 9, 2004, plaintiff filed the pending Motion for Reconsideration. (Dkt. #115).[4] Eight days later, defendant filed its brief in opposition. (Dkt. #120).[5]

For the reasons stated below, plaintiff's Motion for Reconsideration (Dkt. #115) is granted in part.

## I. DISCUSSION

As previously indicated, the pending Motion for Reconsideration concerns two defense motions which were granted, absent objection, in the January 2004 Ruling. The

---

[4] Two exhibits were attached: front page of Plaintiff's Opposition to Defendant's December 19, 2003 Motion to Preclude Plaintiffs' Evidence of Other Occurrences, dated January 12, 2004 (Exh. 1); and front page of Plaintiffs' Opposition to Defendant's Motion for Protective Order Regarding Plaintiffs' Deposition Discovery, dated January 12, 2004 (Exh. 2).

[5] Two exhibits were attached: copy of envelope, returned for postage (Exh. A); and copy of facsimile cover sheet from plaintiff's counsel, dated January 21, 2004, with last page of brief attached (Exh. B).

first was defendant's Motion for Protective Order, filed December 8, 2003. (Dkt. #97).[6] Plaintiff was granted an extension until January 12, 2004 to file a brief in opposition, over defendant's objection. (1/7/04 endorsement on Dkt. #104). No such brief was filed, although on January 15, 2004, plaintiff did file an Errata Sheet with multiple exhibits. (Dkt. #107).[7] The day after the January 2004 Ruling was filed, January 27, 2004, defendant filed a reply brief. (Dkt. #113).[8]

The second was defendant's Motion to Preclude Evidence of Other Occurrences, filed December 22, 2003. (Dkts. ##101-02).[9] Again, plaintiff failed to file a timely brief in opposition, although on January 22, 2004, defendant filed a reply brief. (Dkt. #108).

Attached as Exhs. 1-2 of plaintiff's Motion for Reconsideration (Dkt. #115) are the

---

[6]The following twenty-four exhibits were attached: copies of the twenty-two Notices of Deposition (Exhs. 1-22); copy of affidavit of Leon W. Neal, dated June 4, 2003 (Exh. 23); and copy of affidavit of Leon W. Neal, dated December 3, 2003 ["Neal December 2003 Aff't"](Exh. 24).

[7]The following eight exhibits were attached: deposition transcript of Leon Neal, taken on December 15, 2003 (Exh. 2); excerpt from deposition (Exh. 7); excerpt from deposition transcript of James Franklin Thornton, taken on July 7, 1993 (Exh. 8); excerpt from Thornton Deposition, taken on October 15, 1993 (Exh. 10); excerpt from Thornton Deposition, taken on November 4, 1999 (Exh. 11); excerpt from Neal Deposition, taken on October 5, 1999 (Exh. 12); copy of 1982 CJ-7 Roof Crush Resistance Test (Exh. 13); and copy of excerpts of defendant's Responses to Plaintiff's Third Set of Product Liability Requests for Production (Exh. 17).

[8]The following eight exhibits were attached: additional copies of plaintiff's Rule 30(b)(6) Notices of Deposition (Exhs. A & F); another copy of the Neal Deposition, taken on December 15, 2003 (Exh. B); copy of defendant's brief in opposition to plaintiff's Motion for Extension of Time, dated September 2, 2003 (Exh. C); copy of defendant's Supplemental Responses in Waitt v. Chrysler Motors Corp., dated August 9, 1999, pending in the New Britain Superior Court (Exh. D); chart of plaintiff's misinterpretations of defendant's witness testimony (Exh. E); copy of defendant's brief in opposition to plaintiff's motion to compel in Gillespie v. Daimlerchrysler, pending in Tennessee state court (Exh. G); and copy of Order, dated March 12, 2001, in the Gillespie litigation (Exh. H).

