IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------x
                                             :

IN RE JEEP WRANGLER CLASS ACTION    :     3:02 CV 1219 (JBA)
                                             :

ANGELA PHELAN, ET AL.    :
                                             :

v.    :
                                             :

DAIMLERCHRYSLER CORPORATION    :     DATE: MARCH 31, 2004
                                             :

-------------------------------------------------------x

## RECOMMENDED RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF PLAINTIFF'S AMENDED COMPLAINT

The factual and procedural background of this case is detailed in this United States Magistrate Judge's Recommended Ruling on Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint, dated July 31, 2003 ["July 2003 Ruling"] (Dkt. #70) and in United States District Judge Janet Bond Arterton's Order on Motion for Partial Dismissal of Plaintiff's Amended Complaint and Scheduling Order, dated September 26, 2003 ["September 2003 Ruling"](Dkt. #81), familiarity with which is presumed.

On February 13, 2004, in accordance with Judge Arterton's September 2003 Ruling, defendant filed the pending Motion for Summary Judgment on Count I of Plaintiff's Amended Complaint, Local Rule 56(a)1 Statement and brief in support. (Dkts. ##117-119).[1]

---

[1] Attached to Dkt. #119 are the following twenty exhibits: copy of Retail Purchase Order, dated July 9, 1999 ["Purchase Order"](Exh. A); copy of Plaintiffs' Answers and Objections to Defendant's First Set of Requests for Admission Dated October 22, 2003, dated November 24, 2003 ["Plaintiff's Answers"](Exh. B); copy of check number 274, dated July 9, 1999 ["Check No. 274"](Exh. C); copy of $10,000 loan check, from Christopher Phelan to Gallagher Buick, dated July 1, 1999 and faxed July 9, 1999 (Exh. D); copy of two payment invoices, dated July 7 & 9, 1999 ["Sales Receipt"](Exh. E); copy of registration, dated July 9, 1999 ["Registration"](Exh. F); copy of title, dated July 9, 1999 ["Salvage Title"](Exh. G); copy of warranty, dated July 9, 1999 ["Limited Warranty"](Exh. H); copy of insurance card, effective July 9, 1999 ["Insurance Card"](Exh. I); copy of re-assignment of ownership, dated July 9, 1999 ["Odometer Disclosure"](Exh. J); copy of deposition of James T. Gallagher, taken on June 25, 2003 (Exh. K); copy of Plaintiffs' Answers and Objections to Defendant's Third Set of Interrogatories Dated October 22, 2003, dated November 24, 2003 (Exh. L); copy of declaration of custodian of records,

On March 5, 2004, plaintiff filed its brief in opposition and Local Rule 56(a)2 Statement

(Dkts. ##123-24),[2] as to which defendant filed its reply brief on March 19, 2003. (Dkt. #132).

For the reasons stated below, defendant's Motion for Summary Judgment on Count

I of Plaintiff's Amended Complaint (Dkt. #117) is granted.

## I. FACTUAL SUMMARY

The factual summary is based on defendant's Local Rule 56(a)1 Statement of Facts

["Defendant's Statement"], plaintiff's Local Rule 56(a)2 Statement of Facts ["Plaintiff's

───────────────────

dated January 8, 2004 and copy of plaintiff's E-Loan Application, dated July 1, 1999 (Exh. M); copy of case law (Exh. N); copy of statute (Exh. O); copy of loan approval correspondence, dated July 1, 1999 ["Approval"](Exh. P); copy of final loan agreement, dated July 20, 1999 ["Agreement"](Exh. Q); copy of invoice, dated July 18, 1999 ["Invoice"](Exh. R); copy of deposition of Korinna Zappala, taken on July 15, 2003 ["Zappala Depo."](Exh. S); and copy of deposition of Angela Phelan, taken on June 24, 2002 in a related state court case ["Plaintiff's Depo."](Exh. T).

