UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Angela PHELAN, Administratrix of :
   the Estate of Christopher      :
   Phelan, Class Member, and      :
   Individually, plaintiff,       :
v.                                 :  NO. 3:02cv1219 (JBA)
                                   :
DAIMLER CHRYSLER Corporation,      :
   defendant.                     :

FILED
JUN 28  11 02 AM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

### Ruling on Motion for Summary Judgment [Doc. #117][1]

After de novo review, Magistrate Judge Joan Glazer Margolis' recommended ruling [Doc. #134] is approved and adopted with the expansions set forth below. See Fed. R. Civ. P. 72(b). Accordingly, defendant Daimler Chrysler Corporation's ("DCC") motion for summary judgment [Doc. #117] is GRANTED.

Count one of plaintiff Angela Phelan's amended complaint alleges generally that, beginning in April 1979 and continuing to the present, DCC has committed and continues to commit CUTPA violations in the designing, manufacturing, marketing, advertising, sale, and/or leasing of its Jeep Wrangler series model vehicles. The CUTPA allegations charge that DCC deceptively designed, manufactured, and marketed the vehicles by fraudulently misrepresenting to the consuming public that the Jeep Wrangler series model vehicles had roll bars and hard top

---

[1] Familiarity with all filed documents relating to the present motion is assumed, including Rec. Rul. [Doc. #70], Order [Doc. #81] and Rec. Rul. [Doc. 134], and the documents cited therein, and Objection [Doc. #139] and Response [Doc. #141].

1

roofs that provided adequate safety protections in the event of a rollover even though DCC knew that the vehicles had a propensity to roll over and the existing roll bars and/or hardtop roof did not provide the represented rollover safety protection.

The manifestations of the alleged fraudulent misrepresentations are alleged to include: 1) misnaming, misspelling and misidentifying the Jeep Wrangler overhead and side bar component parts as "roll bars," notwithstanding that such components are not real roll bars; 2) training and misinforming dealers and sales agents to represent to consumers that the Jeep Wrangler has structural roll bar and hardtop roof rollover safety protection, when it does not; 3) manufacturing the Jeep Wrangler with a "hardtop" roof that has no adequate steel or other structural support to protect Jeep Wrangler occupants from roof-crush injuries from a rollover accident; 4) providing only minimal warning decals that inadequately warn about the rollover propensity of the Jeep Wrangler, and that the Jeep Wrangler doors and "hardtop" roof only provide occupants protection from the outside elements; and 5) failing to warn that the Jeep Wrangler "rollbars" are not structural roll bars, or that the Jeep Wrangler "rollbars" and its "hardtop" roof do not provide occupants with any adequate roll bar of hardtop roof rollover safety protection.

According to Phelan, the misrepresentations and deceptions

2

outlined above fraudulently induced consumers to purchase the Jeep Wrangler for inflated purchase prices, that is, for an amount greater than they otherwise would have paid had they known the true nature of the rollover protection provided by the vehicle's roll bar and hard top roof. As such, notwithstanding that consumers did not receive what they believed they were bargaining for, they paid as if they did. Plaintiffs' current opposition includes various documents obtained during discovery purporting to provide factual support for these allegations as well as concerted efforts to conceal the Jeep Wrangler's shortcomings from the National Highway Safety Transportation Administration and the public at large.

The critical question on which the present motion focuses, as directed by the Court's earlier dispositions, see Ruling [Doc. #70] and Order [Doc. #81], is did Phelan's decedent purchase his 1994 Jeep Wrangler before, on, or after July 17, 1999. If purchased before July 17, 1999, the Court's prior rulings direct that Phelan's CUTPA claim is time-barred pursuant to CUTPA's 3 year statute of limitations, Conn. Gen. Stat. § 42-110g(f). The Recommended Ruling concludes that, by operation of Conn. Gen. Stat. § 42a-2-401(2), Phelan's decedent's purchase occurred on July 9, 1999, the date title passed to him upon his taking physical possession of the jeep, and not on or after July 17, 1999, when Phelan's decedent's letter of credit was honored and

3

funds transferred to the jeep's seller. See Ruling [Doc. #134] at 8-10. The Court agrees with this legal conclusion and adopts her analysis, which is further supported by: State v. Cardwell, 246 Conn. 721, 730-32 (1998); DeRubbo v. Aetna Ins. Co., 161 Conn. 388, 393-94 (1971); Providence Electric Co. v. Sutton Place Inc., 161 Conn. 242, 247 (1971). Phelan objects to this aspect of the Recommended Ruling, arguing that title transfer and taking possession are here irrelevant because the CUTPA violation was not completed until the decedent's letter of credit was honored as that is the date on which he parted with possession and control of his money and prior thereto he could have discovered DCC's alleged fraudulent conduct and directed dishonoring of his letter of credit. See Objection [Doc. #139] at 3-6. Under the facts of this case as admitted by Phelan, see Pl.'s Statement [Doc. #124], there is no basis for concluding that the occurrence of the alleged CUTPA violation here, the fraudulently induced purchase of a jeep at an inflated price, was not complete at the same time the sale occurred for purposes of the Uniform Commercial Code as adopted in Connecticut. All documents critical to the purchase refer to July 9, 1999 as the purchase date; Phelan took possession on that date; Phelan tendered payment (part in cash, part by check, and part by letter of credit) on that date; and Phelan had a soft top installed on the jeep on July 15, 1999. Under these facts, July 9 is the end

