UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE JEEP WRANGLER CLASS ACTION : | CIVIL NO. 3:02 CV 1219 (JBA) |
| : | |
| ANGELA PHELAN, ADMINISTRATRIX OF : | |
| THE ESTATE OF CHRISTOPHER PHELAN, : | |
| CLASS MEMBER, AND INDIVIDUALLY : | |
| : | |
| Plaintiffs : | |
| : | |
| VS. : | |
| : | |
| DAIMLERCHRYSLER CORPORATION : | July 27, 2004 |
| : | |
| Defendant : | |
| VS. | |
| | |
| CHRISTOPHER MILLER, ET AL., | |
| | |
| Third-Party Defendants | |

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S
OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S
<u>AFFIRMATIVE DEFENSES</u>**

The defendant, DaimlerChrysler Corporation, respectfully submits its Opposition to plaintiff's Motion to Strike Defendant's Affirmative Defenses.

The defendant states the following in support of its Opposition:

**I.      INTRODUCTION AND BACKGROUND**

Plaintiff's Motion to Strike is directed to a total of ten Affirmative Defenses asserted in the defendant's Amended Answer: the First, Twelfth and Thirteenth, Twenty-First, Twenty-

Second and Twenty-Third, and the Twenty-Sixth, Twenty-Seventh, Twenty-Eighth and Twenty-Ninth. Of the defenses plaintiff seeks to strike, the Twelfth and Thirteenth are directed exclusively to matters of law that are the subject of Motion for Summary Judgment on Count I, which was granted by the Court in a ruling issued on June 28, 2004 (Docket # 146).

The Twenty-Sixth, Twenty-Seventh, Twenty-Eighth and Twenty-Ninth Affirmative defenses challenge plaintiff's punitive damages allegations under various provisions of the Constitution of the United States. To the extent that plaintiff's allegations are based on Connecticut General Statutes §42-110g, they are addressed in the Court's Ruling on the Motion for Summary Judgment on Count One.

The defendant recently filed an Assented-to Motion for Extension of Time to Oppose Plaintiff's Motion to Strike Defenses requesting an extension of time to oppose plaintiff's Motion to Strike defenses relating to Count One until such time as the Court's Ruling is either reversed by the Court or reversed and remanded by the United States Court of Appeals for the Second Circuit. That Motion was granted on July 21, 2004. Docket #148.

The defendant's argument in its Opposition is therefore limited to the Affirmative Defenses discussed in plaintiff's Motion to Strike as follows: to the First Affirmative Defense to the extent that it applies to the product liability claims; to three defenses that are directed exclusively to plaintiff's product liability claims, that is the Twenty-First, Twenty-Second and Twenty-Third Affirmative Defenses; and to the Twenty-Sixth, Twenty-Seventh, Twenty-Eighth and Twenty-Ninth Affirmative Defenses to the extent that they may be construed as applying to

plaintiff's product liability claims.[1]

### III. ARGUMENT

Motions to strike are generally disfavored by the courts and infrequently granted. See Boreri v. Fiat S.p.A, 763 F.2d 17, 23 (1st Cir. 1985)(motions to strike are "narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion"); Oliner v. McBride's Indus., Inc., 106 F.R.D. 14, 17 (D.C.N.Y. 1985); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1380 and cases cited at n.9. Motions to strike defenses for insufficiency are particularly disfavored because of their dilatory character. Oliner, 106 F.R.D. at 17; Mohegan Tribe v. Connecticut, 528 F.Supp. 1359, 1362 (D.Conn. 1982). An insufficient defense is one so impertinent and immaterial that no evidence in support of the allegation would be admissible. Etienne v. Wal-Mart Stores, Inc., 197 F.R.D. 217, 219-20 (D.Conn. 2000). To strike a defense, the moving party must show a) that there is no question of fact or law that might allow the challenged defense to succeed; b) it appears to a certainty that the defense will fail regardless of what evidence is marshaled to support it; and c) prejudice if the defense remains in the case. Tompkins v. R.J. Reynolds Tobacco Co., 92 F.Supp. 2d 70, 80 (N.D.N.Y. 2000); Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 271 (S.D.N.Y. 1999). In making this analysis, the Court must construe the pleadings liberally in favor of the defendant. Id.

