UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re Jeep Wrangler Class Action ) | |
| ) | |
| Angela Phelan, Administratrix of ) | |
| the Estate of Christopher Phelan, ) | |
| Class Member, and Individually ) | |
| ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DaimlerChrysler Corporation ) | November 3, 2004 |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S PETITION UNDER 28 U.S.C. §§ 1651(a) AND 2241(c)(5) FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM DIRECTING THE PRODUCTION OF INCARCERATED THIRD-PARTY DEFENDANT CHRISTOPHER MILLER TO APPEAR AND TESTIFY AT TRIAL**

Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "defendant") moves for an order, pursuant to 28 U.S.C. §§ 1651(a) and 2241(c)(5), granting its petition for a writ of habeas corpus ad testificandum directing the production of incarcerated third-party defendant, Christopher Miller, to appear and testify at the trial of this case. The trial is scheduled to commence on December 13, 2004 at the United States District Court for the District of Connecticut at New Haven.

**I.    INTRODUCTION**

This case arises from a January 18, 2000 motor vehicle accident on Route 2 westbound in Glastonbury Connecticut, in which Christopher Phelan ("Mr. Phelan") was fatally injured. Specifically, a 1987 Ford Taurus driven by third-party defendant Christopher Miller ("Miller"), struck Mr. Phelan's 1994 Jeep Wrangler YJ ("Jeep" or "subject vehicle") from behind at a high

rate of speed. Plaintiff's accident reconstructionist estimated in his report that the vehicle driven by Miller was traveling at about 100 miles per hour when it struck the Jeep. Following the impact, the Jeep was forced forward and towards the right into a wire rope guardrail system. The Jeep struck and knocked down a light post and then turned over, eventually coming to rest against a tree to the north of the roadway. Christopher Phelan died as a result of the collision. Miller stated to witnesses at the scene, including a police officer, two EMTs who attempted to assist him, and two civilian passers-by that he had been drinking before the accident and was intoxicated. These witnesses also testified that they smelled alcohol on Miller at the scene.

Miller was sentenced on January 23, 2001 to seven years in prison on the charges of second degree manslaughter and driving under the influence arising from the accident, after pleading no contest. He is currently imprisoned at the Willard-Cybulski Correctional Institution in Enfield, Connecticut. Upon information and belief, Mr. Miller will not be released until March 2007.

DaimlerChrysler seeks this Court's Writ, as Miller is an essential fact witness to its defense. Miller is the sole available witness regarding his activities prior to the accident. Miller's testimony is also necessary to prove his physical and mental condition and state of mind at the time of the accident. The defendant now seeks production of Miller at trial to ensure that Miller's knowledge on these matters is made available to the jury at trial.

**II.    ARGUMENT**

A federal district court has the authority pursuant to 28 U.S.C. § 2241(c)(5) to issue a writ to a prisoner when "[i]t is necessary to bring him into court to testify or for trial." 28 U.S.C.

§ 2241(c)(5). Upon issuance of a court's writ, the custodian of a prisoner is directed to produce such prisoner for a court appearance. See United States v. Gotti, 784 F. Supp. 1011, 1012 (E.D.N.Y. 1992), aff'd sub nom. The decision to issue a writ of habeas corpus is committed to the sound discretion of the district court. See Haywood v. Hudson,[1] 1993 WL 150317, *1 (E.D.N.Y. April 23, 1993) (citations omitted); see also Atkins v. City of New York, 856 F. Supp. 755, 757 (E.D.N.Y. 1994).

Federal courts in the Second Circuit have used a three-factor test in deciding whether to issue a writ of habeas corpus ad testificandum. See Haywood, 1993 WL 150317 at *1 (citations omitted); Atkins v. City of New York, 856 F. Supp. 755, 757 (E.D.N.Y. 1994). These factors include "whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice." Haywood, 1993 WL 150317 at *1 (quoting Ballard v. Spradley, 557 F.2d 476, 480 (5th Cir. 1977) and citing Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987)). In Atkins, the Eastern District of New York permitted a state prisoner's courtroom testimony under the three-factor test to testify on behalf of the defendants New York Police Department and City of New York in plaintiff's § 1983 suit. See Atkins, 856 F. Supp. at 758.

