UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re Jeep Wrangler Class Action ) | |
| ) | |
| Angela Phelan, Administratrix of ) | |
| the Estate of Christopher Phelan, ) | Civil No. 302CV1219 JBA |
| Class Member, and Individually ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DaimlerChrysler Corporation ) | November 1, 2004 |
| ) | |
| Defendant. ) | |

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF OTHER INCIDENTS**

Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "defendant") submits this memorandum in support of its motion *in limine* to prohibit plaintiff from introducing evidence of, or making reference to, the facts of other incidents.

## I. INTRODUCTION

Plaintiff made extremely broad discovery requests seeking information from DaimlerChrysler regarding other occurrences involving its vehicles. Without waiving its admissibility objections, defendant produced a substantial quantity of documents responsive to these requests containing information on other incidents, including lawsuit and claims lists and Customer Assistance Inquiry Request ("CAIR") documents. In response to the Magistrate Judge's March 12, 2004 Ruling on Plaintiff's Motion for Reconsideration, plaintiff's counsel

provided[1] a Supplemental Response on April 2, 2004 identifying three other incidents on which plaintiff would seek to introduce evidence at trial. The present motion and memorandum are directed to the incidents identified by plaintiff pursuant to the Orders issued by the Court and by the Magistrate and to materials produced prior to April 2, 2004 by the defendant in discovery in this case.[2]

The admission of information on other occurrences would inject into the trial evidence that is irrelevant, highly prejudicial, and inflammatory, and would require that the jury be exposed to multiple "mini-trials" based upon unreliable evidence. This could only result in jury confusion and in the undue expenditure of the Court's time. This evidence has no proper place in the trial of this case and ought to be excluded.

II.  **ARGUMENT**

    A.  **Plaintiff Cannot Show That Any Of The Other Incidents Is Substantially Similar To The Subject Accident**

        1.  **Plaintiff must show substantial similarity between the subject incident and any others she seeks to admit by competent, expert evidence.**

Evidence of other occurrences is admissible only upon a showing *by its proponent* that the other accidents occurred under substantially similar circumstances and conditions. See Kinser v.

---

[1] The Supplemental Response was served on defense counsel, however, there is a question as to whether it was filed as was required by this Court's Orders. See Ruling On Plaintiff's Motion For Reconsideration, dated March 12, 2004 at p. 12, attached to DaimlerChrysler's Motion as Exhibit A.

[2] The defendant will submit detailed objections to the admission of individual incidents identified in the April 2, 2004 documents or otherwise identified by plaintiff after it has had an opportunity to review plaintiff's proposed trial exhibits pursuant to Paragraph 8(b) of the Court's instructions regarding the Joint Trial Memorandum. See Endorsement Order and Final Scheduling Order, dated October 8, 2004, attached to DaimlerChrysler's Motion as Exhibit B. Those exhibits had not been made available to defense counsel as of the date of filing and service of the present motion.

Gehl Co., 184 F.3d 1259, 1273 (10th Cir. 1999); Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1268 (7th Cir. 1988) (citation omitted). Evidence of other occurrences is highly disfavored, and is subject to rigorous evidentiary predicates. Such evidence is frequently rejected because the earlier incidents are often the consequence of idiosyncratic circumstances, including the weather, physical condition of the injured person, or lighting conditions, which are not present in the incident that is the subject of trial. As one federal appellate court has noted, "[h]ow and why such accidents happen involve a number of variables including the road conditions, speed of the automobile, ability and physical condition of the driver, as well as a myriad of other factors . . . ." Vincent v. Louis Marx & Co., Inc., 874 F.2d 36, 43 (1st Cir. 1989).

Evidence of another incident is relevant and admissible only if it tends to prove or disprove a fact in issue. See Fed. R. Evid. 401. Whether the other incident is substantially similar "is a function of the theory of the case." See Moulton v. Rival Co, 116 F.3d 22, 27 (1st Cir. 1997) (citing Ponder v. Warren Tool Corp., 834 F.2d 1553, 1560 (10th Cir. 1987) (citations omitted)). Unless the proponent of the evidence can establish a high degree of similarity between the subject accident and the other occurrence, "'the jury might infer from evidence of the prior accident alone that ultra-hazardous conditions existed. . . and were the cause of the later accident without those issues ever having been proved.'" Nachtsheim, 847 F.2d at 1269 ) (quoting Gardner v. Southern Ry. Sys., 675 F.2d 494, 952 (7th Cir. 1982) (per curiam)).

