UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratrix of the Estate of Christopher Phelan, Class Member, and Individually | ) ) ) ) | |
| | ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| DaimlerChrysler Corporation | ) ) | November 1, 2004 |
| Defendant. | ) | |

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S
MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
REFERENCES TO, TESTIMONY AND/OR COMMENTS REGARDING THE
ADEQUACY OF THE VISOR LABEL PROVIDED IN
COMPLIANCE WITH 49 C.F.R. § 575.105**

Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "defendant") submits this Memorandum in support of its motion *in limine* to exclude from trial any and all evidence regarding the alleged inadequacy of the visor label in the subject vehicle to warn plaintiff's decedent of the risks of a rollover accident. The defendant states the following in support of its Motion:

## I. INTRODUCTION

Plaintiff has designated Michael Wogalter to testify on human factors issues, including

warnings and instructions regarding vehicle use. (See Plaintiff's Disclosure of Expert Witness for Michael Wogalter dated February 14, 2003, at pp. 1-2, attached hereto as Exhibit A.)  The defendant anticipates that Wogalter will opine that the visor warning label in the subject 1994 Jeep Wrangler (YJ) did not adequately inform Mr. Phelan of the capacity of the vehicle's windshield frame and rollbar structure to provide structural protection in a rollover accident.

## II.     ARGUMENT

The defendant requests that the Court exclude any testimony by Wogalter or any other evidence proposed by plaintiff regarding the alleged inadequacy of a sticker affixed to the driver's side sun visor for the subject model vehicle, the contents of which were mandated, at least in part, by 49 CFR § 575.105 (1994) (regulations which were in effect are attached hereto as Exhibit B).

Defendant seeks the exclusion of such testimony on the grounds that the National Traffic and Motor Vehicle Safety Act of 1966 ("the Safety Act"), see 15 U.S.C. §§ 1381-1431 (1988)[1] and 49 C.F.R. § 575.105 preempt State statutory and common law claims directed to these items.

Congress enacted the Safety Act for the purpose of reducing injuries and deaths resulting from accidents by authorizing the promulgation of Federal safety standards. 15 U.S.C. §§ 1391(2), 1392(a), (1982) (code sections which were effective in 1994 are attached hereto as Exhibit C).  See 15 U.S.C. §§ 1381, 1392(a) (1988).  See also Heinricher v. Volvo Car

---

[1] This statute has been recodified at 49 U.S.C. Section 30101 et seq., effective July 5, 1994.  The vehicle's build date was March 29, 1994.

Corporation, 61 Mass.App.Ct. 313, 314 (2004); Wood v. General Motors Corp., 865 F.2d 395, 397 (1st Cir. 1988), cert. denied, 494 U.S. 1065 (1990).  "When framing the Safety Act, Congress indicated clearly its intention that the primary responsibility for setting standards regulating the national automobile manufacturing industry rested upon the federal government, not the states." Wood, 865 F.2d at 397, citing S.Rep. No. 1301, 89th Cong., 2d Sess. 1 (1966), reprinted in 1966 U.S. Code Cong. & Admin. News 2709.  The Safety Act's provisions indicate that the Congress contemplated only a limited "consultative" role for the states. Id. at 398.  The statute contains a preemption provision that explicitly preempts any state legislative or regulatory provision -- including state standards that may be more stringent than the Federal standards -- that covers "the same aspect of performance" or "item of equipment" as a Federal standard but is not identical to the federal standard:

> Whenever a...safety standard established under this subchapter is in effect, subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish or continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C. § 1392(d).   See Geier v. American Honda Motor Co., 529 US 861, 867 (2000) (quoting same).

At the time the subject vehicle was manufactured, 49 C.F.R. 575.105 required "manufacturers of utility vehicles to alert drivers that the particular handling and maneuvering characteristics of utility vehicles require special driving practices when those vehicles are operated on paved roads". Ex. B, 49 C.F.R.§ 575.105(a).  According to the explicit language of the regulation, manufacturers of sport utility vehicles were to provide a sticker affixed to the

instrument panel, windshield frame or driver's side sun visor which contained language advising passengers that utility vehicles handle differently from ordinary passenger cars and may roll over during sharp turns or abrupt maneuvers.  Id.

