UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re Jeep Wrangler Class Action | ) |
| | ) |
| Angela Phelan, Administratrix of | ) |
| the Estate of Christopher Phelan, | )   Civil No. 302CV1219 JBA |
| Class Member, and Individually | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
|     v. | ) |
| | ) |
| DaimlerChrysler Corporation | )   November 1, 2004 |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
DAIMLERCHRYSLER CORPORATION'S *MOTION IN LIMINE* TO ADMIT
CONNECTICUT UNIFORM POLICE ACCIDENT REPORT**

Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "defendant") submits this memorandum in support of its Motion *in Limine* to Admit the Connecticut Uniform Police Accident Report on the subject accident in this case, pursuant to Rule 803(8) of the Federal Rules of Evidence.

The defendant states the following in support of its motion:

**I.     INTRODUCTION**

This case arises from a January 18, 2000 motor vehicle accident on Route 2 westbound in Glastonbury Connecticut, in which Christopher Phelan ("Mr. Phelan") was fatally injured.

**ORAL ARGUMENT IS REQUESTED**

Specifically, a 1987 Ford Taurus driven by third-party defendant Christopher Miller ("Miller"), who was intoxicated, struck Mr. Phelan's 1994 Jeep Wrangler YJ ("Jeep" or "subject vehicle") from behind at a high rate of speed.  Plaintiff's accident reconstructionist estimated in his report that the vehicle driven by Miller was traveling at about 100 miles per hour when it struck the Jeep.  Following the impact, the Jeep was forced forward and towards the right into a wire rope guardrail system.  The Jeep struck and knocked down a light post and then turned over, eventually coming to rest against a tree to the north of the roadway.  Christopher Phelan died as a result of the collision.

After an investigation of the accident, the Connecticut State Police prepared an official report on this accident.  <u>See</u> copy of certified copy of Connecticut Uniform Police Accident Report attached hereto as Exhibit A.[1]  This report sets forth the activities of the Connecticut State Police with respect to this event and includes factual findings resulting from an investigation of the accident made pursuant to authority granted by law.

## II.   ARGUMENT

Rule 803(8) of the Federal Rules of Civil Procedure provides that the following items are not excluded as hearsay, regardless of the availability of the declarant:

> **(8) Public Records and Reports.**   Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law

---

[1]   The original certified Connecticut Uniform Police Accident Report will be provided upon the Court's request.

enforcement personnel, or (C) in civil actions and proceedings against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803 (8).

Under Rule 803(8)(C) of the Federal Rules of Evidence, a factual finding in public records, which would include "conclusions or opinions" based on those facts made after an investigation authorized by legal authority are presumptively admissible absent "information or other circumstances [that] indicate lack of trustworthiness." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167 (1988); Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2nd Cir. 2001) (citing Fed. R. Evid. 803(8)(C)); Gentile v. County of Suffolk, 926 F.2d 142, 148 (2nd. Cir 1991). The term "factual findings" in the rule includes opinions or conclusions of a factual nature, such as the cause of an accident.[2] See Beech, 488 U.S. at 167; see also Henry v. Daytop Village, Inc., 42 F.3d 89, 96 (2nd Cir. 1994) (admitting decision of administrative law judge for state department of labor); United States v. Midwest Fireworks Mfg. Co., Inc., 248 F.3d 563, 566-567 (6th Cir.

---

[2] In determining what was encompassed by the term "factual finding," the Supreme Court held that:

> statements in the form of opinions or conclusions are not by that fact excluded from the scope of Rule 803(8)(C). The Rule's language does not call for the distinction between "fact" and "opinion" drawn by [Smith v. Ithica Corp., 612 F.2d 215 (C.A.Tex. 1980)] and other proponents of a narrow interpretation of the Rule's "factual findings" phrase, since "finding of fact" is commonly defined to include conclusions by way of reasonable inference from the evidence, and since in specifying the kinds of reports that are admissible the Rule does not create a distinction between "fact" and "opinion." Nor is any such distinction required by the intent of the Rule's framers, as expressed in the Advisory Committee's Notes on the Rule. This conclusion is strengthened by the analytical difficulty of drawing such a distinction. Rather than requiring that some inevitably arbitrary line be drawn between the various shades of fact/opinion that invariably will be present in investigatory reports, the Rule instructs courts--as its plain language states--to admit "reports ... setting forth ... factual findings." Appropriate limitations and safeguards lie in the fact that the Rule's requirement that reports contain factual findings bars the admission of statements not based on factual investigation, and in the Rule's trustworthiness requirement. Thus, as long as a conclusion satisfies the latter requirements, it should be admissible along with other portions of the Report.

Beech Aircraft Corp., 488 U.S. at 154.

2001) (admitting Consumer Product Safety Commission reports on product compliance with safety standards); Local Union No. 59, Intern. Broth. of Elect. Workers, AFL-CIO v. Namco. Elec., Inc., 653 F.2d 143, 145 (5th Cir. 1981) (admitting results of National Labor Relations Board investigation). The party seeking to strike public records has the burden to establish lack of trustworthiness. See Beech, 488 U.S. at 168 n.11; Bridgeway, 202 F.3d at 143 (citing Ariza v. City of New York, 139 F.3d 132, 134 (2nd Cir. 1998)).

