UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratrix of the Estate of Christopher Phelan, Class Member, and Individually | ) ) ) | |
| | ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DaimlerChrysler Corporation | ) | November 1, 2004 |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
DAIMLERCHRYSLER CORPORATION'S
MOTION *IN LIMINE* TO PRECLUDE TESTIMONY BY MICHAEL WOGALTER**

Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "defendant") submits this memorandum in support of its Motion *in Limine* to Preclude Testimony by plaintiff's expert, Michael Wogalter.

**I.    INTRODUCTION**

This case arises from a January 18, 2000 motor vehicle accident on Route 2 westbound in Glastonbury Connecticut, in which Christopher Phelan ("Mr. Phelan") was fatally injured. Specifically, a 1987 Ford Taurus driven by third-party defendant Christopher Miller ("Miller"), who was intoxicated, struck Mr. Phelan's 1994 Jeep Wrangler YJ ("Jeep" or "subject vehicle") from behind at a high rate of speed. Plaintiff's accident reconstructionist estimated in his report that the vehicle driven by Miller was traveling at about 100 miles per hour when it struck the Jeep. Following the impact, the Jeep was forced forward and towards the right into a wire rope

guardrail system. The Jeep struck and knocked down a light post and then turned over, eventually coming to rest against a tree to the north of the roadway. Christopher Phelan died as a result of the collision.

## II. **EVIDENCE SOUGHT TO BE EXCLUDED**

Plaintiff has designated Michael Wogalter to testify on human factors issues. See Plaintiff's Disclosure of Expert Witness for Michael Wogalter dated February 14, 2003 at pp. 1-2 attached hereto as Exhibit A. Based on plaintiff's disclosure and Wogalter's deposition testimony in this case, the defendant anticipates Wogalter will address the adequacy of the vehicle's on-product labeling and operator's manual for the subject 1994 Jeep Wrangler (YJ) in warning Mr. Phelan of the capacity of the vehicle's windshield frame and rollbar structure to provide structural protection in a rollover accident. The defendant requests that the Court exclude testimony by Wogalter on the following subject matters:

      A.      The on-product labeling on Christopher Phelan's vehicle;

      B.      Christopher Phelan's knowledge of the contents of the subject vehicle's on-product labeling and/or operator's manual or the operator's manual for the subject model 1994 Jeep Wrangler (YJ);

      C.      Any aspect of the design of the 1994 Jeep Wrangler (YJ), other than warnings and/or instructions regarding the vehicle's capacity to protect occupants in crashes;[1] and

---

[1] Case law regarding the preemption of the common law by FMVSS 208, which was promulgated under the same authorizing statute as 49 C.F.R. § 575.105, tends to weigh in favor of implied preemption. Similar to the regulation in section 575.105, the FMVSS were "to be written and administered by the Secretary of Transportation [and] were to be mandatory standards which would apply to all new motor vehicles." Wood v. General Motors Corp., 865 F.2d 395, 397 (1st Cir. 1988).

As the defendant urges, section 575.105 should be construed like FMVSS 208 which "expressly preempts any 'safety standard' that is not identical to any federal safety standard regulating the same

        D.        The contents of any proposed warnings or potential wording or warning labels.

## III.   ARGUMENT

    **A.**    **Wogalter May Not Testify Regarding The Subject Vehicle's On-Product Labeling**

        **1.**    **<u>Wogalter's deposition testimony shows that he has no factual basis on which to testify regarding on-product labeling of the subject vehicle</u>.**

