UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratrix of | ) | |
| the Estate of Christopher Phelan, | ) | |
| Class Member, and Individually | ) | |
| | ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DaimlerChrysler Corporation | ) | November 1, 2004 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S MOTION *IN LIMINE* TO BIFURCATE THE TRIAL BETWEEN LIABILITY AND DAMAGES AND INCORPORATED MEMORANDUM OF LAW**

Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "Defendant") submits this motion *in limine* and incorporated memorandum of law, and moves this Court for an order, pursuant to Fed. R. Civ. P. 42(b), to bifurcate the trial of liability from the trial of damages in the above-captioned case with the trial on the issue of liability before the jury to be held first.

**I.    BACKGROUND**

This case arises from a January 18, 2000 motor vehicle accident in which Christopher Phelan ("Mr. Phelan") was fatally injured. DaimlerChrysler played absolutely no role in the happening of the accident or the cause of Mr. Phelan's injuries and death. This tragic accident occurred when the vehicle which Mr. Phelan was driving, a 1994 Jeep Wrangler ("Jeep" or

**ORAL ARGUMENT IS REQUESTED**

"subject vehicle"), was rear-ended at a high speed by a 1987 Ford Taurus driven by third-party defendant Christopher Miller ("Miller"), who was intoxicated. Plaintiff Angela Phelan, Mr. Phelan's mother and the administratrix of his estate ("Plaintiff"), alleges design defects in the subject vehicle.

## II.   ARGUMENT

Rule 42(b) of the Federal Rules of Civil Procedure authorizes "separate trials. . .of any separate issue" in an action, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." See 9 Wright & Miller, Federal Practice and Procedure § 2387. The rule is intended to promote the parties' convenience, to avoid unfair prejudice to a party and expedite the proceedings. Where a case presents multiple, complicated and wholly distinct issues, the rule promotes judicial economy by rendering certain issues moot before vast resources are wasted litigating them, reduces the potential for jury confusion and reduces prejudice. See Industrias Metalicas Marva, Inc. v. Lausell, 172 F.R.D. 1, 3 (D. P.R. 1997). Thus, "bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue…or where one party will be prejudiced by evidence presented against another party." Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999) (citations omitted). Both of these concerns justify the bifurcation of the trial here. See id.

The "decision to bifurcate a trial into liability and damage phases rests within the discretion of the trial court." Evans v. State of Connecticut, 168 F.R.D. 118, 120 (D. Conn. 1996); see also Gonzalez-Marin v. Equitable Life Assurance, 845 F.2d 1140, 1145 (1st Cir. 1988); Kisteneff v. Tiernan, 514 F.2d 896, 897 (1st Cir. 1975); McKellar v. Clark Equip. Co., 101 F.R.D. 93, 94 (D. Me. 1984); "Separation of the issues of liability and damages is an obvious use for Rule 42, since

logically liability must be established before the amount of damages can be determined." Kisteneff, 514 F.2d at 897 (citing Wright & Miller § 2390); see also Evans, 168 F.R.D. at 120.  In cases of severe personal injury, courts have recognized the propriety, indeed the compelling need, to bifurcate liability and damages.  See McKellar, 101 F.R.D. 93 (quadriplegia); Miller v. New Jersey Transit Auth. Rail Operations, 160 F.R.D. 37, 40 (D. N.J. 1995) (electrical burns, loss of three limbs); Witherbee v. Honeywell, Inc., 151 F.R.D. 27, 28-29 (N.D.N.Y. 1993) (extensive burns); Beauchamp v . Russell, 547 F. Supp. 1191, 1199 (N.D. Ga. 1982) (plaintiff was "severely and permanently injured" when head was caught in palletizing machine).  As the Beauchamp court stated:

> a paramount consideration in ruling on a motion to bifurcate is a fair and impartial trial to all litigants.... In order to avoid potential prejudice, it would be preferable to permit the jury to concentrate on the complicated issue of liability without considering evidence of the extent of [the injured party's] injuries and the damages the plaintiff seeks for these injuries.

