UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratrix of | ) | |
| the Estate of Christopher Phelan, | ) | |
| Class Member, and Individually | ) | |
| | ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DaimlerChrysler Corporation | ) | November 1, 2004 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING
THE JEEP CJ AND THE JEEP WRANGLER (TJ)
AND INCORPORATED MEMORANDUM OF LAW**

Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "defendant") submits this Motion *in Limine* to Exclude Evidence Regarding the Jeep CJ and the Jeep Wrangler (TJ) and incorporated memorandum of law.

**I.    INTRODUCTION**

The subject vehicle in this case is a 1994 Jeep Wrangler (YJ). Plaintiff's design defect theory is directed to a purported weakness in the windshield frame of the Jeep Wrangler (YJ). Mr. Phelan's injuries allegedly resulted from the "intrusion" of the driver's side door header into the driver's vehicle compartment during the course of the rollover. According to plaintiff's expert, Irving U. Ojalvo, the injuries occurred when the left upper portion of the windshield frame (which Ojalvo describes as the A-pillar) gave way as a result of a single grazing contact with the

**ORAL ARGUMENT IS REQUESTED**

ground during the rollover.  See Deposition of Irving U. Ojalvo, dated March 7, 2003 ("Ojalvo Deposition, 03/07/03) at pp. 141-143, 243-44, attached hereto as Exhibit A; Plaintiff's Supplemental Disclosure of Expert Testimony for Dr. Irving U. Ojalvo at p. 2, attached hereto as Exhibit B.

In the course of discovery, the defendant produced documents on the Jeep CJ and the Jeep Wrangler (TJ).  The CJ documents consisted of engineering drawings and test documents related to the upper body structure of the 1983 Jeep CJ-5 and the 1986 Jeep CJ-7.  These were provided to plaintiff in order to resolve a discovery dispute without Court intervention and to demonstrate the differences in the roll bar structure of the Jeep CJ and the Jeep Wrangler (YJ). The Magistrate Judge's Ruling of March 12, 2004 on Plaintiff's Motion for Reconsideration denied plaintiff discovery on Jeep CJ models  (Dkt. #130 at page 8), noting plaintiff's failure to provide any expert testimony to show sufficient similarity between the subject model vehicle and the Jeep CJ to justify discovery on the CJ models.  In compliance with the March 12, 2004 Ruling, and over its continuing objection, the defendant also produced to plaintiff engineering drawings and test documents relating to the upper body structure of the Jeep Wrangler (TJ), as well as owner's manuals, service manuals and documents relating to the advertising and marketing of the (TJ).

The defendant anticipates that plaintiff will seek to introduce at trial some or all the documents produced in discovery as well as deposition testimony related to the Jeep CJ and/or Wrangler (TJ) models.  Any evidence regarding these vehicles, whether in the form of

documents, live testimony or deposition testimony is inadmissible for the reasons set forth below.

II. **ARGUMENT**

Evidence regarding the Jeep CJ and Jeep Wrangler (TJ) is irrelevant as these models are substantially dissimilar to the subject model. See Fed. R. Civ. P. 401. Evidence that is not relevant is not admissible at trial. See Fed. R. Civ. P. 402. Even at the discovery stage, where relevance is more broadly defined, a party seeking evidence about a model vehicle, other than the one that is the subject of the lawsuit, must show that the vehicles are substantially similar. See Piacenti v. General Motors Corp., 173 F.R.D. 221, 224 (N.D. Ill. 1997).

In order to have evidence regarding these other models admitted, plaintiff must make a threshold showing of substantial similarity between these models and the subject product. See Kinser v. Gehl Co., 184 F.3d 1259, 1273 (10th Cir. 1999); Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1268 (7th Cir. 1988) (showing of substantial similarity of product required for admissibility of other incidents). Plaintiff, however, failed to make the necessary showing in discovery with respect to the Jeep CJ. Plaintiff cannot make the heightened showing required at trial for either the Jeep CJ or the Jeep Wrangler (TJ).

A. **The Jeep CJ is Substantially Dissimilar to the Jeep Wrangler (YJ)**

The Jeep CJ-5 was produced from the 1955 model year through the 1983 model year. The Jeep CJ-7 was produced from the 1976 model year through the 1986 model year. The Jeep Wrangler (YJ) was an all-new vehicle that differed from the Jeep CJ models. The roll bar

structure of the Jeep CJ differs from that of the Jeep Wrangler (YJ), as described in an Affidavit of Leon Neal, dated December 3, 2003 ("Neal Affidavit, 12/03/03") which is attached hereto as Exhibit C.

