UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratrix of | ) | |
| the Estate of Christopher Phelan, | ) | Civil No. 302CV1219 JBA |
| Class Member, and Individually | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DaimlerChrysler Corporation | ) | November 1, 2004 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S *MOTION IN LIMINE* TO ADMIT DEPOSITION TESTIMONY AND OTHER STATEMENTS BY THIRD-PARTY DEFENDANT CHRISTOPHER MILLER AND INCORPORATED MEMORANDUM OF LAW**

Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "defendant") submits this Motion *in Limine* to Admit Deposition Testimony and Other Statements by Third-Party Defendant Christopher Miller and incorporated memorandum of law.

**I.   INTRODUCTION**

This case arises from a January 18, 2000 motor vehicle accident on Route 2 westbound in Glastonbury Connecticut, in which Christopher Phelan ("Mr. Phelan") was fatally injured. Specifically, a 1987 Ford Taurus driven by third-party defendant Christopher Miller ("Miller"),

**ORAL ARGUMENT IS REQUESTED**

who was intoxicated, struck Mr. Phelan's 1994 Jeep Wrangler YJ ("Jeep" or "subject vehicle") from behind at a high rate of speed. Plaintiff's accident reconstructionist estimated in his report that the vehicle driven by Miller was traveling at about 100 miles per hour when it struck the Jeep. Following the impact, the Jeep was forced forward and towards the right into a wire rope guardrail system. The Jeep struck and knocked down a light post and then turned over, eventually coming to rest against a tree to the north of the roadway. Christopher Phelan died as a result of the collision.

## II.    ARGUMENT

The proposed evidence includes statements Miller made to individuals at the accident scene. These statements are recorded in reports prepared by police officers, Trooper Matthew Gunsalus of the Connecticut State Police and Officer James Kennedy of the Glastonbury (Connecticut) Police Department, as well as in deposition testimony taken in Phelan v. Miller et al., a Connecticut state court action filed by plaintiff arising from the same events and occurrences as the present action. Numerous witnesses who were present at the accident scene shortly after the accident occurred, including the two police officers, Trooper Gunsalus and Officer Kennedy, an emergency medical technician, Amy Bouchard, and a bystander, Cassandra Daniels, reported in their deposition testimony that Miller made statements to them reflecting his activities prior to the accident, his state of mind immediately before the accident, and his response to events he observed at the accident scene. Plaintiff's counsel was present at all of these depositions as plaintiff's representative and had ample opportunity to cross-examine the deponents. See Fed. R. Civ. P. 32(a).

### A.    The Proposed Evidence Is Relevant Under Fed. R. Evid. 401

The statements sought to be admitted are directly relevant to Miller's role in the happening of the accident and his liability for the death of Christopher Phelan, as alleged in DaimlerChrysler Corporation's third-party complaint against Miller.  See Third-Party Complaint and Demand For Jury Trial of Defendant/Third-Party DaimlerChrysler Corp, attached hereto as Exhibit A.  For example, Amy Bouchard, an EMS for American Medical Response, testified at deposition that Miller asked her repeatedly whether he killed anyone.  See Deposition of Amy Bouchard ("Bouchard Deposition") at pp. 26-27, attached hereto as Exhibit B.  In addition, Bouchard testified that Miller stated numerous times that "he had been drinking, using, you know - - he said, Yes, I'm drunk.  Yes, I'm shit-faced . . . and he kept repeating over and over again, Did I kill somebody?  Am I going to jail?"  Exhibit B, Bouchard Deposition at p. 28.  Trooper Matthew Gunsalus of the Connecticut State Police testified at deposition to the statements contained in the Connecticut Uniform Police Accident Report.  See Deposition of Matthew Gunsalus ("Gunsalus Deposition"), attached hereto as Exhibit C.  Trooper Gunsalus testified that Miller asked him at the scene if he killed somebody.  See Exhibit C, Gunsalus Deposition at p. 70.  In addition, Trooper Gunsalus noted in the police report, "[o]perator Miller stated he was driving the station wagon (vehicle 2) and hit something.  Miller then asked if he killed somebody.  Operator Miller stated that he was alone in vehicle 2."  See Continuation of Investigation Report at p. 13, attached hereto as Exhibit D.  Miller then told Trooper Gunsalus "that he had one to two beers."  Id.

