UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratrix of | ) | |
| the Estate of Christopher Phelan, | ) | |
| Class Member, and Individually | ) | |
| | ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DaimlerChrysler Corporation | ) | November 1, 2004 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S MOTION *IN LIMINE*
TO PRECLUDE TESTIMONY BY GARY CRAKES REGARDING
LOST HOUSEHOLD SERVICES AND LOST FUTURE EARNINGS
AND INCORPORATED MEMORANDUM OF LAW**

Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "defendant") respectfully submits this Motion *in Limine* to Preclude Testimony of Gary Crakes Regarding Lost Household Services Lost Future Earnings.

I.   **EVIDENCE TO BE EXCLUDED**

   A.   **Opinions Regarding Lost Household Services**

Plaintiff has designated Gary Crakes to provide testimony testify in support of plaintiff's damages claims in this case.  See Plaintiff's Disclosure of Expert Witness, dated 01/31/03, attached hereto as Exhibit A; Appraisal of Economic Loss: Christopher Phelan ("Appraisal"),

**ORAL ARGUMENT IS REQUESTED**

attached hereto as Exhibit B. Crakes includes in his appraisal of economic loss an opinion regarding the value of loss to the Phelan estate of Mr. Phelan's household services, and places that value at $294,422. See Exhibit B, Appraisal at p. 14.

The measure of damages for alleged wrongful death is the value *to the decedent* of his life had he lived, and not the loss to the estate. See Floyd v. Fruit Indus., Inc., 136 A.2d 918, 925 (Conn. 1957); Halstead v. U.S., 535 F. Supp. 782, 785 (D. Conn 1982). Crakes' opinion regarding the value of Mr. Phelan's lost household services *to the Phelan estate* cannot be considered by the jury, as this is not an accepted element of damages for wrongful death.

      **B.**    **Opinions Regarding Lost Future Earnings**

Crakes provides three opinions on Christopher Phelan's lost future earnings with ascending loss values, based on the assumption that:

1. Mr. Phelan would have earned the income of an East Lyme, Connecticut public school teacher, with the further assumption that he would have earned a master's degree after eight years. In his opinion, the total net discounted economic loss in this scenario is $1,282,730;

2. Mr. Phelan would have earned the same as the median American male with a bachelor's degree based upon the earnings of a male with a bachelor's degree, with no distinction made for a specific subject area. The total net discounted economic loss in this scenario is $1,358,501, an increase of $75,771 over the first scenario;

    3.    Mr. Phelan would have earned the same as the median American male with a bachelor's degree until 2006 and the same as the median American male with a master's degree thereafter, again with no distinctions made regarding the subject area of the degree. The total net discounted economic loss here is $1,540,535, an increase of $257,805 over the first scenario. See Exhibit B, Appraisal at p. 5A.

Crakes offered no rationale in his report for providing alternative estimates of Mr. Phelan's earnings loss based on national data for males with bachelor's and master's degrees. There is no basis in the record for Crakes' assumption that Mr. Phelan would have earned the same as median American males with either bachelor's or master's degrees.

Crakes' calculations for the earnings of a male with a bachelor's degree and a male with a master's degree must therefore be excluded as speculative, as they have no basis in decedent's employment history, actual educational achievements or future employment prospects. See Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996); Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 98 (3d Cir. 1983); see also Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 568-69 (D.C. Cir. 1993).

## II.    ARGUMENT

### A.    Crakes May Not Testify Regarding The Value Of The Loss To The Phelan Estate Of Christopher Phelan's Household Services

Damages for wrongful death are assessed under Connecticut law on the basis of the loss to the decedent had he lived, and not on the basis of the loss to his estate. Floyd, 136 A.2d at 925. As a general rule, "[d]amages under [Connecticut's wrongful death] statute are not based upon any loss caused to the family or relatives of the deceased. As regards death, damages for it

cannot be based upon the value which a man would place upon his own life or upon any sentimental considerations." Chase v. Fitzgerald, 45 A.2d 789, 792 (Conn. 1946) (citations omitted).[1] A cause of action for wrongful death comes to the representative by survival. The right of recovery for death is a consequence of the wrong inflicted upon the decedent. The cause of action is a continuance of that which the decedent could have asserted if he lived. See id.

"Damages for wrongful death. . . are allowed as compensation for the destruction of the decedent's capacity to carry on life's activities, including his capacity to earn money, as he would have if he had not been killed." Floyd, 136 A.2d at 924 (citation omitted). In Chase, where the decedent was a housewife who was "not gainfully employed" and there was "no evidence indicating she was likely thereafter to become a wage-earner," the court held that the jury could consider "'the condition, capacity, ability and efficiency of the deceased in the discharge of her domestic duties. . . .'" 45 A.2d at 793 (citations omitted). This is not such a case, as Christopher Phelan had a quantifiable earning capacity as a 30-year old male who had obtained and was holding a position as an elementary school teacher at the time of his death.

