UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratrix of | ) | |
| the Estate of Christopher Phelan, | ) | |
| Class Member, and Individually | ) | |
| | ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DaimlerChrysler Corporation | ) | November 1, 2004 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S
MOTION *IN LIMINE* TO EXCLUDE REFERENCES TO, TESTIMONY AND/OR
COMMENTS REGARDING FINITE ELEMENT TESTING
AND INCORPORATED MEMORANDUM OF LAW**

Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "defendant") submits this motion *in limine* and incorporated memorandum of law to exclude from trial any and all reference to, evidence of, testimony, comments and/or argument regarding finite element testing conducted by plaintiff's designated expert, Irving U. Ojalvo.

**I.      INTRODUCTION**

This case arises from a January 18, 2000 motor vehicle accident on Route 2 westbound in Glastonbury Connecticut, in which Christopher Phelan ("Mr. Phelan") was fatally injured. Specifically, a 1987 Ford Taurus driven by third-party defendant Christopher Miller ("Miller"), who was intoxicated, struck Mr. Phelan's 1994 Jeep Wrangler YJ ("Jeep" or "subject vehicle") from behind at a high rate of speed. Plaintiff's accident reconstructionist estimated in his report

**ORAL ARGUMENT IS REQUESTED**

that the vehicle driven by Miller was traveling at about 100 miles per hour when it struck the Jeep. Following the impact, the Jeep was forced forward and towards the right into a wire rope guardrail system. The Jeep struck and knocked down a light post and then turned over, eventually coming to rest against a tree to the north of the roadway. Christopher Phelan died as a result of the collision.

## II.   ARGUMENT

### A.   The Finite Element Testing Conducted by Ojalvo Is Neither Reliable Nor Relevant And Should Be Excluded From Trial

Evidence proffered by an expert first must meet the requirement of Federal Rule of Evidence 702 that it constitutes "scientific knowledge". Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590 (1993). "[T]he expert's bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." Daubert (on remand), 43 F.3d 1311, 1316 (1994). "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997), quoted in Kumho Tire, 526 U.S. 137, 157 (1999). Daubert requires a determination that the proffered testimony will assist the trier of fact as required by Rule 702 of the Federal Rules of Evidence. See Daubert, 509 U.S. at 591-92; Fed. R. Evid. 702. In order to assist the trier of fact, there must be a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning and methodology can properly be applied to the facts in issue." Id. at 592-93 (emphasis added).

At his December 2002 deposition, Dr. Ojalvo described a finite element as "a structural element that is put together like an erector set to build up a larger structure."  Deposition of Irving U. Ojalvo, dated December 2, 2002 ("Ojalvo Deposition, 12/02/02") at p. 105, attached hereto as Exhibit A.  Dr. Ojalvo further explained that

> the finite element results were run to help the ATB simulation.  For example, when the windshield strikes in a grazing way, if you will, the side of the road, the question is what is the stiffness of that impact.  That's the important parameter for ATB.  And what we did is to make sure that the energy to crush that windshield frame equalled the energy in the ATB model.  That was a very important place where the finite element model helped the ATB simulation.

Deposition of Irving U. Ojalvo, dated March 7, 2003 ("Ojalvo Deposition, 03/07/03) at p. 231, attached hereto as Exhibit B.  For the reasons stated below, the finite element testing performed by Ojalvo is neither reliable nor relevant and cannot be used to help prove that the Jeep's windshield frame failed in the subject accident.

### 1. **Plaintiff has failed to confirm the source of the elements Ojalvo tested.**

Ojalvo claimed in deposition that he conducted his finite element tests on two twenty inch sections of a Jeep Wrangler windshield frame allegedly identical to the windshield frame in the subject vehicle.  See Exhibit A, Ojalvo Deposition, 12/02/02 at p. 27; Exhibit B, Ojalvo Deposition, 03/07/03 at p. 154; Deposition of Irving J. Ojalvo, dated 11/25/02 ("Ojalvo Deposition, 11/25/02") at p. 120, attached hereto as Exhibit C.

