UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANGELA PHELAN, ADMINISTRATRIX OF :    CIVIL NO. 3:02 CV 1219 (JBA)
THE ESTATE OF CHRIS PHELAN
                      :
         Plaintiff          :
                      :
VS.                      :
                      :
DAIMLERCHRYSLER CORPORATION    :    NOVEMBER 1, 2004
                      :
         Defendant      :

## JOINT TRIAL MEMORANDUM

### 1.     TRIAL COUNSEL:

**Plaintiff:**

Steven E. Arnold, Esq., ct07966
sea@SAlaw.us

Peter M. Van Dyke, Esq., ct24747
pvd@SAlaw.us

James H. Halpin, Jr., Esq., ct25357
jhh@SAlaw.us

Stanger & Arnold, LLP
29 South Main Street
West Hartford, CT 06107
Tel. (860) 561-0650
Fax (860) 561-0646

**Defendant:**

Peter M. Durney, Esq., ct 14569
PDurney@CornellGollub.com

James P. Kerr, Esq., ct 24142
JKerr@CornellGollub.com

Cornell & Gollub
75 Federal Street
Boston, MA 02110
Tel. (617) 482-8100
Fax: (617) 482-3917

2.    **JURISDICTION:**

The diversity jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.    **JURY TRIAL:**

The case is to be tried to a jury.

4.    **LENGTH OF TRIAL:**

Plaintiff anticipates that trial will require 15 to 20 days.

Defendant anticipates that trial will require 28 to 35 days.

5.    **FURTHER PROCEEDINGS:**

Final Pre-Trial Conference scheduled for November 9, 2004.

**Plaintiff's Statement of Further Proceedings**

In accordance with the Court's Standing Order, prior to the November 9, 2004 Final Pre-Trial Conference, Plaintiff will file a <u>Daubert</u> motion as to Defendant's timely disclosed experts to exclude Defendant's expert's opinions that do not rely on appropriate scientific methodology and/or do not fit the facts of this case, a motion to preclude as to Defendant's only recently disclosed additional expert, and a motion to preclude Defendant's 1995 Jeep Wrangler Federal

Defendant's third-party claims against Christopher Miller, an Amended Complaint to conform the pleadings to the proof, and to renew her Motion to Strike that was denied without prejudice to renew.

### Defendant's Statement of Further Proceedings

Defendant's motions in limine are attached hereto. Defendant objects to Plaintiff's filing of further motions regarding trial testimony and directed to Defendant's third party claims against Christopher Miller, and takes the position that such motions are not provided for in any of the Court's orders, are untimely and must be denied.

6. **NATURE OF CASE:**

   A. **PLAINTIFF'S STATEMENT**

This is an automobile product liability case seeking compensatory and punitive damages. Angela Phelan brings this action for her son Chris Phelan's rollover accident injuries and death in his 1994 Jeep Wrangler. Plaintiff alleges that Defendant is liable for Chris Phelan's death because Defendant's 1994 Jeep Wrangler has latent defects that are unreasonably dangerous to its owners and occupants, in that the 1994 Jeep Wrangler design does not provide adequate rollover safety protection, it is not rollover safe or crashworthy, and that the Jeep Wrangler defects caused or contributed to Chris Phelan's rollover injuries and death. Plaintiff pleads 3 product liability theories against Defendant, only one of which Plaintiff needs to prove: (1) Strict Product

Liability; (2) Negligence; and (3) Breach of Warranty. Plaintiff intends to prove that Defendant was at least 1% comparatively responsible Chris Phelan's rollover injuries and death, thus making it liable to pay 100% of the damages the jury awards.

This case involves a two-vehicle rear-end accident by a 1987 Ford Taurus into a 1994 Jeep Wrangler on Route 2 West in Glastonbury, CT. Chris Phelan was operating his Jeep Wrangler in the right hand lane at about 53 mph. The right portion of the Taurus' front bumper collided into the left portion of the Jeep Wrangler rear bumper at about 100 mph. The impact increased the Jeep Wrangler's speed to about 80 mph. The impact also pushed the Jeep Wrangler to the right about 30° across the paved right hand breakdown lane and into a wire rope and post guardrail system.

