UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANGELA PHELAN, ADMINISTRATRIX OF THE ESTATE OF CHRIS PHELAN | : | CIVIL NO. 3:02 CV 1219 (JBA) |
| | : | |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| DAIMLERCHRYSLER CORPORATION | : | NOVEMBER 1, 2004 |
| | : | |
| Defendant | : | |

## JOINT TRIAL MEMORANDUM – APPENDIX 9.B-1a

## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

Plaintiff assumes that the Court will make inquiry of the basic biographical information of each prospective juror, including marital status, employment of the juror, spouse and family members, prior jury service, and prior litigation experience. Plaintiff respectfully requests that the Court further inquire of the prospective jurors as follows:

1.    Have you, any relative, or friend ever been employed by or associated with Defendant, DaimlerChrysler Corporation, or any of its predecessor companies or subsidiaries, including Chrysler Corporation, American Motors Corporation, and Kaiser.   If so, please describe.

1

2.      Have you, any relative, or friend ever owned stock or had a financial interest in Defendant, DaimlerChrysler Corporation, or any of its predecessor companies or subsidiaries, including Chrysler Corporation, American Motors Corporation, and Kaiser? If so, please describe.

3.      Have you, any relative, or friend ever owned stock or had a financial interest in any company that manufactures motor vehicle or sport utility vehicles, or that manufactures component parts for motor vehicles or sport utility vehicles? If so, please describe.

4.      Have you, any relative, or friend ever been employed by a company that sold or leased motor vehicles or sport utility vehicles? If so, please describe.

5.      Do you, any relative, or friend have any automotive maintenance or repair, technical, mechanical or engineering background? If yes, please explain.

6.      Do you, any relative, or friend have any familiarity with Jeep CJs, Jeep Wranglers or other sport utility vehicles? If yes, please explain.

7.      Have you, any relative, or friend ever owned, operated or occupied a Jeep CJ, Jeep Wrangler or any other sport utility vehicle? If yes, please explain.

8.      Do you have any general opinions about Jeep CJs, Jeep Wranglers, or other sport utility vehicles that would affect your decision in this case? If yes, please explain.

9.      Do you have any general opinions about Jeep CJ, Jeep Wrangler, or other sport

utility vehicle owners or operators that would affect your decision in this case? If yes, please explain.

10. Do you have any general opinions about motor vehicle or sport utility vehicle manufacturers that would affect your decision in this case? If yes, please explain.

11. Is there anyone who does not drive a motor vehicle?

12. Do you believe that a manufacturer should be accountable for designing or manufacturing a defective or unsafe product which causes injury?

13. Do you believe that a manufacturer should be accountable for providing inadequate warnings and instructions concerning the safe use and operation of its product?

14. Is there any reason why you would not hold a manufacturer accountable for an unsafe or defective product? If yes, please explain.

15. Do you believe that a manufacturer should be accountable for its representations about the safe use and operation of its product?

16. Do you believe that a motor vehicle or sport utility vehicle should be reasonably safe and fit to operate for the particular and foreseeable purposes for which it was designed and manufactured?

17. Do you believe that owners and occupants of a sports utility vehicle have a right to expect that it will safely operate in accordance with the manufacturer's representations?

3

18.     Do you believe that a manufacturer should fairly and adequately warn potential owners and users of the known and foreseeable risks, dangers and hazards of its product?

19.     Would you be able to find a manufacturer liable for damages for designing or manufacturing a defective or unsafe product which causes injury?

20.     Would you be able to find a manufacturer liable for damages caused by its failure to fairly and adequately warn potential owners and users of the known and foreseeable risks, dangers and hazards of its product?

21.     Do you have any general opinions about persons who bring lawsuits seeking damages based upon death or personal injury? If yes, please explain.

22.     Do you have any general opinions about lawyers who represent them? If yes, please explain.

23.     Do you believe that a person or his estate should be entitled to fair and just compensation for death and personal injuries suffered as a result of a defective or unsafe product?

24.     Do you have any beliefs that would limit the amount of compensation that you would award for wrongful death, or for pain and suffering, despite the evidence and the law? If yes, please explain.

25.     If you find the evidence weighs in favor of Plaintiff, is there any reason why you would not return a sum of money that would fairly and justly compensate Plaintiff for her

decedent's death?  If yes, please explain.

26.     Is there any reason why you could not follow this Court's instructions of law and render a verdict based solely upon what you believe to be the credible evidence? If yes, please explain.

