UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANGELA PHELAN, ADMINISTRATRIX OF | : | CIVIL NO. 3:02 CV 1219 (JBA) |
| THE ESTATE OF CHRIS PHELAN | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| DAIMLERCHRYSLER CORPORATION | : | NOVEMBER 1, 2004 |
| | : | |
| Defendant | : | |

**JOINT TRIAL MEMORANDUM – APPENDIX 9.B-2b**

**DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Jeep Wrangler Class Action | ) | |
| | ) | |
| Angela Phelan, Administratrix of | ) | |
| the Estate of Christopher Phelan, | ) | |
| Class Member, and Individually | ) | |
| | ) | Civil No. 3:02 CV 1219 JBA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DaimlerChrysler Corporation | ) | November 1, 2004 |
| | ) | |
| Defendant | ) | |

## DEFENDANT DAIMLERCHRYSLER CORPORATION'S
## PRELIMINARY REQUESTS FOR JURY INSTRUCTIONS

Defendants DaimlerChrysler Corporation respectfully submits its Defendants'

Preliminary Request for Jury Instructions.

Respectfully submitted,
DAIMLERCHRYSLER CORPORATION

By: _____
James P. Kerr (Fed. Bar ID# CT24142)
jkerr@cornellgollub.com
Peter M. Durney (Fed. Bar ID# CT14569)
pdurney@cornellgollub.com
CORNELL & GOLLUB

75 Federal Street
Boston, Massachusetts 02110
(617) 482-8100
(617) 482-3917 (facsimile)

## REQUEST NO. 1

### BURDEN OF PROOF

The plaintiff, Angela Phelan, as Administratrix of the Estates of Christopher Phelan, has made certain allegations with respect to the issues of liability and damages which are in controversy in this case. The mere fact that a plaintiff is here in court with claims for damages against the Defendant does not, in and of itself, prove the truth of her allegations; nor does it necessarily follow that her claims have merit. The law provides, and I instruct you, that the burden of proving these controverted claims rests upon the plaintiff. The Defendant is not required to disprove the plaintiff's claims. Rather, the plaintiff is required to prove them. The law further requires that the plaintiff must bear the burden of proving each essential element of her case by a fair "preponderance of the evidence." This burden of proof means that in support of her claims, the plaintiff must produce evidence that is weightier in your opinion than the Defendants'. If the evidence on any claim advanced by the plaintiff appears to you to be evenly balanced, the plaintiff will have failed to meet her burden of proof on that claim and cannot prevail on it. If you find that any of the elements of plaintiff's case have not been proven by a fair preponderance of the evidence, you must return a verdict for the Defendants.

**Tianti v. William Raveis Real Estate, Inc., 231 Conn. 690, 702 (1995); Holmes v. Holmes, 32 Conn. App. 317, 318, cert. denied, 228 Conn. 902 (1993); Gulycz v. Stop & Shop Cos., Inc., 29 Conn. App. 519, 523 (1992), cert. denied, 224 Conn. 923 (1992); State of Connecticut Judicial Branch, Civil Jury Instructions § 1-34.**

## REQUEST NO. 2

## BURDEN OF PROOF

To be entitled to damages, plaintiff must establish, by a preponderance of the evidence, a causal relation between an alleged defect in the 1994 Jeep Wrangler (YJ), rendering the vehicle unreasonably dangerous, and the accident and the injuries the decedent allegedly sustained. This causal connection must rest upon more than surmise, guess, conjecture, and speculation.

**Doe v. Manheimer, 212 Conn. 748, 757 (1989); 2 Restatement (Second) Torts § 430 (1965).**

## REQUEST NO. 3

## LAW OF PRODUCT LIABILITY

In this case, the plaintiff has made a claim under the Connecticut Product Liability Act against Defendants DaimlerChrysler Corporation based on allegations that Christopher Phelan's 1994 Jeep Wrangler (YJ) was in a defective condition and was unreasonably dangerous.

To prove a claim under the Connecticut Product Liability Act, the plaintiff must prove that the Jeep Wrangler (YJ) was defective and unreasonably dangerous at the time that it left the Defendant's control. To be found unreasonably dangerous, an alleged defect must be present to an extent beyond that which would be contemplated by the ordinary consumer. A product is not defective or unreasonably dangerous merely because it is possible that an individual may be injured while using it.