[9]The following three exhibits were attached to defendant's brief: copy of Plaintiff's Supplemental Answer to Defendant's Interrogatory No. 4, dated November 14, 2003 (Exh. 1); copy of this Magistrate Judge's October 2003 Ruling (Exh. 2); and copy of correspondence between counsel, dated December 5, 2003 (Exh. 3).

top pages of plaintiff's two briefs in opposition, both dated January 12, 2004 and both bearing a court filing stamp of January 12, 2004, at 4:58 p.m., done in the lobby of the Courthouse after the Clerk's Office closed at 4:00 p.m. For whatever reason, the originals of the two briefs were never filed with the Clerk's Office, and the Magistrate Judge never received a courtesy copy of either brief prior to the January 2004 Ruling. Attached as Exhs. A-B to defendant's brief in opposition (Dkt. #120) are a copy of an envelope from plaintiff's counsel, posted on January 12, 2004, indicating that the envelope was returned for postage, and a facsimile from plaintiff's counsel to defense counsel on January 21, 2004, to which was attached the last page of a brief.

When he forwarded a courtesy copy of the pending Motion for Reconsideration, plaintiff's counsel forwarded to the Magistrate Judge's Chambers, for the first time, copies of his two briefs. In order to protect the record, these copies are being docketed – Plaintiff['s] Opposition to Defendant's Motion for Protective Order Regarding Plaintiff['s] Deposition Discovery as Dkt. #127[10] and Plaintiff['s] Opposition to Defendant's December

---

[10]The following seventeen exhibits are attached: copies of correspondence between counsel, dated November 24, 2003 (Exh. 1); excerpt from the Neal Deposition, taken on December 15, 2003 (Exh. 2); excerpts from plaintiffs' brief filed in the Gillespie litigation (Exh. 3); copy of defendant's discovery responses in the Waitt litigation (Exh. 4); copy of plaintiff's affidavit in the Waitt litigation, and copies of correspondence between counsel in the Waitt litigation, dated March 24, April 9, August 14, and August 26, 1998 (Exh. 5); copy of plaintiff's motion in the Waitt litigation (Exh. 6); excepts from the Thornton Deposition, taken on November 27, 2000, in the Gillespie litigation (Exh. 7); excerpts from the Thornton Deposition, taken on July 7, 1993, in McNulty v. Chrysler Corp., pending in Massachusetts state court (Exh. 8); copy of Order in Dize v. Daimlerchrysler Corp., filed December 3, 2001, pending in Georgia state court (Exh. 9); excerpt from Thornton Deposition, taken on October 15, 1993, in the McNulty litigation (Exh. 10); excerpt from Thornton Deposition, taken on November 4, 1999, in Rogers v. Chrysler Corp., pending in Texas state court (Exh. 11); copy of Neal Deposition, taken on October 5, 1999, in the Rogers litigation (Exh. 12); excerpt from deposition transcript of Peter Chapman, taken on October 30, 2000, in the Gillespie litigation (Exh. 13); copies of photographs and excerpts from webpage, www.dcxevents.com (Exh. 14); copy of plaintiff's brief in the Gillespie litigation, dated November 2, 1999 (Exh. 15); copy of Order in the Gillespie litigation, dated November 27, 2000 (Exh. 16); and copy of defendant's discovery responses in the Waitt litigation, dated July 14, 2000 (Exh. 17).

19, 2003 Motion to Preclude Plaintiff['s] Evidence of Other Occurrences as Dkt. #126.[11]

A. DEFENDANT'S MOTION FOR PROTECTIVE ORDER (Dkt. #97)

Defendant's Motion for Protective Order concerns nineteen of the twenty-two deposition notices served on defendant on November 24 and December 4, 2003. (Dkt. #97, Exhs. 1-22). The Rule 30(b)(6) Notice of Deposition (Exh. 1) lists one hundred and ten subject matter areas. Defendant argues that these twenty-two deposition notices are untimely, oppressive, and burdensome, as they were served "on the eve of the discovery deadline," extended until December 31, 2003 (Dkt. #97, at 3-5), and the notices further violate Rule 30(a)(2)(A), which limits the number of depositions to ten per side, unless leave of the court is obtained. (Id. at 5). Defendant also argues that depositions of witness about vehicles other than the Jeep Wrangler (YJ) should be disallowed, in particular the Jeep Wrangler (TJ), the Jeep CJ, Mercedes-Benz Standards and Testing, vehicles equipped with integrated roof structures, and miscellaneous other vehicles. (Id. at 5-14). Defendant further contends that depositions of witnesses about the Federal Motor Vehicle Safety Standard ["FMVSS"] 216 activities unrelated to the Jeep Wrangler (YJ) should be disallowed (id. at 14-15), as should testimony concerning advertising and marketing of the Jeep Wrangler (YJ) (id. at 15-16), and defendant's document retention policies (id. at 16-17). In its brief, defendant represented that it was still willing to provide Rule 30(b)(6) witnesses to testify about the design and testing of the 1994 Jeep Wrangler (YJ), in particular Leon Neal and Richard Friday, who would "address appropriate subject matter areas identified in the Rule 30(b)(6) notice." (Id. at 2-3).