[2]Attached to Dkt. #123 are the following twenty-seven exhibits: copy of correspondence from NationsBank to Christopher Phelan, dated July 1, 1999 (Exh. 1); copy of CarFinance.com Approval Package (Exh. 2); another copy of $10,000 loan draft (Exh. 3); another copy of declaration of custodian of records and credit application of E-Loan, Inc. (Exh. 4); copy of report of American Motors Corporation, Safety Laboratory FMVSS 216 Roof Crush Resistance, dated March 6, 1981 (Exh. 5); copy of CJ Windshield Structure Test, dated December 14, 1982 (Exh. 6); copy of correspondence from Chrysler Corporation to National Highway Traffic Safety Administration, dated March 5, 1990 (Exh. 7); copy of correspondence from defendant DaimlerChrylser to Federal Highway Traffic Safety Administration, dated December 3, 2001, regarding FMVSS 216, Roof Crush Resistance, Request for Comments (Exh. 8); copy of minutes from defendant's Engineering Safety Committee, dated January 19, 1989 (Exh. 9); copies of defendant's memorandum, dated February 2, 1989, and copy of correspondence from Chrysler Motors to National Highway Traffic Safety Administration, dated January 30, 1989 and attached chart (Exh. 10); copy of Intermediate Range CJ Program Review (Exh. 11); copy of Market Research, dated November 3, 1982 (Exh. 12); copy of CJ Freshening Program, Market Research Results (Exh. 13); copy of CJ Freshening Program, Market Research, Overview Summary (Exh. 14); copy of deposition transcript of James Thornton, taken on November 27, 2000 in a Tennessee state court action, Gillespie v. Daimler Chrysler Corp., No. 7660-9 (Exh. 15); copy of CJ Forward Plans Review "1983-1990", dated July 28, 1982 (Exh. 16); copy of sketch of "Reworked CJ-7" (Dkt. 17); copy of sketch of "Proposed Rear 3-Pt Belt System" for Jeep Wrangler (Exh. 18); copy of engineer report, dated September 4, 1969 (Exh. 19); copy of General Motors Engineering Staff Report No. PG-23219 (Exh. 20); copy of deposition transcript of James Thornton, taken on July 7, 1993 and October 15, 1993, in a Massachusetts state court action, McNulty v. Chrysler Corp., No. 91-00691, (Exhs. 21-22); copy of deposition transcript of James Thornton taken on November 4, 1999, in a Texas state court action, Rogers v. Chrysler Corp., No. 98-1779 (Exh. 23); copy of deposition transcript of Leon Neal, taken on October 5, 1999, in a Texas state court action, Rogers v. Chrysler Corp., No. 98-1779 (Exh. 24); copy of Jeep 1990 Marketing Action Plan (Exh. 25); copy of Jeep News website, dated March 3, 2004 (Exh. 26); and copy of print advertisements for Jeep Wrangler (Exh. 27).

Statement"] and documents cited therein and consequently does not represent factual findings of the Court.

_____On July 6, 1999, Christopher Phelan agreed to purchase a used 1994 Jeep Wrangler for $11,500 from Gallagher Buick-Pontiac-GMC, Inc., which is not an authorized DaimlerChrysler Corporation dealer. (Defendant's Statement, ¶¶ 1-3; Plaintiff's Statement, ¶¶ 1-3; Plaintiff's Answers, Nos. 5, 32, 34-35 & 37). The next day, Christopher Phelan paid a deposit of $100 toward the purchase of the 1994 Jeep Wrangler to Gallagher Buick. (Defendant's Statement, ¶ 4; Plaintiff's Statement, ¶ 4; Plaintiff's Answers, No. 9; see also Plaintiff's Answers, No. 11).

Christopher Phelan wrote a personal check to Gallagher Buick in the amount of $2,332.50, dated July 9, 1999. (Defendant's Statement, ¶ 5; Plaintiff's Statement, ¶ 5; Plaintiff's Answers, No. 16; Check No. 274). That same day, Gallagher Buick issued a sales receipt that shows it received $12,332.50 from Christopher Phelan. (Defendant's Statement, ¶ 7; Plaintiff's Statement, ¶ 7; Plaintiff's Answers, No. 15; Sales Receipt). Also, on July 9, 1999, Christopher Phelan signed the Retail Purchase Order for the 1994 Jeep Wrangler, which states that the vehicle was "to be delivered on or about" July 9, 1999. (Defendant's Statement, ¶¶ 8-9; Plaintiff's Statement, ¶¶ 8-9; Plaintiff's Answers, No. 21; Purchase Order).