4

point of any possible deceptive act by DCC related to inducing purchase of the jeep by Phelan's decedent and, as such, the final date of a CUTPA violation from which the statute of limitations begins to run. The transfer of funds rather represents the ascertainable loss element of a private CUTPA claim for damages, see Conn. Gen. Stat. § 42-110g(a), and thus is not relevant to calculation of the CUTPA limitations period, see Fichera v. Mine Hill Corp., 207 Conn. 204, 211-13 (1988).

The Magistrate Judge also rejected Phelan's reassertion of her earlier tolling arguments, referencing the Court's earlier rulings. See Ruling [Doc. #70] at 16-20 and Order [Doc. #81] at 1-4. Phelan objects and requests the Court revisit its prior rulings in light of what she claims her discovery has produced. The Court agrees with the Recommended Ruling's conclusion that tolling doctrines - continuing course of conduct and fraudulent concealment - do not save Phelan's CUTPA cause of action here but sets forth its analysis in greater detail than previously.

> To support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong.
>
> . . .
>
> Where we have upheld a finding that a duty continued to exist after the cessation of the 'act or omission' relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a

defendant related to the prior act. Blanchette v. Barrett, 229 Conn. 256, 275 (1994)(quoting Fichera v. Mine Hill Corp., 207 Conn. 204, 209-10 (1988)). Examples of a special relationship or later wrongful conduct related to a prior act include "repeated instructions and advice given to the plaintiff by the defendant concerning a furnace it had previously converted and left in a defective condition," or "injurious consequences arising from a course of treatment by a physician." Fichera, 207 Conn. at 210 (quotation and brackets omitted).

In the analogous context of Fichera v. Mine Hill Corp., 207 Conn. 204 (1988), the Connecticut Supreme Court applied CUTPA's three year statute of limitations to allegations that defendants, joint venturers in the development of a recreational real estate subdivision, had induced the plaintiffs with false representations to purchase four lots in the subdivision. The plaintiffs had purchased the lots on May 29, 1979, based on false representations of the defendants and their agents that community recreational facilities would be constructed and completed for the subdivision by May 1980. In July 1981, plaintiffs learned that the defendants did not intend to carry through with their representations. Plaintiffs commenced suit on January 23, 1984, a date more than three years subsequent to their May 29, 1979 purchases. The trial court excused plaintiffs' delay under the "continuing course of conduct" tolling doctrine, reasoning that,

notwithstanding that defendants' misrepresentations had been made in 1978 and 1979, their course of conduct was not completed until July 1981 when plaintiffs became aware of defendants' intent not to construct recreational facilities.  Rejecting the trial court's conclusion, the Connecticut Supreme Court concluded plaintiffs' claims were time-barred under Conn. Gen. Stat. § 42-110g(f), and remanded the case for further proceedings.

With respect to the existence of a special relationship, the Connecticut Supreme Court commented,

> We are aware of no authority holding that the perpetrator of a fraud involving merely a vendor-vendee relationship has a legal duty to disclose his deceit after its occurrence and that the breach of that duty will toll the statute of limitations.

Fischera, 207 Conn. at 210.  With respect to the trial court's conclusion that defendants' course of conduct was not complete until June 16, 1981 when plaintiffs learned defendants' prior representations would not be carried through, the Connecticut Supreme Court focused on the statutory language of §42-110g(f), "after the occurrence of a violation of [CUTPA]."  It explained that the start of the limitation period is not delayed until the cause of action accrues or injury occurs and thus, even where a wrongful act could not reasonably have been discovered until the statute had run, any action seeking damages for such occurrence would be barred.

Even if the purported facts offered by Phelan could support

the conclusion that DCC's conduct fraudulently induced Phelan's decedent on July 9, 1999 to purchase the Jeep Wrangler, they thereafter only can support the conclusion that DCC continued to fool other unsuspecting customers into making the same mistake Phelan's decedent did.  Since, as a matter of law, that vendor-vendee relationship did not give rise to any duty on the part of DCC to expose its own deceit subsequent to the sale to Christopher Phelan, plaintiff must come forward with factual support showing that after July 9, 1999 DCC continued to interact with him in a manner perpetrating the roll bar and hard top safety ruse that could be found to constitute "some later wrongful conduct of a defendant related to the [here - sale]." Fischera, 207 Conn. at 210 (later wrongful conduct satisfied by "repeated instructions and advice given to the plaintiff by the defendant concerning a furnace it had previously converted and left in a defective condition").  Phelan offers no factual support, but instead disputes the Court's construction of Fischera as requiring a nexus between a defendant's later wrongful conduct and the CUTPA violation perpetrated on plaintiff.  Plaintiff argues that it is sufficient to show a defendant's perpetration of the same fraud on the general public, pointing to Izarrelli v. R.J. Reynolds Tobacco Co., 117 F. Supp. 2d 167, 177 (D. Conn. 2000). Izarrelli, however, discussed allegations of recent wrongful conduct which was related to prior