Defenses will not be stricken on a motion to strike if the Court would be required to draw factual inferences or to decide disputed questions of fact. Brokke v. Stauffer Chem. Co., 703

---

[1] The defendant reserves the right to amend its Amended Answer to Plaintiff's Amended Complaint pending the Court's ruling on Plaintiff's Motion to Strike Defendant's Affirmative Defenses.

3

F.Supp. 215, 223 (D.C. Conn. 1988); May Dep't Stores Co. v. First Hartford Corp., 435 F.Supp. 849, 855 (D.C. Conn. 1977). Furthermore, motions to strike are not intended to resolve substantial or disputed questions of law. A motion to strike is not the appropriate vehicle by which to decide legal issues on which courts are divided or that are otherwise unsettled or involve close or new questions of law. Estee Lauder, 189 F.R.D. at 272; Mohegan Tribe v. Connecticut, 528 F.Supp. 1359, 1362 (D.C. Conn. 1982). It is not within the purpose of a motion to strike to elicit an "advisory opinion on an abstract and hypothetical set of facts". Canadian St. Regis Band of Mohawk Indians, ex rel. Francis v. New York, 278 F.Supp.2d. 313, 325 (N.D.N.Y. 2003) (citations omitted), and courts ought not to risk offering such an opinion. Id.

    A.    Argument Relating to First Affirmative Defense

The defendant's First Affirmative Defense states that, "Plaintiff's Amended Complaint is barred for failure to state a claim upon which relief can be granted". Plaintiff's request to strike this defense is premature. Brokke, 703 F.Supp. at 223. Count One of the Amended Complaint is the subject of the defendant's Motion for Summary Judgment on Count One, which was granted by the Court on June 28, 2004. (Docket # 146). Count Two of plaintiff's Amended Complaint was dismissed by the Court on May 9, 2003. (Docket # 57). The remaining Count of the Amended Complaint, Count III, which alleges product liability claims, is the subject of a dispositive motion by the defendant that is still before the Court. (Docket # 77-80[2]). If that

---

[2] These documents are respectively: Motion to Exclude Computer Simulations and Related Testimony by Plaintiff's Experts Irving U. Ojalvo and Wilson Hayes and Injury Causation testimony by Plaintiff's Expert Malka Shah and Motion for Summary Judgment, Local Rule 56(a)(2) Statement, and Memorandum in Support of Motion to Exclude Computer Simulations and Related Testimony by

4

motion is ultimately allowed, the issue will be moot as plaintiff's Amended Complaint would be dismissed in its entirety. The Court's determination of this issue is best deferred until the pending dispositive motion is decided.

    B.    Argument Relating to Twenty-First, Twenty-Second and Twenty-Third Affirmative Defenses[3]

Plaintiff cites Barry v. Quality Steel Products, Inc., 263 Conn. 424 (2003) as if it were dispositive of all these defenses. Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 271 (S.D.N.Y. 1999). The Barry court reasoned that because Connecticut statutes allow for apportionment among negligent defendants and because Connecticut is a comparative negligence jurisdiction, "the simpler and less confusing approach" in cases "where the jury must determine which, among many, causes contributed to the plaintiff's injury", is to present the issue to the jury as one of proximate rather than superseding cause. Barry, 263 Conn. at 439. What the Barry court thus did was to replace superseding cause with a proximate cause analysis, identifying certain types of claims as exceptions to the rule -- including the allegations made in the Twenty-First Affirmative Defense. Id.

The express language of the Barry court places outside of the scope of its holding cases involving allegations that an intentional tort or a criminal event was a superseding cause. Barry, 263 Conn. 424, 439 n.16 (2003). The Barry Court specifically excluded from its conclusion

---

Plaintiff's Experts Irving U. Ojalvo and Wilson Hayes and Injury Causation Testimony by Plaintiff's Expert Malka Shah and Motion for Summary Judgment.
[3]The Twenty-First, Twenty-Second and Twenty Third Affirmative Defenses are stated in Plaintiff's Ex. 1, Amended Answer, at pages 8-9.

cases "where the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct." Id, citing Doe v. Manheimer, 212 Conn. 748, 761 (1989)   "We leave those questions to cases that squarely present them." Id.