This three-factor test can be readily met in this matter. First, Miller's testimony will clearly further the resolution of the case, as he is an essential and necessary source of information regarding the happening of the accident and pre-accident events, including his state of intoxication at the time of the accident. Second, since the trial is scheduled to take place at the

---

[1] A copy of Haywood v. Hudson, 1993 WL 150317 (E.D.N.Y. April 23, 1993) is attached as Exhibit A.

3

District Court of Connecticut at New Haven and transport of Miller will be arranged with the cooperation of prison officials, security risks would not be a factor. (Defendant will bear all reasonable costs and fees relating to the deposition). Third, due to the length of Miller's sentence, it would be impractical to postpone the trial date due to the risk of a fading evidentiary record, the Court's concern with managing its docket efficiently, and the interests of the parties in expeditious proceedings. In sum, the substantial interest of all the parties warrants this Court's issuance of a Writ[2] to direct the production of incarcerated third-party defendant Christopher Miller to appear and testify at the trial of this matter.

## IV.    CONCLUSION

WHEREFORE, defendant DaimlerChrysler Corporation respectfully requests that this court issue a writ of habeas corpus ad testificandum directing the production of incarcerated third-party defendant Christopher Miller at trial.

Defendant,
DaimlerChrysler Corporation
By its attorneys,

_____
Peter M. Durney (Fed. Bar ID# CT14569)
  pdurney@cornellgollub.com
James P. Kerr (Fed. Bar ID# CT24142)
  jkerr@cornellgollub.com
CORNELL & GOLLUB
75 Federal Street
Boston, MA  02110
(617) 482-8100
(617) 482-3917 Fax

---

[2] A writ is attached as Exhibit B for the Court's convenience.

CERTIFICATE OF SERVICE

I, James P. Kerr, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 3rd day of November, 2004 a true copy of the foregoing Defendant DaimlerChrysler Corporation's Petition Under 28 U.S.C. §§ 1651(a) and 2241(c)(5) For Writ Of Habeas Corpus Ad Testificandum Directing the Production of Incarcerated Third-Party Defendant Christopher Miller to Appear and Testify at Trial, was served by via first class mail, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut 06107

Mr. Christopher Miller
Inmate #266075
c/o Willard-Cybulski Correctional Institution
391 Shaker Road
Enfield, CT 06082

Rikki Timbo, Inc.
Agent for Service: Richard W. Tomc, Esq.
49 Main Street
Middletown, CT 06457

Maurice Samuelian
Kathleen Samuelian
52 Mallard Avenue
East Hampton, CT 06424
Third-party defendant

_____
James P. Kerr

Westlaw.

Not Reported in F.Supp.
1993 WL 150317 (E.D.N.Y.)
(Cite as: 1993 WL 150317 (E.D.N.Y.))

Page 1

▷
Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Keith HAYWOOD, Plaintiff,
v.
Sandra HUDSON, etc., et alia, Defendants.

No. CV-90-3287 (CPS).

April 23, 1993.

MEMORANDUM AND ORDER

SIFTON, District Judge.

*1 Defendants, Deputy Warden Kennedy, Captain Caliendo, and Correction Officer T. Buonincontri, move pursuant to Rule 45(c)(3)(B)(iii) of the Federal Rules of Civil Procedure to quash plaintiff's writs of habeas corpus ad testificandum and subpoenas duces tecum for each of plaintiff's proposed witnesses. For the reasons discussed below, defendants' motion is granted in part and denied in part.

In a submission dated March 11, 1993, plaintiff asked this Court to issue habeas writs to produce three inmate witnesses and subpoenas to produce seven non-inmate witnesses. This Court issued an order to show cause dated March 19, 1993, directing defendants to show cause in writing on or before April 1, 1993 "why the habeas writs and/or subpoenas should not be issued to effect the production of the proposed witnesses...." In response to this order, defendants filed this motion to quash on April 1, 1993.

Defendants seek to quash the habeas writs for two reasons. They claim that the information offered by the plaintiff's inmate witnesses is either immaterial or irrelevant to the issues at trial or that plaintiff is precluded from calling one of his inmate witnesses because he did not mention him in his narrative statement. Defendants' reasons for seeking to quash the subpoenas directed to plaintiff's other witnesses are that their testimony will be either irrelevant and/or cumulative.