As an element of relevancy, substantial similarity is a threshold question for the Court and not a matter for the jury to weigh. It is not proper to admit the evidence, based upon the assumption that the opponent will have the opportunity to point out the differences between the other accidents

and the subject accident. The proponent of the evidence bears the burden of providing the foundation for admission. See Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 508 (8th Cir. 1993) (citation omitted); Hale v. Firestone Tire & Rubber Co., 756 F.2d 1322, 1332 (8th Cir. 1985) (citations omitted). The requirement of a foundation of substantial similarity is a rule of evidence governing what the jury should be allowed to hear. See Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1109 (8th Cir. 1988). The trial court may not abrogate its "important function" of deciding the legal question of the relevance of evidence. Id.

The determination of substantial similarity of incidents must be established through competent evidence. See Johnson v. Colt Indus. Operating Corp., 797 F.2d 1530, 1534 (10th Cir. 1986) (citing Rexrode v. American Laundry Press Co., 674 F.2d 826, 829 (10th Cir. 1982)). Due to the complexity of plaintiff's product defect claims, plaintiff must provide expert testimony to establish that the other incidents she seeks to have admitted were either caused by, or demonstrated, a defective design in the windshield frame of the Jeep Wrangler (YJ). See Trull v. Volkswagen of Am., Inc., 187 F.3d 88, 97 (1st Cir. 1999) (noting that expert's evidence on other similar incidents should meet Fed. R. Evid. 703's reliability standard); see also J.B. Hunt Transport v. General Motors Corp., 52 F. Supp. 2d 1084, 1089 (E.D. Mo. 1999).

   **2.   Plaintiff cannot show substantial similarity between the subject incident and the other occurrences she seeks to have admitted.**

   a. Plaintiff's Theory Of The Case

Irving Ojalvo, whom plaintiff designated to testify on design, accident reconstruction and injury causation, described the incident as follows in his report in this case:

> On January 18, 2000 at approximately 9:50 PM [sic], Mr. Christopher Phelan was traveling home in the right westbound lane of Route 2 in Glastonbury, CT in his 1994 Jeep Wrangler. As it was winter, Mr. Phelan had the hard top on his vehicle. As he approached Exit 10, where he normally exited on his way home, a 1987 Ford Taurus station wagon, driven by Mr. Christopher Miller, [an intoxicated driver], approached him from behind at a very high speed and struck the back end of the Jeep.

See Preliminary Report for Jeep Rollover Fatality Accident Investigation ("Ojalvo Report") at p. 2, attached hereto as Exhibit A.

Ojalvo estimated the speed of the Ford prior to impact at 100 mph and the speed of the Jeep at approximately 52 mph. He claims that the speed of the Jeep was increased to "approximately 80 mph" as a result of the impact from the Ford. See Exhibit A, Ojalvo Report at p. 8; Deposition of Irving U. Ojalvo, 3/7/03 ("Ojalvo Deposition") at p. 166, attached hereto as Exhibit B. According to Ojalvo, following the collision from the Ford, the Jeep traveled about 140 feet, first on the roadway and then along a wire rope guard rail to the right of the roadway, knocked down a lightpost and then made a partial (7/8) roll away from the road and down the embankment to its point of rest, with its right side against a tree.