      **A.**      **Plaintiff's claims are directed to the same aspect of performance and item of equipment as 49 C.F.R. § 575.105.**

The rule requires in § c (1) that the sticker contain "the following or similar language:

> This is a multipurpose vehicle which will handle and maneuver differently from an ordinary passenger car, in driving conditions which may occur on streets and highways and off road.  As with other vehicles of this type, if you make sharp turns or abrupt maneuvers, the vehicle may rollover or go out of control and crash.  You should read driving guidelines and instructions in the Owner's Manual, and WEAR YOUR SEATBELTS AT ALL TIMES.
>
> The language on the sticker required by paragraph (1) and in the Owner's Manual, as required in paragraph 2, may be modified as is desired by the manufacturer to make it appropriate for a specific vehicle design, to ensure that customers are adequately informed concerning the unique propensities of a particular vehicle model.

      **B.**      **The information required by the 49 C.F.R. § 575.105 was provided with the subject model.**

A sticker attached to the driver's side sun visor of the subject model vehicle contains this language:

> WEAR SEAT BELTS AT ALL TIMES--DONT DRINK AND DRIVE
> This is an open-body utility vehicle.  It handles and maneuvers differently from many passenger cars both on-road and off-road.  You must drive it safely.  As with other utility vehicles, if you make sudden turns or abrupt maneuvers, you may cause this vehicle to go out of control and roll over or crash--you or your passengers may be seriously injured.  Read the driving guidelines in the Owner's Manual and Supplement. [2]

---

[2] A photograph produced by plaintiff's warnings expert, Michael Wogalter, at his deposition in this case on April 2, 2003, which he described as a photograph of the driver's side sun visor of a

- 4 -

(Report of Steven R. Arndt, Ph.D. at p. 6, attached hereto as Exhibit D).[3]

### C. Claims directed to the items covered in the regulation are expressly pre-empted.

Plaintiff has alleged claims against DaimlerChrysler Corporation under the Connecticut Product Liability Act ("CPLA"), C.G.S. § 52-572m et seq., including failure to warn claims. (See Amended Complaint at Count III, attached hereto as Exhibit G.)  Based on the written disclosure and deposition of plaintiff's designated warnings expert, the defendant anticipates that plaintiff will present testimony directed to the adequacy of the visor sticker and the Owner's Manual to warn Christopher Phelan regarding the potential risks presented in the use of the vehicle.

Based on plaintiff's disclosure of expert testimony to date, plaintiff does not allege that the visor sticker is not in compliance with 49 C.F.R. § 575.105.  Instead, plaintiff's expert would argue that the sticker should have contained either different or additional language directed to a separate and distinct issue beyond the scope of the regulation: the capacity of the vehicle to provide structural protection in a rollover.  To the extent that plaintiff seeks to demonstrate the inadequacy of the visor sticker mandated by 49 C.F.R. § 575.105 as warnings on this issue, they are expressly preempted by the Safety Act.

---

1994 Jeep Wrangler, which was apparently provided to him by plaintiff's counsel, confirms the presence of this sticker in the subject model vehicle. (Wogalter Exhibit #39, attached hereto as Exhibit E.).

[3] In addition, DaimlerChrysler complied with the 49 C.F.R. § 575.105 with relation to the owner's manual by providing the required language verbatim in the Owner's Manual of the subject vehicle. (Owner's Manual 1994 Jeep Wrangler, pp. 5, 61, attached hereto as Exhibit F).

The "Purpose and Scope" of the regulation as stated in § (a) is to ensure that manufacturers of utility vehicles "alert drivers that the particular handling and maneuvering characteristics of utility vehicles require special driving practices when those vehicles are operated on paved roads."  Further, the language contained on the sticker cited here is mandatory:  "(a) This section requires manufacturers to alert drivers... (c) Required information. Each Manufacturer shall provide and affix a vehicle sticker...(c)(1) A sticker shall be permanently affixed...The sticker shall have the following or similar language…." Ex. B., 49 C.F.R. § 575.105 (emphases added).The regulation allows only limited modifications for the purpose of making the language "appropriate to a specific vehicle design, to ensure that consumers are adequately informed concerning the unique propensities of a particular vehicle model". (Id. at § (1)).