It is well-settled that police reports and similar investigative documents are admissible either as public records or business records under Rules 803(8)(C) and 803(6). See Parsons v. Honeywell, 929 F.2d 901, 907 (2nd. Cir. 1991) (police report is admissible as public record under Rule 803(8)(C); Gentile, 926 F.2d at 147-48 (investigative report of district attorney's office and police department is admissible under Rule 803(8)(C); Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 805 F.2d 49, 54 (2nd Cir. 1986) (FBI reports admissible under Rule 803(8)(C) absent affirmative showing of untrustworthiness).

In this case, the trustworthiness of the accident report is beyond question. Trooper Gunsalus testified in deposition that he undertook his investigation shortly after he received word of the accident by radio while driving on patrol in a police vehicle on the night of January 18, 2000. See Deposition of Trooper Matthew Gunsalus ("Gunsalus Deposition") at p. 12, attached hereto as Exhibit B. As of that date, Trooper Gunsalus had more than ample training and experience in motor vehicle accident investigation at the time of the accident. Trooper Gunsalus's background reflects a Bachelor's Degree in criminal justice from the University of

New Haven and formal training in accident investigation at the Connecticut State Police Academy. Additionally, as of the date of the accident, he had investigated over 100 motor vehicle accidents as a Connecticut State Trooper. See id. at 8-9. At the time Trooper Gunsalus received word of the accident, he was assigned to be the lead investigator in the matter. See id. at 20.

The report of the accident was prepared by Trooper Gunsalus using the standard "Uniform Accident Report" form that is utilized statewide by not only the Connecticut State Police Departments, but also by the city and municipal police departments in Connecticut. Moreover, this report was prepared in accordance with established departmental procedures. After Trooper Gunsalus completed what he described as the "initial form", he submitted it to his shift supervisor, who reviewed the report to ensure that it was filled out completely and correctly, and then turned it over to department clerks for filing. See id. at 40, 44.

The content of the report includes the personal observations of Connecticut State Police officer Matthew Gunsalus, as well as other officers, of the subject vehicle and the accident scene as well as factual findings based on those observations. Also contained within the report are statements given to police investigators by percipient witnesses who arrived at the scene shortly after the accident occurred as well as statements made by third-party defendant Christopher Miller, the driver of the 1987 Taurus that caused the accident.

"Rule 803(8) is a multi-level exception, in the footsteps of its common-law precursors." Matter of Oil Spill by Amoco Cadiz, 954 F.2d 1279, 1308 (7th Cir. 1992).  Nothing in the text or history of Rule 803(8) supports an approach that would make the rule essentially useless—for the bureaucrat who fills out a government form usually incorporates information furnished by others." Id.; see also In re Air Disaster at Lockerbie Scotland, 37 F.3d 804, 827-28 (2d. Cir. 1994) (admitting report of detective based upon other officers' reports of interviews they had conducted with third parties).  Courts that treat Rule 803(8) as limited to first-level hearsay "rely on a negative implication of Rule 805, which says that 'hearsay included within hearsay is not excluded if each part of the combined statements conforms with an exception to the hearsay rule provided within these rules.'" Amoco Cadiz, 954 F.2d at 1308.  The language of Rule 805 does not state that Rule 803 or any of the other exceptions is limited to single-level hearsay.  Id.

Those portions of the accident report based upon the observations and knowledge of Trooper Gunsalus are clearly admissible.  See Parsons, 929 F.2d at 907.  Although the third party witness statements contained within the report may be treated as hearsay, the statements of Christopher Miller to Officer Gunsalus should not be excluded as they fall within the admissions exception to the hearsay rule.  See Fed. R. Evid. 801(d)(2); H. Sand & Co., Inc. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991) (documents containing statements by defendant and its agents are not hearsay because they constitute admissions of a party-opponent).

WHEREFORE, the defendant DaimlerChrysler Corporation respectfully requests that the Court allow its Motion to Admit the Connecticut Uniform Police Accident Report as submitted

herewith in its entirety, or, in the alternative to admit those portions of the report based upon the observations and knowledge of Trooper Gunsalus and any statement Christopher Miller made to Trooper Gunsalus.

                Defendant,
                DaimlerChrysler Corporation
                By its attorneys,

                _____/s/_____
                Peter M. Durney (Fed. Bar ID# CT14569)
                  pdurney@cornellgollub.com
                James P. Kerr (Fed. Bar ID# CT24142)
                  jkerr@cornellgollub.com
                **CORNELL & GOLLUB**
                75 Federal Street
                Boston, MA  02110
                (617) 482-8100
                (617) 482-3917 Fax

CERTIFICATE OF SERVICE

     I, Peter M. Durney, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 1st day of November, 2004, a true and correct copy of the foregoing Memorandum of Law in Support of Defendant DaimlerChrysler Corporation's Motion *in Limine* to Admit Connecticut Uniform Police Accident Report, was served by hand, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut  06107
Attorney for Plaintiff

by first class mail postage prepaid, directed to:

Mr. Christopher Miller
Inmate #266075
c/o Willard-Cybulski Correctional Institution
Third-Party Defendant

| | |
|---|---|
| Rikki Timbo, Inc. | Maurice Samuelian |
| Agent for Service: Richard W. Tomc, Esq. | Kathleen Samuelian |
| 49 Main Street | 52 Mallard Avenue |
| Middletown, CT 06457 | East Hampton, CT 06424 |
| Third-party defendant | Third-party defendant |

_____/s/_____
Peter M. Durney