Rule 702(1) of the Federal Rules of Evidence requires that expert testimony be "based upon sufficient facts or data." The Advisory Committee's Note to Rule 702(1) states that the determination of whether an expert's testimony satisfies this criteria calls for a quantitative analysis. Specifically, the issue to be determined by the gatekeeper is whether or not the expert considered enough data to make the proposed opinion reliable. Time and again, the federal courts have found that an expert's opinion ought to be excluded if it is based upon speculative or incomplete data. <u>See, e.g.</u>, <u>Amorgianos v. National R.R. Passenger Corp.</u>, 303 F.3d 256, 268 (2d Cir. 2002) (affirming exclusion of testimony by industrial hygienist based on incomplete data); <u>Boucher v. U.S. Suzuki Motor Corp.</u>, 73 F.3d 18, 21-22 (2d Cir. 1996) (excluding economist's opinion where expert's assumptions had no basis in the established facts of plaintiff's employment history); <u>Jaurequi v. Carter Mfg. Co., Inc.</u>, 173 F.3d 1076, 1084 (8th Cir. 1999) (testimony of mechanical engineer in product liability action that product was unreasonably dangerous flunked <u>Daubert</u> reliability prong where expert admitted that he had never even read the warnings employed by the manufacturer).

---

issue." <u>Stewart v. General Motors Corp.</u>, 222 F. Supp. 2d 845, 849 (W.D. Ky. 2002); <u>see</u> <u>also</u> <u>Pak v. Chrysler Motors Corp.</u>, 1990 WL 198821 (E.D. Pa. 1990) (analogizing FMVSS 208 to Consumer Information Regulation), attached hereto as Exhibit B.

In this case, Wogalter should not be allowed to testify about the on-product labeling on Mr. Phelan's Jeep before or after the subject accident because he has no factual basis for such testimony. At deposition in this case, Wogalter admitted that he had never personally examined the subject vehicle:

> Q. Is it your understanding that the subject vehicle in this case is a 1994 Jeep Wrangler?
>
> A. Yes.
>
> Q. And have you ever inspected the specific 1994 Jeep Wrangler involved in this case?
>
> A. No, I haven't.

See Deposition of Michael S. Wogalter, Ph.D. ("Wogalter Deposition") at p. 44, attached hereto as Exhibit C.

Moreover, Wogalter never saw any warning labels in the photographs he reviewed which were taken of the subject vehicle by another expert of the plaintiff's.

> Q. Have you ever reviewed photographs of the specific vehicle that was involved in this case?
>
> A. Yes, I did. . .
>
> Q. What was your purpose in examining those photographs?
>
> A. It was part of the report that I reviewed.
>
> Q. Were you looking for warning labels as you looked through those photographs?

>   A.      Well, I didn't see them.

Id. at 45.

Although the defendant had produced drawings containing on-product labels for the 1994 Jeep Wrangler (YJ) to plaintiff prior to Wogalter's deposition, Wogalter testified that he had not reviewed any such documents. See id. at 50.  Additionally, Wogalter admitted that he had no information as to what labels were actually on the subject vehicle at the time it was manufactured other than photographs that were provided to him by plaintiff's counsel which were purportedly taken of a label on the driver's side visor of the subject vehicle.

>   Q.      Do you know what warning labels were on Christopher Phelan's Jeep at the time it was manufactured?
>
>   A.      The only warning label that I have been provided with information on is the visor label.

Id. at 46, 49-50.

Since Wogalter never personally inspected the subject vehicle, there is no way he could have verified the representations of plaintiff's counsel.  Wogalter further admitted that he had no knowledge of the vehicle's history before Christopher Phelan purchased it and that he did not know if either the original purchaser or Christopher Phelan had removed any warnings or decals before the accident.  See id. at 52-53.

Lacking this information, Wogalter should not be allowed to testify as to the on-product labeling of Mr. Phelan's vehicle as his opinions are not based upon sufficient facts or data as

required by Fed. R. Civ. P. 702(1).

> **2.   Due to the loss or destruction of the subject vehicle's hardtop while the vehicle was in plaintiff's control, plaintiff may not present testimony regarding the adequacy of on-product labeling on the hardtop.**

During the discovery period for this matter, it became known that the subject vehicle contained a warning label supplied by the manufacturer which was located on the interior portion of its hardtop a very short distance from the driver and well within his view. <u>See</u> Exhibit B, Wogalter Deposition at p. 129-133. The location and contents of that label would directly contravene plaintiff's allegations of the defendant's failure to warn. <u>See id.</u> After the subject accident, plaintiff had control of the subject vehicle and its components. This control currently rests with her counsel. Plaintiff had an affirmative duty to preserve the evidence in order to allow the defendant an opportunity to inspect and/or test the subject vehicle and its components; however, in the course of discovery it became clear that plaintiff failed to fulfill that duty.