Beauchamp, 547 F. Supp. at 1199-1200 (citations omitted).

Indeed, a Federal Court of Appeals has reversed as an abuse of discretion a trial court's refusal to bifurcate when the consequence was that the jury heard "highly prejudicial evidence," whose "inevitable effect. . .was to deny [defendant] the fair trial to which it was entitled. . . ." Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1443 (4th Cir. 1993) (noting, among other things, "emotional testimony" about the loss of consortium claim).

In this case, the facts and circumstances demand bifurcation.  As the Witherbee Court aptly put it:

> Bifurcation of an action is appropriate where, as here, there are complicated issues of liability that must be resolved prior to the assessment of any damages. Additionally, where, as here, there is evidence concerning the severity of a plaintiff's injuries, the

> lengthy treatment received, and the physical and economic impact of such injuries on the plaintiff, courts have found that there is a potential that a jury may be adversely and improperly affected in considering the issues of liability fairly, impartially, and objectively. In such cases, it is preferable to permit the jury to concentrate on complicated issues of liability without considering evidence of the extent of his injuries and the damages sustained by the plaintiff for such injuries.

Witherbee, 151 F.R.D. at 29 (citations omitted).

Similarly, the requested bifurcation is particularly necessary in the present action since: (1) there are complex and disputed issues of liability, which are separate from the damages evidence; (2) there will be irreparable prejudice to the defendant and to the search for objective truth with respect to liability if the jury hears the extensive and heartbreaking damages evidence at a unified trial; and (3) the damages evidence will be very extensive, rife with its own difficult contested issues.

### A. Bifurcation Is The Only Means To Ensure Orderly Presentation Of The Issues

Bifurcation is the appropriate tool for ensuring the orderly presentation of issues in a case. See, e.g., Kisteneff, 514 F.2d at 897 (bifurcating liability and damages was appropriate because liability must be established before amount of damages can be determined); Evans, 168 F.R.D. at 120 (stating that "[i]t is clearly convenient to await consideration of relief where a finding of liability is a sine qua non for such damages or other award"). Specifically, bifurcation will allow the jury to focus its attention on the extremely complex and multi-faceted technical aspects of the liability issues, which will require their full and undivided attention, and then, if liability is found, to proceed to dispose of the damages issues. Hence, bifurcation will advance the logical and orderly determination of liability first, and damages only if the jury has found liability.

In this matter, the fact issues involving liability and damages do not overlap in any significant way, and the factual issues are easily severable, allowing the evidence to be cleanly

separated and not subject to repetition. The liability evidence will necessarily include evidence from all parties concerning the reconstruction of the accident. It will also include evidence concerning the design of the subject Jeep Wrangler, and whether aspects of its design, as opposed to the tremendous forces generated in this accident, were the cause of Mr. Phelan's injuries. While certain aspects of this evidence may involve an analysis of the biomechanics of the accident and mechanism of injury, it will not involve his damages. The evidence concerning the liability issues will differ greatly in nature, duration, and tenor, from the lengthy damages evidence that plaintiff proposes, which will cover the severity of Mr. Phelan's injuries, his death, and the economic impact of such injuries. See Witherbee, 151 F.R.D. at 29. Such evidence could include "emotional testimony" by Mr. Phelan's family members and other lay witnesses about his death and their loss.[1]  See Dixon, 990 F.2d at 1443.