Unlike the Jeep CJ, the upper body structure of the Jeep Wrangler (YJ) includes side bars that connect the windshield frame to the main hoop of the roll bar.  The side bars are connected to the upper corners of the windshield structure and extend parallel to the longitudinal axis of the vehicle connecting with the upper corners of the roll bar main hoop.  Jeep CJ vehicles do not have any structure connecting the windshield and the main hoop of the roll bar.  See Exhibit C, Neal Affidavit, 12/03/03 at ¶ 6(a).

Furthermore, beginning in the 1992 model year, the rear braces for the main hoop of the roll bar for the Jeep Wrangler (YJ) were re-designed to accommodate introduction of three-point restraints for rear seat occupants.  The rear braces in Jeep CJ vehicles ran diagonally rearward from the upper corners of the roll bar main hoop to their attachment points at the rear of the rear wheel wells.  By contrast, the rear braces of the 1992 through 1995 model year Jeep Wrangler (YJ) vehicles ran horizontally rearward from the upper corners of the roll bar main hoop before bending downward at an approximate right angle to their attachment points at the rear of the rear wheel well.  See Exhibit C, Neal Affidavit, 12/03/03 at ¶6(b).

As established by the Affidavit of Leon Neal, the roll bar structures of the Jeep CJ and the 1994 Jeep Wrangler (YJ) are substantially dissimilar.  The defendant raised this same issue in the discovery stage in its December 5, 2003 Motion for Protective Order (Dkt. #130 at pages 9-

10 and cases cited therein), when plaintiff sought deposition testimony on the Jeep CJ. Defendant provided the Affidavit attached as Exhibit C to its Motion.  (See Exhibit 24 to Motion for Protective Order).  Plaintiff had more than ample opportunity at that time to obtain competent foundational evidence from an expert regarding the Jeep CJ to contravene the defendant's position, and failed to do so.  Plaintiff has since submitted no such evidence to the Court. In the continuing absence of a proper foundation, evidence regarding the Jeep CJ is inadmissible at trial.

### B.     The Jeep Wrangler (TJ) is Substantially Dissimilar to the Subject Model

The Jeep Wrangler (TJ) is not, as plaintiff has claimed, a Jeep Wrangler (YJ).  The Jeep Wrangler (TJ) is an all-new vehicle with a different upper body structure from the Jeep Wrangler (YJ).  To characterize them as the same vehicle is incorrect and misleading.  See Affidavit of Leon Neal, dated June 4, 2003 ("Neal Affidavit, 06/04/03"), attached hereto as Exhibit D.  For purposes of the instant motion, the principle differences between the two vehicles relate to the fabrication of the main hoop and the braces of the roll bars; and, to the manner in which the side bars are attached to the main hoops of the roll bars.  See Exhibit D, Neal Affidavit, 06/04/03 at ¶ 6.

Plaintiff has taken contradictory positions to date regarding differences between the designs of the (YJ) and the (TJ).  On the one hand, plaintiff has argued that the documents related to the Jeep Wrangler (TJ) may show "possible design alternatives that could have been implemented prior to the manufacture of Chris Phelan's Jeep Wrangler (YJ)."   (Dkt. #90,

Plaintiffs' Renewed Motion to Compel at 6-7).  The implication that the upper body structure of the Jeep Wrangler (TJ) was an alternative design squarely contradicts the claim advanced by plaintiff's consultant, James M. Mundo, that the "form of the YJ and TJ sport bar designs are substantially similar."    Mundo's report stated further that "the minor differences in the designs may wash one another out with respect to performance. . . ."  See Plaintiff's Submission of Engineering Report of James D. Mundo to Supplement Plaintiff's Renewed Motion to Compel ("Mundo Report") at p. 1, attached hereto as Exhibit E.

If the upper body structures (which Mundo describes as "support bar designs") are substantially similar -- which defendant does not concede --  then plaintiff may not claim that the (TJ) offers "possible design alternatives" that could have been implemented prior to the manufacture of the subject vehicle.  If plaintiff takes a position contrary to that of Mundo that the vehicles are not, in fact, substantially similar in the design aspects pertinent to this case, then plaintiff must present competent expert testimony to support the claim that there exist significant differences in design, and further to show how those alleged differences go to a material issue in this case.  See Fed. R. Civ. P. 402. Plaintiff has disclosed no such expert opinions.