According to a case report on the subject accident prepared by Officer James Kennedy of the Glastonbury Police Department, Miller stated to him at the scene: "oh my god , did I kill the guy, ..., did I kill him.  I am ...in drunk". [sic]  Glastonbury Police Department Complaint/Case Report, attached hereto as Exhibit E; Deposition of James A. Kennedy ("Kennedy Deposition") at p. 37, attached hereto as Exhibit F.  Miller also said, "I hit him, I am cocked, did I kill him". [sic]. Id. Officer Kennedy confirmed in deposition a similar statement Miller made to him the scene: "Did I kill him?  I'm …ing drunk.  Did I kill him?"  Exhibit F, Kennedy Deposition at p. 22.

According to a statement given to the State Police by Cassandra Daniels who saw Miller driving just before the accident, Miller "asked what happened and asked if he was involved in an accident which I told him yes.  Please don't tell me I killed someone he said.  I then asked him if he was intoxicated after seeing him driving. He said yes."  Witness Statement of Cassandra Daniels at p. 2, attached hereto as Exhibit G.  Ms. Daniels testified in deposition that Miller told her at the scene that "he was coming from a bar."  Deposition of Cassandra A. Daniels ("Daniels Deposition") at p. 31; see also p. 36, attached hereto as Exhibit H.  According to Daniels, Miller "repeatedly said to me, Don't [sic] tell me I killed somebody."  Exhibit H, Daniels Deposition at pp. 35-36.

Miller's statements are relevant to the issues presented in this action because they support DaimlerChrysler's allegations that Miller's actions of driving a vehicle while intoxicated and striking Mr. Phelan's vehicle were the cause of Mr. Phelan's injuries.  Thus, the statements that

Miller made at the scene are probative of the fact that his negligence caused Phelan's injuries and thus should be admitted into evidence. See U.S. v. Anglin, 169 F.3d 154 (2d Cir. 1999).

### B. The Proposed Evidence Is Admissible As Non-Hearsay Under Rule 801(D)(2) As Admissions By A Party Opponent

Because Miller remains a party to this action, these statements are admissible under Fed. R. Evid. 801(d)(2) as admissions by a party-opponent. Rule 801(d)(2) of the Federal Rules of Evidence provides in relevant part that, "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is (A) the party's own statement in either an individual or representative capacity." Fed. R. Evid. 801(d)(2). Therefore, a party's own statement made in his individual capacity when offered by an opposing party is defined as non-hearsay under Rule 801(d)(2). See H. Sand & Co., Inc. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991) (documents containing statements by defendant and its agents are not hearsay because they constitute admissions of a party-opponent). There is neither a requirement of mental capacity at the time the statement was made (see McCormick, Evidence § 255 at 139-40 (5th ed. 1999)) nor does the statement need to relate to a matter of which the party had personal knowledge. See Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 96 (3d Cir. 1999).

Additionally, a statement by a party qualifies as an admission even if it was not against interest when made. See United States v. Reed, 227 F.3d 763, 770 (7th Cir. 2000). It may contain opinions or conclusions of law. See Russell v. United Parcel Serv., Inc., 666 F.2d 1188, 1190 (8th Cir. 1981). The statement may be offered whether or not the party is unavailable, available, or actually testifies. See White v. Honeywell, Inc., 141 F.3d 1270, 1276-77 (8th Cir.

1998); see also M. Graham, Federal Practice and Procedure: Evidence §7016 (Interim Edition). As such, the statements of third-party defendant Christopher Miller are clearly admissible as an exception to the hearsay rule regardless of the statements' content or Miller's availability.