The loss of household services as defined by Crakes is completely different from lost opportunity to carry on one's life. Crakes arrives at his estimate by using a document entitled The Dollar Value of Household Work. See Exhibit B, Appraisal at p. 13. There is no evidence that Mr. Phelan even performed household services. But even if plaintiff could prove that he had

---

[1] Conn. Gen. Stat. §52-555a-c, which permits actions for loss of spousal consortium, is not applicable to the facts of this case.

done so, there is no evidence that he would have derived any pleasure or enjoyment from these activities.

### B. Crakes May Not State To The Jury Alternative Estimates Of Earnings Loss Based On National Data For Males With Bachelor's And Master's Degrees

Under Federal Rule of Evidence 703, a court may determine whether an expert "acted reasonably in making assumptions of fact upon which he would base his testimony." Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 208 (2d Cir. 1984) (citations omitted). Expert testimony should be excluded "if it is speculative or conjectural or if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith. . . .'" Boucher, 73 F.3d at 21 (citation omitted) (quoting Shatkin, 727 F.2d at 208). In the context of lost future earnings, "an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects." Boucher, 73 F.3d at 21 (citations omitted). In Boucher, the Second Circuit ruled that speculative expert testimony on lost future earnings should have been excluded at trial. See 73 F.3d at 22. The expert's testimony that the plaintiff would have worked full-time until retirement age was unfounded, because, in light of the plaintiff's sporadic work history prior to the accident it was based on unrealistic assumptions of the plaintiff's future employment prospects. See id.; see also Gumbs, 718 F.2d 88, 98 (expert testimony that plaintiff would have earned twice his average annual income should have been excluded absent supporting evidence to demonstrate the likelihood of such a dramatic increase); Hernandez v. M/V Rajaan, 841 F.2d 582, 587-88 (5th Cir. 1988) (expert's calculation of lost earnings based on assumption of full-time employment with fringe benefits was inadmissible where plaintiff had worked only part-time without benefits for three years before accident).

The evidence cited by Crakes in his report shows that at the time of his death Mr. Phelan worked for the Lyme, Connecticut School District as an elementary school teacher. He had obtained a Bachelor's degree from Southern Connecticut State University and had obtained an elementary education certification from Arizona State University.

The categories used by Crakes of "male with a bachelor's degree" and "male with a master's degree" are generic in nature. As Crakes himself admitted in deposition, these categories are not indicative of the likely future earnings of an elementary school teacher with a bachelor's degree. See Exhibit C, Deposition of Gary M. Crakes ("Crakes Deposition") at pp. 36-38. Instead, they are based on median compensation for males with bachelor's and master's degrees, irrespective of the field of a particular individual's academic concentration or job area. See id. at 38  In deposition, Crakes stated that the rationale for offering the latter two scenarios was that he simply wanted to provide a sample of possible income levels for the decedent. See id. at 32-33. The available evidence shows that Mr. Phelan had trained to be a teacher, that he had obtained certification in elementary education and that he held a full-time teaching position in the East Lyme school system. To assume that he would leave his chosen career would be pure speculation.

While one could possibly infer from Mr. Phelan's work record and educational status at the time of the accident is that the possibility existed of his someday obtaining a master's degree in education, it is at least equally probable that he would not. Absent some specific evidentiary

foundation for such assumptions, there is an inadequate basis for the proposition advanced by plaintiff's economic expert. There is simply no evidence to indicate that he would have received a salary commensurate to what is stated for a male with a bachelor's degree or a male with a master's degree. Therefore, evidence based on these assumptions ought to be excluded.

### III.  CONCLUSION

WHEREFORE, defendant DaimlerChrysler Corporation respectfully requests that this Court preclude plaintiff from introducing testimony by Gary Crakes regarding lost household services and lost future earnings of Christopher Phelan.

> Defendant,
> DaimlerChrysler Corporation
> By its attorneys,
>
>
> _____/s/_____
> Peter M. Durney (Fed. Bar ID# CT14569)
>   pdurney@cornellgollub.com
> James P. Kerr (Fed. Bar ID# CT24142)
>   jkerr@cornellgollub.com
> CORNELL & GOLLUB
> 75 Federal Street
> Boston, MA  02110
> (617) 482-8100
> (617) 482-3917 Fax

### CERTIFICATE OF SERVICE

I, Peter M. Durney, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 1st day of November, 2004 a true copy of the foregoing Defendant DaimlerChrysler

Corporation's Motion *in Limine* to Preclude Testimony by Gary Crakes Regarding Lost Household Service and Lost Future Earnings and Incorporated Memorandum of Law, was served by hand, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut 06107
Attorney for Plaintiff

by first class mail postage prepaid, directed to:

Mr. Christopher Miller
Inmate #266075
c/o Willard-Cybulski Correctional Institution
Third-Party Defendant

| | |
|---|---|
| Rikki Timbo, Inc. | Maurice Samuelian |
| Agent for Service: Richard W. Tomc, Esq. | Kathleen Samuelian |
| 49 Main Street | 52 Mallard Avenue |
| Middletown, CT 06457 | East Hampton, CT 06424 |
| Third-party defendant | Third-party defendant |

               _____/s/_____
               Peter M. Durney