Dr. Ojalvo's finite element testing is unreliable because there is no evidence to prove that the windshield frame from which he obtained the two twenty inch sections of the windshield used in his testing was the same make or model year as the subject vehicle.  When questioned about how he obtained the two twenty inch sections of windshield frame used in his finite

element testing, Dr. Ojalvo testified at his December 2, 2002 deposition that "we contacted a scrap yard that has Jeep parts and they supplied us with a windshield frame, complete with front windshield." Exhibit A, Ojalvo Deposition, 12/02/02 at p. 107. When he was asked a similar question at his next deposition, on November 25, 2002, Ojalvo testified that he ordered a 1994 Jeep Wrangler windshield from A Right Salvage and that "it appeared to be identical to the frame that existed on the incident vehicle." Exhibit C, Ojalvo Deposition, 11/25/02 at p. 75. But Ojalvo also testified on March 7, 2003 that he did not even know the model year of the vehicle from which the windshield segments he tested were supposedly taken. He did not know the vehicle identification number of the Jeep from which the exemplar windshield frame was taken. See Exhibit B, Ojalvo Deposition, 03/07/03 at p. 148. With no proof other than Ojalvo's own claims, plaintiff cannot establish that the hardware he tested came from a Jeep Wrangler of the same model as the subject vehicle. See Exhibit C, Ojalvo Deposition, 11/25/02 at p. 75; Exhibit B, Ojalvo Deposition, 03/07/03 at pp. 148, 152.

The only support for Ojalvo's claim is his own statements that he knew that the hardware he tested came from a 1994 Jeep Wrangler because, "[t]hat's what it was alleged to. I called up a place that had it and made arrangements for them to do it, and it was handled by Attorney Arnold's office . . . [i]t had the right dimensions, and it looked like the right part." See Exhibit B, Ojalvo Deposition, 03/07/03 at pp. 149-50. His statements alone are not sufficient to prove that the windshield frame that he used in his finite element test was from a Jeep of the same make and model year as the subject vehicle. Defendant has not to date received any information confirming the make and model year of the vehicle from which the windshield frame the 20" segments were taken was supposedly removed.

### 2. **<u>Ojalvo testified that he did not know the materials properties of the steel he tested</u>.**

Based on Ojalvo's own rationale for the testing, he was lacking what he described as essential information when he conducted his finite element testing. Ojalvo stated in deposition that he had decided to test two twenty inch sections of the windshield frame because he "wanted to know what the plastic hinge moment of that cross section was, and that was the simplest way to obtain it, and that plastic hinge moment was used in [his] analysis". See Exhibit B, Ojalvo Deposition, 03/07/03 at p. 154. As Ojalvo explained, "the plastic hinge moment depends on the material properties of the steel, which we didn't know, we're still trying to find out; and it depends upon how much the cross section collapses and does it remain its original cross section." Id. Ojalvo further explained, "[in] the analysis, in the computation that we made, we assumed a soft steel. . . and then we ran a test, and we measured the plastic hinge moment with the actual properties of that specimen we tested, and the cross section collapsed." Id. at 154-56.

Ojalvo thus acknowledged that the results of his testing were based on assumptions about the material properties of the steel used in a 1994 Jeep Wrangler (YJ) windshield frame that were confirmed by laboratory tests he ran on hardware that he also assumed came from a 1994 Jeep Wrangler (YJ).

### B. **Ojalvo's Finite Element Testing Is Not Relevant To The Facts Of This Case**

The proponent of the evidence bears the burden of proving that the testimony is both reliable and relevant. See Travelers Prop. & Cas. Corp. v. General Elec. Co., 150 F. Supp. 2d 360, 363 (D. Conn. 2001). Even if the proponent can establish scientific reliability, that by itself

- 5 -

is not enough to make the evidence admissible.  Federal Rule of Evidence 702 also requires that the evidence "fit" the facts and issues of the case so that it will be of assistance to the trier of fact.  See Daubert, 509 U.S. at 591.  As the Daubert Court recognized, "scientific validity for one purpose is not scientific validity for other, unrelated purposes."  Id.

In addition, Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  In seeking to admit evidence proving how a specific incident occurred, the proponent of the evidence must show a substantial similarity between the test conditions and the conditions of the subject incident.  See, e.g., Four Corners Helicopters, Inc. v. Turbomeca, S.A., 979 F.2d 1434, 1442 (10th Cir. 1992); Barry v. Quality Steel, 820 A.2d 258, 271-72 (Conn. 2003); Larensen v. Karp, 470 A.2d 715, 717 (Conn. App. 1984).   Plaintiff cannot make that showing here.