Plaintiff claims that Chris Phelan survived the rear-end collision forces. The Jeep Wrangler rode up and straddled the guardrail. Its forward speed was reduced to about 40 mph, as Chris Phelan continued braking, and the Jeep Wrangler collided into guardrail posts, a light pole a few inches to the right of the guardrail system, and more guardrail posts, before rolling over and down the embankment. When the Jeep Wrangler's forward speed had decreased to about 40 mph, the Jeep Wrangler went into a passenger-side-leading single rollover down the right hand embankment. Because of the steepness of the embankment, the Jeep Wrangler's upper driver's side area grazed the embankment as it rolled over and down the embankment. The grazing

impact into the embankment caused the upper portion of the Jeep Wrangler driver's door frame to crush inward into Chris Phelan's head and cause his death.

In this case Plaintiff claims that Chris Phelan survived Mr. Miller's rear-end accident, and that Chris Phelan remained in some control of his Jeep Wrangler, until the lower-speed rollover sequence of the accident. Plaintiff claims that Defendant should have designed its Jeep Wrangler to be reasonably rollover safe and crashworthy, that Defendant should have warned consumers that it is not, and that the Defendant's Jeep Wrangler defects caused or were a substantial factor in contributing to Chris Phelan's pre-death pain, suffering, fear of losing his life, and death. Plaintiff claims that the Jeep Wrangler defects are even more dangerously defective, because the upper left front and side portions of the Jeep Wrangler roll cage and windshield catastrophically failed from its grazing impact into the embankment during the rollover.

Defendant describes its Jeep Wrangler as an "open body vehicle" in a label on the driver's side sun visor warning that the Jeep Wrangler can roll over and directing the user to the owner's manual for more specific vehicle handling instructions. The Jeep Wrangler owner's manual contains no cautions or warnings that its roll cage structure is not rollover safe or crashworthy, or that the roll cage is not structurally attached to the Jeep Wrangler frame to keep it in place. The owner's manual provides the user with any operating instructions to protect against the dangers of a rollover accident. A second Jeep Wrangler interior label informs the user that its hard top roof

and doors are only designed to protect occupants from the outside elements.  There is no label or owner's manual caution or warning that the metal tubular roll cage framing, to which the hardtop roof and doors are attached, is not designed to be rollover safe or crashworthy, as it appears to be. Defendant also changed the 1994 Jeep Wrangler owner's manual description of the overhead side tubular framing from "rollbars" to "sports bars", implying to consumers that the Jeep Wrangler side bars provide even more "sports" rugged roll bar protection.  Defendant points to its open-body vehicle description as a means to exempt the Jeep Wrangler from federal and industry minimum roof crush standards.

Defendant's Jeep Wrangler advertising only depicts it configured with the complete roll cage structure assembly, hardtop roof, windshield and doors to market and make the Jeep Wrangler appear to be a very rugged on- and –off road SUV with greater protection and crashworthiness than its competitors.

Plaintiff further claims that Defendant knowing incorporated, and failed to adequately improve, the predecessor Jeep CJ's (civilian jeep) defective roll cage and windshield designs, thus making the Jeep Wrangler defective, not rollover safe or crashworthy.  Defendant markets the Jeep Wrangler as very rollover safe and crashworthy.  Plaintiff claims that Defendant continued to design its Jeep Wrangler to look like it was, and advertise and market it to be, very rollover safe and crashworthy, knowing that it is not, in order for Defendant to keep its Jeep Wrangler

manufacturing costs down, and to increase Defendant's profits and market share dominance in the very competitive sports utility vehicle (SUV) industry. Plaintiff claims that Defendant's financial considerations were and continue to be at the expense of Jeep Wrangler occupant safety, even though Defendant had considered, designed and tested low-cost feasible alternative designs that would have made the Jeep Wrangler rollover safe and crashworthy, and that would have saved Chris Phelan's life during the lower-speed rollover accident sequence.