27.     Is there any reason whatsoever why you could not render a fair and impartial decision in this case? If yes, please explain.

Plaintiffs respectfully request an opportunity to suggest additional follow-up questions to the Court depending upon the prospective juror's responses to the above.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE JEEP WRANGLER CLASS ACTION | : | CIVIL NO. 3:02 CV 1219 (JBA) |
| | : | |
| ANGELA PHELAN, ADMINISTRATRIX OF | : | |
| THE ESTATE OF CHRIS PHELAN, | : | |
| CLASS MEMBER, AND INDIVIDUALLY | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| VS. | : | |
| | : | |
| DAIMLERCHRYSLER CORPORATION | : | NOVEMBER 1, 2004 |
| | : | |
| Defendant | : | |

**JOINT TRIAL MEMORANDUM – APPENDIX 9.B-1b**

**DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS**

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratrix of | ) | |
| the Estate of Christopher Phelan, | ) | |
| Class Member, and Individually | ) | |
| | ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DaimlerChrysler Corporation | ) | November 1, 2004 |
| | ) | |
| Defendant | ) | |

## DEFENDANT DAIMLERCHRYSLER CORPORATION'S
## PRELIMINARY REQUESTED *VOIR DIRE*

The defendant, DaimlerChrysler Corporation, submits this Preliminary Requested *Voir Dire.*

1.     Do you think you can treat a corporation with the same fairness and consideration as an individual person?

2.     Are you or anyone close to you familiar with Angela Phelan, Christopher Phelan, or any of their relatives?

3.     Are you or anyone close to you familiar with Christopher Miller or any of his relatives?

4.     Have you read or heard anything about this case prior to today?

5.     Have you ever received education or job training in law, engineering, economics, vehicle design or testing, medicine, accident investigation or psychology?

6.     Have you or a family member or close friend ever suffered significant injury in a motor vehicle accident? If so, please describe the type of accident, vehicle and injuries.

7.     Have you or a family member or close friend ever owned a Jeep product?

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANGELA PHELAN, ADMINISTRATRIX OF | : | CIVIL NO. 3:02 CV 1219 (JBA) |
| THE ESTATE OF CHRIS PHELAN | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| DAIMLERCHRYSLER CORPORATION | : | NOVEMBER 1, 2004 |
| | : | |
| Defendant | : | |

## JOINT TRIAL MEMORANDUM – APPENDIX 9.B-2a

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

## 1.    PRODUCT LIABILITY

This is an automobile product liability case seeking compensatory and punitive damages

brought by Angela Phelan for her son Chris Phelan's injuries and death in his 1994 Jeep Wrangler

that was involved in a highway rear-end rollover accident.  Plaintiff alleges that Defendant is

liable for Chris Phelan's death because Defendant's 1994 Jeep Wrangler that Chris Phelan bought

and was driving has latent defects that are unreasonably dangerous to its owners and occupants, in

that the 1994 Jeep Wrangler design does not provide adequate rollover safety protection, is not

rollover safe or crashworthy, and that the Jeep Wrangler defects caused or contributed to Chris

Phelan's rollover injuries and death.  Plaintiff also alleges that Defendant knew that its 1994 Jeep Wrangler was not rollover safe or crashworthy, but that Defendant nonetheless designed, marketed and advertised the 1994 Jeep Wrangler to look like it is very rollover safe and crashworthy, which it is not, and without any adequate product defect warnings, because of Defendant's cost, profit and SUV market share considerations, over product safety.  Plaintiff pleads 3 product liability theories against Defendant, only 1 of which Plaintiff must prove: (a) Strict Product Liability; (b) Negligence; and (c) Breach of Warranty.

###### A.     Strict Product Liability

Under Connecticut law, Defendant is liable to Jeep Wrangler owners and occupants for injuries caused by its Jeep Wrangler, even though Defendant has exercised all possible care in the design, manufacture and sale of the Jeep Wrangler.  The doctrine of strict product liability is concerned with the character of the product sold and not with Defendant's specific conduct.  The rationale behind the rule of strict product liability is that Defendant, by marketing its Jeep Wrangler for use, has assumed a responsibility to members of the public who may be injured by the Jeep Wrangler.  The reasoning is that purchasers and users of a product have the right to rely on the fact that reputable sellers will stand behind their goods.

Giglio v. Connecticut Light & Power Co.,, 180 Conn. 230, 234 (1980); Restatement (Second) of Torts SS 402, 402A.