**Conn. Gen. Stat. § 52-572m; 2 Douglass B. Wright and William L. Ankerman, Connecticut Jury Instructions (Civil) § 511 (4th ed. 1993).**

The elements of a product liability claim, each of which the plaintiff must establish by a fair preponderance of the evidence include:

1.    That the Defendant engaged in the business of selling the product. This element is not in dispute in this case.

- 5 -

2.    That the 1994 Jeep Wrangler (YJ) involved in this accident was in a defective condition unreasonably dangerous to the consumer or user;

3.    That the alleged defect was the cause in fact of the decedent's alleged injuries.

4.    That the alleged defective condition existed in the subject vehicle at the time of its lease to them; and

5.    That the 1994 Jeep Wrangler (YJ) was expected to and did reach the decedent without substantial change in the condition in which it was sold.

**Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 214 (1997); Giglio v. Connecticut Light & Power Co., 180 Conn. 230, 234 (1980).**

In order to prove that the product was defective, the plaintiff must prove that the condition that is claimed to be a defect made the product unreasonably dangerous. A product is unreasonably dangerous if, at the time of sale, it is defective to an extent beyond that which would be contemplated by the ordinary consumer. The relevant factors to be considered include:

-    the likelihood and severity of the danger posed by the design

-    the feasibility of an alternative design

-    the financial cost of an improved design

-    the ability to reduce the product's danger without impairing its usefulness or making it too expensive

-    the feasibility of spreading the loss by increasing the product's price.

The manufacturer is not required to guarantee that its product is incapable of doing harm. Therefore, the mere happening of an injury does not create legal responsibility on the part of a manufacturer. The law does not require the manufacturer to produce a product which is accident free or foolproof. A manufacturer's duty is to produce a product that is reasonably safe. **Potter v. Chicago Pneumatic Tool Co., 241 Conn. 212, 220 (1997).**

As the final element, the plaintiff must prove that the vehicle was expected to reach Christopher Phelan without substantial change in condition, and that the product in fact reached Christopher Phelan without substantial modification.
**Conn. Gen. Stat. §52-572p.**

If you find that each of these essential elements of the plaintiff's claims have been established by a fair preponderance of the evidence, then the Defendant may be liable for the decedent's alleged injuries. If, however, you find that any one of these elements has not been established, then you must end your deliberations and render a verdict in favor of the Defendant DaimlerChrysler Corporation

## REQUEST NO. 4

### DEFECTIVE DESIGN OR CONDITION

It is for you, the jury, to determine whether the 1994 Jeep Wrangler (YJ) was in a defective condition unreasonably dangerous to the consumer when it was sold. A product is in a defective condition if it leaves the seller's hands in a condition not contemplated by the ultimate consumer or user and which causes the product to be unreasonably dangerous to that consumer or user.

**Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 212 (1997).**

In the present case, the plaintiff claims that the 1994 Jeep Wrangler (YJ) was in a defective condition and unreasonably dangerous to the decedent because its windshield frame was defectively designed, thereby causing the decedent to sustain his alleged injuries.

A manufacturer has the duty to design a product which is reasonably safe. This does not mean that the product must be ultra safe, or that it must have incorporated within it all of the known safety features. The manufacturer has met his duty when his product is reasonably safe under the circumstances for its reasonably intended use. A manufacturer is not a guarantor of the user's safety and has no duty to design a product which is accident-proof. The manufacturer, in addition, has no duty to prevent all injuries no matter how unforeseeable. The manufacturer has no duty to incorporate every possible safety feature in the design unless failure to

- 8 -

incorporate such features makes the vehicle unreasonably dangerous for its reasonably foreseeable uses. It is common knowledge that many products are capable of causing injury. It is also common knowledge that products may be capable of causing injury if they are subjected to misuse. Therefore, the mere occurrence of an injury is not proof that a product's design is defective.

**Potter v. Chicago Pneumatic Tool Co., 241 Conn. 212, 224 n. 17 (1997).**

If you find, therefore, that the accident was not due to an unreasonably dangerous and defective condition in the 1994 Jeep Wrangler (YJ) windshield frame, then you must end your deliberations and return a verdict for the Defendants.

## REQUEST NO. 5

### UNREASONABLY DANGEROUS

A product is unreasonably dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." An automobile, however, is a common place means of transport, one that is used by most persons and which we are taught and required to operate carefully and correctly. Just because Christopher Phelan was involved in an accident does not mean that his 1994 Jeep Wrangler (YJ) in and of itself was unreasonably dangerous.

Moreover, a product is not defective or unreasonably dangerous because it has certain manufacturing specifications as opposed to others. It is a principle of law that an automobile is not defective or unreasonably dangerous when it is in fact reasonably safe for its reasonably foreseeable and reasonably intended use. When judging this case, if you find that the decedent's injuries were not caused by an unreasonably dangerous and defective condition, but by the unreasonable or improper use of the 1994 Jeep Wrangler (YJ), you must return a verdict for the Defendant.