In her brief in opposition, plaintiff argues that her Notices of Deposition were timely

[11] Two exhibits were attached: list of lawsuits, dated March 4, 2003 (Exh. 1); and supplemental list of lawsuits, dated June 27, 2003 (Exh. 2).

in that they were served four to five weeks before the discovery deadline (Dkt. #127, at 1-2), Rule 30(a)(2)(A) may not be applicable here if the parties can reach an agreement on the individuals to be deposed (id. at 3-5), plaintiff's independent discovery efforts have proven that defendant's non-compliance is intentional and willful (id. at 6-9), plaintiff is entitled to discovery regarding the Jeep Wrangler (CJ), (YJ), and (TJ) (id. at 10-15), and plaintiff is entitled to discovery regarding the Mercedes-Benz standards and testing, FMVSS 216, and defendant's document retention policy (id. at 16-19).

In its reply brief, defendant again argues that plaintiff's Rule 30(b)(6) deposition notice is oppressive (Dkt. #113, at 2-4); that defendant's discovery responses here were timely and thorough and that the three other lawsuits on which plaintiff relies are irrelevant (id. at 4-7); that testimony regarding the Jeep CJ, Jeep Wrangler (TJ), Mercedes-Benz testing and standards, FMVSS 216 activities and document retention policy are irrelevant (id. at 7-13).

1. JEEP WRANGLER (TJ)

Two of plaintiff's Notices of Deposition, including the Rule 30(b)(6) notice (Dkt. #97, Exhs. 1 & 9) seek testimony regarding the Jeep Wrangler (TJ). (Dkt. #97, at 6-7). The issue of relevant Jeep Wrangler models has been addressed extensively in the July 2003 Ruling, the October 2003 Ruling, and the January 2004 Ruling (at 5-10). In addition to information regarding the Jeep Wrangler (YJ) for the model years 1987 through 1995 (which defendant previously agreed to produce), the January 2004 Ruling required defendant to provide information regarding the Jeep Wrangler (TJ) through model year 1999, with such production to occur by February 20, 2004. (At 5,10 & 12). Thus, plaintiff is entitled to depose defendant's representatives to the same extent as set forth in the January 2004 Ruling.

2. JEEP CJ MODELS

Plaintiff seeks to depose defendant's Rule 30(b)(6) representative regarding the Jeep CJ-5, which was produced from model years 1955 through 1983, and the Jeep CJ-7, which was produced from model years 1976 through 1986. (Neal December 2003 Aff't, ¶5; Dkt. #97, at 9 & Exh. 1). Unlike the Jeep Wrangler (YJ), Jeep CJ vehicles do not have any structure connecting the windshield and the main hoop of the roll bar; the rear braces also run differently between the two models. (Neal December 2003 Aff't, ¶6; Dkt. #97, at 9-10). Thus, defendant contends that "[t]hese differences make the design configuration of the upper body structures of the Jeep CJ vehicles substantially different than the upper body structure of the 1994 Jeep Wrangler (YJ)." (Neal December 2003 Aff't, ¶7).