On July 9, 1999, Christopher Phelan signed the application for registration of the 1994 Jeep Wrangler and the application shows the "date of lien" and "purchase date" as July 9, 1999. (Defendant's Statement, ¶¶ 10-12; Plaintiff's Statement, ¶¶ 10-12; Plaintiff's Answers, No. 18; Registration). The salvage title for the 1994 Jeep Wrangler also shows a purchase date of July 9, 1999. (Defendant's Statement, ¶ 13; Plaintiff's Statement, ¶ 13; Plaintiff's Answers, No. 19; Salvage Title). Additionally, the Used Vehicle Limited Warranty

3

given to Christopher Phelan shows that the warranty began on July 9, 1999. (Defendant's Statement, ¶ 14; Plaintiff's Statement, ¶ 14; Plaintiff's Answers, No. 20; Limited Warranty). Phelan's automobile insurance for the 1994 Jeep Wrangler also became effective on July 9, 1999. (Defendant's Statement, ¶ 15; Plaintiff's Statement, ¶ 15; Insurance Card). The Odometer Disclosure Statement given to Christopher Phelan shows the "date sold" and the "date of lien" as July 9, 1999. (Defendant's Statement, ¶ 16; Plaintiff's Statement, ¶ 16; Odometer Disclosure).

On July 1, 1999, Christopher Phelan received a loan agreement or letter of credit which was revised on July 17, 1999 and which provided that interest would accrue from the date Christopher Phelan endorsed the check and such endorsement constitutes an agreement, in lieu of his signature. (Approval; Agreement). Christopher Phelan took delivery of the 1994 Jeep Wrangler on July 9, 1999. (Defendant's Statement, ¶ 21; Plaintiff's Statement, ¶ 21; Plaintiff Depo. at 34-35). On July 15, 1999, Phelan had a soft top installed on the 1994 Jeep Wrangler at Burnside Jeep Eagle. (Defendant's Statement, ¶ 22; Plaintiff's Statement, ¶ 22; Invoice; Zappala Depo.).

## II. DISCUSSION

The standard for summary judgment is well-established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(citation omitted). Upon motion, after adequate time for discovery, Rule 56(c) mandates the entry of summary judgment against a party

4

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." FED. R. CIV. P. 56(c). However, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citation omitted). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248 (citation omitted). A "material fact" is a disputed fact the resolution of which will affect the "outcome of the suit under the governing law." Id. A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party moving for summary judgment must "carry its burden of showing the absence of any genuine issue of fact." Adickes v. S.H. Kress & Co., 398 U.S. 144, 153

5

(1970). "On summary judgment the inferences to be drawn from the underlying facts contained in the [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion.'" Adickes, 398 U.S. at 158-59, quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

In the First Count of her Amended Complaint, plaintiff asserts that defendant has and continues to commit unfair or deceptive acts or practices in violation of the Connecticut Unfair Trade Practices Act ["CUTPA"] in the conduct of its design, manufacture, marketing, advertising, sale or lease of Jeep Wrangler series model vehicles since 1979, the result of which caused plaintiff and the class to suffer damages from the loss of the benefit of their bargain, loss in market value of their Jeep Wranglers because there is no adequate roll bar or hardtop roof rollover safety protection, and loss of the use of the money that they overpaid for their Jeep Wranglers. (Dkt. #18, at ¶¶ 18, 22-23). In defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint, defendant contended, inter alia, that plaintiff's CUTPA claims on behalf of the class are barred by the statute of limitations and the statute of limitations has not been tolled. (Dkt. #64, at 19-21).