8

wrongful conduct by reference to <u>Fischera</u>'s language "some later wrongful conduct of a defendant related to the prior act" without reference to the supporting fact patterns <u>Fischera</u> pointed to as establishing such a nexus. Under the Court's reading, <u>Fichera</u> and the cases cited therein as examples of situations justifying tolling all involve repeated and direct interaction between a defendant and plaintiff and do not encompass the expansion Phelan argues for here - - the use of subsequent misrepresentations to other consumers as tolling the statute with respect to the misrepresentations made to the Phelan's decedent inducing his purchase of the Jeep Wrangler.

This result comports with the rationale underlying the continuing course of conduct doctrine, which "reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." <u>Blanchette</u>, 229 Conn. at 276. CUTPA wrongs stemming from fraudulently inducing an overpayment, without more, do not implicate any ongoing relationship after the sale is consummated such that a lawsuit against the deceiving seller would be premature as of the sale date, justifying suit beyond the three year period prescribed in Conn. Gen. Stat. § 42-110g(f).[2] Plaintiff's theory of fraudulent concealment does not

---

[2] <u>Handler v. Remington Arms Co.</u>, 144 Conn. 316, 320-21 (1957) is not to the contrary. There the Connecticut Supreme Court held that a claim of physical injury resulting from the negligent distribution of an inherently dangerous product (defective ammunition) did not accrue until the time of the

9

alter that result here:

> Fraudulent Concealment -
>
> If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence.

Conn. Gen. Stat. § 52-595. Further,

> To establish that the defendants had fraudulently concealed the existence of their cause of action and so had tolled the statute of limitations, the plaintiffs had the burden of proving that the defendants were aware of the facts necessary to establish this cause of action . . . and that they had intentionally concealed those facts from the plaintiffs.

<u>Fichera</u>, 207 Conn. at 215 (quoting <u>Bound Brook Ass'n. v. Norwalk</u>, 198 Conn. 660, 665 (1986)). Phelan objects to this Court's prior characterization:

> As a basis for tolling under the doctrine of fraudulent concealment, Phelan merely reasserts the allegedly long-running fraudulent scheme DCC has allegedly perpetrated on unaware consumers. The fundamental problem with this argument is that it alleges the same conduct as both CUTPA violations and the fraudulent concealment of those CUTPA

---

injury because the act or omission complained of (defendant's failure to warn the user of looming danger) was not completed at the time of sale but ongoing. However, the possible existence of a duty to warn against physical injury is not to be conflated with the injury of being defrauded into paying an inflated purchase price. "When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." <u>Handler</u>, 144 Conn. at 321. Here, the "wrong sued upon" in count one of Phelan's amended complaint is the fraudulently induced overpayment for an automobile, which conduct is complete upon the vendor's receipt of payment (as discussed above, here, the acceptance of Phelan's decedent's tender) and does not give rise to a continuing duty on the part of the vendor to warn the vendee of the prior deceit. The "wrong sued upon" is not the failure to warn of impending physical injury. Cf. <u>Prokolkin v. General Motors Corp.</u>, 170 Conn. 289, 293-302 (1976)(wrong sued upon in strict liability cause of action regarding automobile is manufacture and sale of product and thus cause of action accrues at time of sale in contrast to <u>Handler</u> where wrong sued upon was negligence manifested in a continuing failure to warn).

10

violations.

Order [Doc. #81] at 3-4. Phelan states:

> However, Plaintiffs do not allege that Defendant's same conduct constitutes both Defendant's CUTPA violations and Defendant's fraudulent concealment of its CUTPA violations. Plaintiffs allege and maintain that Defendant's wrongful CUTPA violations include Defendant's intentional manipulation of the Jeep Wrangler roll cage design to make it appear to look rollover safe, when it is not. Plaintiffs further allege and maintain that Defendant's separate and additional CUTPA conduct, through its Jeep Wrangler advertising, marketing, sales, and bad-faith discovery and litigation practices, constitute Defendant's separate and continuing fraudulent CUTPA conduct that tolls the state of limitations.

Objection [Doc. #139] at 8-9. The distinction Phelan now makes does not alter the Court's prior conclusion. While if assumed for present purposes that all such allegations would, if timely, give rise to independently actionable CUTPA violations, see Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp., 245 Conn. 1, 45-46 (1998), and if conceded that the intentional manipulation of a roll cage design is arguably self-concealing fraud, the Court remains of the view that application of fraudulent concealment tolling doctrine to DCC's vending of Phelan's 1994 Jeep Wrangler would defeat the Connecticut legislature's intent that "perpetrators of [deceptive acts or practices], as well as other CUTPA violators, should be permitted to avail themselves of the statute of limitations defense provided by §42-110g(f)." Fichera, 207 Conn. at 216.

For the reasons set forth above, DCC's motion for summary

judgment [Doc. #117] is GRANTED.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut this** 28th **of June, 2004.**