That language plainly makes Barry inapplicable to the Twenty-First Affirmative Defense. On the issue of intentionality, the defendant has alleged "reckless" conduct superseding alleged misconduct by DaimlerChrysler. Under Connecticut law, defendant has therefore alleged an intentional tort. "While [courts] have attempted to draw definitional [distinctions] between the terms willful, wanton or reckless, in practice, the three terms have been treated as meaning the same thing." Bhinder v. Sun Co., 246 Conn. 223, 242, n.14 (1998); see also Elliott v. City of Waterbury, 245 Conn. 385, 415 (1998)(legal concepts of wanton, reckless, wilful, intentional and malicious conduct are indistinguishable), cited in Pane v. City of Danbury, et al., Supreme Court of Connecticut, 2004 Conn. LEXIS 49 (March 2, 2004).

Moreover, the Twenty-First Defense can also be construed to allege a "criminal event" that supersedes any alleged misconduct by the defendant. Barry, 263 Conn. at 439 n.16. Defendant alleges specifically that, "Christopher Miller's reckless operation of the Ford Taurus as a result of his intoxication was an intervening cause of the accident and plaintiff's injuries." (Ex. 1, Twenty-First Affirmative Defense).  The defendant's allegations here amount to charges of reckless driving, driving while under the influence, second degree manslaughter and misconduct with a motor vehicle, criminal conduct under Connecticut law that caused the death

of Christopher Phelan. See Connecticut General Statutes §§ 14-222, 14-227a, 53a-56 and 53a-57.[4]

With respect to the Twenty-Second and Twenty-Third defenses, plaintiff is obliged to show that there is no question of fact or law that might allow the challenged defense to succeed and it appears to a certainty that the defense will fail regardless of what evidence is marshaled to support it. Tompkins, 92 F.Supp. at 80; Estee Lauder, 189 F.R.D. at 271-272. These defenses are all directly related to the issue of proximate cause, an issue that is indisputably central to plaintiff's individual product liability claim. Construed liberally, as they must be under the standards of Rule 12(f), the defendant's allegations in these defenses are, in substance, that misconduct by third-party defendants Rikki Timbo, Inc. d/b/a Jake's Cafe and Maurice and Kathleen Samuelian, and by Spanky's Cafe and Zachary Spangler proximately caused the plaintiff's injuries. Tompkins, 92 F.Supp.2d at 80, Estee Lauder, 189 F.R.D. at 271. Under a proximate cause analysis, the defendant would undoubtedly be allowed to present at trial evidence of misconduct by these parties that caused or contributed to cause plaintiff's alleged injuries.

---

[4] As plaintiff's counsel well knows, Miller admitted in deposition testimony in the preceding state court action Docket No. X07-CV-01-00757-S, Connecticut Superior Court, Complex Litigation Docket at Tolland, that he had been drinking and using drugs on the day of the accident. Documents and deposition testimony produced in discovery in that case show that Miller was served alcohol at two bars on the day of the accident, including third-party defendant Jake's Cafe -- which was owned by third-party defendants Maurice and Kathleen Samuelian -- and Spanky's Cafe. The Phelan Estate itself sought recovery against these entities individual in that lawsuit.
    Based upon a Connecticut State Police investigation of the accident--of which plaintiff's counsel is also aware through discovery in this case and the preceding action -- Miller was charged with manslaughter in the second degree, operating a motor vehicle without the owner's permission, operating a motor vehicle while under the influence of alcohol and drugs, reckless driving, possession of stolen license plates, operating a motor vehicle with insufficient insurance, operating an unregistered motor vehicle, operating a motor vehicle with unsafe tires and operating a motor vehicle without the use of a seat belt. Miller was sentenced to seven years in prison on the charges of second degree manslaughter and driving under the influence.

Furthermore, a defense may not be stricken if the Court would be required to draw factual inferences or to decide disputed questions of fact. Brokke, 703 F.Supp. at 223. The foreseeability of the harm resulting from the misconduct of the third-party defendants, individuals and entities identified in these defenses is a clearly question of fact under applicable state law, Suarez v. Sordo, 43 Conn. App. 756, 767 (1996), cert. denied 240 Conn. 906 (1997). As such, the issues raised in the Twenty-First, Twenty-Second and Twenty-Third Defenses defenses cannot be decided on a motion to strike.

C.  Argument Regarding Twenty-Sixth Twenty-Seventh, Twenty-Eighth and Twenty-Ninth Affirmative Defenses[5]

Plaintiff's request to strike these defenses is premature and ought to be denied.