DISCUSSION

The authority of the court to compel the attendance of an inmate witness is to be found in a joint reading of 28 U.S.C. §§ 2241(c)(5) [FN1] and 1651(a) (The All Writs Act). The decision to issue a writ of habeas corpus ad testificandum to permit a state prisoner to testify in a federal proceeding is a matter committed to the sound discretion of the district court. *See Jones v. Hamelman,* 869 F.2d 1023, 1030 (7th Cir.1989); *United States v. Rinchack,* 820 F.2d 1557 (11th Cir.1987); *Poole v. Lambert,* 819 F.2d 1025, 1028 (11th Cir.1987); *Ballard v. Spradley,* 557 F.2d 476, 480 (5th Cir.1977). The factors a district court should consider when exercising this discretion include:
> whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted.

*Ballard,* 557 F.2d at 476; *see also Poole,* 819 F.2d at 1028 (quoting *Ballard* ).

Plaintiff seeks to call inmates Earl Martinez, Jorge Torres, and Eric Jenkins as witnesses. He states in his narrative statement and in his affirmation in opposition to this motion that Martinez will testify that on May 4 and 12, 1992, Martinez heard the plaintiff call out the name of defendant Buonincontri while plaintiff was having a nightmare. Plaintiff intends to offer this testimony as evidence of his state of mind during sleep. Defendants oppose the issuance of a writ of habeas corpus for Martinez because they contend that his testimony will be both cumulative and hearsay and so lacking in indicia of reliability that transporting him from Auburn to New York would not be justified.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 150317 (E.D.N.Y.)
**(Cite as: 1993 WL 150317 (E.D.N.Y.))**

Page 2

*2 The threshold question concerning the issue whether a habeas writ should issue for Martinez is whether his testimony will advance the plaintiff's case by offering relevant evidence. *See Ballard,* 557 F.2d at 480; *Poole,* 819 F.2d at 1028; *United States v. Gotti,* 784 F.Supp. 1011, 1012 (E.D.N.Y.1992) (a court may consider "whether the presence of the prisoner will advance the disposition of the case, ... whether the witness to be called could offer evidence that was relevant, and whether the evidence to be offered, although relevant, was cumulative" in exercising its discretion). Although plaintiff does not indicate how Martinez' testimony is relevant to his case against the defendants, it appears that the plaintiff intends to use Martinez' testimony to advance his case for damages--to show that the behavior of defendants continued to haunt him almost two years after the incident. If that is plaintiff's intent, then clearly Martinez' testimony would be relevant to his case.

Defendants do not dispute that Martinez' testimony is relevant to the issue of damages, they argue that his testimony is cumulative, hearsay, and devoid of any indicia of reliability. They argue that, since Martinez was housed in a cell approximately 40 feet away from the plaintiff in May 1992 and could not have observed the plaintiff sleeping, there is no way for Martinez to be sure as to what he heard or from whom he heard it. Plaintiff counters defendants' concern about the reliability of Martinez' testimony by stating that sound travels well on a quiet night and that Martinez defended him against the threats of the other inmates in his cell block whom he had awakened on the nights he experienced the nightmares.

After determining the relevance of an inmate's proposed testimony, the Court must then determine whether Martinez' testimony is necessary to plaintiff's case. *See Gotti,* 784 F.Supp. at 1012. Plaintiff himself can testify to the impact that the alleged incident has had on his mental state in a more persuasive and concrete way than a fellow inmate. Plaintiff states that he will call Martinez to testify only to his state of mind during sleep on two occasions two years after the alleged incident occurred. This information, although relevant, can hardly be considered necessary to plaintiff's case. Martinez' testimony is certainly not so vital that it warrants the expense and the security risks associated with transporting him from the Auburn Correctional Facility. Plaintiff can submit Martinez' testimony in affidavit form. *Cookish v. Cunningham,* 787 F.2d 1 (1st Cir.1986). If defendants wish cross-examination, they can notice a deposition of Martinez. Therefore, the habeas writ for Martinez will not issue.