Plaintiff's design defect theory is directed to a purported weakness in the Jeep's windshield frame. Plaintiff alleges that Mr. Phelan's injuries allegedly resulted from the "intrusion" of the driver's side door header into the driver's vehicle compartment during the course of the rollover. According to Ojalvo and to plaintiff's biomechanic, Wilson C. Hayes, the injury occurred when the left upper portion of the windshield frame (which they describe as the A-pillar) gave way as a result of a single grazing contact with the ground during the rollover. The purported collapse of the frame on the left side supposedly forced the door header to come

in contact with Mr. Phelan's head.  See Exhibit B, Ojalvo Deposition at pp. 243-44; Plaintiff's Supplemental Disclosure of Expert Testimony for Dr. Irving U. Ojalvo at p. 2, attached hereto as Exhibit C; Plaintiff's Supplemental Disclosure of Expert Testimony for Wilson C. Hayes at p. 2, attached hereto as Exhibit D.  In addition, Dr. Shah, the medical examiner testified based on her autopsy results that "the probable mechanism of Phelan's death is a blow to the head by a 'straight, blunt object.'"   See Ruling on Defendant's Motion to Exclude and Motion for Summary Judgment, dated August 25, 2004 ("Ruling, 08/25/04") at p. 4, attached hereto as Exhibit E.  Dr. Shah further testified that the "'straight, blunt object' was probably the door frame adjacent to Phelan's head's location." See id.

### b.     Proposed Evidence

Plaintiff's supplemental discovery responses of April 2, 2004 ("Supplemental Responses") identified three other accidents involving Jeep Wrangler vehicles which gave rise to lawsuits. Plaintiff identified as well several individuals plaintiff apparently intends to produce at trial for live testimony and included what appear to be transcripts of testimony given in those cases, out of state police reports, and copies of vehicle and scene photographs.  These are labeled by plaintiff by the name of the action: James W. Gillespie and Sandra Gillespie, Parents and Next of Kin of James Wade Gillespie, Deceased v. Chrysler Corporation and Jeep Eagle, Division of Chrysler Corporation (hereafter "Gillespie"); Mutschler et al. v Chrysler et al., (hereafter "Mutschler"); and Shamel et al v. Chrysler Corporation (hereafter "Shamel").  Any evidence regarding these cases, whether in the form of documents, live testimony or deposition testimony is inadmissible, for the reasons set forth below.

At a minimum, and based on plaintiff's own self-serving account of how the accident and injuries occurred, plaintiff must show the following similarity of circumstances before this Court should even consider making a finer cut at the evidence, to determine the purpose for which it is to be offered and other pertinent issues:

1. a two-vehicle accident, involving a rear end impact on the Jeep from another vehicle that generates substantially similar crush forces on the Jeep;

2. with the Jeep traveling on a paved roadway at speeds of approximately 50 mph prior to the accident;

3. with the Jeep's speed increased to approximately 80 mph as a result of the impact and leaving the pavement at approximately 75-80 mph;

4. with the vehicle striking a wire rope guardrail system or substantially similar object located off the roadway;

5. with the vehicle knocking down up to six guardrail posts and striking a lightpost off the roadway;

6. with the vehicle rolling to its passenger side while traveling at a forward speed of approximately 40 mph;

7. with the vehicle making less than one complete roll before coming to rest;

8. during the roll, the upper left portion of the windshield frame would have to make a grazing contact with the ground while the vehicle is traveling at a forward speed of 28 mph; and

    9.    with the roll constituting plaintiff's mechanism of injury.

Plaintiff cannot make this showing.

Each of the events plaintiff has identified in her supplemental response to the defendant's interrogatory is readily distinguishable from the subject incident, and ought to be excluded from trial for the following reasons:

1. The three incidents identified by plaintiff were all single vehicle accidents;

2. One of the incidents identified by plaintiff (<u>Mutschler</u>) involved the Jeep towing a trailer at the time of the accident;

3. Plaintiff failed to identify the speed of the vehicles either immediately prior to or at the time of the rollovers;

4. Plaintiff's documentation does not indicate the exact number of times that the vehicles rolled, and it is clear that the vehicle involved in <u>Mutschler</u> rolled several times;

5. Plaintiff's documentation does not identify the direction of the rollovers in two of the incidents (<u>Mutschler</u> and <u>Shamel</u>);

6. There is no indication whether the vehicles' windshield frames contacted the ground in the course of the rollovers, or the nature of any such contact;

7. Plaintiff's documentation does not indicate the cause of the damage to the vehicles' windshield frames;

8. Plaintiff failed to indicate whether any damage that may have occurred to the windshield frames in the accidents caused the drivers to sustain their injuries; and

9. Plaintiff offers no information concerning whether the vehicles knocked over any objects similar to the objects the subject vehicle knocked over in this accident.