Under the Safety Act, a state may not impose a safety standard "applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard."  Ex. C, 15 U.S.C. § 1392(d).  The Safety Act thus explicitly preempts any state legislative or regulatory enactment that covers "the same aspect of performance" as 49 C.F.R. 575.105, or any other Federal standard.  See, e.g., Harris v. Ford Motor Co., 110 F.3d 1413-1415 (9th Cir. 1997).

Nor may the plaintiff avail herself of the Safety Act's savings clause, 15 U.S.C. § 1397(k).  Connecticut does not permit common law claims in product liability.  It is long-established law that claims under the CPLA "shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a

product." C.G.S. § 572 m(b); § 572n(a). With the consolidation of all product liability claims into a single form of action, the CPLA became "the exclusive remedy for claims falling within its scope." Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 471 (1989); Daily v. New Britain Machine Co., 200 Conn. 562, 571-572 (1986), cited in Lamontagne v. E.I. DuPont De Nemours & Co., Inc., 41 F.3d 846, 855 (2d Cir. 1994). The statute provides the exclusive remedy for all claims falling within its scope and bars common-law causes of action for the same claim. Thomas v. Mazak Corp., 234 F. Supp. 2d 135, 137 (D.Conn. 2002). The CPLA includes a provision entitled, "Liability of product seller due to lack of adequate warnings or instructions", § 52-572q, which governs plaintiff's warnings claims.

All of plaintiff's claims against the defendant in Count III, including plaintiff's warnings claims, are plainly statutory in nature. Plaintiff's warnings expert therefore may not testify that the visor warning contains inadequate warnings; nor may plaintiff present any other testimony directed to that specific feature of the vehicle. If plaintiff were allowed to present such testimony, the Court would be permitting, through the medium of plaintiff's failure to warn claims, state regulation in an area where such regulation is expressly preempted by Federal law in the Safety Act.

  **D.** **Claims directed to the items covered in the regulation are impliedly pre-empted.**

Even under the savings clause, any claims by plaintiff regarding the adequacy of the visor label mandated by 49 C.F.R 575.105 would be preempted. The language of the savings clause

does not suggest a congressional intent to save State common-law actions that conflict with Federal regulations. Geier, 529 U.S. at 869 (the savings clause does not bar the ordinary working of conflict preemption principles). Conflict preemption exists where "it is impossible for a private party to comply with both state and federal law and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73 (2000) (internal quotation omitted); see also Geier, 529 U.S. at 882-86; Kent v. DaimlerChrysler Corp., 200 F. Supp. 2d 1208, 1213 (N.D. Cal. 2002); Griffiths v. Gen. Motors Corp., 303 F.3d 1276 (11th Cir. 2002) (finding implied preemption by FMVSS 208); Cooper v. Gen. Motors Corp., 707 So.2d 428 (Miss. 1997) (same).[4] Courts analyzing conflict preemption have identified several factors which should guide this court in determining whether conflict preemption exists here. See Int'l Paper Co. v. Ouellette, 479 U.S. 481(1987); Chicago & North Western Trans. Co. v. Kalo Brick & Tile Co., 450 U.S. 311 (1981). Among the factors examined courts are:

(a) Whether the law sets forth the procedures for complying with it in great detail;

(b) Whether there was any grant of discretion to the agency in its decision-making;

(c) Whether there was a conflict between a court basing its decision on state law and any action by the agency; and

---

[4] Case law regarding the preemption of common law claims by FMVSS 208, which was promulgated under the same authorizing statute as 49 C.F.R. § 575.105, is equally applicable here. Similar to the regulation in section 575.105, the FMVSS were "to be written and administered by the Secretary of Transportation [and] were to be mandatory standards which would apply to all new motor vehicles." Wood, 865 F.2d at 397.

(d)     Whether the Congress sets out a comprehensive scheme for providing prospective relief, in this case from motor vehicle safety defects.

See Int'l Paper, 479 U.S. at 492; Kalo Brick, 450 U.S. at 321-22.