On July 1, 2003, Dr. Steven Arndt, defendant's expert on warnings issues, traveled from Virginia to conduct an inspection of the subject vehicle at Co-Parts, a salvage yard in New Britain, Connecticut. When the vehicle was brought out by Co-Parts employees on July 1 for the inspection, the hardtop was missing. During his inspection, Dr. Arndt found only a few small remnants that may have been part of the hardtop in the vehicle's rear compartment. Plaintiff's counsel confirmed later that day that the hardtop was no longer available. Additionally, plaintiff's counsel cannot and does not dispute that 1) the subject vehicle had a hardtop when Christopher Phelan purchased it in July 1999; 2) the hardtop was on the vehicle at the time of the

subject accident; or 3) the hardtop was with the vehicle when it was inspected by the defendant's experts on November 19, 2001 and January 9, 2002.  Plaintiff's counsel further indicated that the hardtop may have been missing ever since April 2003, when a representative of plaintiff's counsel photographed it at the salvage yard.

The failure of plaintiff to preserve a piece of material evidence relating to her failure to warn claims warrants evidence preclusion.  See Vasquez-Corrales v. Sea-Land Service, Inc., 172 F.R.D. 10, 13 (D. P.R. 1997) (sanctions for destruction of evidence may include dismissal of the case, the exclusion of evidence, or a jury instruction on the "spoliation inference"); Barker v. Bledsoe, 85 F.R.D. 545, 547-548 (W.D. Okla. 1979); Dillon v. Nissan Motor Co., 986 F.2d 263, 265-66 (8th Cir. 1993) (affirming preclusion of expert testimony for destruction of allegedly defective automobile).  Plaintiff's failure to properly preserve the subject vehicle may have made the presentation of the defense case much more difficult, to the defendant's substantial prejudice. Given the loss of the subject vehicle's hardtop, plaintiff should not be able to proffer any opinions as to the adequacy of on-product labeling on the vehicle's hardtop through Wogalter or any other witness, or by any other means.

      **B.**    **Wogalter May Not Testify About Christopher Phelan's Knowledge Of The Contents Of The Subject Vehicle's On-Product Labeling Or The Operator's Manual For The Subject Model Vehicle, As He Has No Factual Foundation For Such Testimony**

As stated above, case law dictates that an expert's opinion ought to be excluded if it is based upon speculative or incomplete data.  In this case, Wogalter admitted that with one possible exception he did not know what warning labels were on the subject vehicle when it was

manufactured. See Exhibit C, Wogalter Deposition at pp. 49-50, 98. The only warning label of which he was aware was the one he understood from plaintiff's counsel to have been located on the driver's visor. That being said, he did not know if the original purchaser or Mr. Phelan had removed any decals from the vehicle prior to the accident. See id. at 52-53. Additionally, Wogalter had no information as to whether Mr. Phelan had read the owner's manual or any of the on-product warning labels. See id. at 53-54, 99-100.

> Q. So you don't have any idea whether or not the original purchaser removed any warning labels or decals from the vehicle?
>
> A. I don't know.
>
> Q. Do you have any idea if Christopher Phelan removed any warning labels or decals from the vehicle?
>
> Q. Do you have any idea whether or not Christopher Phelan read the Owner's Manual?
>
> A. I don't know either way.
>
> Q. Do you have any idea whether or not Christopher Phelan read the owner's manual?
>
> A. There's no information about that.

Id. at 53-54.

Moreover, Wogalter flatly admitted that he knew very little about the type or content of the information Christopher Phelan had before he purchased the vehicle.

> Q. Well, the short answer to that is you don't know what Christopher Phelan knew before he purchased the vehicle, do you?
>
> A. Of course not. I can't get into his specific mind. The only information that we really have is from Angela Phelan.

Id. at 101.