The jury should hear only factual evidence regarding the happening of the accident and expert testimony regarding the design of the vehicle, rather than be subjected, in the first phase of the trial, to testimony from a parade of damages witnesses -- expert and lay witnesses both -- about the nature, extent, consequences and costs of Mr. Phelan's injuries and death. The jury should not hear this evidence until and unless liability is found.  In reaching this same conclusion when it granted a defense motion to bifurcate liability and damages in a product liability case involving serious injury, one federal court stated:

> The motion is granted. The clarity and efficiency of the proceeding will be greatly enhanced by a bifurcated trial. <u>It is probably true that a limited amount of medical evidence may be needed on the question of liability</u>, as part of the proof regarding which portions of the car impacted upon [the plaintiff]. <u>But this proof should be

---

[1]  The defendant does not concede that this latter area of testimony is permissible. To the contrary, there are no pending or permissible claims that would allow for such testimony at trial. See Defendant's Motion in Limine to Exclude Evidence Regarding the Impact of Christopher Phelan's Injuries and Death on his Family Members and Friends and Incorporated Memorandum of Law.

much less extensive than the medical proof relating to the issue of damages.

Grossman v. General Motors Corp., 1992 WL 51523, at *1 (S.D.N.Y. 1992)[2] (emphasis added); see also Crummett v. Corbin, 475, F.2d 816, 817 (6th Cir. 1973) (rejecting plaintiff's appeal of a bifurcation ruling: "Such consideration of evidence not related to the question of liability appears to be a type of prejudice which is to be avoided by separating the issues of liability and damages under Rule 42(b)."). Bifurcation is needed here, just as it was required in Grossman. In this case, as in Grossman, the "clarity and efficiency of the proceeding will be greatly enhanced by a bifurcated trial." Grossman, at *1.

### B. Bifurcation Is The Only Means To Prevent The Jury's Objectivity From Being Overwhelmed To Defendant's Irreparable Prejudice

The simultaneous presentation of liability and damages evidence in this case would be certain to improperly impair the jury's objectivity in determining the liability issue, virtually guaranteeing the result of undue prejudice to DaimlerChrysler and a tainted trial. The courts have recognized this risk:

> [A] paramount consideration in ruling on a motion to bifurcate is a fair and impartial trial to all litigants. . . . In order to avoid potential prejudice, it would be preferable to permit the jury to concentrate on the complicated issues of liability without considering evidence of the extent of [plaintiff's] injuries and the damages the plaintiff seeks for these injuries.

Beauchamp, 547 F. Supp. at 1199-1200; see also Amato, 170 F.3d at 316 (stating, in upholding a decision to bifurcate Section 1983 proceedings against individual police officers from those against the city and police department, that the district court had found that to try the proceedings together would be prejudicial to the individual defendants); Raposo v. Honda Motor Co., Ltd., 1996 U.S.

---

[2]   Grossman v. General Motors Corp., 1992 WL 51523 (S.D.N.Y. 1992) is attached hereto as Exhibit A.

Dist. LEXIS 1116, at *2-4 (N.D.N.Y 1996)[3]; Miller, 160 F.R.D. at 41 (stating that "The Court finds that defendants would suffer actual prejudice if the damage stage were tried with the complicated liability stage because while the jury will be aware during the liability stage of the severity of the Plaintiff's injuries, they will not be diverted by the actual figures involved in past and future medical costs and the graphic descriptions of the injuries themselves"); Witherbee, 151 F.R.D. at 29 (where damages evidence will cover "severity of plaintiff's injuries, the lengthy treatment received, and the physical and economic impact of such injuries on the plaintiff, courts have found there is potential that a jury may be adversely and improperly affected in considering the issues of liability fairly, impartially, and objectively"); McKellar, 101 F.R.D. at 95 ("evidence concerning the severity of the plaintiff's injuries, the lengthy treatment which the Plaintiff received from numerous physicians, and the physical and economic impact of those injuries holds a definite potential to adversely and improperly affect a jury's fair, impartial and objective consideration of the liability issues").