      **C.**      **Even if Evidence Regarding the Jeep CJ and Jeep Wrangler (TJ) Were Admissible, This Court Should Exclude Such Evidence Because Its Unfair Prejudicial Effect Substantially Outweighs its Probative Value**

Even if these materials were deemed admissible, the Court "must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues against the factors favoring admissibility." De Pue v. Sears, Roebuck & Co., 812 F. Supp. 750, 752 (W.D.

Mich. 1992) (citing Fed. R. Evid. 403). Even if relevant, this evidence ought to be excluded based upon its unfairness, its confusion, and its inevitable consumption of the trial on collateral issues.

The admission of evidence regarding the design of the Jeep CJ would allow plaintiff to conduct a trial by innuendo. It would permit plaintiff to present to the jury claims of design defect in vehicles not involved in this case and to exploit information regarding purported design defects in the CJ-5 and CJ-7 not at issue in this case, in order to help prove a design defect in the 1994 Jeep Wrangler (YJ).

The admission of evidence regarding the Jeep Wrangler (TJ) would similarly result in unfair prejudice to the defendant. See Grenada Steel Indus. v. Alabama Oxygen Co., 695 F.2d 883, 888 (5th Cir. 1983). The admission of design changes between models threatens to confuse the jury by diverting its attention from whether the subject product was defective when the plaintiff's injury occurred. Id. Plaintiff's own consultant has stated that the support bar designs of the (YJ) and the (TJ) are essentially the same for the purposes of this case, and found only "minor differences" in the designs. See Exhibit E, Mundo Report at p. 1. There is no competent evidence in this case to show that the "minor differences" plaintiff's consultant found would have any probative value with respect plaintiff's product defect claims.

Plaintiff has also contended that Jeep Wrangler (TJ) documents are somehow relevant to the question of whether DaimlerChrysler Corporation should have sent product warnings or recall notices to Jeep Wrangler (YJ) owners. (Dkt. #90, Plaintiff's Renewed Motion to Compel

at 6-7). It is difficult to fathom how design drawings regarding the upper body structure of the Jeep Wrangler (TJ), test reports, lawsuits and claims lists, glovebox materials or service manuals could have any bearing on these issues. If the vehicles are substantially similar, as plaintiff's consultant has asserted, there would be no basis for admitting (TJ) evidence.

Plaintiff has not offered a sufficient explanation for its claims that (TJ) evidence would be relevant here. Absent an adequate foundation, the presentation of such evidence would only confuse and mislead the jury and waste the Court's time.

### III.    CONCLUSION

WHEREFORE, the defendant DaimlerChrysler Corporation respectfully requests that the Court exclude evidence regarding the Jeep CJ and the Jeep Wrangler (TJ).

> Defendant,
> DaimlerChrysler Corporation
> By its attorneys,
>
> _____/s/_____
> Peter M. Durney (Fed. Bar ID# CT14569)
>   pdurney@cornellgollub.com
> James P. Kerr (Fed. Bar ID# CT24142)
>   jkerr@cornellgollub.com
> CORNELL & GOLLUB
> 75 Federal Street
> Boston, Massachusetts 02110
> (617) 482-8100
> (617) 482-3917 (facsimile)

### CERTIFICATE OF SERVICE

I, Peter M. Durney, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 1st day of November, 2004 a true copy of the foregoing Defendant DaimlerChrysler

Corporation's Motion *in Limine* to Exclude Evidence Regarding the Jeep CJ and the Jeep Wrangler (TJ) and Incorporated Memorandum of Law, was served by hand, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut 06107
Attorney for Plaintiff

by first class mail postage prepaid, directed to:

Mr. Christopher Miller
Inmate #266075
c/o Willard-Cybulski Correctional Institution
Third-Party Defendant

| | |
|---|---|
| Rikki Timbo, Inc. | Maurice Samuelian |
| Agent for Service: Richard W. Tomc, Esq. | Kathleen Samuelian |
| 49 Main Street | 52 Mallard Avenue |
| Middletown, CT 06457 | East Hampton, CT 06424 |
| Third-party defendant | Third-party defendant |

_____/s/_____
Peter M. Durney