### C. The Proposed Evidence Is Admissible Under Rule 803(1) As Present Sense Impressions

A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). Here, Miller made the aforementioned comments to the responding police officers and rescue personnel when they first spoke to Miller at the scene. See U.S. v. Blakey, 607 F.2d 779 (7th Cir. 1979); see also U.S. v. Parker, 936 F.2d 950 (7th Cir. 1991). Therefore, the statements were made immediately following the accident and should be admitted as evidence as present sense impressions.

### D. The Proposed Evidence Is Admissible Under Rule 803(2) As Excited Utterances

Rule 803(2) of the Federal Rules of Evidence states that an excited utterance is, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). Here, the deadly car accident caused by Miller constitutes a "startling" condition for purposes of this rule. See U.S. v. Collins, 60 F.3d 4 (1st Cir. 1995). In addition, Miller's statements to the police and rescue personnel immediately following the accident qualify as "excited" statements for purposes of the rule because they were spontaneous at the time of the incident. See U.S. v. Scarpa, 913 F.2d 993

(2d Cir. 1990); but see U.S. v. Guevara, 277 F.3d 11 (2d Cir. 2001). In addition, the fact that Miller made the aforementioned comments in response to questions by the police and rescue personnel regarding his health and the accident do not disqualify them from being admitted as excited utterances because the statements were made while Miller remained in an excited state. See U.S. v. Joy, 192 F.3d 761 (7th Cir. 1999). In addition, not all of the statements were responsive to the questions that Miller was being asked. See People of Territory of Guam v. Cepeda, 69 F.3d 369 (9th Cir. 1995).

### E.  The Proposed Evidence Is Admissible Under Rule 804(B)(3) As Statements Against Interest

Pursuant to Rule 804(b)(3) of the Federal Rules of Civil Procedure, a statement against interest is:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Fed. R. Evid. 804(b)(3).

A statement against interest may be admitted into evidence even if the declarant is unavailable to testify. See id. Here, whether or not Miller is able to attend the trial, his statements to the police and rescue personnel should be admitted as a statements against interest because they clearly fit within the realm of Rule 804(b)(3). At the accident scene, Miller repeatedly told the responding police officers, rescue personnel and witnesses that he was drunk. Miller also repeatedly asked the police officers and rescue

personnel at the scene whether he killed somebody in the accident. These statements subjected Miller to criminal liability for his actions for which he is currently serving a seven year manslaughter sentence in jail. Thus, Miller's statements were clearly against his interest and should be admitted into evidence. See U.S. v. Samaniengo, 345 F.3d 1280 (11th Cir. 2003).

### III.  CONCLUSION

WHEREFORE, defendant DaimlerChrysler Corporation respectfully requests that the Court allow its Motion to Admit Deposition Testimony and Other Statements by Third-Party Defendant Christopher Miller and allow said statements of Christopher Miller to be introduced into evidence.

                Defendant,
                DaimlerChrysler Corporation
                By its attorneys,


_____/s/_____
Peter M. Durney (Fed. Bar ID# CT14569)
   pdurney@cornellgollub.com
James P. Kerr (Fed. Bar ID# CT24142)
   jkerr@cornellgollub.com
CORNELL & GOLLUB
75 Federal Street
Boston, MA  02110
(617) 482-8100
(617) 482-3917 Fax

## CERTIFICATE OF SERVICE

       I, Peter M. Durney, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 1st day of November, 2004 a true copy of the foregoing Defendant DaimlerChrysler Corporation's Motion *in Limine* to Admit Deposition Testimony and Other Statements by Third-Party Defendant Christopher Miller and Incorporated Memorandum of Law, was served by hand, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut 06107
Attorney for Plaintiff

by first class mail postage prepaid, directed to:

Mr. Christopher Miller
Inmate #266075
c/o Willard-Cybulski Correctional Institution
Third-Party Defendant

| | |
|---|---|
| Rikki Timbo, Inc. | Maurice Samuelian |
| Agent for Service: Richard W. Tomc, Esq. | Kathleen Samuelian |
| 49 Main Street | 52 Mallard Avenue |
| Middletown, CT 06457 | East Hampton, CT 06424 |
| Third-party defendant | Third-party defendant |


                                                  _____/s/_____
                                                  Peter M. Durney