Ojalvo has proven neither a substantial similarity between the vehicle components that he tested and the subject vehicle nor the conditions in which he tested the exemplar components and the conditions involved in the subject accident.  Dr. Ojalvo's finite element testing is not relevant to this case because there is no proof that the sections of the windshield frame that he tested came from a model on which the same elements were substantially similar to those on the subject 1994 Jeep Wrangler (YJ).

Even if plaintiff could show that the hardware tested came from a substantially similar vehicle, the testing was performed on just two twenty inch sections of windshield frame.  Ojalvo

testified that he did not do any testing on a whole windshield frame or a frame with windshield glass.  In fact, the windshield glass was removed from the windshield frame delivered to them before they tested the twenty inch segments.  See Exhibit B, Ojalvo Deposition, 03/07/03 at pp. 148-49.   Because Ojalvo tested only segments, his test results did not reflect the potential strength of the windshield frame in the circumstances of the accident combined with related vehicle components, including the two horizontal side struts that connect the windshield frame to the rest of the Jeep's roll cage, or the tubular portion of the roll cage that Ojalvo tested separately.  See id. at 158.

The absence of these factors from Dr. Ojalvo's testing skews his results regarding the overall strength of the subject vehicle's windshield frame.  When asked whether he had "an opinion as to whether the presence of glass in the windshield frame would have contributed in any way to the strength of the windshield," Dr. Ojalvo responded that it "could have."  Id. at 151.  But Ojalvo acknowledged that he did not test a whole windshield frame or any portion of a windshield frame with glass.  In place of a cogent explanation for these omissions, Ojalvo declared that he did not test a windshield frame with glass because he considers it to be "bad [engineering] practice . . . because of the temperamental nature of glass."  Id. at 154.  The conditions of the subject accident were simply not a factor in Ojalvo's finite element testing.  When asked whether he attempted to recreate the conditions to demonstrate how the upper portion of the windshield frame grazed the ground, Ojalvo testified that he "didn't do any dynamic testing."  Id. at 159.

Plaintiff is obliged to explain how Ojalvo's testing of two twenty inch pieces of metal cut

- 7 -

from a windshield frame of uncertain source could assist the jury in determining how the subject incident occurred. In the absence of such an explanation, Ojalvo's finite element testing ought to be excluded.

### III. CONCLUSION

WHEREFORE, defendant DaimlerChrysler Corporation respectfully requests that all references to, evidence of, testimony, comments and/or argument regarding finite element testing be excluded from trial.

        Defendant,
        DaimlerChrysler Corporation
        By its attorneys,


_____/s/_____
Peter M. Durney (Fed. Bar ID# CT14569)
   pdurney@cornellgollub.com
James P. Kerr (Fed. Bar ID# CT24142)
   jkerr@cornellgollub.com
CORNELL & GOLLUB
75 Federal Street
Boston, MA  02110
(617) 482-8100
(617) 482-3917 Fax

### CERTIFICATE OF SERVICE

I, Peter M. Durney, attorney for defendant DaimlerChrysler Corporation, hereby certify that on this 1st day of November, 2004 a true copy of the foregoing Defendant DaimlerChrysler Corporation's Motion *in Limine* to Exclude References to, Testimony and/or Comments Regarding Finite Element Testing and Incorporated Memorandum of Law, was served by hand, directed to:

Steven E. Arnold, Esq.
STANGER & ARNOLD, LLP
29 South Main Street, Suite 325
West Hartford, Connecticut  06107
Attorney for Plaintiff

- 9 -

by first class mail postage prepaid, directed to:

Mr. Christopher Miller
Inmate #266075
c/o Willard-Cybulski Correctional Institution
Third-Party Defendant

| | |
|---|---|
| Rikki Timbo, Inc. | Maurice Samuelian |
| Agent for Service: Richard W. Tomc, Esq. | Kathleen Samuelian |
| 49 Main Street | 52 Mallard Avenue |
| Middletown, CT 06457 | East Hampton, CT 06424 |
| Third-party defendant | Third-party defendant |

   /s/_____
Peter M. Durney