### B.    DEFENDANT'S STATEMENT

Plaintiff has alleged claims against DaimlerChrysler Corporation under the Connecticut Product Liability Act, C.G.S. 52-572m et seq ("CPLA"). Plaintiff seeks damages for the death of Christopher Phelan, including economic losses, medical and funeral expenses and damages for loss of enjoyment of life. Plaintiff's individual claims under the Connecticut Unfair Trade Practices Act ("CUTPA") were dismissed per the Court's Order of June 28, 2004 (Dkt. # 148). Plaintiff has not alleged punitive damages under the CPLA in this case. Plaintiff's allegations for the purposes of this trial are stated in Count III of plaintiff's Amended Complaint, dated October 12, 2002.

DaimlerChrysler Corporation denies plaintiff's allegations and states the following:

The subject accident was a two-vehicle collision that took place at approximately 9:50 p.m. on January 18, 2000 on Route 2 West in Glastonbury, Connecticut, when a 1987 Ford Taurus operated by Christopher Miller struck the rear-end of a 1994 Jeep Wrangler (YJ) driven by Christopher Phelan. The Jeep was traveling in the right-hand lane of the highway at the time of the collision. Miller stated to witnesses at the scene, including a police officer, two EMTS who attempted to assist him, and two civilian passers-by that he had been drinking before the accident and was intoxicated. These witnesses also testified that they smelled alcohol on Miller at the scene. His blood alcohol content was later determined to be at least twice the legal limit for presumed intoxication.

The Taurus collided with the left rear quarter of the Jeep at a speed in the range of 100 miles per hour. The impact forced the Jeep across a paved breakdown lane on the north side of the highway, where it struck a wire-rope guard-rail located just off the pavement. The vehicle then struck a utility pole located a few inches to the right of the guardrail, traveled down a steep embankment and came to rest on its wheels against several small trees. The Taurus continued to travel westbound after the impact, coming to rest in the westbound passing lane. The Taurus sustained significant front-end damage in the collision. Christopher Miller was sentenced on

January 23, 2001 to seven years in prison on the charges of second degree manslaughter and driving under the influence arising from the accident.

1).   <u>Liability</u>

a.   <u>The Accident</u>

This was a violent, high-speed accident.  The Jeep was traveling approximately 45-55 mph just before the accident, while the Taurus traveling in the range of 100 mph. As the Taurus approached the Wrangler, the driver of the Taurus apparently made a leftward steering maneuver in an effort to avoid a rear-end collision. As a result the right portion of the Taurus' front bumper contacted the left portion of the Jeep's rear bumper.  This resulted in the displacement of the rear bumper, the left rear quarter panel and the rear suspension area, and damaged the rollbar structure, causing forward deformation to the left side of the windshield frame.

The clear imprint of the Jeep's spare tire on the front hood of the Taurus shown in the police photographs indicates that during the collision, the Jeep tilted backward with its tires off of the pavement and its front quarter in the air.  It was then forced toward the north side of the roadway and into a wire rope guardrail system at approximately a 30 degree angle. The Jeep then

became entangled with at least one guardrail cable, as indicated by witness marks on the right front quarter near the tire.

The Jeep was yawing counterclockwise when it struck an aluminum lightpost adjacent to the guardrail system. Shortly after contacting the lightpost, the vehicle began to roll, with the roll tripped by a guardrail cable or cables. The snagging of the guardrail cables on the vehicle caused the lateral forces that tripped the roll. This was a passenger-side leading roll, with the vehicle passing above the guardrail system with its rear end facing north and rolling one to one and three-quarters times before coming to rest. The vehicle continued its passenger-side leading roll, and came to rest against a cluster of trees down an embankment about 25-30 feet from the edge of the pavement.

      b.    <u>Design Issues</u>

As to design issues, the 1994 Wrangler (YJ) is an open-body vehicle, which as plaintiff's design expert has conceded was not required to comply with FMVSS 216. Yet the (YJ) did comply, as reflected in a 216 test that was run by DaimlerChrysler Corporation on a 1995 YJ (which has an identical rollbar structure and windshield frame).