### 1.    Elements

In order to recover under the theory of strict product liability Plaintiff must establish the following five elements by a fair preponderance of the evidence:

(1)     that Defendant engaged in the business of selling the product;

(2)     that the product was in a defective condition unreasonably dangerous to the user;

(3)     that the defect caused the injury for which compensation is sought;

(4)     that the defect existed at the time of the sale; and

(5)     that the product was expected to and did reach Plaintiff without a substantial change in condition.

Douglas B. Wright and William L. Ackerman, Connecticut Jury Instructions, (Civil), Section 511, (4th Ed. 1993).

Defendant has admitted that it is a product seller engaged in the business of selling the product.

### 2.    No Substantial Change In Condition When Sold

Plaintiff must also prove that whatever defects existed, they existed at the time of original sale, and that the product reached Chris Phelan without a substantial change in that condition. There does not appear to be an issue in this case that Chris Phelan's 1994 Jeep Wrangler reached him in substantially the same condition in which it was manufactured and sold.  Therefore, if you

believe that Chris Phelan's Jeep Wrangler was defective in design, manufacture, and/or adequate warnings, these fourth and fifth elements should be considered proven in this case.

### 3.    Unreasonably Dangerous Product

A product is in a defective condition if it leaves the seller's hands in a condition that will be unreasonably dangerous to the ultimate consumer or user.  Accordingly, a product may be defective even though it was manufactured in the way it was intended to be manufactured, and even though it was perfectly made according to the manufacturer's own standards, or industry standards, and tolerances, as long as the product is unreasonably dangerous when used for its intended and foreseeable purposes.

Giglio, 180 Conn. at 234-6.

A product is unreasonably dangerous if it is more dangerous than would be contemplated by the ordinary user.  It is for you to draw your own conclusions as to the reasonable expectations of an ordinary user of Defendant's 1994 Jeep Wrangler, and as to the knowledge common in the community at large regarding Defendant's Jeep Wrangler.  It is the unreasonably dangerous condition of the product that makes the product defective, not whether the manufacturer or supplier knew that the product was unreasonably dangerous.  Therefore, Plaintiff does not need to show that Defendant knew that the product was defective.

Giglio, 180 Conn. at 234-6; Spoto v. Hayword Manufacturing Co., 2 Conn. App. 663 (1984);

Restatement (Second) of Torts S 402A; C.G.S. § 52-572m(a).

### 4.     Crashworthiness

Connecticut law imposes upon automobile manufacturers a duty to design crashworthy

vehicles.  An automobile is not crashworthy, and therefore defective, if the automobile's design

subjects the user to an unreasonable risk of enhanced injury in the event of a collision.  Chris

Phelan's 1994 Jeep Wrangler was not crashworthy if (1) there existed at the time of the accident

an alternative, safe or practicable design; (2) Chris Phelan would have sustained less severe

injuries had the alternative design been used; and (3) Chris Phelan sustained enhanced injuries

because of his 1994 Jeep Wrangler design defects.

James H. Rotundo and Paul D. Williams, Connecticut Product Liability Law, pp. 47-48 (1998);

### 5.     Failure To Warn

A product may be defective because a manufacturer failed to provide adequate warnings

of the product's hazards and dangers.  To prevent a product from being unreasonably dangerous,

Defendant has a duty to give adequate instructions or warnings as to its use and potential hazards.

This duty extends to dangers arising from improper design or negligence in manufacturing.  In

other words, a product can be unreasonably dangerous, and thus defective, for the sole reason that

the defendant failed to provide adequate warnings.  It does not matter that a manufacturer knew of

the danger created by its product; it does not matter whether the seller was sincere or careful.  If a product is unreasonably dangerous, adequate warnings must be given, otherwise the product is defective, and the manufacturer is liable for the harm caused by its product.

The duty to warn is ongoing and extends beyond the date of original sale of the product. If the danger becomes known to or discoverable by the seller after the product is sold, the manufacturer has a duty to warn all users who are or may be exposed to the danger.  Warnings must be timely, as well as adequate, and must specifically identify for the user the risk associated with the use of the product.  The warning must take into account the user's ability to understand; technical language or instructions suitable for a technician or expert are not sufficient.  The language in the warning must be appropriate for the average user or consumer to understand.

A product seller's warnings or instructions are not adequate unless they are designed to communicate with the person best able to take precautions against the potential harm.  In other words, any warnings must be given to the person that operates or occupies the Jeep Wrangler in this case.  Defendant's warnings must identify the specific dangers in the use of the product in non-technical terms that can be understood by the ordinary user.