**Potter v. Chicago Pneumatic Tool Co., 241 Conn. 212, 214-15 (1997); Giglio v. Connecticut Light & Power Co., 180 Conn. 230, 234-35 (1980); 2 Restatement (Second) of Torts §402(A), comment i (1965).**

- 10 -

**REQUEST NO. 6**

**ADEQUATE WARNING**

The plaintiff has also alleged that the Defendant failed to provide adequate warnings or instructions with the vehicle concerning its dangerous propensities. To prevail on this claim, the plaintiff must prove, by a fair preponderance of the evidence, that the 1994 Jeep Wrangler (YJ) was defective in that adequate warnings or instructions were not provided. The Defendant would not be liable for failure to warn of risks that were not know to them or that they could not reasonably have foreseen at the time they put the product into the stream of commerce.

The plaintiff must also prove, by a fair preponderance of the evidence, that if adequate warnings or instructions had been provided, the decedent would not have suffered the harm which they allegedly suffered. In other words, the plaintiff must prove, by a fair preponderance of the evidence, that the 1994 Jeep Wrangler (YJ) was defective in not having adequate warnings or instructions provided and that this defect was the legal cause of the harm suffered by the decedent.

Where the Defendant has provided a warning, you must evaluate whether it advised the ordinary use of the nature and extent of any danger associated with the reasonably anticipated

- 11 -

use of the vehicle. In assessing whether the warning provided was adequate, you should also consider whether the warning was put in appropriate prominence location in relation to the risk to which the warning applies. To be adequate, a warning must be communicated to the person best able to take or recommend precautions against the potential harm.

**Conn. Gen. Stat. § 52-572q; <u>Haesche v. Kissner</u>, 229 Conn. 213, 218-19 (1994); <u>Giglio v. Connecticut Light & Power Co.</u>, 180 Conn. 230, 235-37 (1980); <u>Gajewski v. Pavelo</u>, 36 Conn. App. 601, 616-17 (1994), aff'd 236 Conn. 27 (1996) <u>Sharp v. Wyatt, Inc.</u>, 31 Conn. App. 824, 833 (1993).**

To prove the first part of this claim, namely that the 1994 Jeep Wrangler (YJ) in question was defective in not providing adequate warnings or instructions, the plaintiff must prove, by a fair preponderance of the evidence, that instructions or warnings were required <u>and</u> that the instructions or warnings provided were not adequate. If you find that the plaintiff has failed to prove, by a fair preponderance of the evidence, that inadequate warnings were provided, you must return a verdict for the Defendant on this particular claim. If, however, you find that the plaintiff has proven, by a fair preponderance of the evidence, that inadequate warnings or instructions were provided, you must move on to the second element, namely legal cause.

To establish legal cause, the plaintiff must prove, by a fair preponderance of the evidence, that the failure of the Defendant to provide adequate warnings or instructions proximately caused the injuries allegedly suffered by the decedent. If you find that the plaintiff has not proven

that the failure to provide adequate warnings or instructions caused the decedent's injuries, then you must return a verdict for the Defendant on this claim.

If, however, you find that the Defendant's failure to provide adequate warnings was the proximate or legal cause of the decedent's accident, then you must consider the Defendant's special defenses of comparative fault and superseding cause, and decide what percentage of responsibility should be attributed to the actions of DaimlerChrysler Corporation and third-party defendant Christopher Miller.

**Conn. Gen. Stat. § 52-572q.**

A product seller that provides an adequate warning is entitled to presume that such a warning will be heeded by the user, and if the product is safe for use so long as the warning is heeded, the product is not defective.

**State of Connecticut Judicial Branch, Civil Jury Instructions § 5-2**

**REQUEST NO. 7**

**JUDICIAL NOTICE, FEDERAL MOTOR VEHICLE SAFETY STANDARD 216
AND CERTAIN PORTIONS OF THE FEDERAL REGISTER**

You will recall that an exhibit, namely Federal Motor Vehicle Standard, or FMVSS, 216 was received as part of the evidence after the court was asked to take what is called "judicial notice" of it.   The effect of the Court having taken judicial notice of FMVSS 216 is that you are to treat FMVSS 216 as established without proof of that fact being presented to you.

**State v. Zayas, 195 Conn. 611, 614-15 (1985); State of Connecticut Judicial Branch, Civil Jury Instructions § 1-28.**

As regards to FMVSS 216, I charge you that there is no evidence in this case that the 1994 Jeep Wrangler (YJ) failed to comply with any applicable Federal Motor Vehicle Standard. Thus, proof that the 1994 Jeep Wrangler (YJ) complied with FMVSS 216, while not dispositive, may be considered by you as some evidence that the design of the 1994 Jeep Wrangler (YJ)'s windshield frame was reasonable and not unreasonably dangerous.