Unlike her expert testimony with regard to the Jeep Wrangler (TJ), plaintiff relies upon testimony of defendant's employees in lawsuits pending in the state courts of Tennessee, Massachusetts and Texas. (Dkt. #127, Exhs. 7, 8, 10, 12, 13; Dkt. #127, at 10-13). Defendant contends that plaintiff has "misquote[d] and erroneously interpret[ed]" these depositions. (Dkt. #113, at 7-8 & Exh. E). Such testimony, even if it were helpful to plaintiff, is insufficient to permit plaintiff, at this late date, to start exploring entirely new models which never surfaced in discovery before.

3. MERCEDES-BENZ STANDARDS AND TESTING

In one of plaintiff's Notices of Deposition, she seeks testimony regarding roll over testing done by Mercedes-Benz, Mercedes-Benz roof crush standards, or roof strength requirements for SUV's, documents and videos relating to Mercedes-Benz SUV roof strength, and the 2003 Mercedes-Benz SL convertible with an automatic rollbar. (Dkt. #97, at 10 & Exh. 2). As defendant has explained, four years after the manufacture of the Jeep Wrangler (YJ) at issue here, Chrysler Corporation was merged into Daimler-Benz AG, a

German company, changed its name to DaimlerChrysler Corporation, and became a subsidiary of the newly formed DaimlerChrysler AG. (Dkt. #97, at 10-11). Defendant argues that the testimony sought by plaintiff "cannot possibly have relevance to the 1994 Jeep Wrangler (YJ)." (Dkt. #97, at 11-12).

Plaintiff counters that the Mercedes-Benz standards and testing are relevant in determining "industry standards," and incorporates by reference a brief and a one-page order in a lawsuit pending in the state court of Tennessee. (Dkt. #127, at 16-17 & Exhs. 15-16). However, as defense counsel has indicated, that order was later vacated. (Dkt. #113, at 9-10 & Exh. H).

This Court cannot see the relevancy of this testimony, particularly since Mercedes-Benz is a luxury end vehicle not likely to create "industry standards."[12]

4. FMVSS 216 ACTIVITIES UNRELATED TO JEEP WRANGLER (YJ)

In her Rule 30(b)(6) Notice of Deposition, plaintiff seeks detailed testimony regarding FMVSS 216 activities, some of which date back to 1971. (Dkt. #97, at 14-15 & Exh. 1). Defendant represents that although the Jeep Wrangler (YJ) was never subject to FMVSS 216, the roll bar structure was tested on several occasions using FMVSS 216 as a guideline, and defendant has produced documents relating to that testing and has scheduled the deposition of a company witness to testify about same. (Dkt. #97, at 15). Defendant, however, objects to any other testimony regarding FMVSS 216. (Id.).

As in Section I.A.2 supra, plaintiff relies upon depositions taken in the state courts of Tennessee, Massachusetts and Texas that defendant knew that FMVSS 216 was an inadequate test of roof crush strength. (Dkt. #127, Exhs. 7, 8, 10, 11; Dkt. #127, at 17-19).

[12]In its brief, defendant also addresses vehicles equipped with integrated roof structures and other vehicles (Dkt. #97, at 12-14 & Exh. 1). In that plaintiff does not discuss these issues in her brief, the Court will assume that plaintiff is not pursuing these areas of testimony.

Similarly, defendant argues that plaintiff has "misquote[d] and misinterpret[ed] much of the testimony." (Dkt. #113, at 10-12 & Exh. E). And as in Section I.A.2 supra, such testimony, even if it were helpful to plaintiff, is insufficient to permit plaintiff, at this late date, to start exploring entirely new models which never surfaced in discovery before.[13]

5. DEFENDANT'S DOCUMENT RETENTION POLICIES

In her Rule 30(b)(6) Notice of Deposition, plaintiff also seeks testimony about defendant's record retention policies, in that plaintiff has "repeatedly implied that [defendant] has either fabricated documents or hidden or destroyed documents in connection with this case" and there is "no support for [p]laintiff's false implications concerning [defendant's] actions in this case." (Dkt. #97, at 16 & Exh. 1). Plaintiff contends that testimony regarding defendant's document retention policy is necessary because defendant "has admitted that it engaged in the voluntary destruction of documents that may be relevant to this case." (Dkt. #127, at 19 & Exh. 17). As defendant appropriately points out in its reply brief (Dkt. #113, at 12-13), the exhibit to which plaintiff refers says no such thing, and thus this testimony is unnecessary.

6. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion for Protective Order (Dkt. #97) is denied with respect to testimony regarding the Jeep Wrangler (TJ) through model year 1999 and is granted in all other respects.[14] Any and all depositions on this limited issue shall be completed **on or before April 16, 2004**.

---

[13]In its brief, defendant also addresses deposition testimony concerning advertising and marketing of the Jeep Wrangler (YJ). (Dkt. #97, at 15-16 & Exh. 1). In that plaintiff does not discuss this issue in her brief, the Court will assume that plaintiff is not pursuing this area of testimony.

[14]Given this conclusion, there is no need to address the other issues raised in the parties' briefs.

B. DEFENDANT'S MOTION TO PRECLUDE EVIDENCE OF OTHER OCCURRENCES (Dkt. #101)

This motion has its genesis in the October 2003 Ruling (at 4-7), which ordered plaintiff, by November 14, 2003, to "provide the detailed information requested in Interrogatory No. 4, based upon the information provided by defendant to date, bearing in mind plaintiff's obligation to provide supplemental responses when and if additional information is forthcoming from defendant, as ordered by the Court." (At 7)(footnote omitted).

Plaintiff served her Supplemental Answer (her third such answer) on November 14, 2003. (Dkt. #102, Exh. 1). In this motion, defendant contends that this response is still not complete, in that it fails to provide the name and address of any witness plaintiff expects to call at trial, the make, model year, and identification number of each vehicle involved in any such accidents, the specific facts and circumstances of each such accident, the substance and facts and opinions to which each witness is expected to testify, and the identity of any documents in plaintiff's possession, custody, or control relating to any such occurrences. (Dkt. #102, at 2-3). Instead, plaintiff simply refers to three other lawsuits and Leon Neal. (Id. at 4-5 & Exh. 1). Thus, defendant argues that plaintiff's Supplemental Response "is plainly not in compliance with the October . . . Ruling." (Dkt. #102, at 5-7).

In her brief in opposition (Dkt. #126), plaintiff attempts to shift the blame to defendant, in that defendant failed to adequately respond to plaintiff's Interrogatory No. 10, which seeks information regarding other accidents involving the Jeep Wrangler. (At 1-3). In May 2003, defendant provided a list of four lawsuits, limited to 1994 Jeep Wranglers, and two accidents not resulting in litigation; in June 2003, defendant produced a list of seventy-five additional lawsuits, involving Jeep Wrangler (YJ) from model years 1986 through 1995. (Id. at 3 & Exhs. 1-2).

In its reply brief (Dkt. #108), defendant emphasizes that its responses "have been timely and complete." (At 1).

As the Magistrate Judge observed in the October 2003 Ruling, plaintiff "has had more than ample time to carefully analyze the supplemental information and materials provide to her by defendant." (At 6). Accordingly, defendant's Motion to Preclude (Dkt. #101) is granted, unless plaintiff files, **on or before April 2, 2004**, a Second Supplemental Response fully compliant with the October 2003 Ruling.[15]

## II. CONCLUSION

Accordingly, for the reasons stated above, plaintiff's Motion for Reconsideration (Dkt. #115) is granted in part such that: (a) defendant's Motion for Protective Order (Dkt. #97) is denied with respect to testimony regarding the Jeep Wrangler (TJ) through model year 1999 and is granted in all other respects, and (b) defendant's Motion to Preclude (Dkt. #101) is granted, unless plaintiff files, **on or before April 2, 2004**, a Second Supplemental Response fully compliant with the October 2003 Ruling.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to**

[15]As this Magistrate Judge held in the January 2004 Ruling (at 10), defendant may file a Motion for Attorney's Fees and Costs regarding this motion, after the long-awaited conclusion of discovery in this case.

**Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**[16]

Dated at New Haven, Connecticut, this 12th day of March, 2004.

______/s/_________________
Joan Glazer Margolis
United States Magistrate Judge

[16]If either counsel believe a continued settlement conference before this Magistrate Judge would be productive, he is to contact Chambers accordingly.