As stated in this Magistrate Judge's July 2003 Ruling:

CUTPA provides that an action must be brought within three years after the occurrence of a violation of CUTPA, and the start of the limitation period shall not be delayed until the cause of action has accrued or the injury has occurred. CONN. GEN. STAT. § 42-110g(f); see Fichera v. Mine Hill Corp., 207 Conn. 204, 212-13 (1988). According to plaintiff, Christopher Phelan purchased his 1994 Jeep Wrangler on or after July 17, 1999. (Dkt. #18, at ¶ 24). Three years later, plaintiff commenced this action on July 17, 2002. (Dkt. #4). Hence, any CUTPA violation must have occurred on or after July 17, 1999 in order to fall within the three year period. . . . Class members . . . who purchased their vehicles before July 17, 1999 are barred from pursuing the claims asserted in the First Count, unless the statute of limitations is tolled by defendant's continuing course of wrongful conduct or unless plaintiff can demonstrate, pursuant to CONN. GEN. STAT. § 52-595, that defendant fraudulently concealed from plaintiff the existence of its CUTPA cause of action. See Fichera, 207 Conn. at 208, 213-14. An invocation of § 52-595 would toll the statute of limitations until the time when the person entitled to

6

sue first discovers the existence of the cause of action.

(At 16-17)(footnotes omitted).  This Magistrate Judge concluded that:

> plaintiff and class members who purchased their new or used Jeep Wrangler
> vehicles on or after July 17, 1999 have made allegations of unfair trade
> practices sufficient to preclude dismissal of this action based on the statute
> of limitations.  However, <u>class members who purchased their vehicles before
> July 17, 1999 are time-barred from pursuing claims asserted in the First Count
> of the Amended Complaint as the statute of limitations has not been tolled</u>.

(At 20)(emphasis in original).

Judge Arterton, in her September 2003 Ruling, approved and adopted the July 2003

Ruling and in doing so,

> focus[ed] the parties on a critical issue of whether the alleged CUTPA
> violations regarding Phelan's 1994 Jeep Wrangler occurred prior to July 17,
> 1999.  If so, Phelan's individual claim under CUTPA is time barred and she
> cannot be a proper representative of a class of individuals whose claims
> against [defendant] arise from alleged CUTPA violations occurring on or after
> July 17, 1999.

(At 1-2).

In her September 2003 Ruling, Judge Arterton directed the parties to "conduct and

conclude discovery" on the issue of plaintiff's individual CUTPA claim and plaintiff's ability to

serve as putative class representative, and directed defendant to file its "motion for summary

judgment on statute of limitations grounds directed to Count One" by February 16, 2004.  (At

4-5).  Defendant's pending motion followed accordingly.

_____Defendant now asserts that plaintiff's CUTPA claim is barred by the statute of

limitations because Christopher Phelan purchased the vehicle on July 9, 1999 and the

alleged CUTPA violation could not have occurred any later than July 9, 1999.  (Dkt. #119,

at 4-11).  In response, plaintiff contends that Christopher Phelan's CUTPA action did not

accrue until he overpaid for his 1994 Jeep Wrangler and that (1) the "overpayment" occurred

when the letter of credit was honored and paid by NationsBank; and (2) the title to the 1994

Jeep Wrangler did not transfer from Gallagher Buick to Christopher Phelan until the letter of credit was honored and paid.  (Dkt. #123, at 3-8).  Plaintiff also contends that defendant's alleged fraudulent concealment and continuing course of conduct tolled the statute of limitations until on or after the date of Christopher Phelan's fatal accident.  (Id. at 8-24).

A. STATUTE OF LIMITATIONS APPLICABLE TO PLAINTIFF'S CUTPA CLAIM

Plaintiff alleges that the "earliest date the statute of limitations for the . . . CUTPA action may have commenced running is July 19, 1999, the date when Chris[topher] Phelan, through his lender, NationsBank, honored and paid the letter of credit to the car dealer, Gallagher Buick . . ., to complete the purchase of Chris[topher] Phelan's Jeep Wrangler." (Dkt. #123, at 4-5).  Defendant asserts that plaintiff's CUTPA claim is barred because the statute of limitations began to run on July 9, 1999, the date when Christopher Phelan paid for and took delivery of the vehicle.  (Dkt. #119, at 4-10).  Defendant also points to other documents which evidence that the purchase date was July 9, 1999, including the Retail Purchase Order, the application for registration, the salvage title, the limited warranty, and the Odometer Disclosure Statement.  (Id. at 5-6 & 10).