The United States Constitution places substantive limits on the power of the states to impose punitive damages. Cooper Indus., Inc., v. Leatherman Tool Grp., Inc., 532 U.S. 424, 433-434 (2001). Punitive damages must be proportionate to the gravity of the defendant's offenses and must respect principles of state sovereignty and comity. BMW N.A., Inc. v. Gore, 517 U.S. 559, 572, 575 (1996). Thus, a state may not impose economic sanctions on the violators of its laws with the intention of changing a tortfeasor's lawful conduct in another state. Id. at 571. Moreover, "elementary notions of fairness enshrined in our constitutional

---

[5] These defenses are set forth as follows in Plaintiff's Ex. 1, Amended Answer at pages 9-10:

jurisprudence dictate that a person receive fair notice, not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." Id. at 575.

The Constitution further requires that a punitive damages award not enter the "zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." Gore, 517 U.S. at 568. "The question of whether a fine is constitutionally excessive calls for the application of a constitutional standard to the facts of a particular case." Cooper Indus. Inc., 532 U.S. at 435, citing Ornelas v. United States, 517 U.S. 690, 697 (1996). In Gore, the Court set out three guideposts to determine whether a punitive damages award is constitutional under the Due Process Clause, 1) the degree of reprehensibility; 2) ratio of punitive damages to compensatory damages; and 3) civil or criminal sanctions imposed for comparable misconduct. Gore, 517 U.S. at 575-584.

The standards of review set out in Gore acquire context only through their "case by case application at the appellate level." Cooper Indus. Inc., 532 U.S. at 436. A due process review of a punitive damage award is fact intensive and cannot be conducted unless the issue is preserved and factually developed at the district court level. See Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 277 (1989) (a court cannot evaluate a due process challenge to a punitive damages award in the absence of a developed record on the issues relevant to a due process inquiry).

The fact intensive determination required to determine the viability of these defenses cannot be made on a motion to strike. An affirmative defense will not be stricken where the

Court would be required to draw factual inferences or decide disputed questions of fact. <u>Brokke</u>, 703 F.Supp. at 223; <u>May Dep't Stores</u>, 435 F.Supp. at 855. While plaintiff claims entitlement to punitive damages, plaintiff's request for relief in the present Motion would deprive the defendant of the right to challenge an award of punitive damages by striking defenses in advance of any finding of liability. The Court cannot make the requisite factual findings on a Motion to Strike. <u>Id</u>.

### 1.    Twenty-Sixth Affirmative Defense

Defendant's Twenty-Sixth Affirmative Defense states that the plaintiff's claim for punitive damages has no basis in Connecticut law and so fails to state a claim for which relief can be granted. In her amended complaint, plaintiff's sole claim for punitive damages is under Connecticut General Statutes § 42-110g. The Court has allowed defendant's summary judgment motion on plaintiff's claims under Connecticut General Statutes § 42-110g. Docket. #146.

The plaintiff now argues that she is entitled to punitive damages under Connecticut General Statutes § 52-240b, and therefore, defendant's affirmative defense should be stricken. See Plaintiff's Memorandum of Law in Support of Motion to Strike Defendant's Affirmative Defenses at pages 4-5.

Plaintiff has failed, however, to state any demand for relief under Connecticut General Statutes §52-240b in her complaint as required by Fed. R. Civ. P. 8 (a)(3) and therefore has no claims under that statute; nor has plaintiff stated claims for punitive damages under any common

law theory. On that basis alone, plaintiff's request to strike defendant's affirmative defense should be denied.

Furthermore, Count III of plaintiff's amended complaint -- the only remaining claim upon which a demand for punitive damages could be predicated -- is the subject of a pending dispositive motion. (Docket # 77-80). If that motion is allowed, Count III of the complaint will be dismissed and the plaintiff's Motion to Strike will be moot. Plaintiff's motion to strike the Twenty-Sixth Affirmative Defense is thus premature and should be deferred at least until the pending motion is resolved.

2.  Twenty-Seventh and Twenty-Eighth Affirmative Defenses

Affirmative Defenses Twenty-Seven and Twenty-Eight both invoke the Due Process Clause of the United States Constitution, the former stating "[t]he imposition of punitive damages in this case in the absence of the procedural safeguards accorded to defendants subject to punishment in criminal proceedings, including a reasonable doubt standard of proof, would violate the Fourth, Fifth, and Sixth Amendments and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution" and the later stating, "[t]he imposition of punitive damages in this case based upon evidence of DCC's wealth or financial status would violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution." As the Supreme Court has indicated, the evaluation of a punitive damages award under the due process clause is a case by case inquiry performed after a factual record has been developed. See Gore, 517 U.S. at 575-584; Browning-Ferris, 492 U.S. at 277.