Defendants also seek to quash the habeas writ for Jorge Torres. It is undisputed that Torres was involved in the same hostage-taking and escape attempt at the Bronx House of Detention as Haywood on August 21, 1990 (a day before the incident that is the subject of this litigation). According to plaintiff's narrative statement and his papers submitted in opposition to defendants' motion to quash, Torres will testify that Torres was beaten twice by Department of Corrections staff because, like the plaintiff here, he would not sign any statement or cooperate in the investigation of the hostage-taking/escape attempt. Plaintiff contends that this testimony will show that there was an informal understanding among Department of Corrections staff that the participants in the August 21, 1990 hostage-taking/escape attempt were to be beaten as the plaintiff alleges he was on August 22, 1990.

*3 Defendants contend that the treatment allegedly received by Torres between the August 21 incident and sometime in early October 1990 at a different facility than where the plaintiff was housed is irrelevant and immaterial to the issue of whether or not plaintiff was beaten by defendants on August 22, 1990, at the Queens House of Detention. Defendants also state that the habeas writ for Torres should be quashed because he has no personal knowledge of the incident alleged by plaintiff. Finally, defendants contend that, since both plaintiff and Torres participated in the hostage-taking and attempted escape incident on August 21, "there is a real and considerable security risk in transporting Torres from Attica Correctional Facility ... for the trial of this case."

There is no basis upon which to issue a habeas writ for Torres. Plaintiff seeks to have Torres testify to prove that his beating by the police was not an isolated incident but part of a pattern and practice. Torres' testimony, however, is not sufficient to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 150317 (E.D.N.Y.)
(Cite as: 1993 WL 150317 (E.D.N.Y.))

Page 3

establish a pattern or practice. Despite plaintiff's assertions, Torres' testimony is not relevant to his treatment at the Queens House of Detention by the defendants in this action. The alleged mistreatment of Torres did not occur at the same facility and did not involve the same defendants. The only common denominator is that both inmates were involved in the incident at the Bronx House of Detention on August 21 and claim to have suffered mistreatment at the hands of Department of Corrections employees. Since the Department of Corrections is not a defendant in this action, Torres' testimony has no relevance. Therefore, under the test established in *Ballard,* this Court will not issue a writ of habeas corpus to have Torres testify at this trial.

The last habeas writ the defendants seek to quash is the one plaintiff requested for Eric Jenkins. Plaintiff did not mention this witness in his narrative statement and does not discuss his testimony in his affirmation submitted in opposition to defendants' motion to quash. The only indication of what Jenkins will testify to is a footnote at the end of the paragraph describing Martinez' testimony on page two of plaintiff's affirmation. The footnote indicates that Jenkins' testimony is likely to be the same as the testimony of Martinez. It appears that the plaintiff intends to have Jenkins testify to his nightmares in early spring. The reason plaintiff requests this witness on the eve of trial is that he recently discovered a statement written by Jenkins which apparently indicates that Jenkins has some personal knowledge as to plaintiff's restless sleep on May 4 and 12, 1992.

Defendants object to the issuance of a writ of habeas corpus for Jenkins because plaintiff did not name him as a possible witness in his narrative statement in violation of this Court's narrative statement order dated July 17, 1991, as amended. The order clearly states that the "failure to fully disclose ... witnesses will result in preclusion." The order also only provided for three exceptions: "(1) matters which the Court determines were not discoverable at the time the statements were filed, (2) privileged matter, and (3) matter to be used solely for impeachment." Defendants contend that none of these exceptions applies to Jenkins. Moreover, defendants claim that they would be prejudiced by the testimony of Jenkins because they have not had any time to conduct discovery concerning his testimony.

*4 Although plaintiff does not explicitly invoke one of the exceptions to the order to avoid its promise of preclusion, plaintiff does indicate that he only discovered the existence of this early this year. Therefore, his failure to mention Jenkins in his narrative statement standing alone would not preclude him from having him testify at trial. A writ will not issue for Jenkins, however, for the same reasons one will not issue for Martinez. The substance of their testimony, though relevant, does not warrant transporting them down from Auburn Correctional Facility to testify at this trial. If plaintiff desires to have Jenkins' impressions entered into evidence, he can do so through an affidavit from him. *See Cookish, supra.* Defendant can cross-examine in a deposition.