### B. Plaintiff's Proposed Evidence Is Inadmissible On Grounds Of Hearsay, Relevancy, And Unfair Prejudice

In meeting the burden of showing reasonable similarity, plaintiff may only utilize non-hearsay and relevant evidence. Courts will exclude on hearsay and relevancy grounds such evidence as lawsuit and claims lists, accident reports, reports of consumer complaints, and summaries of other incidents.[3]

#### 1. CAIR records.

In this case, defendant has produced CAIR (Customer Assistance Inquiry Request) records. These documents contain short written narratives of selected information obtained from consumers who have contacted DaimlerChrysler to request customer assistance or to make an incident report about a vehicle. Most of the CAIR documents contain brief records of telephone conversations between a customer representative and a consumer. Some of the reports plaintiff may seek to have

---

[3] See, e.g., Barker v. Deere & Co., 60 F.3d 158, 162-63 (3rd Cir. 1995) (accident statistics); Johnson v. Ford Motor Co., 988 F.2d 573, 579-81 (5th Cir. 1993) (claims, lawsuit summaries and letters); Shields v. Sturm, Ruger & Co., 864 F.2d 379, 381 (5th Cir. 1989) (accident reports); Brooks v. Chrysler Corp., 786 F.2d 1191, 1195 (D.C. Cir. 1986) (consumer complaints from NHTSA); Wolf v. Procter & Gamble Co., 555 F. Supp. 613, 620-621 (D. N.J. 1982) (complaint records).

admitted may contain references to, or excerpts from, preliminary investigation reports or documents prepared by government agencies relating to a particular incident.

The CAIR report information lacks the indicia of reliability necessary for admissibility. Each CAIR report may contain numerous statements from a variety of sources, including individual vehicle owners and users, their representatives and DaimlerChrysler representatives. The potential for multi-level hearsay in such a document is plain. A CAIR record is not meant to serve as a complete and definitive analysis of how a motor vehicle accident occurred, and cannot be presented as such at trial. Furthermore, a CAIR report by itself contains insufficient information to determine the existence of a product defect, and thus cannot arguably be offered on the issue of notice.

In Uitts, the trial court excluded similar reports kept by General Motors ("1241 Reports") that recorded accident complaints made by automobile owners. See Uitts v. General Motors Corp., 411 F. Supp. 1380, 1381-83 (E.D. Pa. 1974). In holding that the reports lacked an indicia of reliability, the court observed:

> The 1241 reports offered by plaintiffs were not the result of a continued and detailed investigation, but rather served merely as a preliminary investigation involving only the taking of a statement from the driver and if possible an inspection of the vehicle in question. The persons compiling these reports were not required to assemble all the factual data, or determine the cause or extent of the damage. They were charged with merely reporting the statements of the owners without any duty to cross examine or investigate further.

Id. at 1382. The court also excluded the 1241 Reports because permitting "them to be considered by the jury would be tantamount to allowing the persons making the statements to testify against

[the] defendant without being subject to cross examination or required to take an oath." Id. at 1382-83.

### 2. **Lists of claims and lawsuits.**

The lists of claims and lawsuits against the defendant produced in discovery should be excluded because they contain unverified and inherently biased information. The information contained in those lists consists, at a maximum, of the names of claimants or plaintiffs; the names, addresses and telephone numbers of their attorneys; the state and city in which the accident occurred; and the venue of the lawsuit.

In a case considering the admission of similar evidence by a plaintiff, one court moved to exclude on the basis that a "list of eighty-three accidents proves nothing by itself. . . ." J.B. Hunt, 52 F. Supp. 2d at 1089. In this case, this Court should similarly exclude the lawsuit and claim lists because they contain extremely limited information that provides no basis for determining whether the underlying events were substantially similar to the subject accident. Plaintiff also thus far has made no proffer of foundational evidence related to these lists. Finally, the admission of these lists would expose the jury to information regarding matters that have absolutely bearing on any material issue in this case.