1. C.F.R 575.105 contains detailed procedures for compliance based upon a comprehensive regulatory scheme.

The express purpose of the Safety Act Congress was "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381. Pursuant to the Safety Act, a set of regulations was promulgated and the Office of Vehicle Safety Compliance was set up to investigate and verify compliance. Ex. B, 49 C.F.R. §§ 554.4, 554.6-554.8, 554.10. As in International Paper and Kalo Brick, Congress has set up detailed procedures for complying with the standard set forth in the warning sticker required by 49 C.F.R. 575.105 and a host of other regulations promulgated under the Act. In addition, the Safety Act allowed for the Secretary to bring to bear civil penalties against violators, and permitted the Secretary to compromise or settle claims for violations. 15 U.S.C. § 1398. Overall, the Safety Act "unquestionably establishe[d] a comprehensive system of oversight . . . ." See Burgo v. Volkswagen of Amer., 183 F. Supp. 2d 683, 688 (D. N.J. 2001) (discussing the Safety Act in the context of tire recalls).

The statute set forth detailed procedures dealing with noncompliance, including mandatory repurchase of non-complying vehicles by the manufacturer, and civil actions by vehicle distributors against manufacturers and distributors. 15 U.S.C. § 1400. The statute also established an inspection regime. 15 U.S.C. 1401. As well, the statute set forth a procedure of

notice, publication, and opportunity for the presentation of issues regarding manufacturers' noncompliance with the chapter, 15 U.S.C. § 1411, 1412, which allowed persons to petition for an investigation of any part of any order under section 1392 of Title 15.

      2.      The Safety Act grants broad discretion to the agency to promulgate and enforce standards in order to accomplish the goals of the Act.

The Safety Act authorized the Secretary of Commerce[5] to "establish by order appropriate Federal motor vehicle safety standards." 15 U.S.C. § 1392 (a); see also 15 U.S.C. § 1407 (authorizing Secretary to issue, amend, and revoke rules and regulations consistent with the relevant subchapter); 49 C.F.R. § 1.50(a)(delegation of authority). Although the term "safety standards" is not defined precisely by the Safety Act, such standards include Consumer Information Regulations such as 49 C.F.R. § 575.105. See Pak v. Chrysler Motors Corp., 1990 WL 198821, at *1 (E.D. Penn. 1990) (analogizing safety standard number 208 to Consumer Information Regulation), aff'd mem., 941 F.2d 1200 (3rd Cir. 1991). Manufacturers may not fail to comply with "any rule, regulation, or order under section 1401 or 1403 of" Title 15 (now codified under Title 49). 15 U.S.C. § 1397(a)(1)(E).

In addition, the Secretary was given discretion to establish safety standards and enact rules and regulations to carry out and enforce automobile safety. 15 U.S.C. §§ 1392, 1407. The Secretary is also given authority to settle claims for violations. Id. at § 1398(b). Under the subject regulation, a manufacturer has little or no discretion as to where the sticker is affixed and what language the sticker must contain. 49 C.F.R. § 575.105. When the final rule was

---

[5] Authority was later transferred to the Secretary of Transportation. See Pub. L. 103-272 (1994).

promulgated, the National Highway Traffic Safety Administration ("NHTSA") stated:

> The agency considers the driver's sun visor to be a "prominent" location in a vehicle, and is modifying the language of this requirement to specifically mention that vehicle location. The agency agrees that the sticker should be of a permanent nature, but does not believe that it is necessary at this time to require the sticker to be placed, for example, behind the plastic lens of the instrument panel. There is no wish to place design restrictions on manufacturers, but the agency does intend for the sticker to be permanently affixed in a prominent position and readily visible to drivers. Stickers similar to the placard required in FMVSS 110 would be considered adequate.

NHTSA, Consumer Information Regulations Operation of Utility Vehicles on Paved Roadways, 49 F.R. 20016 (1984).