Similarly, plaintiff has never provided to the defendant any information as to whether Mr. Phelan reviewed the on-product labeling or operator's manual before he purchased the subject vehicle. While plaintiff stated in an interrogatory answer served more than a month **after** Wogalter's deposition that Mr. Phelan had reviewed the owner's manual, plaintiff has provided no information as to what portions of the manual were reviewed by Mr. Phelan or even as to when he reviewed the manual, or how she could possibly know.[2] In the absence of such information, Wogalter cannot be permitted to testify about Mr. Phelan's knowledge of either the on-product warning labels or the operator's manual for the subject vehicle.

### C. Wogalter's Testimony Must Be Limited To Matters On Which He Is Qualified To Testify

In her expert disclosure, plaintiff has designated Wogalter to testify on human factors and warnings issues only. The defendant anticipates that plaintiff may try to use Wogalter's trial

---

[2] Response Number 11 of Plaintiff's Answers and Objections to Defendant's Second Set of Interrogatories states, "Upon information and belief, Christopher Phelan reviewed the Owner's Manual for the subject vehicle. The extent to which he read the Owner's Manual is unknown." See Plaintiff's Answers and Objections to Defendant's Second Set of Interrogatories, No. 11, attached hereto as Exhibit D.

testimony as an indirect means to admit evidence that would support plaintiff's claims regarding alleged product defects that have nothing to do with the adequacy of available warnings or injury causation. In order to forestall such tactics, the defendant requests that the Court limit Wogalter's trial testimony to subject matters on which he is demonstrably qualified.

In the Second Circuit, only "a witness qualified as an expert by knowledge, skill, training or education may give opinion testimony." Bunt v. Altec Indus. Inc., 962 F. Supp. 313, 316 (N.D.N.Y 1997), quoted in Prohaska v. Sofamor, S.N.C, 138 F. Supp. 2d 422, 435 (W.D.N.Y. 2001); see also Fed. R. Evid. 104(a) (requires the court to make a preliminary determination if a person is qualified to be a witness). A district court may properly exclude an expert witness on the basis that their qualifications appear to be overly generalized or are deficient in expertise. See Stagl v. Delta Air Lines, Inc., 117 F.3d 76, 81 (2d Cir. 1997); Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 710 (2d Cir. 1989) (affirming the exclusion of self-described "forensic engineer" was nothing more than an "an inexperienced layman posing as a railroad expert.").

Second Circuit courts have repeatedly excluded proposed medical experts in the area of injury causation due to their lack of qualifications in the relevant medical specialty present in the cases. Amorgianos v. Nat'l R.R. Passenger Corp., 137 F. Supp. 2d 147, 189 (E.D.N.Y. 2001), *aff'd*, 303 F.3d 256 (2d Cir. 2002) (the Court concluded that an industrial hygienist did not have the requisite qualifications to determine injury causation in a xylene exposure case.); see also Prohaska v. Sofamor, S.N.C., 138 F. Supp. 2d 422, 436 (W.D.N.Y. 2001); Borgognone v. Trump

Plaza, 2000 WL 341135 (E.D.N.Y. 2000).[3]  This basis for excluding medical expert testimony is also used in the exclusion of non-medical experts.  See Pan Am. World Airways, Inc. v. Port Auth., 995 F.2d 5, 9-10 (2d Cir.1993) (finding no error in exclusion of expert witness because of inexperience as an accident investigator).

In this matter, the only relevant subject matters in which Wogalter is arguably qualified to testify is limited to certain warnings issues.  Based on his deposition testimony in this case, Wogalter has no background in the design of production automobiles and has never given testimony on the design of a production automobile other than on the issue of warnings. Additionally, Wogalter has never designed an automobile of any kind nor has he ever designed a warning that has appeared on a production automobile.

> Q.    Now, do you have any background in the design of production [of] automobiles?
>
> A.    No.
>
> Q.    Have you ever given testimony on the design of a production automobile?
>
> A.    No.  Other than the warnings which could be part of the design or the part of the product, so I'm qualified.
>
> Q.    To the extent that a warning label is regarded as an aspect of the design, you have given testimony in automotive design issues?
>
> A.    Yes.