In this matter, medical experts are scheduled to testify regarding the nature of Mr. Phelan's injuries, which are well documented. While some of that testimony may be necessary for the jury's determination of the mechanism of injury, other witnesses, for the plaintiff and for the defendant, are expected to testify as to the claimed damages and impact of Mr. Phelan's death. This evidence, as the above-cited cases recognize, is bound to sway a jury of human beings in plaintiff's favor and could persuade the jurors to find liability for the wrong reasons. The jury's understandable human sympathy for Mr. Phelan and his family might compel them to grant compensation even if there is no factual or legal basis for a finding of liability. See Miller, 160 F.R.D. at 41 (stating that "[t]he amount of damages in question is significant because . . . sympathetic jurors might be inclined to

---

[3]   Raposo v. Honda Motor Co., Ltd., 1996 WL 63526 (N.D.N.Y. 1996) is attached hereto as Exhibit B.

award plaintiff some money, no matter how small, regardless of fault, if they were aware of the magnitude of the injuries incurred and the damages sought"). Because of the powerful emotional charge this type of evidence carries and the corresponding potential for unfair prejudice, such evidence should not be presented to the jurors while they are considering liability issues. During the Dixon case, "several jurors openly wept," after hearing "emotional testimony" and this factor was noted by the Court of Appeals in its decision to vacate a jury verdict because the trial court's refusal to bifurcate was an abuse of discretion. Dixon, 990 F.2d at 1443.

"[A] single trial would present the very real potential of clouding even a conscientious juror's judgment." Miller, 160 F.R.D. at 41. This Court should not risk such a high potential for a miscarriage of justice. Bifurcation will minimize prejudicial appeals to the jury's sympathy and ensure that the jury is considering the case calmly, dispassionately, finding and weighing the facts of what happened in the subject accident, and determining whether or not a defect existed in the subject vehicle and whether such a defect caused Christopher Phelan's death.

What this motion seeks to avoid is the confusion and unfair prejudice that would result from the jury's hearing evidence concerning the severity of Mr. Phelan's injuries, and the physical and economic impact of such injuries, before it has determined the key liability issues. See Witherbee, 151 F.R.D. at 29; Miller, 160 F.R.D. at 41; McKellar, 101 F.R.D. at 95. A limiting instruction will not suffice. In light of the anticipated heart-rending testing from Mr. Phelan's mother, the representative of the plaintiff in this case, concerning her son's death and its consequences, coupled with the amount in claimed economic damages that plaintiff may seek to present to the jury, no limiting instruction by the Court could possibly do the job of a bifurcation. Bifurcation is the only way to control improper influences, whether intended or not, on the jury's resolution of the liability

issues.

### C. Bifurcation Will Save Substantial Time And Expense For The Court, Jury And Parties

Separate trials on liability and damages often produce a desirable savings of judicial time and expense. This has long been recognized. See, e.g., Driver v. Phillips, 36 F.R.D. 261, 262 n.1 (E.D. Pa. 1964) (quoting Zeisel & Callahan, "Split Trials and Time Savings: A Statistical Analysis," 76 Harv. L. Rev. 1606, 1624 (1963)); see also Amato, 170 F.3d at 316 (stating, in upholding a decision to bifurcate Section 1983 proceedings against individual police officers from those against the city and police department, that "because a trial against the City defendants would prove unnecessary if the jury found no liability against [the individual police officers], bifurcation would further the goal of efficiency); (rejecting plaintiffs' argument that bifurcation of discrimination claims against individual police officers from those against a city would be contrary to the interests of judicial efficiency, stating that "bifurcation in this case is both convenient and in the interests of judicial efficiency"). The trial of this matter, if the issues of liability and damages are tried together, will most certainly consume several weeks of the Court's time. The bifurcation of proceedings could substantially reduce this expenditure by potentially cutting down on the extensive list of witnesses expected to testify at trial.

The parties have already identified dozens of witnesses, including expert witnesses and other persons expected to testify at trial. Bifurcation of liability from damages would immediately reduce the witness list, resulting in significant savings of time for the Court and for the parties. If the jury were to find no liability, then the case would be over, without need for an extensive jury trial on damages issues. If, on the other hand, the jury were to find liability, the trial would continue on damages, nothing having been lost, especially because the same jury would decide damages. See,

e.g., Witherbee, 151 F.R.D. at 29-30. In other words, there is no legitimate downside to bifurcation in this case.