10

The initial impact from the Ford Taurus caused major damage to the entire rollbar structure of the vehicle. The left rear support leg aft section of the rollbar was deformed from a mainly vertical to a mainly horizontal orientation due to a 90 degree bend in the frame member where it attaches. The impact resulted in a forward/inboard displacement of the top left corner of the tranverse crossbar vertical supports (which plaintiff calls the left B-pillar), a bend in the left side bar and a forward displacement of the top corner of the windshield frame left side support (which plaintiff calls the left A-pillar). The capacity of the rollbar structure to sustain crush during subsequent loading events was degraded as a result of the initial collision.

The post-accident condition of the vehicle shows that the rollbar structure -- including the sidebars and windshield frame supports – performed as a combined system to carry the loads that occurred in the accident and shows no evidence of a reduced performance due to a design defect. Risk analyses based on field performance studies is further proof of the safety of this vehicle's design. This was an extremely severe accident of a type that rarely occurs. Moreover, the risk of this type of accident in this vehicle is extremely low.

       c.      <u>Injury Causation</u>

Phelan's head injury was caused by a sharp, foreign body outside of the vehicle. The medical examiner's report noted a very sharp skin laceration accompanying the decedent's fatal head wound. The contact that killed Phelan was of such force that it opened up his skull and exposed his brain. Photographs taken at the accident scene on the night of the accident show blood sprayed over a wide area of ground near the guardrail, within the vehicle, in at least two locations on the vehicle's hardtop including the driver's side rear of the vehicle, and on the guard rail, fractured glass on both sides of a guardrail post, and debris from the vehicle scattered near the same post. Phelan was found in the driver's seat leaning against the driver's side frame. His shoulder belt appears not to have been in the proper position. The driver's seat shows evidence of yielding consistent with a severe rear end impact. This damage probably occurred on the initial impact. It is likely that the driver's window was shattered as a result of the initial impact.

There is no evidence to show that Phelan sustained his head injury as a result of contact with any portion of the vehicle's interior. There was no deformation anywhere in the vehicle's doorframe resulting from the alleged contact. The portion of the door header singled out by plaintiff has rounded and blunt surfaces. A catastrophic injury such as occurred here could not have been caused by interaction with the vehicle's doorframe or any other interior structure of

this vehicle.  The most likely cause of injury was a guardrail post that the vehicle passed over in the course of its roll.

The doorframe did not come in on Phelan's head.  Phelan experienced a severe rear end collision which forced his shoulder out of position in his restraint, and included seat back deformation and occupant ramping.  A surrogate study and roll spit demonstration the defendant conducted for this case demonstrate that Phelan's head could have made contact with the doorframe in the absence of any deformation to the rollbar structure.  The surrogate study further shows that in the specific conditions of this accident, the driver's head could have passed outside the plane of the driver's window, which would have exposed him to a very aggressive guardrail surface.  The increase in the strength of the Jeep's windshield frame proposed by plaintiff would have had no effect on the outcome of this accident.

    d.    <u>Warnings</u>

The combination of the instructions in the owner's manual and on-vehicle labels was more than adequate to warn Phelan of the risks that might arise in operating the vehicle.  The labels on the driver's side sun visor and the inside of the vehicle top at the front of the vehicle between the driver and passenger seats directly address safety issues of this case.  The first states that the Wrangler is an "open body vehicle" and directs the user to the Owner's Manual. The second

states plainly that the top and doors on the vehicle were designed only for protection against the elements. The information in the Owner's Manual and the on-vehicle labels provides clear and specific information about the vehicle's open-body characteristics and the function of the top and doors. It was not possible when the Jeep was manufactured to warn users of the specific circumstances involved in this accident. In any event, no warning label could have prevented the Taurus driven by Christopher Miller from striking Phelan's Jeep and causing the accident.