Giglio, 180 Conn. at 235-7; Tomer v. American Home Products Corp., 170 Conn. 681, 689 (1976); Prokolkin v. General Motors Corp., 170 Conn. 289 (1976); Ames v. Sears, Roebuck &

Co., 8 Conn.App. 642, 645-46 (1986); Feldman v. Lederle Laboratories, 479 A.2d 374, 387 (1984); C.C.S. § 52-572q.

**B.    Negligence**

In addition to the strict product liability and failure to warn claims, Plaintiff claims damages for Defendant's negligence. Negligence is doing something which a reasonably prudent person would not do, or not doing something which a reasonably prudent person would do, under the circumstances.  Defendant has the duty to use reasonable care in the design, manufacture and warnings about its product. Reasonable care is that care a reasonably prudent person would use under the circumstances.  Reasonable care must be exercised by all parties based on an external or objective standard of a reasonable person, not the care a particular person may use.

Plaintiff needs to prove only 1 of the allegations of negligence to prove her case against Defendant and recover damages. Plaintiff alleges that Defendant negligently caused or substantially contributed to this fatal accident, in that:

(1)    It failed to warn Chris Phelan that the Jeep Wrangler overhead and side tubular framing were not roll bars and did not provide any rollover protection to its occupants;

(2)    It failed to warn Chris Phelan that the Jeep Wrangler hardtop roof, doors and door framing only protected its occupants from the

7

outside elements and did not provide any rollover or roof-crush safety protection;

(3)    Defendant misnames, misspells and misidentifies the Jeep Wrangler overhead and side bar component parts as "rollbars", when these components are not real roll bars;

(4)    Defendant designs and manufactures the Jeep Wrangler "rollbars" to attach to the vehicle at points where there is no structural attachment support to keep the "rollbars" in place during a rollover accident;

(5)    Defendant designs and manufactures its Jeep Wrangler with a "hardtop" roof that has no adequate steel or other structural underlain or support to protect Jeep Wrangler occupants from roof-crush injuries from a rollover accident; and/or

(6)    Defendant provides only minimal warning decals that inadequately warn about the dangers and rollover propensity of the Jeep Wrangler, and that the Jeep Wrangler doors and "hardtop" roof only provide occupants protection from the outside elements.

The law imposes upon manufacturers such as Defendant the duty to make such tests, inspections and warnings as are reasonably necessary to produce and sell a safe product, and a breach of this duty constitutes negligence. Plaintiff needs to prove only 1 of the allegations of negligence in order to meet Plaintiff's negligence burden of proof.

Ciriello v. Mangini, Waterbury J.D., No. CV 91-0101650 (October 27, 1995); Lindsay v. Ortho Pharmaceutical, 637 F.2d 87 (2d Cir. 1980); Schenck v. Pelkey, 176 Conn. 245, 405 A. 2nd 665 (1978); Borel v. Fibreboard Paper Products Corp., supra, 493 F.2d at 1089-90 (5th Cir. 1969); International Harvester Co. v. Sharoff, 202 F.2d 52, 54 (10th Cir. 1953).

**C.    Breach Of Warranty**

Plaintiff also seeks damages for Defendant's breach of warranty.  Specifically, Plaintiff claims that Defendant impliedly warranted that Chris Phelan's 1994 Jeep Wrangler was merchantable and fit for its ordinary purpose and safe for its intended or expected use, as well as that it was fit for a particular purpose. Plaintiff claims that Defendant breached this implied warranty of merchantability and fitness for a particular purpose, and Defendant's breach of warranty caused or contributed to Chris Phelan's rollover injuries and death.

Plaintiff must prove by a preponderance of the evidence:

1.    That Defendant is a merchant;

2.    That Defendant sold the product;

3.    That the product has a warranty;

4.    That the product sold is "merchantable";

5.    That there was an injury or damage; and

6.    That the injury or damage was caused or substantially caused by Defendant's breach of warranty.

Plaintiffs must prove that there is a product warranty to establish a product liability claim for breach of warranty. Because Defendant offered the product for sale to the public, Defendant gave a warranty that the 1994 Jeep Wrangler is reasonably fit for its intended or expected purposes. Under the implied warranty of merchantability, the seller stands behind the quality and fitness of his product, and he will be responsible for damages that occur if the product fails to measure up to the qualities that it impliedly is represented to have. The implied warranties of merchantability or fitness for a particular purpose exist independently from the parties' sales agreement, and are created by law because of the public policy to promote fair dealings between sellers and buyers.