**FMVSS 216, 49 CFR § 571.216 S5.5, 5.6.**

## REQUEST NO. 8

## MOTORISTS' DUTIES

Connecticut law requires that:

1.  "No person shall operate a motor vehicle upon . . . [a] road . . ., at a rate of speed greater than is reasonable, having regard to the width, traffic and use of highway, road or parking area, the intersection of streets and weather conditions. . . ." Conn. Gen. Stat. Ann. § 14-218a.

2.  "Upon all highways, each vehicle . . . shall be driven upon the right. . . ." Conn. Gen. Stat. Ann. § 14-230.

3.  "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both."


If you find that third-party defendant Christopher Miller violated any or all of these laws, you may consider that as evidence of his fault.

**Donner v. Kearse, 234 Conn. 660, 681 (1995); Madenford v. Interstate Lumber and Mill Corp. of Stamford, 153 Conn. 62, 64 (1965).**

## REQUEST NO. 9

### SYMPATHY, PREJUDICE

Your verdict must be based absolutely and solely upon the evidence here given you on the trial of the case. You should not be swayed or influenced by any sympathy or prejudice for or against any of the parties. You should not be influenced by any claims or comments of counsel which are not warranted by the evidence, but should decide the case upon the evidence presented before you at this trial with due regard to the law, as stated by the Court, and applied to the facts which you find to be established by the evidence.

In this case, as in any death case, an appeal is naturally made to your sympathy. Friends and family members of the decedent's have appeared here in court, but you should bear in mind that the issue which is to be determined by you should be decided on its merits and that elements of bias or prejudice or sympathy should not enter into your discussions or your deliberations.

The parties to this action are entitled to have a calm, careful, and conscientious appraisal of the issues committed to you and this calm, careful, and conscientious deliberation should be reflected in your verdict. You should not be influenced unnecessarily by any claims or comments of counsel which are not corroborated by the evidence. You should decide the case upon the evidence presented before you at this trial with due regard to the law as I have given

- 16 -

it to you.  Again, you should be careful to avoid resorting to sympathy, speculation, conjecture or guesswork under the guise of relying on circumstantial evidence to determine critical facts in this case.

Another thing I would like to mention is that during trial there were objections made by counsel.  Now when objections are made by counsel, it is not for the purpose of keeping something from you that you should hear, but rather it is for the purpose of keeping something from you that you should not hear. That is the reason for the objections and you are never supposed to hold it against an attorney for making an objection - that is their job.

We have some very strict rules of evidence and they have to be followed.  Thus, if there were times when I indicated to you that you should disregard something that might have been said, it must be disregarded and put out of your mind.

Finally, sympathy, bias or prejudice, for or against either party, should not have the slightest influence upon you in reaching your verdict.  I am sure you will live up to your oath regarding the exclusion of any of these considerations.  We are living in an enlightened world, and you can surely comprehend the inequities and injustices that may arise when bias, prejudice or sympathetic feelings enter into your deliberations.

This case should be considered and decided by you as an action between persons of equal standing.  A corporation is entitled to the same fair trial as is a private individual.  Cases in courts of justice should be decided upon the law and the evidence and upon nothing else; otherwise courts would not be courts of justice and it would be a violation of your sworn duty, as judges of the facts.

**State of Connecticut Judicial Branch, Civil Jury Instructions § 1-43; 1 Douglass B. Wright and William L. Ankerman, Connecticut Jury Instructions (Civil) § 312.**

## REQUEST NO. 10

## EXPERT OPINION

We have had in this case the testimony of expert witnesses. Expert witnesses, such as engineers or doctors, are people who because of their training, education, and experience, have knowledge beyond that of the ordinary person. Because of that expertise in their field, expert witnesses are allowed to give their opinions. Ordinarily a witness cannot give an opinion about anything, but rather is limited to testimony as to the facts in that witness' personal knowledge. The experts in this case have given opinions. However, the fact that these witnesses may qualify as experts does not mean that you have to accept their opinions. You can accept their opinions or reject them.

In making your decision whether to believe an expert's opinion, you should consider the expert's education, training and experience in his or her field; the information available to the expert, including the facts the expert had and the documents or other physical evidence available to the expert; the expert's opportunity and ability to examine those things; the expert's ability to recollect the activity and facts that form the basis for their opinion; and the expert's ability to tell you accurately about the facts and activity that form the basis for his or her opinion.