Plaintiff's attempt to forestall the date of purchase of the 1994 Jeep Wrangler to the date when his lender, NationsBank, honored and paid the letter of credit to the car dealer, Gallagher Buick, is inconsistent with the Uniform Commercial Code ["UCC"], as adopted in Connecticut and interpreted in subsequent case law.  CONN. GEN. STAT. § 42a-2-401(2)[3] reads, in relevant part" "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of goods. . . ."  Moreover, "[a]lthough § 2-401(2) begins with the phrase '[u]nless otherwise explicitly agreed,' the prior subsection places limits on the parties' contractual

---

[3]The Connecticut statutory enactment parallels the UCC version.

freedom. Specifically, § 2-401(1) negates any attempt to forestall passage of title beyond the moment of final delivery . . . ." In re Bosson, 432 F. Supp. 1013, 1021 n.24 (D. Conn. 1977).

Plaintiff does not refer to any contract between the decedent and Gallagher Buick which purported to transfer title of the 1994 Jeep Wrangler at a time other than final delivery. The Retail Purchase Order, application for registration, and Odometer Disclosure Statement all list July 9, 1999 as the date of purchase, and all indicate that the decedent took delivery on the same day. (Defendant's Statement, ¶¶ 8-12, 16 & 21; Plaintiff's Statement, at ¶¶ 8-12, 16 & 21; Plaintiff's Answers, No. 18 & 21; Registration; Purchase Order; Odometer Disclosure). Thus, in the "[a]bsen[ce of] an effective agreement to the contrary, . . . title passed out of [the car dealership] at the moment when the seller 'completed its performance,' that is, at the moment when the dealer's representative handed the car keys to [the buyer]." In re Bosson, 432 F. Supp. at 1021.

Indeed, plaintiff agreed that Christopher Phelan had a soft top installed on the 1994 Jeep Wrangler on July 15, 1999, which negates plaintiff's contention that Phelan did not consider himself the owner of the vehicle until the proceeds of the NationsBank check endorsed by Phelan were transferred from NationsBank to Gallagher Buick's bank account on July 19, 1999. (Defendant's Statement, ¶ 22; Plaintiff's Statement, ¶ 22; Invoice). In cases where there is no contrary agreement, title passes as soon as the buyer takes possession: "Although the parties might have provided differently by contract, they neglected to do so, and in such cases the Code specifies the outcome as a matter of law." In re Bosson, 432 F. Supp. at 1021. Therefore, the UCC, as adopted in Connecticut, is dispositive and Phelan's CUTPA claim is barred by the statute of limitations because the statute of limitations relating to the CUTPA action would have begun to run on July 9, 1999, the date

9

of purchase when Phelan took possession of the 1994 Jeep Wrangler, not July 19, 1999, the date when NationsBank honored and paid the letter of credit to Gallagher Buick, to complete the purchase.

### B. TOLLING OF THE STATUTE OF LIMITATIONS

Plaintiff reasserts that defendant's fraudulent concealment and continuing course of conduct tolled the statute of limitations until on or after the date of Christopher Phelan's fatal accident. (Dkt. #123, at 8-24). This Magistrate Judge's July 2003 Ruling held that plaintiff's failure to allege recent wrongful conduct related to the alleged prior wrongful conduct bars a tolling of the statute of limitations under the continuing course of conduct doctrine (at 17-18), and plaintiff failed to allege any facts which, if proven, could show that the defendant fraudulently concealed its alleged unfair trade practices. (At 18-20). Judge Arterton's September 2003 Ruling did not alter the Magistrate Judge's July 2003 Ruling on plaintiff's tolling claims as Judge Arterton clearly held that "[t]he Magistrate Judge correctly rejected plaintiff's tolling arguments"; plaintiff's argument that defendant's "continued use of the same fraudulent scheme that had lured a particular purchaser to ensnare other consumers in previous, the same, and subsequent years is unavailing"; and "[w]rongful conduct which simply induced overpayment . . . does not create an ongoing relationship . . . .[which] justifies permitting suit beyond the three year period. . . ." (At 1-3).

### III. CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment on Count I of Plaintiff's Amended Complaint (Dkt. #117) is granted.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v.

Secretary, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

      Dated at New Haven, Connecticut, this 31st day of March, 2004.


                      _____/s/_____
                      Joan Glazer Margolis
                      United States Magistrate Judge