This evaluation is not based solely on the protections inherent in the statute that provides for punitive damages. Rather it lies in the context in which the statute is applied. See Cooper Indus. Inc., 535 U.S. at 536.

The most important indicium of the reasonableness of punitive damages is the degree of reprehensibility of the defendant's conduct. Gore, 517 U.S. at 575. In order to allow the plaintiff's motion to strike defendant's Due Process defenses, the court would be required to determine, prior to trial, that no question of law or fact would develop regarding the sufficiency of evidence relating to the reprehensibility of the defendant's alleged conduct. See Tompkins, 92 F.Supp. 2d at 80. In essence the due process clause requires that the punishment be commensurate with proven, culpable conduct. Id. at 576 n. 24. Unless and until the jury finds for the plaintiff and awards punitive damages, it is impossible determine whether there is adequate factual support for such an award.

The Twenty-Seventh and Twenty-Eight affirmative defenses represent an effort by the defendant to preserve its ability to challenge an award of punitive damages on due process grounds -- in the highly unlikely event that such damages are awarded. These defenses should not be stricken before any trial record is developed, before liability has been even been decided and before any damages of any kind have been awarded.

    3.    Twenty-Ninth Affirmative Defense

The Twenty-Ninth Affirmative Defense provides that, "[t]he imposition of punitive damages in this case based on the out-of-state conduct, profits and aggregate financial status of DCC would violate the Commerce Clause, the Equal Protection Clause, and the Privileges and Immunities Clause of the United States Constitution." In <u>Gore</u> the Supreme Court stated that, "it follows from principles of state sovereignty and comity that a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States." <u>Gore</u>, 517 U.S. at 572. The Court found fault with the award of punitive damages because it rested in part on the defendant's lawful activities in other states. This was a violation of the Commerce Clause. <u>Id</u>. at 585-586. Like the defendant in <u>Gore</u>, this defendant is a large corporation and "active participant in the national economy." <u>Id</u>. Supreme Court jurisprudence on punitive damages clearly supports defendant's invocation of the Commerce Clause in Affirmative Defense Twenty-Nine. Whether the facts adduced at trial will support this defense, remains to be seen. However, the defendant is entitled to preserve its rights at least until such a time that it is certain that the defense will fail. <u>Tompkins</u>, 92 F.Supp. at 80; <u>Estee Lauder</u>, 189 F.R.D. at 271-72.

WHEREFORE, the defendant DaimlerChrysler Corporation requests that plaintiff's Motion to Strike Affirmative Defenses be denied.

Defendant,
DaimlerChrysler Corporation
By its attorneys,


_____
James P. Kerr (Fed. Bar ID# CT24142)
    jkerr@cornellgollub.com
Peter M. Durney (Fed. Bar ID# CT14569)
    pdurney@cornellgollub.com
CORNELL & GOLLUB
75 Federal Street
Boston, MA 02110
(617) 482-8100
(617) 482-3917 Fax


**CERTIFICATE OF SERVICE**

I, James P. Kerr, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this ____ day of July, 2004, a true copy of the foregoing was served via first class mail, postage prepaid, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut 06107
Attorney for Plaintiff


Rikki Timbo, Inc.
Agent for Service: Richard W. Tomc, Esq.
49 Main Street
Middletown, CT 06457
    Third-party defendant

Daniel J. Krisch, Esq.
HORTON, SHIELDS & CORMIER
90 Gillett Street
Hartford, Connecticut 06105

Co-counsel for Defendant

Mr. Christopher Miller
c/o Robinson Correctional Facility
285 Shaker Road
P.O. Box 1400
Enfield, CT 06082
Third-Party Defendant

Maurice Samuelian
Kathleen Samuelian
52 Mallard Avenue
East Hampton, CT 06424
Third-party defendant

Raymond M. Kethledge, Esq.
Stefanie E. Deller, Esq.
BUSH, SEYFERTH &
KETHLEDGE
3001 W. Big Beaver Road
Troy, MI 48084

Co-counsel for Defendant

14

M. Sheila Jeffrey, Esq.
MILLER, CANFIELD, PADDOCK & STONE, P.L.C.
Seventh Floor
101 North Main
Ann Arbor, MI 48104

Co-counsel for Defendant

                                                           /s/ James P. Kerr
                                                           James P. Kerr