Defendants next seek to quash each of the subpoenas plaintiff has requested because they claim that his witnesses will provide information that is irrelevant, inadmissible, or cumulative. "The decision to quash a ... subpoena duces tecum 'must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena must often turn upon a determination of factual issues.' " *Ghandi v. Police Department of City of Detroit,* 747 F.2d 338, 354 (6th Cir.1984) (quoting *United States v. Nixon,* 418 U.S. 683, 702 (1974)). While a court "may properly refuse to subpoena witnesses whose testimony is merely cumulative or repetitive," *Poole,* 819 F.2d at 1029, "a subpoena for oral testimony will rarely be quashed." 5A J. Moore, *Moore's Federal Practice* ¶ 45.09[1] (2d ed. 1993). Moreover, as a general rule, a party has no standing to seek to quash a subpoena directed to a non-party witness, unless that party can demonstrate a personal right or privilege with respect to the subject matter of the testimony of the non-party witness. *See Langford v. Chrysler Motors Corp.,* 513 F.2d 1121, 1126 (2d Cir.1974) ( "In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); *Brown v. Braddick,* 595 F.2d 961, 967 (5th Cir.1979); 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2457, at 431 (1971).

Here, none of the witnesses that plaintiff seeks to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 150317 (E.D.N.Y.)
(Cite as: 1993 WL 150317 (E.D.N.Y.))

Page 4

subpoena is a party to this lawsuit. Therefore, defendants have no standing to challenge them without a showing of privilege or private right. *Langford, supra.* Defendants do not claim any privilege or private right with regard to plaintiff's witnesses; thus, defendants have no standing to challenge these subpoenas. Therefore, defendants' motion to quash these subpoenas is denied.

Although defendants cannot challenge plaintiff's request to subpoena his seven non-party witnesses who are not in state custody, the Court must nonetheless determine whether the testimony proffered by these witnesses is relevant, necessary, and not cumulative before the subpoenas shall issue. *See Mosby v. Marbry,* 697 f.2d 213, 214 (8th Cir.1982) ("trial court has discretionary power to refuse to subpoena witnesses to prevent abuse of process").

*5 According to the plaintiff's affirmation in opposition to defendants' motion to quash and his narrative statement, Ms. E. Carmona (whom he also refers to Ms. Carmellia) was the legal aid representative he spoke with six days after the alleged beating. He states that Carmona interviewed him and noticed the injuries to both of plaintiff's wrists. Plaintiff intends to introduce Carmona's testimony to corroborate his version of the incident and to support his claim that he reported the incident soon after it occurred. Ms. Carmona's testimony is relevant and admissible. If she did note bruises on plaintiff's wrists during her interview with him, then that observation would be relevant circumstantial evidence tending to support plaintiff's contention that his wrists were tied by defendants. Her testimony as to what the plaintiff reported to her is hearsay admissible under the exception allowing for testimony as to declarant's existing state of mind, emotion, sensation and physical condition. *See Fed.R.Evid.* 803(3).

Plaintiff seeks to have three legal aid attorneys called to testify on his behalf. He plans to have attorney Sonia Perez, a legal aid attorney, testify as to his mental and emotional condition during his arraignment in Bronx Criminal Court on August 24, 1990. This testimony, like that of Ms. Carmona, is admissible under the exception to the hearsay rule that allows testimony as to a declarant's mental, emotional, or physical condition at the time of the statement.

Plaintiff intends to have attorney David Rabin describe plaintiff's expressions of concern about his safety prior to being moved to the Queens House of Detention. Plaintiff also states that Rabin can testify to his general physical condition prior to the alleged beating. Finally, plaintiff says that Rabin can confirm that plaintiff called him and described the same actions on the part of the defendants as he alleges in the complaint. Rabin's testimony is relevant and material if plaintiff's credibility is challenged by defendants. Rabin's testimony would support a contention by the plaintiff that his claims were not fabricated after the fact but arose out of events that he reported immediately after they happened. Therefore, a subpoena will issue for David Rabin.