### 3. **Pleadings, police reports and investigation reports.**

Plaintiff produced with her Supplemental Response numerous pleadings and police reports regarding three identified incidents. Information contained in these documents constitutes out-of-court hearsay that should properly be excluded from this case. The complaints can hardly be

considered an objective source of information since their purpose is to provide the party's one-sided view of why a court should consider a lawsuit meritorious. Out-of-state police reports likewise contain inadmissible hearsay, and would require, at a minimum, authentication prior to admission. The photographs that plaintiff produced in connection with her Supplemental Response must also be authenticated, as there is no inherent evidence of their reliability.

Without the benefit of a more complete presentation, and the support of credible expert testimony, the statements in these documents remain unchallenged, unreliable, and lacking in the necessary detail to appropriately compare the incidents to the instant case. Thus, even if the hearsay objection could be overcome, the pleadings, out-of-state police reports and preliminary investigation reports would still be inadmissible because they do not contain sufficient information to enable the court to make a determination of substantial similarity, and are an inherently unreliable, biased and unscientific sources of information.

**C.   Evidence Of Accidents Occurring After The Date Of The Subject Incident Would Not Be Relevant To Notice Of Defect Or Any Other Issue In This Matter**

When evidence of other similar incidents is sought to be introduced in a products liability case, the initial inquiry is whether such evidence meets basic relevancy requirements. Only relevant evidence is admissible, and evidence is relevant only if it is probative of a fact of consequence to the resolution of the action. The other allegedly similar incidents cannot prove any material issue in this case. When evidence of other occurrences is offered to demonstrate that the manufacturer had notice of defects in the product, the prior accident is admissible only if it occurred sufficiently before the date of the subject incident that the manufacturer could have taken steps to remedy the

alleged defect. Thus, evidence of any incidents occurring after the January 18, 2000 accident that is the subject of this case cannot show notice of defects. See Kinser, 184 F.3d at 1274 (accident reported to manufacturer in August 1991 could not have put the manufacturer on notice of a defect in a product purchased in April 1991); Shields, 864 F.2d at 381 (accident reported to manufacturer after date of plaintiff's accident does not put manufacturer on notice of alleged defect); Vassallo v. Baxter Healthcare Corp., 696 N.E.2d 909, 923-24 (Mass. 1998) (limiting a manufacturer's continuing duty to warn of risks discovered between the purchase and the accident for the product at issue).

Evidence of other incidents offered to show notice should be subject to the same rigorous standards for admissibility as when offered to show product defect. See, e.g., Cooper v. Firestone Tire & Rubber Co., 945 F.2d 1103, 1105 (9th Cir. 1991); Pettyjohn v. Kalamazoo Ctr. Corp., 868 F.2d 879, 881 (6th Cir. 1989). If the standard of similarity is to be broadened when the evidence is offered to show notice, the similarity to be broadened ought to be similarity of the circumstances of the accident, not similarity of the product involved. See Finchum v. Ford Motor Co., 57 F.3d 526, 533 (7th Cir. 1995).

Nor can the evidence be used for impeachment purposes without proof that the defense witness has actual, relevant knowledge of the other incidents. See Johnson v. Ford Motor Co., 988 F.2d at 580 n.6 (holding that evidence of other malfunctions had "no value" in impeaching the testimony of a defense witness who had no knowledge of other incidents). Plaintiff has not met her burden--and it clearly is plaintiff's burden--of proving the relevance of other alleged incidents that

occurred after Mr. Phelan's accident. That, standing alone, warrants the preclusion of such evidence.

### D. Even If Plaintiff Could Demonstrate Substantial Identity And/Or Similarity, This Court Should Exclude Such Evidence Because Its Unfair Prejudicial Effect Would Substantially Outweigh Any Arguable Probative Value

Even if this Court were to conclude that <u>any</u> of plaintiff's "other incidents" data were to meet the Court's strict rules for admissibility, that would be only the <u>first step</u> of the required analysis, because "'the trial judge must [still] weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues against the factors favoring admissibility." <u>De Pue v. Sears, Roebuck & Co.</u>, 812 F. Supp. 750, 752 (W.D. Mich. 1992) (<u>quoting</u> <u>Rye v. Black & Decker Mfg. Co.</u>, 889 F.2d 100, 103 (6th Cir. 1989)). In other words, this Court would have an independent basis for excluding the "other incidents" data based upon its unfairness, its confusion, and its inevitable consumption of the trial on collateral issues.