    3.    <u>There is clearly a conflict between state law as plaintiff seeks to have it applied here and the action of the agency as authorized by Congress.</u>

Plaintiff's human factors expert is expected to offer the opinion that the language of the warnings contained in on-product vehicle labeling, including the sun visor label instructions mandated by 49 C.F.R. 575.105, were inadequate to warn the decedent regarding the risk of injury in the rollover that occurred in this case, specifically the capacity of the vehicle's windshield frame and rollbar structure to provide structural protection in a rollover accident. As such, his testimony would clearly conflict with the express provisions of the regulation.

Congress has granted authority and discretion to the Secretary of Transportation to determine compliance and promulgate regulations consistent with the provisions of the Safety Act. Congress authorized the Secretary to set up a comprehensive scheme for alerting

consumers to the potential risks identified in the regulation. Imposing an additional labeling requirement under state law based on plaintiff's allegations of inadequate warnings would make it impossible for the defendant to comply with both Federal and state law.

The purpose and scope of § 575.105 is to "alert drivers that the particular handling and maneuvering characteristics of utility vehicles require special driving practices when those vehicles are operated on paved roads." Ex. B, 49 C.F.R. § 575.105(a). Plaintiff does not and cannot claim non-compliance with the regulation as it existed when the vehicle was built. To require the defendant to include additional language in the label regarding the vehicle's capacity to provide structural protection to occupants would subvert the stated purpose of the regulation. Such language would distract consumers' attention from the warnings and instructions the agency determined were critical, leading them not to focus properly on language mandated by the regulation. Indeed, additional warnings could prove so distracting that vehicle users might not pay attention to any of them. See Fisher v. Ford Motor Company, 224 F.3d 570, 574 (6th Cir. 2000) (citing Rules and Regulations, Department of Transportation: Federal Motor Vehicle Safety Standards; Occupant Crash Protection, 58 FR 46551, 46554 (Sept. 2, 1993)). As NHTSA stated in that document, "additional statements...would contribute to an 'information overload,' thereby diluting the impact of the most important information". Id.; see Stewart, 222 F. Supp. 2d 849-50 (finding, without ruling, that where "the warning label attached to Plaintiff's sun visor mirror cover contained precisely the language required under FMVSS" that additional warnings would not have aided warning to plaintiff and may have led to "information overload"). Given the intended thrust of plaintiff's warnings testimony, the enforcement of Connecticut law stands as an obstacle to the execution to the full purpose and objectives of the Safety Act and with

regulations issued in accordance with the statute.

**III.     CONCLUSION**

WHEREFORE, defendant DaimlerChrysler Corporation respectfully requests that all references to, evidence of, testimony, comments and/or argument regarding the inadequacy as a warning of the sticker affixed to the subject model 1994 Jeep Wrangler (YJ) in compliance with 49 C.F.R. § 571.105 be excluded from trial.

        Defendant,
        DaimlerChrysler Corporation
        By its attorneys,


        _____/s/_____
        Peter M. Durney (Fed. Bar ID# CT14569)
          pdurney@cornellgollub.com
        James P. Kerr (Fed. Bar ID# CT24142)
          jkerr@cornellgollub.com
        CORNELL & GOLLUB
        75 Federal Street
        Boston, MA  02110
        (617) 482-8100
        (617) 482-3917 Fax

CERTIFICATE OF SERVICE

       I, Peter M. Durney, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 1st day of November, 2004, a true and correct copy of the foregoing Memorandum of Law in Support of Defendant DaimlerChrysler Corporation's Motion *in Limine* To Exclude References To, Testimony And/Or Comments Regarding The Adequacy Of The Visor Label Provided In Compliance With 49 C.F.R. § 575.105 , Was Served By Hand, Directed To:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut  06107
Attorney for Plaintiff

by first class mail postage prepaid, directed to:

Mr. Christopher Miller
Inmate #266075
c/o Willard-Cybulski Correctional Institution
Third-Party Defendant

| | |
|---|---|
| Rikki Timbo, Inc. | Maurice Samuelian |
| Agent for Service: Richard W. Tomc, Esq. | Kathleen Samuelian |
| 49 Main Street | 52 Mallard Avenue |
| Middletown, CT 06457 | East Hampton, CT 06424 |
| Third-party defendant | Third-party defendant |

                                                        _____/s/_____
                                                       Peter M. Durney