---

[3] A copy of Borgognone v. Trump Plaza, 2000 WL 341135 (E.D. N.Y. 2000) is attached hereto as Exhibit D.

> Q. But you have never designed an automobile of any kind?
>
> A. Correct.
>
> Q. Have you ever designed a warning for a production automobile?
>
> A. None that has actually appeared on a production automobile. I have constructed warnings in the course of research.

See Exhibit B, Wogalter Deposition at p. 44.

Moreover, Wogalter does not hold himself out to be an expert in the field of accident reconstruction. Additionally, Wogalter admitted that he has no background in mechanical engineering and does not claim to have any expertise in occupant kinematics.

> Q. And to perhaps confirm the obvious, you don't hold yourself out as an expert in accident reconstruction, do you?
>
> A. That's correct, I do not.
>
> Q. You don't have any kind of background in mechanical engineering. Is that correct?
>
> A. That's correct.
>
> Q. I mean, we have already discussed the fact that you don't have any background in automotive design. Is that correct?
>
> A. Yes, with the qualification that I have given earlier.
>
> Q. I'll stand corrected on that. Do you hold yourself out as an expert in occupant kinematics in automobile accidents?

      A.      No, I do not.

Id. at 62.

As shown above, Wogalter has acknowledged that he lacks the qualifications to testify in any subject area relevant to this case other than warnings. As such, he should not be permitted to testify on any other aspect of the subject vehicle's design, the happening of the accident, the movements of the occupant's body in the course of the accident, or the causes of the decedent's injuries. In addition, plaintiff's counsel should not be permitted to have evidence admitted in these areas through Wogalter.

      **D.**      **Wogalter May Not Testify On The Contents Of Any Proposed Warnings Or Potential Wording Or Warning Labels Where Plaintiff Has Failed To Provide Any Such Materials To The Defendant**

During the course of Wogalter's deposition, defense counsel specifically asked Wogalter if he intended to "draft a proposed warning that [he] would have placed on the vehicle in this case for [his] trial testimony." See Exhibit B, Wogalter Deposition at p. 156. Wogalter responded that he did not anticipate doing that, but indicated that he might present a "potential set of wording or warning label. . . an exemplar with some wording." See Exhibit B, Wogalter Deposition at p. 156.

As of the date of this motion, plaintiff has not produced any such materials. Given the late date, the defendant will not have an adequate opportunity to review any proposed warnings or potential wording or warning labels so that it can prepare an appropriate response. Therefore,

Wogalter should not be allowed to present any such materials at trial or testify as to proposed warnings or potential wording of warning labels.

## IV.  CONCLUSION

WHEREFORE, the defendant DaimlerChrysler Corporation respectfully requests that the Court allow its Motion *in Limine* to Preclude Testimony by Michael Wogalter.

>
> Defendant,
> DaimlerChrysler Corporation
> By its attorneys,
>
> _____/s/_____
> Peter M. Durney (Fed. Bar ID# CT14569)
>   pdurney@cornellgollub.com
> James P. Kerr (Fed. Bar ID# CT24142)
>   jkerr@cornellgollub.com
> CORNELL & GOLLUB
> 75 Federal Street
> Boston, MA  02110
> (617) 482-8100
> (617) 482-3917 Fax

### CERTIFICATE OF SERVICE

I, Peter M. Durney, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 1st day of November, 2004, a true and correct copy of the foregoing Memorandum of Law in Support of Defendant DaimlerChrysler Corporation's Motion *in Limine* to Preclude Testimony by Michael Wogalter, was served by hand, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut  06107
Attorney for Plaintiff

by first class mail postage prepaid, directed to:

Mr. Christopher Miller
Inmate #266075
c/o Willard-Cybulski Correctional Institution
Third-Party Defendant

| | |
|---|---|
| Rikki Timbo, Inc. | Maurice Samuelian |
| Agent for Service: Richard W. Tomc, Esq. | Kathleen Samuelian |
| 49 Main Street | 52 Mallard Avenue |
| Middletown, CT 06457 | East Hampton, CT 06424 |
| Third-party defendant | Third-party defendant |


                                                _____/s/_____
                                                           Peter M. Durney