Moreover, in situations where trials are bifurcated, it is often the result that a trial on damages ultimately becomes unnecessary, regardless of the disposition of the liability case. A defense verdict obviously eliminates the need for a damages trial. On the other hand, a verdict for the plaintiff also may well eliminate the need for a trial on damages, in that findings of liability often resolve issues which had frustrated earlier efforts at achieving settlement of the action. See, e.g., McKellar, 101 F.R.D. at 94 (stating that "however the liability aspects of the case are resolved, that is, either in favor of the Plaintiff or of one or more of the Defendants, the resolution of those issues is likely to obviate the need for the Court to conduct an extensive jury trial with respect to those damage issues"). Again, there is no legitimate downside to this approach.

The imperative of fundamental fairness to all of the parties requires bifurcation in this case. In vacating a jury verdict after the trial court had denied bifurcation, the Court of Appeals in Dixon rejected the notion that a unified trial in that case could be justified in order to "conserve judicial resources and save all parties and witnesses time and expense," because "a trial must remain fair for both parties, and such considerations of convenience may not prevail where the inevitable consequence to another party is harmful and serious prejudice." Dixon, 990 F.2d at 1445 (citations omitted).

### III. CONCLUSION

For the reasons enumerated above, this case requires the bifurcation of the issues of liability and damages. The Court must consider that, at bottom, fundamental fairness to the defendant, and to the search for truth on liability, truly requires bifurcation in this case. Plaintiff undoubtedly will

submit cases that denied bifurcation, some of them probably well-reasoned on their own facts. However, the proper inquiry here is whether or not, on the record of <u>this</u> case and in <u>these</u> particular circumstances, a unified trial can possibly be a fair one.  Defendant respectfully submits that the only way to ensure a fair trial in the circumstances of this case is for the Court to invoke its authority under Rule 42(b), and grant bifurcation.  A unified trial, under the facts and circumstances of this case, would violate every precept that a jury trial is to be a dispassionate search for truth.  This is a vitally important issue, and defendant prays that this Court exercise its discretion in the only fair manner possible in this situation – by granting bifurcation.

WHEREFORE, for all the above-stated reasons, defendant DaimlerChrysler Corporation respectfully requests that this Court order, pursuant to Fed. R. Civ. P. 42(b), separate trials on the issues of liability and damages.  If liability is found to exist, then the same jury should determine damages after hearing evidence in a separate trial.

        Defendant,
        DaimlerChrysler Corporation
        By its attorneys,


        _____/s/_____
        Peter M. Durney (Fed. Bar ID# CT14569)
          pdurney@cornellgollub.com
        James P. Kerr (Fed. Bar ID# CT24142)
          jkerr@cornellgollub.com
        CORNELL & GOLLUB
        75 Federal Street
        Boston, MA  02110
        (617) 482-8100
        (617) 482-3917 Fax


CERTIFICATE OF SERVICE

      I, Peter M. Durney, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 1st day of November, 2004 a true copy of the foregoing Defendant DaimlerChrysler Corporation's Motion *in Limine* to Bifurcate the Trial Between Liability and Damages and Incorporated Memorandum of Law, was served by hand, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut 06107
Attorney for Plaintiff

by first class mail postage prepaid, directed to:

Mr. Christopher Miller
Inmate #266075
c/o Willard-Cybulski Correctional Institution
Third-Party Defendant

| | |
|---|---|
| Rikki Timbo, Inc. | Maurice Samuelian |
| Agent for Service: Richard W. Tomc, Esq. | Kathleen Samuelian |
| 49 Main Street | 52 Mallard Avenue |
| Middletown, CT 06457 | East Hampton, CT 06424 |
| Third-party defendant | Third-party defendant |

                      _____/s/_____
                        Peter M. Durney