> e.    Third-Party Claims

DaimlerChrysler Corporation has stated third-party claims against Christopher Miller, Rikki Timbo, Inc., and Maurice Samuelian and Kathleen Samuelian for contribution and/or indemnification. DaimlerChrysler Corporation's claims against Christopher Miller are as follows: The injuries and damages to Christopher Phelan and his estate were caused by the negligence and recklessness of Third-Party Defendant, Christopher Miller, including that:

> (1)    He failed to keep a proper and reasonable lookout for Christopher Phelan's vehicle;
>
> (2)    He failed to keep his vehicle under proper and reasonable control;
>
> (3)    He was operating his vehicle at a rate of speed greater than was reasonable, having due regard for the weather, traffic, road conditions, and the intersection of highways that then and there existed;

(4)    He failed to drive his vehicle a reasonable distance apart from Christopher

Phelan's vehicle;

(5)    He failed to sound his horn or otherwise warn Christopher Phelan of his

impending approach and rear-end collision;

(6)    He failed to turn his vehicle so as to avoid the collision, although by a proper

and reasonable exercise of his faculties he could and should have done so;

(7)    He failed to apply his brakes in time to avoid said collision, although by a

proper and reasonable exercise of his faculties he could and should have

done so;


(8)    He operated his vehicle in such proximity to Christopher Phelan's vehicle as

to obstruct or impede traffic, and more closely than was reasonable and

prudent, having regard to the weather, traffic, road conditions and the

intersection of highways that then and there existed in violation of C.G.S.

§14-240.

(9).    He  intentionally and/or with total reckless disregard of the consequences of

his conduct made no attempt to avoid this rear-end collision.

(10)    He operated his vehicle at such a rate of speed as to endanger the life of
Christopher Phelan, and in a dangerous and reckless manner, having regard
for the width, traffic and use of said highway and exist ramp, in violation of
Section 14-222 of the Connecticut General Statutes;

(11)    He was operating his vehicle at an unreasonable rate of speed, having due
regard for the traffic, weather, width and use of said highway and exist ramp,
in violation of Section 14-218a of the Connecticut General Statutes;

(12)    He was operating his vehicle at a rate of speed in excess of the posted speed
limit in violation of Section 14-218a of the Connecticut General Statutes;

(13)    He failed to decrease the speed of his vehicle and/or steer to another lane on
account of the special hazard of  Christopher Phelan's vehicle in front of him
in violation of Section 14-218a of the Connecticut General Statutes;

(14)    He operated his vehicle at a speed greater than 55 mph on a multiple lane,
limited access highway in violation of Section 14-219 of the Connecticut
General Statutes; and

(15)    He operated his vehicle under the influence of drugs and/or alcohol in
violation of Section 14-227a of the Connecticut General Statutes.

With respect to Rikki Timbo, Inc. and the Samuelians, DaimlerChrysler states that:

    (1)    On January 18, 2000, while Christopher Miller was intoxicated, he was sold alcoholic beverages by Rikki Timbo, Inc., Maurice and Kathleen Samuelian, through its or their agents, servants and/or employees.

    (2).    The injuries and losses complained of in the Plaintiff's Amended Complaint were the direct result of the negligence and/or recklessness of Rikki Timbo,  Inc. and the Samuelians.

B.    <u>Damages</u>

The defendant disputes the testimony of plaintiff's economist regarding Christopher Phelan's pre-injury earning capacity and the resulting calculation of lost wages, and notes that the methodology used by plaintiffs' economist to provide estimates of the decedent's lost wages is speculative and unreliable, as it is based upon unrealistic assumptions regarding the decedent's future employment prospects.  Plaintiff has offered no proof to date regarding decedent's alleged lost enjoyment of life damages.

**7.    <u>TRIAL BY MAGISTRATE JUDGE:</u>**

The parties have not agreed to a trial by a Magistrate Judge.

8.   **LIST OF WITNESSES AND EXHIBITS:**

   A.   **WITNESSES**

      1.   **Plaintiff's List of Witnesses – See Appendix 8.A-1**

      2.   **Defendant's List of Witnesses – See Appendix 8.A-2**

   B.   **EXHIBITS**

      1.   **Plaintiff's List of Exhibits – See Appendix 8.B-1**

      2.   **Defendant's List of Exhibits – See Appendix 8.B-2**

9.   **STIPULATIONS AND PROPOSED**
   **FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

      A. 1.   **Stipulated Facts and Law**

         a.   **Stipulated Facts**

            (i)   The plaintiff is Angela Phelan, Administratrix of the Estate of Christopher Phelan;

            (ii)   Plaintiff is a resident of Connecticut;

            (iii)   The defendant is DaimlerChrysler Corporation.