Chamberlain v. Bob Matick Chevrolet, Inc., 4 Conn. Cir. 685, 239 A.2d 42 (1967); Kimble & Lesher, Products Liability, 22, 26 (1979); 63 Am. Jur. 2d (1984).

"Merchant" means a person who deals in goods of the kind, or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practice or goods involved in that transaction. C.G.S. §42a-l-104. It is uncontested that Defendant is a merchant, and that Defendant sold the 1994 Jeep Wrangler in this case to a member of the public. Therefore, Plaintiff has established the element of a sale in this case to prove her breach of warranty theory.

"Merchantable" means that the goods sold are fit for the ordinary, intended or expected

10

purposes for which the goods are purchased.  Alee, <u>Products Liability</u>, §5.01 (1984).
If you find that when Defendant sold the 1994 Jeep Wrangler in this case, it was not
merchantable, not safe for its intended or expected purposes, then Defendant breached its
warranty of merchantability and/or fitness for a particular purpose.

**2.     CAUSATION/COMPARATIVE RESPONSIBILITY**

Plaintiff must prove that the product defects caused or contributed to Chris Phelan's
rollover injuries and death.  Plaintiff must show that there is a sufficient relationship between the
Defendant's action or failure to act, for example its making or selling a defective product or its
failure to warn of the product risks, and the injury and damages that occurred.

If what Defendant did or didn't do by its acts or omissions contributed to Chris Phelan's
rollover injuries or death, either directly or in a way reasonably foreseeable that Chris Phelan's
rollover injuries and death would result, then Defendant's conduct was a substantial factor in
causing Chris Phelan's damages.  There may be more than 1 cause of an injury.  Many factors
may operate at the same time, either independently or together, to cause an injury.  Furthermore, a
particular cause need not be the most significant cause.  You only need to determine whether it is
more probable than not that Defendant, in exposing Plaintiff to a defective automobile, caused or
contributed to Chris Phelan's rollover injuries and death in this case.

If Defendant's defective product was a substantial factor in causing foreseeable harm of a general nature, even though you may determine that Defendant's product defect may only contribute 1% of all the factors that combined to cause Chris Phelan's rollover injuries and death, then the manufacturer or seller of that product is liable, no matter how many other factors contributed to the resulting injury.

Wasfi v. Chaddha, 218 Conn. 200, 216-7 (1991); Kiniry v. Danbury Hospital, 183 Conn. 448, 455-6 n.2 (1981); Mehri v. Becker, 164 Conn. 516, 521 (1973).

You are not to concern yourself with what rights Plaintiff may have against other persons who may also have contributed to causing the Chris Phelan's rollover injuries and death.  You also must not concern yourself with what rights or claims Defendant may have against some other party(ies) who also may have contributed to causing the Plaintiff's injuries and death.  This is not your responsibility.

2 Douglas B. Wright, William L. Ankerman, Connecticut Jury Instructions (Civil), Section 511 (4th Ed. 1993).

## 7.    DAMAGES

### A.    Compensatory/General Damages

Plaintiff is entitled to recover full compensation for all damages that Defendant's conduct caused or contributed to causing.  The rule is that, insofar as money can do it, Plaintiff is entitled to receive fair and just compensation for Chris Phelan's injuries, pain, suffering and death,

including the reasonable and necessary expenses incurred for Chris Phelan's medical and funeral expenses. It is for you, in the exercise of your best judgment, to determine what is fair and just compensation in this particular case. There is no fixed rule or formula for you to apply. It is a matter of sound common sense in arriving at the amount of any verdict.

1 Douglas B. Wright, William L. Ankerman, Connecticut Jury Instructions (Civil), Section 226 (4th Ed. 1993).

### B.    Death Damages

If you find that Defendant is liable to pay damages for causing Chris Phelan's rollover injuries, you are to determine what "just damages" Defendant should pay Plaintiff. Just damages include economic damages of: (1) Chris Phelan's medical and funeral expenses; (2) the value of his lost earning capacity; and Chris Phelan's non-economic damages of: (3) his pain, suffering and fear of death from his rollover injuries and impending death; (4) compensation for causing Chris Phelan's death itself; and (5) the destruction of Chris Phelan's capacity to carry on and enjoy his life's activities. Our rule for assessing damages in death cases has no precise mathematical formulas for you to apply. No life is like any other, and the damages for the destruction of one life furnish no fixed standard for the destruction of another's life.