- 19 -

You should ask yourselves about the methods employed by the expert and the reliability of his or her result. You should further consider whether the opinions stated by the expert have a rational and reasonable basis in the evidence. Based on all of those things, together with your general observation and assessment of the witness, it is then up to you to decide whether or not to accept the opinion. You may believe all, some, or none of the testimony of an expert witness. In other words, an expert's testimony is subject to your review like that of any other witness.

**State of Connecticut Judicial Branch, Civil Jury Instructions § 1-41.**

The weight to be accorded to the testimony of an expert witness depends upon your conclusion as to the proof and completeness of the facts considered by him or her in drawing his or her conclusion. You will determine whether the facts given him or her were the true facts as you find them and also whether all of the facts you find were made available to him or her in the history given to him or her.

**1 Douglass B. Wright and William L. Ankerman, Connecticut Jury Instructions (Civil) § 324 (4th ed. 1993).**

In weighing and considering the testimony of the experts in determining to what extent you will attach weight to the opinions which they gave, you are to apply to them the same rules that you apply to any witness, insofar as it relates to the interest, bias, or prejudice, appearance and demeanor upon the witness stand, frankness and candor, and so forth. You are to determine whether these witnesses are possessed of peculiar and exclusive knowledge and experience in a specialized field. The value which is to be attached to the testimony and the weight to be accorded will of course depend upon many other things: upon the actual skill possessed by the expert, by the experience he or she has had, and by the training he or she has had - - Has his experience and training been long or brief? Has it been practical or theoretical? Has it been under circumstances where reasonably and logically he or she has acquired a skill peculiar and greater than that of others, or otherwise?

In considering the testimony of these experts further, you should ask yourselves: What opportunity have the experts had to analyze and study the design of the vehicle's windshield frame and other components allegedly involved in causing the decedent's injuries, and the happening of the accident? Has the length of time of their investigation been adequate? Has the opportunity by which they could have gained personal knowledge been sufficient?

Those are matters to which you are to give such consideration as your own good judgment suggests. Finally, as the witnesses testified before you, have they produced a rational and

- 21 -

reasonable basis in support of the opinion which they venture?  As they testify, does their mode of testifying indicate care, skill, intelligence and candor, or does it indicate the contrary? Would they undertake to support their opinion by relating it to some basis in fact? Is the basis, which they bring forth in support of that particular opinion, reasonable and logical and, in your minds, sound?

**1 Douglass B. Wright and William L. Ankerman, Connecticut Jury Instructions (Civil) § 325 (4th ed. 1993).**

In resolving any conflict that may exist between the testimony of two different expert witnesses, you should weigh the opinion of one expert against the other.  In doing so, you should consider the relative qualifications, experience and credibility of the expert witness, as well as the reasons for each opinion and the facts on which the opinions are based.

**Gilbert v. Middlesex Hosp., 58 Conn. App. 731, 737 (2000).**

- 22 -

## REQUEST NO. 11

### CRASHWORTHINESS

This is a crashworthiness case.  Plaintiff is not claiming that the alleged defects caused the accident, but rather that the defects caused Christopher Phelan to suffer "enhanced injuries" or injuries he otherwise would not have sustained absent the alleged defects.  Thus, in order to establish liability against DaimlerChrysler Corporation, plaintiff must prove that as a result of the alleged defects, Christopher Phelan sustained injuries above and beyond those that would otherwise have resulted from the collision between the Ford Taurus and the Jeep Wrangler (YJ).

Trull v. Volkswagen of Am., Inc.187 F.3d 88 (1st Cir. 1999); Dreisonstok v. Volkswagenwerk, A.G., 489 F.2d 1066 (4th Cir. 1974).

## REQUEST NO. 12

**CRASHWORTHINESS**

It is the manufacturer's duty to use reasonable care in the design and manufacture of a product to minimize injuries to its users and not to subject its users to an unreasonable risk of injury in the event of a collision or impact. While the duty is for a designer to eliminate any unreasonable risk of foreseeable injury, that duty of reasonable care in design should be viewed in light of the known or foreseeable risks. At the same time, motor vehicle designers are not under any duty to design an accident proof or fool proof vehicle.

Larson v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968).

## REQUEST NO. 13

### CRASHWORTHINESS

A crashworthiness case is one in which the alleged manufacturing or design defect does not cause the accident. In such a case, the defendant is liable only for enhanced damages comprised of that portion of the damage or injury caused by the alleged defective design over and above the damage or injury that probably would have occurred as a result of the impact of collision absent the defective design. In order to establish that the design in question was defective and the defendant is responsible for his injuries, the plaintiff must:

1.    offer proof of an alternative safer design, practicable under the circumstances;

2.    prove what injuries, if any, would have resulted had the alternative, safer design been used; and

3.    establish the nature and extent of enhanced injuries attributable to the alleged defective design.