Plaintiff does not indicate what he intends to have attorney Bernard Segal testify about and has not made any argument in support of issuing a subpoena for him. Therefore, the Court will not issue a subpoena for Segal.

Haywood also seeks to call Martial Bonhomme, the Legal Aid Coordinator at the Queens House of Detention, as a witness. He plans for Bonhomme to testify that he saw plaintiff's ripped and trampled legal papers. Plaintiff also states that Bonhomme attempted to get him medical attention on August 23, 1990, and will testify to that fact. This testimony is relevant circumstantial evidence and should be considered by the Court; therefore, a subpoena will issue for Martial Bonhomme.

*6 Finally, plaintiff seeks to have Captain Watson and Officer Brice, two officers from the Department of Corrections Emergency Response Unit (the "ERU"), testify as to the procedure used to transport inmates and their property from one city facility to another. Plaintiff contends that this testimony is relevant to his claims against the defendants because the defendants erroneously accused him of carrying a forged visitor's pass from the Bronx House of Detention. Plaintiff implies that defendants' erroneous accusations are further evidence that the defendants were part of a vendetta against plaintiff. Defendants state, however, that there was no captain or officer named Watson in the ERU at the time the ERU transported plaintiff from

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 150317 (E.D.N.Y.)
**(Cite as: 1993 WL 150317 (E.D.N.Y.))**

Page 5

the Bronx House of Detention to the Queens House of Detention. Therefore, no subpoena can be issued for this person. Officer Brice, however, was on the detail that transported Haywood from the Bronx House of Detention to the Queens House of Detention, and he is also listed to be called as a witness for the defendants. Given the potential relevance of his testimony and the fact that he will be called to testify in any event, a subpoena will issue for him to testify in the plaintiff's case-in-chief.

CONCLUSION

The Court will not issue any writs of habeas corpus ad testificandum for any of plaintiff's inmate witnesses because the testimony of his inmate witnesses will not advance his case substantially, the presence of these witnesses is not necessary to his case, and the considerations of expense and security far outweigh any value the testimony of these witnesses may have to plaintiff's case. Subpoenas will issue for E. Carmona, Sonia Perez, David Rabin, Leslie Brice, and Martial Bonhomme. The subpoenas requested for Eugene Watson and Bernard Segal will not issue. The pro se clerk is directed to prepare forthwith the necessary subpoenas duces tecum for the trial scheduled to commence on May 3, 1993, for service upon the witnesses in accordance with this Court's order dated October 4, 1990, granting plaintiff the right to prosecute this action in forma pauperis.

The Clerk is directed to mail a copy of the within decision to all parties and to the pro se clerk.

SO ORDERED.

> FN1. Section 2241(c)(5) of Title 28, United States Code expressly grants district courts the power to grant *habeas corpus as testificandum.* It provides that: "The writ of habeas corpus shall not extend to a prisoner unless ... [i]t is necessary to bring him into court to testify or for trial."

1993 WL 150317 (E.D.N.Y.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratrix of | ) | |
| the Estate of Christopher Phelan, | ) | |
| Class Member, and Individually | ) | |
| | ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DaimlerChrysler Corporation | ) | November 3, 2004 |
| | ) | |
| Defendant. | ) | |
| | ) | |

**WRIT OF HABEAS CORPUS AD TESTIFICANDUM PURSUANT TO
28 U.S.C. §§ 1651(A) AND 2241(C)(5) DIRECTING THE PRODUCTION OF
<u>INMATE CHRISTOPHER MILLER</u>**

To:  Commissioner Theresa C. Lantz of the State of Connecticut Department of Correction

Re:  Christopher Miller, Inmate No. # 266075; Date of Birth: 11/06/66, confined at Willard-Cybulski Correctional Institution, 391 Shaker Road, Enfield, CT  06082

It is hereby Ordered that, pursuant to 28 U.S.C. §§ 1651(a) and 2241(c)(5), inmate Christopher Miller be produced to appear and testify at trial in the instant case.  It is further ordered that Defendant DaimlerChrysler Corporation bear all reasonable costs and fees incurred by the State of Connecticut Department of Correction, the United States Marshall, and the United States Bureau of Prisons in implementing the terms of this Writ.

_____, J.