Defendant would suffer substantial and unfair prejudice as a result of the introduction of this evidence. That is the very reason why plaintiff's counsel will attempt to present this highly inflammatory (but irrelevant) "other incidents" evidence to the jury. In a courtroom, each "other incident" can gain a disproportionate significance. As has been widely recognized, "[p]roof of prior accidents or occurrences are not easily admitted into evidence, since they can often result in unfair prejudice, consumption of time and distraction of the jury to collateral matters." <u>Uitts</u>, 411 F. Supp. at 1383 (citations omitted). That result would be guaranteed in this case, should plaintiff be allowed to turn this trial into a series of mini-trials about different events, at different times in different

locations, the witnesses to which are many, of whom only one or two, at best, would be offered by plaintiff.

In <u>Uitts</u>, the plaintiff attempted to introduce into evidence thirty-five reports produced by the defendant concerning incidents involving similar vehicles and similar allegations of failure. Recognizing the prejudicial nature of these reports and the amount of time that would be necessary to address questions arising from their introduction, the court stated:

> Defendant, in order to minimize the prejudicial effect of these reports, would have had to go through each one individually with the jury. The result would have been a mini-trial on each of the thirty-five reports offered by plaintiff. This would lengthen the trial considerably and the minds of the jurors would be diverted from the claim of the plaintiffs to the claims contained in these reports.

<u>Id.</u> Here, as in those cases, the "other incidents" data should be excluded.

Jury distraction and confusion will most certainly result because admitting evidence of "other incidents" effectively forces any defendant to explore in detail each one of those incidents, no matter how dissimilar the circumstances, precisely to prove those very dissimilarities. Even with respect only to the other lawsuits plaintiff contemplates parading before this jury, the prospect of conducting "mini-trials" on each of the other lawsuits identified in plaintiff's Supplemental Responses is itself reason enough to reject plaintiff's proffer to introduce this evidence. <u>See id.</u>

There is no valid basis for such evidence here. The facts of this accident will pose enough of a challenge for the jury to unravel, in light of the fundamental conflicts between the parties' experts on the basic issues of this case. The jury should not be subjected to a plethora of "other

incidents" offered for the sole purpose of shoring up inadequate product defect testimony, and to create the false and misleading impression that a true statistical analysis has been presented. The proposed evidence is purely anecdotal, lacking any context, and precisely the type of non-scientific, highly prejudicial *ipse dixit* that has troubled courts across the nation for decades.

### III.    CONCLUSION

WHEREFORE, defendant DaimlerChrysler Corporation respectfully requests that the Court exclude plaintiff's proposed evidence of other allegedly similar incidents.

>
> Defendant,
> DaimlerChrysler Corporation
> By its attorneys,
>
> _____/s/_____
> Peter M. Durney (Fed. Bar ID# CT14569)
>     pdurney@cornellgollub.com
> James P. Kerr (Fed. Bar ID# CT24142)
>     jkerr@cornellgollub.com
> CORNELL & GOLLUB
> 75 Federal Street
> Boston, Massachusetts 02110
> (617) 482-8100
> (617) 482-3917 Fax

### CERTIFICATE OF SERVICE

I, James P. Kerr, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 1st day of November, 2004 a true copy of the foregoing Defendant DaimlerChrysler Corporation's Memorandum In Support Of Its Motion I*n Limine* to Exclude Evidence of Other Incidents, was served by hand, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut  06107
Attorney for Plaintiff

- 17 -

by first class mail postage prepaid, directed to:

Mr. Christopher Miller
Inmate #266075
c/o Willard-Cybulski Correctional Institution
Third-Party Defendant

| | |
|---|---|
| Rikki Timbo, Inc. | Maurice Samuelian |
| Agent for Service: Richard W. Tomc, Esq. | Kathleen Samuelian |
| 49 Main Street | 52 Mallard Avenue |
| Middletown, CT 06457 | East Hampton, CT 06424 |
| Third-party defendant | Third-party defendant |

              ___/s/_____
                   James P. Kerr