            (iv)   DaimlerChrysler Corporation is a Delaware corporation with a place of business in the State of Michigan; and

            (v)   The subject vehicle in this case is a 1994 Jeep Wrangler (YJ).

**b.** **Plaintiff's Proposed Additional Stipulated Facts**

(i)  The plaintiff is Angela Phelan, Administratrix of the Estate of Christopher Phelan;

(ii)  Plaintiff is a resident of Connecticut;

(iii)  The defendant is DaimlerChrysler Corporation.

(iv)  DaimlerChrysler Corporation is a Delaware corporation with a place of business in the State of Michigan; and

(v)  The subject vehicle in this case is a 1994 Jeep Wrangler (YJ).

**c.** **Plaintiff's Proposed Stipulated Conclusions of Law**

(i)  Plaintiff's claims and recoverable damages are governed by The Connecticut Product Liability Act, C.C.S. § 52-572m, et. seq.

(ii)  Christopher Miller was negligent and reckless in his operation of the Ford Taurus; and

(iii)  Christopher Miller's negligence and recklessness caused the rear-end collision with Chris Phelan's 1994 Jeep Wrangler.

**A. 2.** **Parties' Statement of Contested Facts and Conclusions Of Law**

**a.** **Contested facts**

The parties contest all other facts that they did not stipulate as uncontested.

**b.** **Contested law**

See the parties' objections to proposed jury instructions in Appendices 10.A-1 and 10.A-2.

**B.**     **TRIAL TO JURY**

    **1.**     **Proposed Voir Dire Questions**

        **a.**  Plaintiff's voir dire questions – See Appendix 9.B-1a

        **b.**  Defendant's voir dire questions – See Appendix 9.B-1b

    **2.**     **Proposed Jury Instructions**

        **a.**  Plaintiff's jury instructions – See Appendix 9.B-2a

        **b.**  Defendant's jury instructions – See Appendix 9.B-2b

    **3.**     **Proposed Verdict Form**

        **a.**  Plaintiff's jury verdict form – See Appendix 9.B-3a

        **b.**  Defendant's jury verdict form – See Appendix 9.B-3b

**10.**     **OBJECTIONS:**

**A.**     **JURY INSTRUCTIONS**

    **1.**     **Plaintiff's Objections to Defendant's Jury Instructions –
See Appendix 10.A-1**

    **2.**     **Defendant's Objections to Defendant's Jury Instructions –
See Appendix 10.A-2**

Defendant's motion *in limine* are being filed under separate cover, and are incorporated herein.

Respectfully submitted,

PLAINTIFF

By_____

    Steven E. Arnold, Esq., ct07966
    sea@SAlaw.us
    Peter M. Van Dyke, Esq., ct24747
    pvd@SAlaw.us
    James H. Halpin, Jr., Esq., ct25357
    jhh@SAlaw.us.
    Stanger & Arnold, LLP
    29 South Main Street
    West Hartford, CT 06107
    Tel. (860) 561-0650
    Fax (860) 561-0646
    Her Attorneys

DEFENDANT

By_____

    Peter M. Durney, Esq., ct 14569
    PDurney@CornellGollub.com
    James P. Kerr, Esq., ct 24142
    JKerr@CornellGollub.com
    Cornell & Gollub
    75 Federal Street
    Boston, MA 02110
    Tel.(617) 482-8100
    Fax: (617) 482-3917
    Its Attorneys

21

## CERTIFICATION

I hereby certify that a copy of the foregoing was hand delivered on November 1, 2004 to:

Peter M. Durney, Esq.
Marie E. Chafe, Esq.
James P. Kerr, Esq.
Cornell & Gollub
75 Federal Street
Boston, MA 02110
(For All Defense Counsel)

and a copy was mailed on November 1, 2004 to:

The Honorable Janet Bond Arterton
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510

The Honorable Joan Glazer Margolis
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510

Peter M. Van Dyke