Katsetos v. Nolan, et al., 170 Conn. 637, 655 (1976); Floyd v. Fruit Industries, Inc., 144 Conn. 659, 669 (1957); Feldman v. Allegheny Airlines, Inc., 524 F2d, 384 (2d Cir. 1975).

Although no sympathy for any party shall play a role in your determinations, that does not mean that you should ignore your own knowledge, experience and feelings. It is important that you realize this because you are asked to evaluate the importance of Chris Phelan's life's experiences, and the reasonable expectations that Chris Phelan would and should have had for his life. Therefore, you should determine the value to be placed on such things such as family, marriage, education, work, sports, recreation, and the many other aspects of Chris Phelan's life of which he was deprived.

Howe v. Raymond, 74 Conn. 68, 72 (1901); Waldron v. Raccio, 166 Conn. 608, 618 (1974); Katsetos v. Nolan, et al., 170 Conn. 637, 658-59 (1976).

### 1.    Loss Of Earning Capacity

You must decide for what period of time you consider Chris Phelan might fairly be expected to live. Statistics from experience over a great many years show that men of a certain age will, on the average, live for a certain period of years. That average is expressed in life expectancy/mortality tables, which indicate that Chris Phelan's life expectancy, if he had not been killed in this accident, was 46.85 years. However, Chris Phelan may not have lived for that length of time, or he might have lived longer than his estimated life expectancy, but for this accident. His life expectancy as shown on the mortality tables, however, is only one element which you must consider. In addition, you should consider the evidence concerning Chris

14

Phelan's health and physical condition, any individual strengths or weaknesses, any physical impairment he may have had, and any other evidence having a bearing upon his probable length of life, but for this accident. This measure of damages is not merely the loss of Chris Phelan's future wages, it is the total loss of his earning power during the life he would have had but for this accident.

Hayes v. Morris & Co., 98 Conn. 603, 606 (1923); Federman v. Stamford, 118 Conn. 427, 430, 431 (1934); 22 Am. Jur. 2d Damages '185 Note, 18 ALR 3rd 97; 1 Douglas B. Wright, William L. Ankerman, Connecticut Jury Instructions (Civil), Section 230 (4th Ed. 1993).

## 2.     Destruction Of Capacity To Enjoy Life's Activities

Plaintiff also is entitled to recover as damages an award of an amount based on the impairment of the person's capacity to carry on and enjoy one's life's activities. You have heard testimony that Chris Phelan enjoyed various activities which he cannot participate in or enjoy now or in the future because of his death. You can consider and award damages on account of the activities that Chris Phelan no longer can do, to the extent that Defendant's product defect, negligence or breach of warranty caused or contributed to Chris Phelan's rollover injuries and death.

Bartholomew v. Schweizer, 217 Conn. 671 (1991).

## 3.     Pain And Suffering

Plaintiff is also entitled to recover for Chris Phelan's pain, suffering and fear for his

impending death from his rollover injuries that Chris Phelan would have recovered had he lived. The basis for the amount of these damages is what you, in your sound judgment, may find would fairly compensate Chris Phelan for his pain, suffering and fear for his impending death, as far as money would compensate him.

### C.    Punitive Damages

In addition to the awarding Plaintiff compensatory damages, which are designed to compensate Plaintiff for Chris Phelan's injuries and damages, Plaintiff claims additional damages which are called punitive damages.  To recover punitive damages, Plaintiff must prove more than that Defendant's conduct makes it liable for Plaintiff's product liability damages.  Plaintiff must prove that Defendant's wrongful conduct was willful, wanton, or malicious, and/or that Defendant was acting in reckless disregard of the rights and safety of others. Even though a Defendant has no actual intention to cause harm, it may nevertheless be liable for punitive damages, if a Defendant acts with a reckless indifference to the rights or safety of others. Markey v. Sanangelo, 195 Conn. 76, 78 (1985); Bordonaro v. Senk, 109 Conn. 428, 431 (19290; Dubay v. Irish, 207 Conn. 518 (1988); C.G.S. §52-240b; Devitt v. Mamulik, 176 Conn. 657, 663 (1979); United Aircraft Corp. v. Intl Assn. Of Machinists, 161 Conn. 79, 106 (1971); Lentine v. McAvoy, 105 Conn.528 (1927); Collens v. New Canaan Water Co., 155 Conn. 477, 489-90 (1967); Wright and Daly, Connecticut Jury Instructions, Vol. 1, 3d ed., §256 at 460 (1981);

Wright & FitzGerald, <u>Connecticut Law of Torts</u>, §174, 2d ed. (1982).