If you find that plaintiff has failed to prove any of these elements, then you must return a verdict for the manufacturer.

Larson v. General Motors Corp., 391 F. 2d 495, 503 (8th Cir. 1968); Huddle v. Levin, 537 F. 2d 726, 737-38 (3rd Cir. 1976)

## REQUEST NO. 14

## CONFORMANCE WITH INDUSTRY STANDARDS

If you find that the 1994 Jeep Wrangler (YJ) complied with all applicable industry design standards that were in effect at the time the vehicle was designed, then you may conclude that such conformance tends to show that the defendant was not negligent in the manufacture of the vehicle, nor is the defendant strictly liable for any alleged defects in the vehicle. Conformance to industry design regulations does not, in and of itself, necessarily defeat the plaintiff's claims; but it should be weighed by you in making your determination of issues of negligence and strict liability.

McKinnon v. Skil Corp., 638 F.2d 270 (1st Cir. 1981); American Law of Products Liability, Section 550 (3d. Ed. 1987).

## REQUEST NO. 15

## KNOWINGLY USING THE PRODUCT IN A DEFECTIVE CONDITION

In addition to denying that DaimlerChrysler Corporation is responsible for the decedent's injuries in strict liability, the Defendants have raised the affirmative defense that the decedent knowingly used the product in a defective condition. By doing so, Defendant is, in effect, saying that even if you should find them responsible in one or more of the ways alleged, the plaintiff is still not entitled to recover damages from it because the decedent knew that in operating the subject vehicle, he was exposing himself to the risk of injury and that he comprehended the nature and extent of the risk, and voluntarily subjected himself to it.

If you find that Christopher Phelan knew that in using the subject vehicle he would expose himself to the risk of injury, and that it is likely he comprehended the nature and the extent of the risk of injury and that he should have reasonably comprehended the risk of injury, then you must find for the Defendant DaimlerChrysler Corporation. Should you determine that the decedent's knowing use of the vehicle in a defective condition, or assumption of the risk, was not the sole proximate cause for his injuries, then you must decide how much or to what extent the decedent's assumption of the risk is to blame for his injuries and the plaintiff's damages. You will then affix the percentage of responsibility attributable to each participant in proportion to how much the fault of each contributed to the decedent's injuries.

<u>Norrie v. The Heil Co.</u>, 203 Conn. 594, 600 (1987); <u>Kelly v. Deere & Co.</u>, 627 F. Supp. 564, 566 (1986); <u>Danielson v. Cummings Insulation Co.</u>, 2000 Conn. Super. LEXIS 3156, *7 (2000); Conn. Gen. Stat. § 52-572h.

## REQUEST NO. 16

## DAMAGES

Just because I am instructing you on damages does not mean that I have any opinion on whether the Defendants should be held liable, or that you should ever reach this issue in your deliberations.

If you determine that: 1) the 1994 Jeep Wrangler (YJ)'s windshield frame was defective and unreasonably dangerous and 2) such defective and unreasonably dangerous designs caused the decedent to sustain the alleged injuries in the accident over and above those injuries that they otherwise would have sustained in the accident, that is, "enhanced" injuries, then, and only then, would you reach the question of damages.

A plaintiff who is injured by a product found to be defective and unreasonably dangerous is entitled to be compensated only for physical pain and suffering, mental and emotional suffering, and loss of the ability to enjoy life's pleasures, that she proves by a fair preponderance of the evidence to have been proximately caused by the product. As far as money can compensate the decedent's estate for his injuries, should you find for the plaintiff, then you must award a fair, just, and reasonable sum that you believe was actually sustained as a direct consequence of the conduct of the Defendants.

You cannot permit sympathy for the plaintiff and/or the decedent to play any part in your decision as to whether the plaintiff carried her burden of proof on any issues in this case. If you believe that the plaintiff has not met her burden of proof, then you must return a verdict for the Defendant, and not reach the issue of damages. Similarly, sympathy can play no part in your decision as to what damages, if any, plaintiff may recover.

**State of Connecticut Judicial Branch, Civil Jury Instructions § 2-40(a).**

## REQUEST NO. 17

### NEGLIGENCE

Because DaimlerChrysler Corporation has alleged negligence claims against Christopher Miller I must give you a general statement of what the law concerns negligence to be. In general, it may be defined as the doing of something which a reasonably prudent person would not have done under like circumstances or conditions, or it may be an omission to do that which a reasonably prudent person would have done under similar circumstances or conditions. In other words the law requires that an operator of a motor vehicle shall use reasonable care under all circumstances.

Reasonable care means the care of a reasonably prudent person. I emphasize that phrase "reasonably prudent person." From this it follows that in a situation of danger the care must be proportionate to the danger. This involves two inquiries on your part. First, what was the conduct of the parties and what were the circumstances? And second, what ought the defendant as a reasonably prudent person, to have done under those circumstances? The ultimate test of the existence of a duty to use reasonable care is to be found in the foreseeability that harm may result if that care is not exercised. By that it is not meant that one charged with negligence must be found actually to have foreseen the probability or that

the particular injury which resulted was foreseeable.  But the test which you should apply is this:  would the ordinary, reasonably prudent man in the position of the defendant, knowing what he knew or should have known, anticipate that harm of the same general nature, as that actually suffered, was likely to result?  Now, that is the general definition or general statement of what constitutes common law negligence.

**Wright & Ankerman, Connecticut Jury Instructions (Civil), 4th Ed. Volume 1 §70.**

## REQUEST NO. 18

The operator of an automobile on the highway must have the same under reasonable and

proper control at all times and when reasonable care requires must reduce its speed, or bring it

to a stop, or turn aside, to avoid colliding with a person or property of other persons on the

highway. He must keep a reasonable lookout and be reasonably vigilant to detect anyone or

anything in the path of his moving machine and liable to suffer injury therefrom. He cannot

excuse himself from injuring any object on the roadway by saying he did not see it, if, under

the circumstances, he as an ordinarily prudent person driving his car should have seen it. The

law charges him with seeing all that he ought in the exercise of due care to have seen.

**Wright & Ankerman, Connecticut Jury Instructions (Civil), 4th Ed. Volume 1 §70.**

## REQUEST NO. 19

### DUE CARE IN OPERATION OF MOTOR VEHICLE

Connecticut has many statutes governing the conduct of the operation of a motor vehicle. The legislature has seen fit, because of the traffic conditions, to lay down certain mandatory rules for the governance of drivers of motor vehicles on our highways. Where such a statute exists and is applicable to the facts in a case, it is the duty of an operator to obey that statute; and if he fails to obey it, then his failure to do so is, by law, an act of negligence. However, you must bear in mind that where there is no statute governing the conduct of the operator of a motor vehicle, you are then in the field of common law negligence and your inquiry would then be, would a reasonably prudent person have acted as this person did under the same circumstances? But where a statute governs the particular conduct of the operator of a motor vehicle, you are not concerned with considerations of reasonable care or what a reasonably prudent person would have done. Your inquiry then is simply, was the statute obeyed or was it disobeyed? And if it was disobeyed, it was negligence as a matter of law.

**Wright & Ankerman, Connecticut Jury Instructions (Civil), 4th Ed. Volume 1 §70, citing Fishman v. Scarpa, 149 Conn. 531 (1962).**

## REQUEST NO. 20

## KEEPING CAR UNDER CONTROL

It is a law of Connecticut that the operator of an automobile on the highway must have his vehicle under reasonable and proper control at all times and when reasonable care requires, must reduce its speed or bring it to a stop or turn out to avoid colliding with other cars or objects on the highway. Reasonable control does not require an automobile to be so operated that a collision can, in any event, be avoided; nor does it necessarily mean that an automobile must be stopped instantly. Generally speaking, a motor vehicle is under reasonable control when it can be slowed down or stopped by the exercise of reasonable care in time to avoid collisions with other vehicles whose presence ought reasonably to have been anticipated by the operator.

**Fishman v. Scarpa, 149 Conn. 531 (1962).**

## REQUEST NO. 21

### KEEPING A PROPER LOOKOUT

It is the duty of an operator of a vehicle upon a public highway to keep a proper lookout, and to see what a reasonably prudent operator would have seen under similar circumstances. He cannot escape responsibility for a collision with another vehicle upon the highway by saying that he did not see it in time to avoid a collision, if in fact he could have done so in the exercise of reasonable care.  **Carlin v. Haas**, 124 Conn. 259, 265 (1938). **Goulet v.Chase Companies, Inc.,** 112 Conn. 286. 290 (1930); **Goodhue v. Ballard**, 122 Conn. 542, 544 (1937)**; Brangi v. Connecticut Motor Lines, Inc.,** 134 Conn. 562, 563 (1948).

## REQUEST NO. 22

### KEEPING A PROPER LOOKOUT

What is a proper lookout? The operator of a motor vehicle upon the public highway is under the duty to keep a reasonable and proper lookout and to be vigilant to detect anyone or anything in the path of his moving vehicle. The operator is to keep a proper lookout and see what there is to be seen. The operator may not excuse himself for injuring a person by saying that he did not see such a person, when under the circumstances such person would have been seen if the operator had been maintaining a reasonable and proper lookout. The law charges the operator of a motor vehicle traveling on a public highway with seeing all that he or she ought to have seen, had the operator been in the exercise of reasonable care. The operator is chargeable not only with notice of those conditions which are known to exist, but also with notice of those conditions which would have been brought to the operator's attention had the operator been exercising reasonable care in maintaining a proper lookout. The operator is under a duty to use reasonable care to discover dangers or conditions of danger to which others may be exposed, as well as to avoid those dangers which may be known to the operator.

**Wright & Ankerman, Connecticut Jury Instructions (Civil), 4th Ed. Volume 1 §70.**

## REQUEST NO. 23

### SPEED

The State of Connecticut has a statute, C.G.S. § 14-219, which reads as follows:  "No person shall operate any motor vehicle upon any public highway of the state ... at a rate of speed greater than is reasonable, having regard to the width, traffic and use of the highway..., the intersection of streets and the weather conditions. Proper speed, except when you have certain arbitrary limits fixed, which I shall come to, is that rate of movement which is reasonable under all the circumstances. Under some circumstances a high rate of speed may not be negligence; under other circumstances a very low rate of speed may be negligent. So it is for you to determine, under that part of the statute which I have just read, whether or not the rate of speed was unreasonable on the night in question.   In weighing or determining such a question, you should consider the specific conditions named in the statute, that is , the width of the highway, the traffic and use of the highway, the intersection of streets, the weather conditions, and whether or not the speed was greater than was reasonable.  If it was, then of course it is a violation of a statute; and a violation of a statute constitutes negligence.

**Wright, FitzGerald and Ankerman, Conn. Law of Torts** (3rd Ed.) § 100; <u>**Rapuano v. Oder**</u>, 181 Conn. 515 (1980).

## REQUEST NO. 24

### SPEED

You will recall all the evidence and determine whether or not this defendant at the time in question drove his car at a reasonable rate of speed under all the circumstances that prevailed there. If you find that he was operating his car at a speed in excess of fifty-five miles per hour [the posted limit] then that would be **prima facie**, evidence that he was driving in violation of the statutes. By **prima facie** is meant that in the first instance you might regard such speed as negligence, but whether it was reasonable or not would in the final analysis depend upon the circumstances that prevailed at the time ... the type of highway, the amount of traffic upon the highway, the weather conditions that existed at the time, and any other factors or circumstances which the evidence disclosed.

**Wright & Ankerman, Connecticut Jury Instructions (Civil), 4th Ed. Volume 1 §70.**

## REQUEST NO. 25

### INTERVENING CAUSE

In the case before us it is for you to determine whether the alleged misconduct of the defendant DaimlerChrysler Corporation continued as a substantial factor in producing the injuries to and/or causing the death of Christopher Phelan, or whether the misconduct of Christopher Miller was an intervening cause which entirely superseded it. If you find the latter to be the situation, the defendant DaimlerChrysler Corporation cannot be held liable.

See **Collins v. City National Bank & Trust Co.**, 131 Conn. 167, 171, 172 (1944); **Lopes v.Conn.Light & Power Co.**, 145 Conn. 313 (1958); **Neal v. Shiels, Inc.,** 166 Conn. 3, 18 (1974).

## REQUEST NO. 26

### RECKLESSNESS

If you find that Christopher Miller operated the Ford Taurus he was driving without regard for the safety of others and in disregard of the consequences, having regard to the width, traffic and use of the highway, Christopher Miller would be guilty of reckless driving.

**Wright & Ankerman, Connecticut Jury Instructions (Civil) (4th ed.), Volume 2, § 611.**

## REQUEST NO. 27

### INTOXICATION

"Intoxication" means "an abnormal mental or physical condition due to the influence of intoxicating liquors, a visible excitation of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies."

**Sanders v. Officers Club of Connecticut, Inc.,** 196 Conn. 341, 349 (1985).

**REQUEST NO. 28**

### SOLE PROXIMATE CAUSE

If you find that the sole proximate cause of the accident and the injuries to Christopher Phelan was the misconduct of Christopher Miller, then you must bring a verdict in favor of Daimler Chrysler Corporation.

**Ferino v. Palmer,** 133 Conn. 463, 468 (1947); **Lopes v. Connecticut Light & Power Co.,** 145 Conn. 313, 316 (1958); Wright, Fitzgerald & Ankerman, Conn. Law of Torts (3rd. ed) § 34.